DISCMAG, JURY, PATENT

# U.S. District Court [LIVE]
## Eastern District of TEXAS LIVE (Marshall)
## CIVIL DOCKET FOR CASE #: 2:06-cv-00239-RHC
### Internal Use Only

| | |
|---|---|
| USA Video Technology Corporation v. Time Warner, Inc., et al | Date Filed: 06/13/2006 |
| Assigned to: Judge Ron Clark | Jury Demand: Both |
| Cause: 35:271 Patent Infringement | Nature of Suit: 830 Patent |
| | Jurisdiction: Federal Question |

**Plaintiff**

**USA Video Technology Corporation**    represented by    **Edward W Goldstein**
Goldstein Faucett & Prebeg
1177 West Loop South
Suite 400
Houston, TX 77027
713/877-1515
Fax: 713/877-1145
Email: egoldstein@gfiplaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Thomas John Ward, Jr**
Law Office of T John Ward Jr PC
P O Box 1231
Longview, TX 75606-1231
903/757-6400
Fax: 19037572323
Email: jw@jwfirm.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Time Warner, Inc.,**    represented by    **J Thad Heartfield**
Law Offices of J. Thad Heartfield
2195 Dowlen Rd
Beaumont, TX 77706
409/866-3318
Fax: 14098665789
Email: thad@jth-law.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jeffrey M Olson**
Sidley Austin - Los Angeles

555 West Fifth Street, 40th Floor
Los Angeles, Ca 90013
213/896-6000
Fax: 213/896-6600
Email: jolson@sidley.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Cox Communications, Inc.,**                    represented by  **Candice C Decaire**
Kilpatrick Stockton LLP - Atlanta
1100 Peachtree St
Ste 2800
Atlanta, GA 30309-4530
404/815-6033
Fax: 404/541-3218
Email:
cdecaire@kilpatrickstockton.com
*ATTORNEY TO BE NOTICED*

**Leroy M Toliver**
Kilpatrick Stockton
1100 Peachtree St
Suite 2800
Atlanta, GA 30309
404/815-6483
Fax: 404/541-3274
Email: btoliver@kilpatrickstockton.com

*ATTORNEY TO BE NOTICED*

**Michael Edwin Jones**
Potter Minton PC
110 N College
Suite 500
PO Box 359
Tyler, TX 75710-0359
903/597/8311
Fax: 9035930846
Email: mikejones@potterminton.com
*ATTORNEY TO BE NOTICED*

**Mitchell G Stockwell**
Kilpatrick Stockton LLP
1100 Peachtree St
Ste 2800
Atlanta, GA 30309-4530
404/815-6214
Fax: 14048156555
Email:
mstockwell@kilpatrickstockton.com

*ATTORNEY TO BE NOTICED*

**Tonya R Deem**
Kilpatrick Stockton LLP NC
1001 W Fourth Street
Winston-Salem, NC 27101
336/607-7485
Fax: 13367342653
Email: tdeem@kilpatrickstockton.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Charter Communications, Inc.,**          represented by  **Dean Franklin**
Thompson Coburn - St Louis
One US Bank Plaza
27th Floor
St Louis, MO 63101
314-552-6038
Fax: 314-552-7038
Email:
dfranklin@thompsoncoburn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Harry Lee Gillam, Jr**
Gillam & Smith, LLP
303 South Washington Avenue
Marshall, TX 75670
US
903-934-8450
Fax: 903-934-9257
Email: gil@gillamsmithlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Matthew A Rosenberg**
Thompson Coburn - St Louis
One US Bank Plaza
27th Floor
St Louis, MO 63101
314-552-6007
Fax: 314-552-7007
Email:
mrosenberg@thompsoncoburn.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Melissa Richards Smith**
Gillam & Smith, LLP
303 South Washington Avenue

Marshall, TX 75670
US
903/934-8450
Fax: 903/934-9257
Email: melissa@gillamsmithlaw.com
*ATTORNEY TO BE NOTICED*

**Michael Joseph Truncale**
Orgain Bell & Tucker - Beaumont
470 Orleans St.
Beaumont, TX 77701-3075
409-838-6412
Fax: 14098386959
Email: mjt@obt.com
*ATTORNEY TO BE NOTICED*

**Nicholas B Clifford, Jr**
Thompson Coburn - St Louis
One US Bank Plaza
27th Floor
St Louis, MO 63101
314/552-6136
Fax: 314-552-7136
Email: nclifford@thompsoncoburn.com

*ATTORNEY TO BE NOTICED*

**Defendant**

**Comcast Cable Communications,**          represented by   **Harry Lee Gillam, Jr**
**LLC.,**                                                    (See above for address)
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*

**Duane Nash**
Davis Polk & Wardwell - Menlo Park
1600 El Camino Real
Menlo Park, CA 94025
US
650/752-2000
Fax: 650/752-2111
Email: duane.nash@dpw.com
*ATTORNEY TO BE NOTICED*

**Matthew B Lehr**
Davis Polk & Wardwell - Menlo Park
1600 El Camino Real
Menlo Park, CA 94025
US
650/752-2000
Fax: 650/752-2111

Email: matthew.lehr@dpw.com
*ATTORNEY TO BE NOTICED*

**Michael Joseph Truncale**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Suong Nguyen**
Davis Polk & Wardwell - Menlo Park
1600 El Camino Real
Menlo Park, CA 94025
US
650/752-2000
Fax: 650/752-2111
Email: suong.nguyen@dpw.com
*ATTORNEY TO BE NOTICED*

**Yiping Liao**
Davis Polk & Wardwell - Menlo Park
1600 El Camino Real
Menlo Park, CA 94025
US
650/752-2000
Fax: 650/752-2111
Email: yiping.liao@dpw.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Comcast of Richardson, LP.**          represented by   **Harry Lee Gillam, Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Duane Nash**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew B Lehr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Joseph Truncale**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Suong Nguyen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Yiping Liao**

<div align="right">
(See above for address)<br>
*ATTORNEY TO BE NOTICED*
</div>

**Defendant**

**Comcast of Plano, LP.,**      represented by   **Harry Lee Gillam, Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Duane Nash**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew B Lehr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Joseph Truncale**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Suong Nguyen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Yiping Liao**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**Comcast of Dallas, LP.,**      represented by   **Harry Lee Gillam, Jr**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Duane Nash**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Matthew B Lehr**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Michael Joseph Truncale**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Suong Nguyen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Yiping Liao**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Comcast of Dallas, LP.,**                    represented by    **Michael Joseph Truncale**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Comcast Cable Communications,**            represented by    **Michael Joseph Truncale**
**LLC.,**                                     (See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Comcast of Richardson, LP.**               represented by    **Michael Joseph Truncale**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Comcast of Plano, LP.,**                    represented by    **Michael Joseph Truncale**
(See above for address)
*ATTORNEY TO BE NOTICED*

V.

**Counter Defendant**

**USA Video Technology Corporation**

**Counter Claimant**

**Charter Communications, Inc.,**

V.

**Counter Defendant**

**USA Video Technology Corporation**

| Date Filed | # | Docket Text |
|---|---|---|
| 06/13/2006 | 1 | ORGINAL COMPLAINT JURY TRIAL DEMAND against Comcast of Dallas, LP.,, Time Warner, Inc.,, Cox Communications, Inc.,, Charter Communications, Inc.,, Comcast Cable Communications, LLC.,, Comcast of Richardson, LP., Comcast of Plano, LP., (Filing fee $ 350.) , filed by USA Video Technology Corporation. (Attachments: # 1 Civil Cover Sheet)(ch, ) (Entered: 06/13/2006) |
| 06/13/2006 | | Summons Issued as to Comcast of Dallas, LP.,, Time Warner, Inc.,, Cox |

| | | |
|---|---|---|
| | | Communications, Inc.,, Charter Communications, Inc.,, Comcast Cable Communications, LLC.,, Comcast of Richardson, LP., Comcast of Plano, LP.,. (ch, ) (Entered: 06/13/2006) |
| 06/13/2006 | 2 | Form mailed to Commissioner of Patents and Trademarks. (ch, ) (Entered: 06/13/2006) |
| 06/15/2006 | 3 | NOTICE of Attorney Appearance by Thomas John Ward, Jr on behalf of USA Video Technology Corporation (Ward, Thomas) (Entered: 06/15/2006) |
| 06/16/2006 | 4 | ORDER REASSIGNING CASE. Case reassigned to Judge Ron Clark for all further proceedings. Judge David Folsom no longer assigned to case. Signed by Judge David Folsom on 6/16/06. (mrm, ) (Entered: 06/16/2006) |
| 07/07/2006 | 6 | E-GOV SEALED SUMMONS Returned Executed Certified Mail by USA Video Technology Corporation. Comcast Cable Communications, LLC., served on 6/26/2006, answer due 7/17/2006. (ch, ) (Entered: 07/11/2006) |
| 07/07/2006 | 7 | E-GOV SEALED SUMMONS Returned Executed Certified Mail by USA Video Technology Corporation. Charter Communications, Inc., served on 6/26/2006, answer due 7/17/2006. (ch, ) (Entered: 07/11/2006) |
| 07/07/2006 | 8 | E-GOV SEALED SUMMONS Returned Executed Certified Mail by USA Video Technology Corporation. Cox Communications, Inc., served on 6/26/2006, answer due 7/17/2006. (ch, ) (Entered: 07/11/2006) |
| 07/07/2006 | 9 | E-GOV SEALED SUMMONS Returned Executed Certified Mail by USA Video Technology Corporation. Comcast of Dallas, LP., served on 6/27/2006, answer due 7/17/2006. (ch, ) (Entered: 07/11/2006) |
| 07/07/2006 | 10 | E-GOV SEALED SUMMONS Returned Executed Certified Mail by USA Video Technology Corporation. Comcast of Plano, LP., served on 6/27/2006, answer due 7/17/2006. (ch, ) (Entered: 07/12/2006) |
| 07/07/2006 | 11 | E-GOV SEALED SUMMONS Returned Executed Certified Mail by USA Video Technology Corporation. Comcast of Richardson, LP. served on 6/27/2006, answer due 7/17/2006. (ch, ) (Entered: 07/12/2006) |
| 07/10/2006 | 5 | MOTION for Extension of Time to File Answer re 1 Complaint, *Defendant's Cox Communications, Inc., Charter Communications, Inc. Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP and Comcast of Dallas, LP's Unopposed Motion to Enlarge Time to Answer or Otherwise Respond to USA Video Technology Corporation's Original Complaint* by Comcast Cable Communications, LLC.,. (Attachments: # 1 Text of Proposed Order)(Gillam, Harry) (Entered: 07/10/2006) |
| 07/20/2006 | 12 | ORDER granting 5 Motion for Extension of Time to Answer. Deadline for Cox Communications, Inc., Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP and Comcast of Dallas, LP is set for August 14, 2006. Signed |

| | | by Judge Ron Clark on 7/19/06. (ehs, ) (Entered: 07/20/2006) |
|---|---|---|
| 07/20/2006 | 13 | Answer Due Deadline Updated for Comcast of Dallas, LP., to 8/14/2006; Cox Communications, Inc., to 8/14/2006; Charter Communications, Inc., to 8/14/2006; Comcast Cable Communications, LLC., to 8/14/2006; Comcast of Richardson, LP. to 8/14/2006; Comcast of Plano, LP., to 8/14/2006. (ehs, ) (Entered: 07/20/2006) |
| 07/24/2006 | 15 | APPLICATION to Appear Pro Hac Vice by Attorney Leroy M Toliver for Cox Communications, Inc.. (ch, ) (Entered: 08/07/2006) |
| 07/24/2006 | ● | Pro Hac Vice Filing fee paid by Toliver; Fee: $25, receipt number: 6-1-6092 (ch, ) (Entered: 08/07/2006) |
| 07/26/2006 | 16 | APPLICATION to Appear Pro Hac Vice by Attorney Mitchell G Stockwell for Cox Communications, Inc.. (ch, ) (Entered: 08/07/2006) |
| 07/26/2006 | ● | Pro Hac Vice Filing fee paid by Stockwell; Fee: $25, receipt number: 2-1-1729 (ch, ) (Entered: 08/07/2006) |
| 08/04/2006 | 14 | NOTICE of Attorney Appearance by Michael Edwin Jones on behalf of Cox Communications, Inc., (Jones, Michael) (Entered: 08/04/2006) |
| 08/07/2006 | 17 | APPLICATION to Appear Pro Hac Vice by Attorney Candice C Decaire for Cox Communications, Inc.. (ch, ) (Entered: 08/10/2006) |
| 08/07/2006 | ● | Pro Hac Vice Filing fee paid by Decaire; Fee: $25, receipt number: 2-1-1764 (ch, ) (Entered: 08/10/2006) |
| 08/10/2006 | 18 | MOTION to Change Venue by Comcast of Dallas, LP.,, Comcast Cable Communications, LLC.,, Comcast of Richardson, LP., Comcast of Plano, LP.,. (Attachments: # 1 Affidavit Declaration of S. Nguyen in Support of Comcast Defendants' Motion to Transfer# 2 Exhibit Exhibit A to Nguyen Declaration# 3 Exhibit Exhibit B to Nguyen Declaration# 4 Exhibit Exhibit C to Nguyen Declaration# 5 Exhibit Exhibit D to Nguyen Declaration# 6 Exhibit Exhibit E to Nguyen Declaration# 7 Exhibit Exhibit F to Nguyen Declaration# 8 Exhibit Exhibit G to Nguyen Declaration# 9 Exhibit Exhibit H to Nguyen Declaration# 10 Text of Proposed Order Proposed Order)(Gillam, Harry) (Entered: 08/11/2006) |
| 08/10/2006 | 19 | APPLICATION to Appear Pro Hac Vice by Attorney Matthew B Lehr for Cox Communications, Inc.,; Charter Communications, Inc.,; Comcast Cable Communications, LLC.,; Comcast of Richardson, LP.; Comcast of Plano, LP.,; Comcast of Dallas, LP., and Time Warner, Inc.. (ch, ) (Entered: 08/11/2006) |
| 08/10/2006 | ● | Pro Hac Vice Filing fee paid by Lehr; Fee: $25, receipt number: 2-1-1779 (ch, ) (Entered: 08/11/2006) |
| 08/10/2006 | 20 | APPLICATION to Appear Pro Hac Vice by Attorney Yiping Liao for Cox Communications, Inc.,; Charter Communications, Inc.,; Comcast Cable Communications, LLC.,; Comcast of Richardson, LP.; Comcast of Plano, LP.,; Comcast of Dallas, LP., and Time Warner, Inc.. (ch, ) (Entered: 08/11/2006) |

| | | |
|---|---|---|
| 08/10/2006 | ● | Pro Hac Vice Filing fee paid by Liao; Fee: $25, receipt number: 2-1-1179 (ch, ) (Entered: 08/11/2006) |
| 08/10/2006 | ●21 | APPLICATION to Appear Pro Hac Vice by Attorney Duane Nash for Cox Communications, Inc.,; Charter Communications, Inc.,; Comcast Cable Communications, LLC.,; Comcast of Richardson, LP.; Comcast of Plano, LP.,; Comcast of Dallas, LP., and Time Warner, Inc.. (ch, ) (Entered: 08/11/2006) |
| 08/10/2006 | ● | Pro Hac Vice Filing fee paid by Nash; Fee: $25, receipt number: 2-1-1779 (ch, ) (Entered: 08/11/2006) |
| 08/10/2006 | ●22 | APPLICATION to Appear Pro Hac Vice by Attorney Suong Nguyen for Cox Communications, Inc.,; Charter Communications, Inc.,; Comcast Cable Communications, LLC.,; Comcast of Richardson, LP.; Comcast of Plano, LP.,; Comcast of Dallas, LP., and Time Warner, Inc.. (ch, ) (Entered: 08/11/2006) |
| 08/10/2006 | ● | Pro Hac Vice Filing fee paid by Nguyen; Fee: $25, receipt number: 2-1-1779 (ch, ) (Entered: 08/11/2006) |
| 08/11/2006 | ●23 | MOTION to Amend/Correct 19 Application to Appear Pro Hac, *Matthew B. Lehr* by Comcast of Dallas, LP.,, Comcast Cable Communications, LLC.,, Comcast of Richardson, LP., Comcast of Plano, LP.,. (Liao, Yiping) (Entered: 08/11/2006) |
| 08/11/2006 | ●24 | MOTION to Amend/Correct 22 Application to Appear Pro Hac, *Suong Nguyen* by Comcast of Dallas, LP.,, Comcast Cable Communications, LLC.,, Comcast of Richardson, LP., Comcast of Plano, LP.,. (Liao, Yiping) (Entered: 08/11/2006) |
| 08/11/2006 | ●25 | MOTION to Amend/Correct 21 Application to Appear Pro Hac, *Duane Nash* by Comcast of Dallas, LP.,, Comcast Cable Communications, LLC.,, Comcast of Richardson, LP., Comcast of Plano, LP.,. (Liao, Yiping) (Entered: 08/11/2006) |
| 08/11/2006 | ●26 | MOTION to Amend/Correct 20 Application to Appear Pro Hac, *Yiping Liao* by Comcast of Dallas, LP.,, Comcast Cable Communications, LLC.,, Comcast of Richardson, LP., Comcast of Plano, LP.,. (Liao, Yiping) (Entered: 08/11/2006) |
| 08/11/2006 | | ***Motions terminated: 23 MOTION to Amend/Correct 19 Application to Appear Pro Hac, *Matthew B. Lehr* filed by Comcast Cable Communications, LLC.,, Comcast of Richardson, LP.,, Comcast of Plano, LP.,,, Comcast of Dallas, LP.,,, 24 MOTION to Amend/Correct 22 Application to Appear Pro Hac, *Suong Nguyen* filed by Comcast Cable Communications, LLC.,,, Comcast of Richardson, LP.,, Comcast of Plano, LP.,,, Comcast of Dallas, LP.,,, 25 MOTION to Amend/Correct 21 Application to Appear Pro Hac, *Duane Nash* filed by Comcast Cable Communications, LLC.,,, Comcast of Richardson, LP.,, Comcast of Plano, LP.,,, Comcast of Dallas, LP.,,,, 26 MOTION to Amend/Correct 20 Application to Appear Pro Hac, *Yiping Liao* filed by Comcast Cable Communications, LLC.,,, Comcast of Richardson, LP.,, Comcast of |

| | | |
|---|---|---|
| | | Plano, LP.,,, Comcast of Dallas, LP.,,. These are not motions, just amended applications to appear Pro Hac Vice. (mpv, ) (Entered: 08/14/2006) |
| 08/14/2006 | 27 | MOTION for Extension of Time to File *Defendants' Comcast Cable COmmunications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP and Comcast of Dallas, LP's Unopposed Motion to Enlarge Time to Answer or Otherwise Respond to USA Video Technology Corporation's Original Complaint* by Comcast of Dallas, LP.,, Comcast Cable Communications, LLC.,,, Comcast of Richardson, LP., Comcast of Plano, LP.,.. (Attachments: # 1 Text of Proposed Order)(Smith, Melissa) (Entered: 08/14/2006) |
| 08/14/2006 | 28 | MOTION for Joinder *Joinder in Motion to Transfer* by Charter Communications, Inc.,,. (Smith, Melissa) (Entered: 08/14/2006) |
| 08/14/2006 | 29 | MOTION for Extension of Time to File *Defendant Charter Communications, Inc.'s Unopposed Motion to Enlarge Time to Answer or Otherwise Respond to USA Video Technology Corporation's Original Complaint* by Charter Communications, Inc.,,. (Attachments: # 1 Text of Proposed Order)(Smith, Melissa) (Entered: 08/14/2006) |
| 08/14/2006 | 30 | MOTION to Dismiss for Lack of Jurisdiction *or in the Alternative, to Transfer Venue to the District of Delaware and Brief in Support Thereof* by Cox Communications, Inc.,,. Responses due by 8/29/2006 (Attachments: # 1 Exhibit A - Spalding Declaration# 2 Exhibit B - Complaint# 3 Exhibit C - Order# 4 Text of Proposed Order Granting Motion to Dismiss for Lack of Personal Jurisdiction# 5 Text of Proposed Order Granting Motion to Transfer to the State of Delaware)(Stockwell, Mitchell) (Entered: 08/14/2006) |
| 08/14/2006 | | ***Motions terminated: 28 MOTION for Joinder *Joinder in Motion to Transfer* filed by Charter Communications, Inc.,,. Document is not a motion. (mpv, ) (Entered: 08/15/2006) |
| 08/15/2006 | 31 | ORDER granting 29 Motion for Extension of Time to File to answer or otherwise respond to USA Video Technology corp's original comnplaint until 8/21/06. Signed by Judge Ron Clark on 8/15/06. (djh, ) (Entered: 08/15/2006) |
| 08/15/2006 | 32 | ORDER granting 27 Dfts comcast Cable Communications,LLC, Comcast of Richardson, LP, Comcast of Plano, LP and Comcast of Dallas, LP Unopposed motion to enlarge time to answer or otherwise respond to USA Video Technology Corp's original complaint until 8/21/06. Signed by Judge Ron Clark on 8/15/06. (djh, ) (Entered: 08/15/2006) |
| 08/16/2006 | 33 | NOTICE by Cox Communications, Inc., re 30 MOTION to Dismiss for Lack of Jurisdiction *or in the Alternative, to Transfer Venue to the District of Delaware and Brief in Support Thereof re: Notice of Errata* (Attachments: # 1 Exhibit A to Notice of Errata)(Stockwell, Mitchell) (Entered: 08/16/2006) |
| 08/18/2006 | 34 | AMENDED COMPLAINT against all defendants, filed by USA Video |

| | | |
|---|---|---|
| | | Technology Corporation. (Attachments: # 1 Exhibit A USP 5130792) (Goldstein, Edward) (Entered: 08/18/2006) |
| 08/21/2006 | ● | Summons Issued as to Time Warner, Inc.,. (ch, ) (Entered: 08/21/2006) |
| 08/22/2006 | ●35 | RESPONSE to Motion re 18 MOTION to Change Venue *to the District Court of Delaware, or, in the Alternative, to Stay the Action* filed by USA Video Technology Corporation. (Goldstein, Edward) (Entered: 08/22/2006) |
| 08/25/2006 | ●36 | NOTICE of Attorney Appearance by Matthew A Rosenberg on behalf of Charter Communications, Inc., (Rosenberg, Matthew) (Entered: 08/25/2006) |
| 08/25/2006 | ●41 | E-GOV SEALED SUMMONS Returned Executed Certified Mail by USA Video Technology Corporation. Time Warner, Inc., served on 8/22/2006, answer due 9/11/2006. (ch, ) (Entered: 08/29/2006) |
| 08/28/2006 | ●37 | NOTICE of Attorney Appearance by Dean Franklin on behalf of Charter Communications, Inc., (Franklin, Dean) (Entered: 08/28/2006) |
| 08/28/2006 | ●38 | NOTICE of Attorney Appearance by Nicholas B Clifford, Jr on behalf of Charter Communications, Inc., (Clifford, Nicholas) (Entered: 08/28/2006) |
| 08/28/2006 | ●39 | RESPONSE in Opposition re 30 MOTION to Dismiss for Lack of Jurisdiction *or in the Alternative, to Transfer Venue to the District of Delaware and Brief in Support Thereof* filed by USA Video Technology Corporation. (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D)(Goldstein, Edward) (Entered: 08/28/2006) |
| 08/29/2006 | ●40 | REFERRAL ORDER - that discovery disputes and discovery motions filed in this case shall be REFERRED, to United States Magistrate Judge Earl S. Hines. Signed by Judge Ron Clark on 8/28/06. (ehs, ) (Entered: 08/29/2006) |
| 08/29/2006 | ●42 | MOTION to Amend/Correct 34 Amended Complaint by USA Video Technology Corporation. (Attachments: # 1 Exhibit A-Second Amended Complaint# 2 Text of Proposed Order)(Goldstein, Edward) (Entered: 08/29/2006) |
| 08/30/2006 | ●43 | PROTECTIVE ORDER as set forth herein. Signed by Judge Ron Clark on 8/29/06. (ehs, ) (Entered: 08/30/2006) |
| 08/30/2006 | ●44 | ORDER Governing Proceedings (Patent Cases) setting case for Management Conference. Management Conference set for 10/31/2006 02:00 PM before Judge Ron Clark.. Signed by Judge Ron Clark on 8/29/06. (ehs, ) (Entered: 08/30/2006) |
| 08/31/2006 | ●45 | ORDER denying 18 Motion to Transfer to the District of Delaware or, in the Alternative, to Stay the Action. It is further ordered that Dft Charter Communication, Inc., Joinder in the Motion to Transfer 28 is Denied . Signed by Judge Ron Clark on 8/31/06. (ch, ) (Entered: 08/31/2006) |
| | | |

| | | |
|---|---|---|
| 09/01/2006 | 46 | MOTION for Extension of Time to File Response/Reply as to 30 MOTION to Dismiss for Lack of Jurisdiction *or in the Alternative, to Transfer Venue to the District of Delaware and Brief in Support Thereof* by Cox Communications, Inc.,. (Attachments: # 1 Text of Proposed Order Granting Defendant Cox Communications Inc.'s Motion for Extension of Time)(Decaire, Candice) (Entered: 09/01/2006) |
| 09/05/2006 | 47 | MOTION for Extension of Time to File *Answer or Otherwise Respond to USA Video Technology Corporation's Amended Complaint* by Comcast of Dallas, LP.,, Charter Communications, Inc.,, Comcast Cable Communications, LLC.,, Comcast of Richardson, LP., Comcast of Plano, LP.,. (Attachments: # 1 Text of Proposed Order)(Gillam, Harry) (Entered: 09/05/2006) |
| 09/06/2006 | 48 | ORDER granting 46 Motion for Extension of Time to File reply to pltf's response to deft's motion to dismiss for lack of personal jurisdiction, or in the alternative, to transfer venue. Responses due by 9/6/2006. Signed by Judge Ron Clark on 9/6/06. (ehs, ) (Entered: 09/06/2006) |
| 09/06/2006 | 49 | REPLY to Response to Motion re 30 MOTION to Dismiss for Lack of Jurisdiction *or in the Alternative, to Transfer Venue to the District of Delaware and Brief in Support Thereof* filed by Cox Communications, Inc.,. (Attachments: # 1 Exhibit D# 2 Exhibit E# 3 Exhibit F# 4 Exhibit G# 5 Exhibit H)(Decaire, Candice) (Entered: 09/06/2006) |
| 09/07/2006 | 50 | MOTION for Extension of Time to File Answer re 34 Amended Complaint by Time Warner, Inc.,. (Attachments: # 1 Proposed Order) (Heartfield, J) (Entered: 09/07/2006) |
| 09/08/2006 | 51 | ORDER denying 50 Motion for Extension of Time to Answer. Defts have until 9/13/06 to file a responsive pleading . Signed by Judge Ron Clark on 9/8/06. (ehs, ) (Entered: 09/08/2006) |
| 09/08/2006 | 52 | ORDER denying 47 Motion for Extension of Time to File. Defts have until 9/13/06 to file a responsive pleading . Signed by Judge Ron Clark on 9/8/06. (ehs, ) (Entered: 09/08/2006) |
| 09/08/2006 | 53 | ORDER that deft Cox Communications, Inc. make the Rule 30(b)(6) representatives available for deposition by 10/6/06. Pltfs have until 10/20/06 to supplement its response or deft Cox Comm. will be dismissed from this case for lack of personal jurisdiction. Signed by Judge Ron Clark on 9/8/06. (ehs, ) (Entered: 09/08/2006) |
| 09/11/2006 | 58 | APPLICATION to Appear Pro Hac Vice by Attorney Jeffrey M Olson for Time Warner, Inc.. (ch, ) (Entered: 09/25/2006) |
| 09/11/2006 | | Pro Hac Vice Filing fee paid by Olson; Fee: $25, receipt number: 2-1-1851 (ch, ) (Entered: 09/25/2006) |
| 09/13/2006 | 54 | ANSWER to Amended Complaint by Time Warner, Inc.,.(Heartfield, J) (Entered: 09/13/2006) |
| 09/13/2006 | 55 | *The Comcast Defendants'* ANSWER to Amended Complaint *Affirmative Defenses and*, COUNTERCLAIM against USA Video Technology |

| | | |
|---|---|---|
| | | Corporation by Comcast of Dallas, LP.,, Comcast Cable Communications, LLC.,, Comcast of Richardson, LP., Comcast of Plano, LP.,.(Gillam, Harry) (Entered: 09/13/2006) |
| 09/13/2006 | 56 | ANSWER to Amended Complaint, COUNTERCLAIM against USA Video Technology Corporation by Charter Communications, Inc.,. (Clifford, Nicholas) (Entered: 09/13/2006) |
| 09/20/2006 | 57 | NOTICE: Case Management Conference Reset for 11/1/2006 01:30 PM in Ctrm 2 (Beaumont) before Judge Ron Clark. (bca, ) (Entered: 09/20/2006) |
| 09/27/2006 | 59 | *Plaintiff's* ANSWER to Counterclaim *of Comcast Defendants* by USA Video Technology Corporation.(Goldstein, Edward) (Entered: 09/27/2006) |
| 09/27/2006 | 60 | *Plaintiff's* ANSWER to Counterclaim *of Charter Communications* by USA Video Technology Corporation.(Goldstein, Edward) (Entered: 09/27/2006) |
| 10/02/2006 | 61 | NOTICE of Attorney Appearance by Michael Joseph Truncale on behalf of Comcast of Dallas, LP.,, Comcast of Dallas, LP.,, Comcast Cable Communications, LLC.,, Comcast of Richardson, LP., Comcast of Plano, LP.,, Comcast Cable Communications, LLC.,, Comcast of Richardson, LP., Comcast of Plano, LP., (Truncale, Michael) (Entered: 10/02/2006) |
| 10/02/2006 | 62 | REPORT of Rule 26(f) Planning Meeting. (Attachments: # 1 Attachment A; Proposed Order)(Truncale, Michael) Modified on 10/3/2006 (mpv, ). (Entered: 10/02/2006) |
| 10/02/2006 | 63 | REPORT of Rule 26(f) Planning Meeting. (Attachments: # 1 Exhibit A- Protective Order)(Goldstein, Edward) (Entered: 10/02/2006) |
| 10/03/2006 | 64 | REPORT of Rule 26(f) Planning Meeting. (Attachments: # 1 Protective Order)(Truncale, Michael) (Entered: 10/03/2006) |
| 10/11/2006 | 65 | PROTECTIVE ORDER. Signed by Judge Ron Clark on 10/3/06. (ch, ) (Entered: 10/11/2006) |
| 10/20/2006 | 66 | RESPONSE in Opposition re 30 MOTION to Dismiss for Lack of Jurisdiction *or in the Alternative, to Transfer Venue to the District of Delaware and Brief in Support Thereof Supplemental Response* filed by USA Video Technology Corporation. (Attachments: # 1 Exhibit A - Letter# 2 Exhibit B - Deposition Transcript excerpts)(Goldstein, Edward) (Entered: 10/20/2006) |
| 10/23/2006 | 67 | RESPONSE in Support re 30 MOTION to Dismiss for Lack of Jurisdiction *or in the Alternative, to Transfer Venue to the District of Delaware and Brief in Support Thereof* filed by Cox Communications, Inc.,. (Attachments: # 1 Exhibit 1)(Jones, Michael) (Entered: 10/23/2006) |
| 10/24/2006 | 68 | CORPORATE DISCLOSURE STATEMENT filed by Cox Communications, Inc., identifying Cox Enterprises, Inc. as Corporate Parent. (Toliver, Leroy) (Entered: 10/24/2006) |

| 10/27/2006 | 69 | CORPORATE DISCLOSURE STATEMENT filed by Comcast Cable Communications, LLC., identifying Comcast Holdings Corporation as Corporate Parent. (Truncale, Michael) (Entered: 10/27/2006) |
|---|---|---|
| 10/30/2006 | 76 | APPLICATION to Appear Pro Hac Vice by Attorney Tonya R Deem for Cox Communications, Inc.. (ch, ) (Entered: 11/15/2006) |
| 10/30/2006 | | Pro Hac Vice Filing fee paid by Deem; Fee: $25, receipt number: 1-1-3129 (ch, ) (Entered: 11/15/2006) |
| 10/31/2006 | 70 | CORPORATE DISCLOSURE STATEMENT filed by Time Warner, Inc., (Heartfield, J) (Entered: 10/31/2006) |
| 11/01/2006 | 71 | ORDER granting in part 30 Motion to Dismiss for Lack of Personal Jurisdiction or in the alternative transfer venue to the District Court of Delaware. USA Video Techology's claims against Cox Communications, Inc are severed and transferred to the U S District Court of Delaware. The Clerk shall send a copy of this Order to the Clerk of the U S District Court for the District of Delaware. The Court denies 42 Motion to for leave to amend. Signed by Judge Ron Clark on 11/1/06. (djh, ) (Entered: 11/02/2006) |
| 11/01/2006 | 73 | Minute Entry for proceedings held before Judge Ron Clark : Case Management Conference held on 11/1/2006 in Beaumont. Jury selection & trial set for February, 2008. (Court Reporter Chris Bickham.) (bca, ) (Entered: 11/07/2006) |
| 11/02/2006 | 72 | SCHEDULING ORDER - Discovery due by 11/28/2007. Joinder of Parties due by 12/6/2006.Claims Construction Hearing set for 8/29/2007 10:00 AM before Judge Ron Clark. Motions due by 1/7/2008. Docket Call and Final Pretrial set for 2/4/2008 9:00 AM before Judge Ron Clark. Jury Selection set for 2/5/2008 9:00AM before Judge Ron Clark. All other deadlines are set forth herein. Signed by Judge Ron Clark on 11/1/06. (ch, ) (Entered: 11/02/2006) |
| 11/07/2006 | 74 | AMENDED SCHEDULING ORDER - Mandatory disclosures due 12/20/06, Invalidity contentions due 12/28/06. All other deadlines and requirements remain unchanged and are governed by the original scheduling order #72. Signed by Judge Ron Clark on 11/7/06. (ehs, ) (Entered: 11/07/2006) |
| 11/10/2006 | 75 | NOTICE of Attorney Appearance by Michael Joseph Truncale on behalf of Charter Communications, Inc., (Truncale, Michael) (Entered: 11/10/2006) |
| 11/21/2006 | | Interdistrict transfer to the District of Delaware. USA Video Tech claims against Cox Communications, Inc. are severed and transferred to the Dist. of Delaware. Certified copies of transfer order, complaint/answer and docket sheet emailed to to Dist of Delaware. (ehs, ) (Entered: 11/21/2006) |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

U.S. CLERK
DISTRICT COURT
06 JUN 13 PM 2: 27
TX EAST. TX MARSHALL
BY_____

| | | |
|---|---|---|
| USA Video Technology Corporation, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Case No. **2-06CV-239** |
| | § | |
| TIME WARNER INC.; COX | § | DF |
| COMMUNICATIONS, INC.; CHARTER | § | |
| COMMUNICATIONS, INC.; | § | **JURY TRIAL DEMANDED** |
| COMCAST CABLE | § | |
| COMMUNICATIONS, LLC; COMCAST | § | |
| OF RICHARDSON, LP; COMCAST OF | § | |
| PLANO, LP; COMCAST OF DALLAS, | § | |
| LP | | |
| | | |
| Defendants | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, USA Video Technology Corporation ("USVO"), files this Original Complaint

against Defendants, Time Warner Inc. ("Time Warner"), Cox Communications, Inc. ("Cox"),

Charter Communications, Inc. ("Charter"), Comcast Cable Communications LLC

("Comcast"), Comcast of Richardson, LP ("Comcast Richardson"), Comcast of Plano, LP ("Comcast

Plano"), and Comcast of Dallas, LP ("Comcast Dallas") and alleges as follows:

### THE PARTIES

1.    USVO is a corporation organized under the laws of the State of Connecticut with its

principal place of business at 83 Halls Road, P.O. Box 245, Old Lyme, Connecticut, 06371.

2.    Time Warner, on information and belief, is a corporation organized under the laws of the

State of New York. Time Warner is doing business in Texas, and, on information and

belief, has a principal place of business at 1 Time Warner Center, New York, NY 10019-8016. Time Warner may be served with process by serving its registered agent, the CT Corporation System, 701 Brazos Street, Suite 360, Austin, TX 78701.

3.     Cox, on information and belief, is a corporation organized under the laws of the State of Delaware. Cox is doing business in Texas, and, on information and belief, has a principal place of business at 1400 Lake Hearn Drive, Atlanta, GA 30319. Cox may be served with process by serving its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

4.     Charter, on information and belief, is a corporation organized under the laws of the State of Delaware. Charter is doing business in Texas, and, on information and belief, has a principal place of business at 12405 Powerscourt Drive, St. Louis, MO 63131. Charter may be served with process by serving its registered agent, Corporation Service Company DBA CSC-Lawyers Incorporating Service Company, 701 Brazos, Suite 1050, Austin, TX 78701.

5.     Comcast, on information and belief, is a corporation organized under the laws of the State of Delaware. Comcast is doing business in Texas, and, on information and belief, has a principal place of business at 1500 Market Street, Philadelphia, PA 19102-2148. Comcast may be served with process by serving its registered agent, Comcast Capital Corporation at 1201 Market Street, Suite 1000, Wilmington, DE 19801.

6      Comcast Richardson on information and belief, is a corporation organized under the laws of the State of Delaware. Comcast Richardson is doing business in Texas, and, on information and belief, has a principal place of business at 1201 Market Street, Suite

2

1405, Wilmington, DE 19801. Comcast Richardson may be served with process by serving its registered agent, CI Corporation System, 350 North St Paul St., Dallas, TX 75201.

7. Comcast Plano on information and belief, is a corporation organized under the laws of the State of Delaware. Comcast Plano is doing business in Texas, and, on information and belief, has a principal place of business at 1201 Market Street, Suite 1405, Wilmington, DE 10901. Comcast Plano may be served with process by serving its registered agent, CT Corporation System, 350 North St. Paul Street, Dallas, TX 75201.

8. Comcast Dallas on information and belief, is a corporation organized under the laws of the State of Delaware. Comcast Dallas is doing business in Texas, and, on information and belief has a principal place of business at 1201 Market Street, Suite 1405, Wilmington, DE 19801. Comcast Dallas may be served with process by serving its registered agent, CT Corporation System, 350 North St. Paul Street, Dallas, TX 75201.

## JURISDICTION & VENUE

9. This is an action for infringement of a United States patent. Accordingly, this action arises under the patent laws of the United States of America, 35 U.S.C. § 1 et. seq. and jurisdiction is properly based on Title 35 United States Code, particularly § 271, and title 28 United States Code, particularly § 1338(a).

10. Venue is proper in this court under Title 28 United States Code § 1391(b) and 1400(b).

## PATENT INFRINGEMENT COUNT

11. On July 14, 1992, United States Patent No. 5,130,792 ("the '792 patent") entitled "Store and Forward Video System" was duly and legally issued. A true and correct copy of the '792

3

patent is attached as Exhibit A. The '792 patent is directed to systems that communicate

video programs to subscribers upon request, commonly referred to as video-on-demand

(VOD)

12. Pursuant to 35 U.S.C. § 282, the above-listed United States Patent is presumed valid.

13. USVO is the owner of the '792 patent

14. Time Warner, on information and belief, operates digital cable systems in which it provides

video-on-demand (VOD) services to its subscribers. Time Warner provides its subscribers

with digital set-top boxes to enable access to the VOD services. By offering such products

and/or services Time Warner has in the past and continues to infringe at least claim 1 of the

'792 patent.

15. Cox, on information and belief, operates digital cable systems in which it provides video-on-

demand (VOD) services to its subscribers. Cox provides its subscribers with digital set-top

boxes to enable access to the VOD services. By offering such products and/or services Cox

has in the past and continues to infringe at least claim 1 of the '792 patent.

16. Charter, on information and belief, operates digital cable systems in which it provides video-

on-demand (VOD) services to its subscribers. Charter provides its subscribers with digital

set-top boxes to enable access to the VOD services. By offering such products and/or

services Charter has in the past and continues to infringe at least claim 1 of the '792 patent.

17. Comcast, on information and belief, operates digital cable systems in which it provides

video-on-demand (VOD) services to its subscribers. Comcast provides its subscribers with

digital set-top boxes to enable access to the VOD services. By offering such products and/or

services Comcast has in the past and continues to infringe at least claim 1 of the '792 patent.

4

18. Comcast Richardson, on information and belief, operates digital cable systems in which it provides video-on-demand (VOD) services to its subscribers. Comcast Richardson provides its subscribers with digital set-top boxes to enable access to the VOD services. By offering such products and/or services Comcast has in the past and continues to infringe at least claim 1 of the '792 patent.

19. Comcast Plano, on information and belief, operates digital cable systems in which it provides video-on-demand (VOD) services to its subscribers. Comcast Plano provides its subscribers with digital set-top boxes to enable access to the VOD services. By offering such products and/or services Comcast has in the past and continues to infringe at least claim 1 of the '792 patent.

20. Comcast Dallas, on information and belief, operates digital cable systems in which it provides video-on-demand (VOD) services to its subscribers. Comcast Dallas provides its subscribers with digital set-top boxes to enable access to the VOD services. By offering such products and/or services Comcast has in the past and continues to infringe at least claim 1 of the '792 patent.

21. The Defendants' infringement of the '792 patent alleged above has injured USVO and thus, it is entitled to recover damages adequate to compensate for the Defendants' infringement, which in no event can be less than a reasonable royalty.

## DEMAND FOR JURY TRIAL

22. USVO hereby demands a jury trial on all claims and issues triable of right by a jury.

## PRAYER FOR RELIEF

Wherefore, USVO prays for entry of judgment:

5

A.    that Defendants, Time Warner, Cox, Charter, Comcast, Comcast Richardson, Comcast Plano and Comcast Dallas, have infringed one or more claims of the '792 patent;

B.    that Defendants, Time Warner, Cox, Charter, Comcast, Comcast Richardson, Comcast Plano and Comcast Dallas, account for and pay to USVO all damages caused by the infringement of the '792 patent, which by statute can be no less than a reasonable royalty;

C.    that USVO be granted pre-judgment and post-judgment interest on the damages caused to them by reason of Defendants, Time Warner, Cox, Charter, Comcast, Comcast Richardson, Comcast Plano and Comcast Dallas's infringement of the '792 patent;

D.    that USVO be granted its attorneys' fees in this action;

E.    that costs be awarded to USVO;

F.    that USVO be granted such other and further relief as the Court may deem just and proper under the current circumstances.

Respectfully submitted,

Date: __6/12/06_____

_____
Edward W. Goldstein
Texas Bar. No. 08099500
GOLDSTEIN, FAUCETT & PREBEG, LLP
1177 West Loop South, Suite 400
Houston, TX 77027
Tel: 713/877-1515
Fax: 713/877-1737
E-mail: egoldstein@gfiplaw.com

T. John Ward, Jr.
State Bar No. 00794818
Law Office of T. John Ward, Jr., P.C.
P.O. Box 1231

Longview, Texas 75606-1231
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)
E-mail: jw@jwfirm.com
ATTORNEYS FOR PLAINTIFF

Of Counsel:

GOLDSTEIN, FAUCETT & PREBEG, L.L.P.
Corby R. Vowell
Texas Bar No. 24031621
1177 West Loop South, Suite 400
Houston, Texas 77027
(713) 877-1515 – Telephone
(713) 877-1737 – Facsimile

7

# EXHIBIT A

US005130792A

# United States Patent [19]

## Tindell et al.

[11] **Patent Number:** **5,130,792**

[45] **Date of Patent:** **Jul. 14, 1992**

[54] **STORE AND FORWARD VIDEO SYSTEM**

[75] Inventors: Elbert G. Tindell, Dallas; Kyle Crawford, Grand Prairie, both of Tex.

[73] Assignee: USA Video Inc., Dallas, Tex

[21] Appl. No.: 475,137

[22] Filed: Feb. 1, 1990

[51] Int. Cl.⁵ .................................... H04N 7/14
[52] U.S. Cl. ............................... 358/85; 358/86; 358/102; 358/134; 379/100
[58] Field of Search .............. 358/86, 133, 85, 134, 358/102; 379/53, 100

[56] **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,028,733 | 6/1977 | Ulicki | 358/102 X |
| 4,506,387 | 3/1985 | Walter | 455/612 |
| 4,513,390 | 4/1985 | Walter et al | 358/102 X |
| 4,703,348 | 10/1987 | Yuasa | 358/133 |
| 4,769,833 | 9/1988 | Farleigh et al. | 358/86 X |
| 4,772,956 | 9/1988 | Roche et al. | 358/134 X |
| 4,782,397 | 11/1988 | Kimoto | 358/102 X |
| 4,816,901 | 3/1989 | Music et al | 358/85 X |
| 4,890,320 | 12/1989 | Monslow | 380/10 |
| 4,890,321 | 12/1989 | Seth-Smith et al | 358/86 X |
| 4,918,523 | 4/1990 | Simon | 358/133 |
| 4,924,311 | 5/1990 | Ohki et al | 358/133 X |
| 4,947,244 | 8/1990 | Fenwick | 358/86 |
| 4,949,187 | 8/1990 | Cohen | 358/102 X |
| 4,953,196 | 8/1990 | Ishiwaka et al | 358/85 X |

Primary Examiner—Victor R. Kostak
Attorney, Agent, or Firm—Kenneth C. Hill

[57] **ABSTRACT**

A system and method for transferring video programs from a first location to a remote location provides for communication of the programs over selected commercial telephone networks. The program signals are digitized, compressed, and stored at the first location, and transferred to the remote location on request of a viewer. Due to the compression of the program, the time required for electronically transferring the program to the remote location is much less than the viewing time for such program. The compressed program is reconstructed at the remote location for viewing on available video display devices.

9 Claims, 4 Drawing Sheets



**U.S. Patent**        July 14, 1992        Sheet 1 of 4        **5,130,792**



Fig. 1

Fig. 2

Fig. 3

Case 1:06-cv-00737-SLR    Document 76-2    Filed 12/05/2006    Page 11 of 18
Case 2:06-cv-00239-RHC    Document 1-1    Filed 06/13/2006    Page 11 of 18



*Fig. 4*

Case 1:06-cv-00737-SLR    Document 76-2    Filed 12/05/2006    Page 12 of 18
Case 2:06-cv-00239-RHC    Document 1-1    Filed 06/13/2006    Page 12 of 18



*Fig. 5*

**U.S. Patent**        July 14, 1992        Sheet 4 of 4        **5,130,792**



Fig. 6

Fig. 7

5,130,792

**1**

## STORE AND FORWARD VIDEO SYSTEM

### BACKGROUND OF THE INVENTION

#### 1. Field of the Invention

The present invention relates generally to video systems and more specifically to a system and method for transferring a video program for display at a remote location.

#### 2. Description of the Prior Art

Viewing of various types of video programs has become increasingly popular. These programs are generally viewed on standard television sets. Typical video programs include motion pictures, entertainment produced for television, and educational and training programs. An extremely wide variety of programs have been designed or adapted for television viewing.

In order to transfer the video programs to a remote location where they can be viewed, programs can be broadcast using radio waves, transferred to the remote location by means of a specially installed dedicated cable, or transfer of a physical copy on video tape or video disk can be made. Each method of distributing video programs has drawbacks for certain applications.

When video programs are transferred using radio waves, there is little or no control over who receives and views the program. This method of transferring video programs is not suitable for limited distribution of pay programs. In addition, the number of channels for transferring programs is not unlimited, and picture quality of the program can be degraded by atmospheric conditions.

Barring technical problems, programs transferred to a remote location along a specially installed, dedicated cable generally have a reliably good picture quality. However, the cable must be installed at each remote location, and controlled through a centralized facility. Although many video channels can be carried over some cable systems, the number of channels is, again, not unlimited. As is the case with broadcast systems, transmitting equipment must be made available at the time any particular program is to be viewed. The selection of programs and times for viewing are made centrally, as is the case with broadcast systems, and are not under the control of a viewer at a remote location.

Physical transport of video tapes to a remote location allows the viewer to select the program to be viewed and the time for viewing. However, such tapes must be physically transported to the remote location. This takes time, and is often not convenient for the viewer. In addition, the physical video tape or disk containing the programming is subject to loss, theft, and deterioration.

It would be desirable to provide a system and method for transmitting video programs to remote locations which overcomes various drawbacks as described above.

### SUMMARY OF THE INVENTION

It is therefore an object of the present invention to provide a system and method for transferring video programs from a first location to a remote location.

It is another object of the present invention to provide such a system and method wherein the programs are electronically transferred in a short period of time relative to the viewing time of the programs.

It is a further object of the present invention to provide such system and method which does not require

**2**

that special, dedicated cables be connected to the remote location.

Therefore, according to the present invention, a system and method for transferring video programs from a first location to a remote location provides for communication of the programs over selected commercial telephone networks. The program signals are digitized, compressed, and stored at the first location, and transferred to the remote location on request of a viewer. Due to the compression of the program, the time required for electronically transferring the program to the remote location is much less than the viewing time for such program. The compressed program is reconstructed at the remote location for viewing on available video display devices.

### BRIEF DESCRIPTION OF THE DRAWINGS

The novel features believed characteristic of the invention are set forth in the appended claims. The invention itself however, as well as a preferred mode of use, and further objects and advantages thereof, will best be understood by reference to the following detailed description of an illustrative embodiment when read in conjunction with the accompanying drawings, wherein:

FIG. 1 is a high level block diagram of a system for transferring video programs to a remote location;

FIG. 2 is a block diagram of a central data facility;

FIG. 3 is a block diagram of a system for digitizing and compressing video programs;

FIG. 4 is a block diagram of a distribution interface for use with the system of FIG. 1;

FIG. 5 is a block diagram of a receiver for use at a remote location;

FIG. 6 is a flowchart describing a method for making video programs available for transfer to a remote location; and

FIG. 7 is a flowchart illustrating a method for requesting, receiving, and displaying video programs at a remote location.

### DESCRIPTION OF THE PREFERRED EMBODIMENT

Referring to FIG. 1, a system for transferring video programs to a remote location includes a central data facility 10 connected to a commercial telephone network 12. The central data facility 10 will be described in further detail in connection with the following figures. Telephone network 12 preferably includes optical fiber connections capable of transferring digital data at very high rates. Such optical fiber systems are currently being installed in selected locations in the United States, and are expected to be widely available in the future.

At a remote location, a telephone 14 and receiving unit 16 are connected to the telephone network 12. A video display device 18, such as a television or a receiving unit 16 for displaying video programs which have been transferred from the central data facility 10 to the receiving unit 16. A viewer who wishes to down load a program from the central data facility 10 into his receiving unit 16 calls the central data facility 10 using the normal telephone 14. After the program has been ordered, the user places the telephone 14 on-hook and switches the receiving unit 16 to standby. The central data facility 10 then returns the call and down loads the requested program into the receiving unit 16 for viewing at a time selected by the viewer.

5,130,792

3

A keyboard or other input device is preferably provided on the receiving unit 16 for the viewer to identify the requested program. Identifying information for the receiving unit, used for billing and call-back, can be stored in the receiving unit.

A block diagram of the central data facility 10 is shown in FIG. 2. The central data facility 10 includes a central processor 20 connected to one or more mass storage devices 22. Mass storage devices 22 are preferably high density devices such as optical disks. Programs which are to be handled by the central data facility 10 are originally provided from one or several different types of video source 22 as known in the art. The video programs are digitized and compressed in a digitizing processor 26, and transferred to the central processor 20 for retention in mass storage devices 22.

Incoming requests for programs are connected to a request interface 28, which is in turn connected to the central processor 20. Outgoing programs being transmitted to remote receiving units are routed through a distribution interface 30.

In a preferred embodiment, a user connects to the central data facility 10 through the request interface 28 by means of a standard TOUCH-TONE (DTMF) telephone. Once a connection has been made, the viewer 25 can identify himself and request any available program by entering a proper set of codes. The DTMF tones transferred to the request interface 28 are converted to characters and transmitted to the central processor 20. Central processor 20 identifies the caller and determines 30 whether the requested selection is available. Desired information, such as the availability of a selection, any delay which may be incurred prior to down loading the selected program, or an indication of the charges incurred in the transaction, can be returned to the viewer 35 through a request interface 28 by means of DTMF tones or recorded or synthesized spoken messages.

Once a request has been made and acknowledged, central processor 20 selects an available output channel to distribution interface 30, and requests a telephone 40 switching network connection. Since each viewer must identify himself when the request is made, central processor 20 is able to call an authorized number at a known location corresponding to such user. Once the connection is established, the requested program can be 45 transferred from mass storage 22 through the distribution interface 30 to the remote location. Accounting data regarding the transaction is logged by the central processor 20 for administrative purposes.

Referring to FIG. 3, a block diagram of the digitizing 50 and compression processor 26 is shown. Source 24 provides separate video and audio signals to processor 26. The video signal is applied to a sync and blanking stripper circuit 32. The various sync signals and blanking intervals contained in the video signal are necessary 55 only for display of the program, and can be recreated in the receiving unit 16. The output from sync and blanking stripper 32 is connected to a signal separator 34, which breaks the video signal into its various basic elements. The number of separate channels into which 60 the video signal is separated at this point will depend upon system implementation, with signals such as luminance and chromanence being likely candidates for separate handling.

The separated signals are then converted to digital 65 signals in analog to digital converters 36, and stored in a buffer 38. As shown in FIG. 3, three separate video signals are digitized, but one, two, or more than three

4

signals may be used. If the video signal is not split into two or more parts, the output of the sync and blanking stripper 32 can be input directly to an analog to digital converter 36.

Since the audio signal is frequency modulated instead of amplitude modulated, it is preferably handled separately from the video signal. The audio signal is demodulated and filtered in filter 40, and digitized in analog to digital converter 42. The audio signal is also stored in buffer 38.

Digital data from buffer 38 is input to a data compression circuit 44. Compressed data is input to an encoder 46, which encrypts the data in order to preserve privacy. From the encoder 46, the digital data representing the program originally provided by the source 24 is transferred to the central processor 20.

Buffer 38 can be a relatively small buffer, which requires that data be extracted therefrom and compressed in data compression circuit 44 as it is being generated by the source 24. In the alternative, buffer 38 can include mass storage capable of holding an entire program. In this event, the compression and encoding of the data can be performed after the entire program has been digitized, if desired.

Referring to FIG. 4, a block diagram of a preferred embodiment for the distribution interface 30 is shown. Central processor 20 is connected to a high speed bus 48, which is in turn connected to several gateways 50. Although two gateways 50 are shown in FIG. 4, the number actually used depends upon details of the system implementation, especially with reference to the data throughput capabilities of the central processor 20 and the gateways 50.

Each gateway 50 is connected to a low speed bus 52. Each low speed bus 52 is preferably a commercially available local area network. A plurality of optical converters 54 are connected to each low speed bus 52. In FIG. 4, only two converters 54 are shown connected to each low speed bus 52, but more are preferably connected in an actual implementation. The number of converters 54 connected each low speed bus 52 depends on the data transfer rate of the converters 54 and data handling capability of the buses 52.

Data transferred to a converter 54 is placed into an internal buffer 56. Control circuitry 58 controls operation of the converter 54 and communicates with the gateway 50 over low speed bus 52. Control circuitry 58 also controls operation of optical drivers 60, 62. Each optical driver 60, 62 transmits the data from buffer 56 via a modulated light signal as known in the art. Each optical driver 60, 62 is connected to an optical coupler 64, which combines the different light signals onto a single optical fiber. In a preferred embodiment, optical drivers 60, 62 generate light having different wavelengths, which is multiplexed onto a single optical fiber by coupler 64. Particular system designs can utilize only a single optical driver 60, or more than the two optical drivers 60, 62 shown in FIG. 4.

The distribution interface 30 shown in FIG. 4 allows a single central processor 20 to drive a relatively large number of converters 54 at one time. Various alternative designs to that shown in FIG. 4 can, of course, be utilized if desired.

FIG. 5 shows a preferred embodiment of receiving unit 16. The receiving unit 16 shown in FIG. 5 is used only as a stand alone receiver, and does not incorporate the automatic program request facilities described in connection with FIG. 1.

5,130,792

5

The incoming optical signals are filtered by wavelength and split in optical splitter 64, and converted to digital electrical signals. In the embodiment shown in FIG. 5, two different wavelengths of light were used to transmit information over the optical fiber connection, so two separate channels of digital information are generated by splitter 64. The number of optical drivers 60, 62 as described in connection with FIG. 4 determines the number of channels into which the incoming data is split by splitter 64.

Each channel of digital data is connected from splitter 64 to a serial to parallel converter 66, which converts the serial data to byte-wide data. As is known in the art, the serial transmission of the program data preferably includes redundant error correcting code (ECC), allowing for correction of errors within the receiving unit 16. Error correction is performed in error correction units 68, and the data is temporarily stored in buffer 70.

Under control of control unit 72, data is removed from buffer 70 and transferred to decoder 74. Decoder 74 decrypts the compressed data, undoing the encryption effects of encoder 46 described in connection with FIG. 3. Decoded data is then transferred through storage interface 76 and stored into mass storage device 78. Mass storage device 78 is preferably an erasable optical disk, or other similar relatively low cost, high density storage medium.

Data is stored onto mass storage device 78 until the entire requested program has been down loaded from the central data facility 10. Due to the removal of unnecessary information, compression of the remaining data, and high speed transfer, this down loading can be accomplished in much less time than is required to view the program in real time. Once transfer has been completed, control unit 72 communicates such fact to user interface 80, which indicates through visual or audible means to a viewer that the down loaded program is now available for viewing. User interface 80 provides basic functions for the viewer, such as setup for down loading a program, play a program, and pause during play of a down loaded program.

Once a viewer selects the play mode, control unit 72 causes the data stored in mass storage device 78 to be transferred through storage interface 76 to a data decompression unit 82. Data decompression unit 82 restores the compressed data to its raw, uncompressed form, and transfers it to buffer 84. Data is extracted from buffer 84 in real time as needed for viewing, and converted to analog form in digital to analog converter 86. The original video and audio signals are then restored in signal reconstruction circuit 88, which restores blanking intervals, sync signals, and the like which were removed in the digitizing and compression processor 26. The output of signal reconstruction circuitry 88 is a composite video signal or a modulated RF signal suitable for input to a standard television set. If desired, the program signal can alternatively be recreated as a digital signal suitable for display on a digital monitor as known in the art.

Referring to FIG. 6, a preferred method for making a video program available for transmission to a remote location is shown. The program is first digitized 90 and compressed 92 as described in connection with FIG. 3. The program is also preferably encoded 94, and stored 96 in a non-volatile mass storage device. If desired, the encoding step 94 may be left out.

6

At this point, the program is compressed and stored in condition to be transferred. The number of programs which can be stored at one time is limited only by the capabilities of the central processor 20, and the storage available in mass storage devices 22. When a request is received for a particular program 98, a check is made to see whether that program is available 100. If the requested program is not available, perhaps because the viewer made a mistake when entering his selection, such fact is indicated to the viewer 102. If the program is available for down loading, that fact is confirmed to the viewer 104 and the central data facility 10 sets up a telephone connection with the remote location 106. Transfer of the program 108 is then performed as described above.

Referring to FIG. 7, a preferred method is shown by which the receiving unit 16 at the remote location receives and displays a requested program. First, a connection is made to the central data facility 110. As described above in connection with FIG. 1 this is preferably done by utilizing a standard TOUCH-TONE (DTMF) telephone handset to dial the central facility and enter a selection.

The viewer then requests the desired program 112, and waits to see if it is available 114. If not, the process is complete. If the requested selection is available, the viewer hangs up the telephone handset and switches the receiving unit 16 to standby. The program is then received by the receiving unit 118, decoded, and stored into mass storage 122. When the viewer is ready to view the program, it is decompressed 124 and played back 126 for viewing on a video display. The viewer may preferably pause display of the program at any time by entering a command at the user interface 80, and may view the program multiple times.

The convenience and usefulness of the system described above depends in large part on the ability to be able to quickly down load a video program to the receiving unit 16. In order to illustrate the convenience of the system described above, an example illustrating the numbers involved will now be described.

A single television channel has a 6 megahertz bandwidth. By stripping unnecessary signals as described above, a video signal can be sampled at a rate of 16 megahertz and retain a good signal quality. Samples having a resolution of 8 bits provide sufficient video fidelity for television purposes. This results in a raw data rate of 16 megabytes per second of video data.

Assuming a desired program, such as a motion picture, to have a length of two hours, 7200 seconds of data must be digitized and stored. At a rate of 16 megabytes per second, this results in 115.2 gigabytes of raw data. As is known in the art, video information is highly redundant, so that large compression factors are obtainable. This means that a total data storage requirement of approximately 2–4 gigabytes is expected to be sufficient for a two hour video program. This is the storage requirement for a single program both in the central data facility 10 and the receiving unit 16. This amount of data is well within the capability of optical disks which are presently becoming available.

Assuming 2.3 gigabytes are required for a compressed program, and that a 50% overhead is required for serial transmission of the program data, for error correcting code, blocking, and the like, 3.45 gigabytes of serial data must be transmitted between the central data facility 10 and the receiving unit 16. At eight bits per byte, this results in 27.6 gigabits to be transferred.

5,130,792

7

Optical fiber connections currently planned for installation to residential customers will have a maximum data transfer rate of 144 megabits per second. At this rate, the required 27.6 gigabits can be transferred to the receiving unit 16 in 192 seconds, which is just over three minutes. Thus, approximately three minutes is required to transfer a typical video program to the receiving unit 16.

Note that the numbers described above do not require the use of more than one wavelength of light on a single optical fiber. If it is necessary to increase the sampling rate, or the magnitude of each sample, two or more wavelengths of light can be multiplexed on a single cable as described in connection with FIGS. 4 and 5. This would allow better resolution of the video signal with no increase in transmission time.

If a video camera and compression circuitry is available at a remote location, it is possible to use the system described above to transfer video information between two remote locations. A call to the central data facility can be used to initialize the connection between two remote locations, and the central data facility is no longer involved once the connection is setup. Near real-time video signals obtained at one location are compressed and transferred to the second remote location over the phone lines. Instead of storing the signals onto the mass storage device 78, they are transferred directly to the data decompression circuitry 82 and displayed at the second remote location. Near real-time video communication can be accomplished by providing cameras and compression circuitry at each end of a conversation.

While the invention has been particularly shown and described with reference to a preferred embodiment, it will be understood by those skilled in the art that various changes in form and detail may be made therein without departing from the spirit and scope of the invention.

What is claimed is:

1. A system for transmitting video programs to remote locations over a switched telephone network, comprising:

a central data facility having means for storing digital compressed versions of video programs;

a request interface connected to said central data facility and to the telephone network, wherein said request interface receives requests for video programs made over the telephone network and communicates them to said central data facility;

a distribution interface connected to said central data facility and to the telephone network, wherein said distribution interface initiates connections over the telephone network with remote locations in response to requests received by said request interface, and transmits thereto compressed versions of video programs previously requested through said request interface, such compressed versions being transmitted in less time than is required to view the programs in real time;

a receiver at each remote location for connecting to the telephone network and receiving compressed video programs transmitted from said distribution interface, for storing the received programs, and for subsequently playing the video programs at a real time rate on a video display.

2. The system of claim 1, wherein requests are made to said request interface through preselected sequences

8

of DTMF transmissions made from a telephone transceiver.

3. The system of claim 1, wherein said distribution interface comprises:

a plurality of converters for converting digital video programs to a format suitable for transmission over a telephone line; and

a controller for simultaneously providing data representative of digital compressed video programs to each of said converters, wherein a plurality of the remote receivers can be simultaneously receiving such programs.

4. The system of claim 3, wherein said controller comprises:

a high speed central processor for providing processing and data transfer functions;

at least one gateway connected to said central processor by a high speed communications bus; and

a communications network having a lower data carrying capacity than the high speed communications bus connected to each of said gateways, wherein a plurality of converters are connected to each communications network, and wherein said central processor controls the transfer of data to said converters through said gateways over the high speed communications bus and said communications network.

5. The system of claim 1, further comprising:

means for inputting video programs; and

conversion means connected to said inputting means and to said central data facility for digitizing and compressing video programs read in to said inputting means, and for transmitting such compressed video programs to said central data facility for storage and subsequent transmission to remote locations.

6. A method for viewing video programs at a location remote from a central data facility, comprising the steps of:

receiving at the central data facility a request for a selected program over a switched telephone network, such request identifying a preregistered requester;

determining whether the selected program is available;

if the selected program is available, initiating a connection over the telephone network to a remote receiving unit previously associated with the preregistered requester;

transmitting a previously stored compressed version of the selected program over the initiated connection in less time than is required to view the program in real time;

receiving the selected program at the remote receiving unit and storing it on a mass storage device; and

after all of the selected program has been stored on the mass storage device, decompressing the selected program and playing it back in real time on a video display.

7. The method of claim 6, wherein the request received at the central data facility comprises a sequence of tones generated by a DTMF telephone.

8. The method of claim 6 wherein, if the selected program is available, such availability is confirmed during a connection in which such request is made, followed by terminating such connection prior to said step of initiating a connection.

9. A system for transmission of video programs over a switched telephone network, comprising:

5,130,792

9

a central data facility for storing a plurality of video programs in a digital, compressed format;

means connected to said central data facility for digitizing and compressing video programs, and communicating them to said central data facility for storage;

a request interface connected to the telephone network and to said central data facility for receiving requests for desired video programs over the telephone network, such request being communicated to said request interface by sequences of tones generated by a DTMF telephone in response to a user pressing buttons thereon in selected patterns, such patterns identifying the user and the desired video program, wherein said request communicates to the user a confirmation of availability if a desired video program is available for the communication to the user;

a distribution interface connected to said central data facility and to the telephone network, said distribution interface containing a plurality of converters for converting compressed digital data to a form suitable for transmission over the telephone net-

10

work, wherein said distribution interface initiates a connection with a receiving unit at a preselected remote location in response to the user's request and transmits the digitized, compressed video program to such remote unit over such connection in less time than is required to view the program in real time;

a plurality of receiving units at a plurality of remote locations, each of said receiving units connected to the telephone network and being capable of completing a connection initiated by said distribution interface and receiving digitized, compressed video programs over such connections, wherein each of said receiving units includes a mass storage subsystem for storing a received video program in compressed format, and a decompression subsystem for reading a stored video program from the mass storage subsystem at the user's convenience and converting it to a decompressed form suitable for display in real time; and

a video display device connected to each receiving unit for displaying the converted video program.

* * * * *

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

*summons Issued*

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

USA Video Technology Corporation

## DEFENDANTS: Time Warner Inc. et al.

2-06CV-239

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | | |
|---|---|---|
| ☐ 1 | U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 | U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**     **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product    Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability    ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel &    Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander    ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'    Injury Product | ☐ 650 Airline Regs. | ☒ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability    Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine    **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product    ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability    ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle    ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle    Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability    ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal    Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting    ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment    Sentence | ☐ 791 Empl. Ret. Inc | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/    **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations    ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare    ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities -    ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment    ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities -    ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | | | |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
35 U.S.C. § 282
Brief description of cause:
Patent Infringement

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):

JUDGE _____

DOCKET NUMBER _____

DATE  6-12-06

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

✎ AO 120 (Rev. 3/04)

| TO: Mail Stop 8<br>Director of the U.S. Patent and Trademark Office<br>P.O. Box 1450<br>Alexandria, VA 22313-1450 | REPORT ON THE<br>FILING OR DETERMINATION OF AN<br>ACTION REGARDING A PATENT OR<br>TRADEMARK |
|---|---|

In Compliance with 35 U.S.C. § 290 and/or 15 U.S.C. § 1116 you are hereby advised that a court action has been

filed in the U.S. District Court _____Eastern Marshall Division_____ on the following ☑ Patents or ☐ Trademarks:

| DOCKET NO. 2:06-cv239 | DATE FILED 6/13/2006 | U.S. DISTRICT COURT Eastern Marshall Division |
|---|---|---|
| PLAINTIFF<br><br>USA Video Technology Corp. | | DEFENDANT<br><br>Time Warner, Inc., et al |

| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following patent(s)/ trademark(s) have been included:

| DATE INCLUDED | INCLUDED BY ☐ Amendment   ☐ Answer   ☐ Cross Bill   ☐ Other Pleading | |
|---|---|---|
| PATENT OR<br>TRADEMARK NO. | DATE OF PATENT<br>OR TRADEMARK | HOLDER OF PATENT OR TRADEMARK |
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |

In the above—entitled case, the following decision has been rendered or judgement issued:

| DECISION/JUDGEMENT |
|---|
| |

| CLERK<br>DAVID J. MALAND, CLERK | (BY) DEPUTY CLERK<br>C. Hinton | DATE<br>6/13/2006 |
|---|---|---|

Copy 1—Upon initiation of action, mail this copy to Director    Copy 3—Upon termination of action, mail this copy to Director
Copy 2—Upon filing document adding patent(s), mail this copy to Director    Copy 4—Case file copy

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA Video Technology Corporation, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 2:06-CV-239-DF |
| | § | |
| TIME WARNER INC.; COX | § | |
| COMMUNICATIONS, INC.; CHARTER | § | |
| COMMUNICATIONS, INC.; COMCAST | § | |
| CABLE COMMUNICATIONS, LLC; | § | |
| COMCAST OF RICHARDSON, LP; | § | |
| COMCAST OF PLANO, LP; COMCAST | § | |
| OF DALLAS, LP | § | |

## NOTICE OF APPEARANCE OF T. JOHN WARD, JR.

COMES NOW Plaintiff, USA Video Technology Corporation, and hereby notifies the court

and all parties of record that, in addition to the attorneys already representing it, T. John Ward, Jr.,

State Bar Number 00794818, of Law Office of T. John Ward, Jr., P.C., P.O. Box 1231, Longview,

Texas, 75606-1231, (903) 757-6400, will be appearing as an attorney of record on its behalf in the

above-styled and numbered cause.

Respectfully submitted,

/s/ John Ward, Jr.
T. John Ward, Jr.
State Bar No. 00794818

Law Office of T. John Ward, Jr., P.C.
P.O. Box 1231
Longview, Texas 75606-1231
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)
E-mail: jw@jwfirm.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served by e-mail via the Eastern District of Texas ECF System to all counsel of record on this the 15th day of June, 2006.

/s/ John Ward, Jr.
T. John Ward, Jr.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORP., | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | |
| | § | CIVIL ACTION NO. 2:06-CV-239 |
| TIME WARNER, INC., ET AL., | § | |
| | § | |
| Defendants. | § | |

## ORDER

The above entitled and numbered civil action is hereby reassigned to the Honorable

Ron Clark.

**SIGNED this 16th day of June, 2006.**

_____

DAVID FOLSOM
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | § § § | |
| Plaintiff | § § | |
| v | § § | CASE NO. 2:06CV239(DF) |
| TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | § § § § § § § § § | JURY TRIAL DEMANDED |
| Defendants | § | |

**DEFENDANT'S COX COMMUNICATIONS, INC., CHARTER COMMUNICATIONS, INC., COMCAST CABLE COMMUNICATIONS, LLC, COMCAST OF RICHARDSON, LP, COMCAST OF PLANO, LP AND COMCAST OF DALLAS LP'S UNOPPOSED MOTION TO ENLARGE TIME TO ANSWER OR OTHERWISE RESPOND TO USA VIDEO TECHNOLOGY CORPORATION'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

1. Defendant's Cox Communications, Inc., Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP hereby move the Court to enlarge the time within which Defendants Cox Communications, Inc., Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP are required to move, answer, or otherwise respond to Plaintiff USA Video Technology Corporation's Original Complaint up to and including August 14, 2006.

2.  Good cause exists for the granting of this motion and the motion is made for the reason and on the grounds that the additional time is necessary in order to allow counsel to adequately confer with their clients and respond appropriately to USA Video Technology Corporation's Original Complaint.

WHEREFORE, Defendant's Cox Communications, Inc., Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP hereby move the Court to enlarge the time within which Defendants Cox Communications, Inc., Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP pray respectfully that the time to answer or otherwise move or respond to USA Video Technology Corporation's Original Complaint be enlarged up to and including August 14, 2006.

Respectfully submitted,

GILLAM & SMITH, L.L.P.


_____/s/_____
Harry L. "Gil" Gillam, Jr.
Texas State Bar No. 07921800
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, Texas  75670
Telephone:  (903) 934-8450
Facsimile:   (903) 934-9257

**Lead Attorney for Cox Communications, Inc., Charter Communications, Inc., Comcast Cable Communications, LLC Comcast of Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP**

CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Cox Communications, Inc., Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP and counsel for USA Video Technology Corporation conferred and USA Video Technology Corporation does not oppose this motion.

_____/s/_____
Harry L. "Gil" Gillam, Jr.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 10th day of July 2006.

_/s/_____
Harry L. "Gil" Gillam, Jr.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | § § § | |
| Plaintiff | § § | |
| v | § § | CASE NO. 2:06CV239(DF) |
| TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | § § § § § § § § | JURY TRIAL DEMANDED |
| Defendants | § § | |

**ORDER GRANTING DEFENDANT'S COX COMMUNICATIONS, INC.,
CHARTER COMMUNICATIONS, INC., COMCAST CABLE
COMMUNICATIONS, LLC, COMCAST OF RICHARDSON, LP, COMCAST OF
PLANO, LP AND COMCAST OF DALLAS LP'S UNOPPOSED MOTION TO
ENLARGE TIME TO ANSWER OR OTHERWISE RESPOND TO USA VIDEO
TECHNOLOGY CORPORATION'S ORIGINAL COMPLAINT**

On this date came on for consideration, Defendants, Cox Communications, Inc.,

Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast of

Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP Unopposed Motion to

Enlarge Time to Answer or Otherwise Respond to USA Video Technology Corporations

Original Complaint, and the Court being of the opinion that same should be GRANTED,

it is therefore,

ORDERED that Defendants, Cox Communications, Inc., Charter

Communications, Inc., Comcast Cable Communications, LLC, Comcast of Richardson,

LP, Comcast of Plano, LP, and Comcast of Dallas, LP, be and hereby are, granted an

extension of time within which to respond to USA Video Technology Corporations

Original Complaint up to and including August 14, 2006.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | § § § | |
| Plaintiff | § § | |
| v | § § | CASE NO. 2:06CV239(DF) |
| TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | § § § § § § § § § | JURY TRIAL DEMANDED |
| Defendants | § | |

**ORDER GRANTING DEFENDANT'S COX COMMUNICATIONS, INC., CHARTER COMMUNICATIONS, INC., COMCAST CABLE COMMUNICATIONS, LLC, COMCAST OF RICHARDSON, LP, COMCAST OF PLANO, LP AND COMCAST OF DALLAS LP'S UNOPPOSED MOTION TO ENLARGE TIME TO ANSWER OR OTHERWISE RESPOND TO USA VIDEO TECHNOLOGY CORPORATION'S ORIGINAL COMPLAINT**

On this date came on for consideration, Defendants, Cox Communications, Inc., Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP Unopposed Motion to Enlarge Time to Answer or Otherwise Respond to USA Video Technology Corporations Original Complaint, and the Court being of the opinion that same should be GRANTED. This extension of time shall not server as a basis for an extension of any other deadline. It is therefore,

ORDERED that Defendants, Cox Communications, Inc., Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP, be and hereby are, granted an

extension of time within which to respond to USA Video Technology Corporations

Original Complaint up to and including August 14, 2006.

So **ORDERED** and **SIGNED** this **19** day of **July, 2006.**

_____

Ron Clark, United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY | § | |
| CORPORATION, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v | § | CASE NO. 2:06CV239(DF) |
| | § | |
| TIME WARNER INC.; COX | § | |
| COMMUNICATIONS, INC.; CHARTER | § | |
| COMMUNICATIONS, INC; COMCAST | § | JURY TRIAL DEMANDED |
| CABLE COMMUNICATIONS, LLC; | § | |
| COMCAST OF RICHARDSON, LP; | § | |
| COMCAST OF PLANO, LP; COMCAST | § | |
| OF DALLAS, LP, | § | |
| | § | |
| Defendants | § | |

**ORDER GRANTING DEFENDANT'S COX COMMUNICATIONS, INC.,
CHARTER COMMUNICATIONS, INC., COMCAST CABLE
COMMUNICATIONS, LLC, COMCAST OF RICHARDSON, LP, COMCAST OF
PLANO, LP AND COMCAST OF DALLAS LP'S UNOPPOSED MOTION TO
ENLARGE TIME TO ANSWER OR OTHERWISE RESPOND TO USA VIDEO
TECHNOLOGY CORPORATION'S ORIGINAL COMPLAINT**

On this date came on for consideration, Defendants, Cox Communications, Inc.,

Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast of

Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP Unopposed Motion to

Enlarge Time to Answer or Otherwise Respond to USA Video Technology Corporations

Original Complaint, and the Court being of the opinion that same should be GRANTED.

This extension of time shall not server as a basis for an extension of any other deadline.

It is therefore,

ORDERED that Defendants, Cox Communications, Inc., Charter

Communications, Inc., Comcast Cable Communications, LLC, Comcast of Richardson,

LP, Comcast of Plano, LP, and Comcast of Dallas, LP, be and hereby are, granted an

extension of time within which to respond to USA Video Technology Corporations

Original Complaint up to and including August 14, 2006.

So **ORDERED** and **SIGNED** this **19** day of **July, 2006.**

_____

Ron Clark, United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA Video Technology Corporation, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:06-cv-239(DF) |
| | § | |
| | § | JURY TRIAL DEMANDED |
| TIME WARNER INC; COX | § | |
| COMMUNICATIONS, INC.; CHARTER | § | |
| COMMUNICATIONS, INC.; COMCAST | § | |
| CABLE COMMUNICATIONS, LLC; | § | |
| COMCAST OF RICHARDSON, LP; | § | |
| COMCAST OF PLANO, LP; COMCAST | § | |
| OF DALLAS, LP | § | |

## NOTICE OF APPEARANCE OF COUNSEL FOR DEFENDANT
## COX COMMUNICATIONS, INC.

Defendant COX COMMUNICATIONS, INC., (hereinafter "Cox"), files this its Notice of

Appearance of Counsel, and hereby notifies the Court that Michael E. Jones of the law firm Potter

Minton, A Professional Corporation, 110 N. College, Suite 500, Tyler, Texas 75702, is appearing

as counsel for Cox in the above-referenced matter. All pleadings, discovery, correspondence and

other material should be served upon counsel at the address referenced above.

Respectfully submitted,

**POTTER MINTON**
A Professional Corporation
110 N. College, Suite 500 (75702)
P. O. Box 359
Tyler, Texas 75710
(903) 597 8311
(903) 593 0846 (Facsimile)

By: ___/s/ Michael E. Jones_____
MICHAEL E. JONES
State Bar No. 10929400
mikejones@potterminton.com

**ATTORNEYS FOR DEFENDANT
COX COMMUNICATIONS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service and are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 4, 2006. Any other counsel of record will be served by first class mail on this same date.

/s/ Michael E. Jones _____
Michael E. Jones

6-1-6092

**Appendix K**

**Revised: 12/3/03**

#1 2 4 2006

O. ... S. MALAND, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION
#### APPLICATION TO APPEAR PRO HAC VICE

1. This application is being made for the following: Case # __2-06CV-239 DF__

Style: ___USA Video Technology Corporation v. Time Warner Inc., et al___

2. Applicant is representing the following party/ies: Cox Communications, Inc.

3. Applicant was admitted to practice in Georgia on November 20, 2003.

4. Applicant is in good standing and is otherwise eligible to practice law before this court.

5. Applicant is not currently suspended or disbarred in any other court.

6. Applicant has/**has not** had an application for admission to practice before another court denied (please circle appropriate language). If so, give complete information on a separate page.

7. Applicant has/**has not** ever had the privilege to practice before another court suspended (please circle). If so, give complete information on a separate page.

8. Applicant has/**has not** been disciplined by a court or Bar Association or committee thereof that would reflect unfavorably upon applicant's conduct, competency or fitness as a member of the Bar (please circle). If so, give complete information on a separate page.

9. Describe in detail on a separate page any charges, arrests or convictions for criminal offense(s) filed against you. Omit minor traffic offenses.

10. There are no pending grievances or criminal matters pending against the applicant.

11. Applicant has been admitted to practice in the following courts:

Superior Court of Georgia; Georgia Court of Appeals; Georgia Supreme Court; U.S. District Court for the Northern District of Georgia; U.S. District Court for the Eastern District of Texas (pro hac vice); U.S. District Court for the Western District of North Carolina (pro hac vice).

12. Applicant has read and will comply with the Local Rules of the Eastern District of Texas, including Rule AT-3, the "Standards of Practice to be Observed by Attorneys."

13. Applicant has included the requisite $25 fee (see Local Rule AT-1(d)).

14. Applicant understands that he/she is being admitted for the limited purpose of appearing in the case specified above only.

**Application Oath:**

I, LEROY M. TOLIVER, do solemnly swear (or affirm) that the above information is true; that I will discharge the duties of attorney and counselor of this court faithfully; that I will demean myself uprightly under the law and the highest ethics of our profession; and that I will support and defend the Constitution of the United States.

Date:   July 24, 2006                          Signature _____

US2000 9414859.1

| | |
|---|---|
| Name (please print) | Leroy M. Toliver |
| State Bar Number | Georgia State Bar No. 714227 |
| Firm Name: | Kilpatrick Stockton LLP |
| Address/P.O. Box: | 1100 Peachtree Street, Suite 2800 |
| City/State/Zip: | Atlanta, GA 30309 |
| Telephone #: | (404) 815-6483 |
| Fax #: | (404) 541-3274 |
| E-mail Address: | BToliver@kilstock.com |

Applicant is authorized to enter an appearance as counsel for the party/parties listed above. This application has been approved for the court this 24 day of _____, 2006.

David J. Maland, Clerk

U.S. District Court, Eastern District of Texas

By  _____

Deputy Clerk

**Appendix K**

Revised: 12/3/03

FILED-CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION
## APPLICATION TO APPEAR PRO HAC VICE

06 JUL 26  PM 1: 02

TX EASTERN-MARSHALL

BY _____

1. This application is being made for the following: Case # ___2-06CV-239 DF_____

Style: ___USA Video Technology Corporation v. Time Warner Inc., et al._____

2. Applicant is representing the following party/ies: Cox Communications, Inc._____

3. Applicant was admitted to practice in Georgia on November 20, 2003

4. Applicant is in good standing and is otherwise eligible to practice law before this court.

5. Applicant is not currently suspended or disbarred in any other court

6. Applicant has/**has not** had an application for admission to practice before another court denied (please circle appropriate language) If so, give complete information on a separate page

7. Applicant has/**has not** ever had the privilege to practice before another court suspended (please circle). If so, give complete information on a separate page.

8. Applicant has/**has not** been disciplined by a court or Bar Association or committee thereof that would reflect unfavorably upon applicant's conduct, competency or fitness as a member of the Bar (please circle) If so, give complete information on a separate page.

9. Describe in detail on a separate page any charges, arrests or convictions for criminal offense(s) filed against you Omit minor traffic offenses.

10. There are no pending grievances or criminal matters pending against the applicant.

11. Applicant has been admitted to practice in the following courts:

> Supreme Court of Georgia;
> U.S. District Court, Northern District of Georgia – May 19, 1995
> U.S. District Court, Middle District of Georgia – April 18, 2003
> U.S. Court of Appeals for the Federal Circuit – January 19, 1999
> U.S. Court of Appeals for the Eleventh Circuit – September 12, 1995
> United States Patent and Trademark Office – May 8, 1995

12. Applicant has read and will comply with the Local Rules of the Eastern District of Texas, including Rule AT-3, the "Standards of Practice to be Observed by Attorneys."

13. Applicant has included the requisite $25 fee (see Local Rule AT-1(d)).

14. Applicant understands that he/she is being admitted for the limited purpose of appearing in the case specified above only.

**Application Oath:**

I, MITCHELL G. STOCKWELL, do solemnly swear (or affirm) that the above information is true; that I will discharge the duties of attorney and counselor of this court faithfully; that I will demean

US2000 9416974 1

myself uprightly under the law and the highest ethics of our profession; and that I will support and defend the Constitution of the United States

Date:   July **21**, 2006                    Signature _____

| | |
|---|---|
| Name (please print) | Mitchell G  Stockwell |
| State Bar Number | Georgia State Bar No  682912 |
| Firm Name: | Kilpatrick Stockton LLP |
| Address/P O  Box: | 1100 Peachtree Street, Suite 2800 |
| City/State/Zip: | Atlanta, GA 30309 |
| Telephone #: | (404) 815-6500 |
| Fax #: | (404) 815-6555 |
| E-mail Address: | MStockwell@kilpatrickstockton.com |

Applicant is authorized to enter an appearance as counsel for the party/parties listed above   This application has been approved for the court this 26 day of July, 2006.

David J. Maland, Clerk

U.S. District Court, Eastern District of Texas

By _____

Deputy Clerk

**Appendix K**                                                        Revised: 12/3/03

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
### Marshall DIVISION
### APPLICATION TO APPEAR PRO HAC VICE

FILED-CLERK
US DISTRICT COURT

06 AUG -7 PM 1: 24

TX EASTERN-MARSHALL

BY_____

1. This application is being made for the following: Case #_____2:06-CV-239-DF_____

Style:   USA Video Technology Corporation v. Time Warner Inc., et al.

2. Applicant is representing the following party/ies:

Cox Communications, Inc., Cox Com, Inc., Cox Enterprises, Inc.

3. Applicant was admitted to practice in Georgia (state) on 1/14/2000 (date)

4. Applicant is in good standing and is otherwise eligible to practice law before this court

5. Applicant is not currently suspended or disbarred in any other court

6. Applicant has/has not had an application for admission to practice before another court denied (please circle appropriate language). If so, give complete information on a separate page.

7. Applicant has/has not ever had the privilege to practice before another court suspended (please circle). If so, give complete information on a separate page

8. Applicant has/has not been disciplined by a court or Bar Association or committee thereof that would reflect unfavorably upon applicant's conduct, competency or fitness as a member of the Bar (please circle)    If so, give complete information on a separate page.

9. Describe in detail on a separate page any charges, arrests or convictions for criminal offense(s) filed against you  Omit minor traffic offenses.

10. There are no pending grievances or criminal matters pending against the applicant.

11. Applicant has been admitted to practice in the following courts:

Georgia (2000), Northern District of Georgia (2000); Middle District of Georgia (2003); District of Colorado (2003); U.S. Court of Appeals for the Eleventh Circuit (2003); and Federal Court of Appeals (2005).

12. Applicant has read and will comply with the Local Rules of the Eastern District of Texas, including Rule AT-3, the "Standards of Practice to be Observed by Attorneys."

13. Applicant has included the requisite $25 fee (see Local Rule AT-1(d))

14. Applicant understands that he/she is being admitted for the limited purpose of appearing in the case specified above only.

**Application Oath:**

I, Candice C. Decaire _____do solemnly swear (or affirm) that the above information is true; that I will discharge the duties of attorney and counselor of this court faithfully; that I will demean myself uprightly under the law and the highest ethics of our profession; and that I will support and defend the Constitution of the United States.

Date  8/7/06                    Signature  _Candice Decaire_

Name (please print) __Candice C. Decaire_____

State Bar Number __209815_____

Firm Name: __Kilpatrick Stockton LLP_____

Address/P.O. Box: __1100 Peachtree Street, Suite 2800__

City/State/Zip: __Atlanta, GA 30309-4530_____

Telephone #: __404-815-6033_____

Fax #: __404-541-3218_____

E-mail Address: __cdecaire@kilpatrickstockton.com__

Secondary E-Mail Address: __N/A_____

Applicant is authorized to enter an appearance as counsel for the party/parties listed above  This application has been approved for the court this ___/day of _____, 20_06_

David J. Maland, Clerk

U.S. District Court, Eastern District of Texas

By _____

Deputy Clerk

<div align="center">

**UNITED STATES DISTRICT COURT**
**FOR THE FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

</div>

| | |
|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | ) )<br>)<br>) |
|        Plaintiff(s), | )<br>) |
|   v. | )<br>) |
| TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | )   Case No.:  2-06CV-239(RHC)<br>)<br>)   JURY TRIAL DEMANDED<br>)<br>)<br>)<br>) |
|        Defendant(s). | )<br>)<br>)<br>) |

<div align="center">

**THE COMCAST DEFENDANTS' MOTION TO TRANSFER TO THE DISTRICT OF DELAWARE PURSUANT TO 28 U.S.C. 1404(a) OR, IN THE ALTERNATIVE, TO STAY THE ACTION, AND BRIEF IN SUPPORT THEREOF**

</div>

Defendants Comcast Cable Communications, LLC; Comcast of Richardson, LP; Comcast of Plano, LP; and Comcast of Dallas, LP (collectively, the "Comcast Defendants") hereby move the Court pursuant to 28 U.S.C. Section 1404(a) to transfer this action from the United States District Court for the Eastern District of Texas to the United States District Court of Delaware (the "Delaware District Court"), or, in the alternative, to stay this action pending resolution of related proceedings in Delaware.

<div align="center">

**SUMMARY OF THE CASE**

</div>

This is an action for alleged infringement of U.S. Patent No. 5,130,792 (the " '792 Patent"), owned by plaintiff USA Video Technologies, Inc. ("Plaintiff" or "USA Video").  The '792 Patent is allegedly "directed to systems that communicate video programs to subscribers upon request, commonly referred to as video-on-demand (VOD)."  Complaint ¶ 11.  Only five days before filing this lawsuit against the Comcast Defendants, USA Video lost its appeal of a Delaware District Court decision which construed the term "initiates" in Claim 1 of the '792 Patent and granted

<div align="center">

1

</div>

1   summary judgment on non-infringement in favor of Movielink, a provider of VOD services.  <u>See</u>

2   <u>USA Video Tech. Corp. v. Movielink LLC</u>, 354 F. Supp. 2d 507 (D. Del. 2005), <u>aff'd</u> 2006 U.S.

3   App. LEXIS 14699 (Fed. Cir. June 7, 2006).  Construction of Claim 1 of the '792 Patent, including

4   the same language already construed against USA Video by the Delaware District Court, will be a

5   central issue in this action.

6       Rather than commence this action before the same Delaware District Court already familiar

7   with the '792 Patent and the VOD technology at issue, USA Video instead chose a forum where

8   none of the parties reside.  None of the parties – not even USA Video – is organized under the laws

9   of the State of Texas, but rather, under the laws of Connecticut (USA Video) and Delaware (all

10  defendants).  Nor do any of the parties, including USA Video, have a principal place of business in

11  Texas.[1]  Indeed, USA Video has not operated in Texas since it shut down its Texas-based

12  subsidiary in 1995.  <u>See</u> Declaration of Suong Nguyen dated August 10, 2006 (the "Nguyen

13  Decl."), at ¶ 11 and Ex. F.

14      The only logical explanation for USA Video shunning the Delaware District court – the

15  forum where USA Video itself chose to bring the <u>Movielink</u> action – is a desire to escape the forum

16  where the '792 Patent has already been construed and held inapplicable to typical contemporary

17  VOD technology.  This Court should not countenance Plaintiff's blatant attempt to forum shop.

18  The Delaware District Court is already familiar with the '792 Patent, is proximate to where Plaintiff

19  and most defendants reside, and is convenient for the parties and witnesses in this case.  Plaintiff

20  surely cannot complain of inconvenience in its own previously chosen forum for the same patent.

21  Furthermore, the Delaware District Court currently has before it three separate actions filed by the

22  Comcast Defendants and other defendants in this case seeking a declaratory judgment that the '792

23  Patent is not infringed, invalid and/or unenforceable (the "Delaware Declaratory Judgment

24  Actions").  For these reasons, and those set forth below, the Comcast Defendants respectfully

25  request that this case be transferred to the Delaware District Court.

26  _____

27      [1] The Complaint alleges that USA Video is a Connecticut corporation, with its principal place of business
    ("ppb") in Connecticut.  The principal places of business of the defendants are alleged to be as follows:  TimeWarner
    (New York); Cox (Georgia); Charter (Missouri); the Comcast Defendants (Pennsylvania or Delaware).  <u>See</u> Complaint

28  ¶¶ 1-8.  As detailed here, all defendants are corporations organized under the laws of Delaware.

# UNDISPUTED MATERIAL FACTS

**A.     The Parties Involved**

1.     Plaintiff USA Video is a corporation organized under the laws of the State of Connecticut with its principal place of business in Connecticut.  <u>See</u> Complaint ¶ 1.

2.     USA Video has purposefully availed itself of the Delaware District Court in connection with the <u>Movielink</u> litigation involving the same patent at issue here.  <u>See</u> <u>USA Video Tech. Corp. v. Movielink LLC</u>, 354 F. Supp. 2d 507 (D. Del. 2005), <u>aff'd</u> 2006 U.S. App. LEXIS 14699 (Fed. Cir. June 7, 2006).

3.     The Comcast Defendants, Defendant Cox Communications, Inc. ("Cox"), and Defendant Charter Communications, Inc.("Charter") are corporations organized under the laws of Delaware.  <u>See</u> Complaint ¶¶ 3-8.

4.     Defendant Time Warner, Inc. ("TimeWarner") is also a corporation organized under the laws of Delaware, <u>see</u> Nguyen Decl. Ex. G, although USA Video have mistakenly alleged that TimeWarner was incorporated in the state of New York.  <u>See</u> Complaint ¶ 2.

5.     None of the parties in this case reside in Texas, but instead, have principal places of business in Connecticut (USA Video), New York (TimeWarner), Georgia (Cox), Missouri (Charter), Delaware or Philadelphia (the Comcast Defendants).  <u>See</u> Complaint ¶¶ 1-8.

**B.     Nature and Stage of Proceedings**

1.     USA Video filed this patent infringement action on June 13, 2006.  The Complaint alleges that Time Warner Inc. ("TimeWarner"),  Cox Communications ("CoxCom"), Charter Communications ("Charter") and the Comcast Defendants infringed Claim 1 of its '792 Patent by providing VOD services to their respective subscribers.  <u>See</u> Complaint ¶¶ 14-20.

2.     Cox, Charter and the Comcast Defendants are scheduled to respond to the complaint on August 14, 2006.  To date, TimeWarner has not been served with the complaint.  No proceedings with respect to the case have occurred to date.  <u>See</u> Nguyen Decl. at ¶ 2.

**C.     The '792 Patent Litigation in the Delaware District Court**

1.     The '792 Patent has also been and is currently the subject of litigation in the Delaware District Court before the Honorable Kent A. Jordan, the first of which was a patent

1    infringement action commenced by USA Video against Movielink on April 10, 2003.  See Nguyen

2    Decl. at ¶ 3.   After several years of discovery and a Markman hearing, Judge Jordan issued a

3    decision on January 28, 2005 construing the term "initiates" in Claim 1 of the '792 Patent and

4    granting summary judgment in favor of Movielink on non-infringement.  See Nguyen Decl. Ex. A

5    (attaching a copy of Judge Jordan's opinion in USA Video Tech. Corp. v. Movielink LLC, 354 F.

6    Supp. 2d 507 (D. Del. 2005)).  Specifically, Judge Jordan rejected USA Video's proposed

7    construction of the claim term, and interpreted "initiates" to mean "begins" in the phrase "wherein

8    said distribution interface *initiates* connections over the telephone network with remote locations in

9    response to requests received by said request interface" ('792 Patent, col. 7, ll. 52-56).  See

10   Movielink, 354 F. Supp. at 514.  On the basis of that construction, Judge Jordan determined that

11   Movielink did not infringe the '792 Patent because the user – rather than the distribution interface

12   as claimed – initiates the connection which results in the transmission of the requested video

13   program.  See id., at 515-516, 519-520, 523.  On June 7, 2006 – six days before USA Video

14   commenced the instant action against the Comcast Defendants – the Federal Circuit affirmed Judge

15   Jordan's decision.  See USA Video Tech. Corp. v. Movielink LLC, No. 05-1451, 2006 U.S. App.

16   LEXIS 14699 (Fed. Cir. June 7, 2006) (attached as Exhibit B to the Nguyen Declaration).

17          2.     Notably, in connection with the Movielink litigation, USA Video opposed

18   Movielink's motion to transfer the action to California, repeatedly stressing the convenience and

19   suitability of litigating the '792 Patent in the Delaware District Court:

20    • "USVO is litigating near its residence [of Connecticut]," and noting in particular USA
21      Video's limited resources in litigating outside of Delaware.  See Nguyen Decl. Ex. C
        (Plaintiff USA Video Technology Corporation's Answering Brief in Opposition to
22      Defendant Movielink's Motion to Transfer ("USA Video Delaware Brief"), at 10-11).

23    • "USVO's principal place of business is located in Connecticut.  We are a very small
24      operation: we have four full-time employees, including the two senior executive officers,
        one technology and one administrative employee.  Two of the employees reside in
25      Connecticut . . . and two reside in Vancouver, Canada."  See Nguyen Decl. Ex. D
        (Declaration of Edwin Molina in Support of Plaintiff USA Video Technology Corp.'s
26      Answering Brief in Opposition to Defendant Movielink, LLC's Motion to Transfer, at ¶ 3).\

27    • USA Video has also observed that the Delaware District Court "is particularly conversant
        with patent cases."  See Nguyen Decl. Ex. C (USA Video Delaware Brief at 7) (citing cases
28      that note that Delaware courts have substantial experience with patent infringement claims).

4

On January 9, 2004, Judge Jordan entered an Order denying Movielink's Motion to Transfer.

3.       Judge Jordan is also presiding over three separate actions seeking a declaratory judgment for non-infringement, invalidity and/or unenforceability of the '792 Patent. <u>See</u> <u>TimeWarner Cable, Inc. v. USA Video Tech. Corp.</u>, No. 1:06-cv-00387 KAJ (D. Del.) (declaratory judgment action filed on June 15, 2006); <u>CoxCom, Inc. v. USA Video Tech. Corp.</u>, No. 1:06-cv-00394 KAJ (D. Del.) (declaratory judgment action filed on June 19, 2006); <u>Comcast Cable</u> <u>Commc'ns, LLC et al. v. USA Video Tech. Corp.</u>, No. 1:06-cv-00407 KAJ (D. Del.) (declaratory judgment action filed on June 27, 2006).  USA Video answered and asserted counterclaims in each of the declaratory judgment actions on August 10, 2006.  <u>See</u> Nguyen Decl. ¶ 10.  On that same date, USA Video also filed motions to dismiss, stay or transfer in those actions.  <u>See</u> Nguyen Decl. ¶ 10.

<div align="center"><b><u>ISSUES PRESENTED</u></b></div>

This Court is presented with the issue of whether to transfer this action pursuant to 28 U.S.C. § 1404(a) from this forum, where none of the parties in this case reside or are incorporated, to the Delaware District Court, where all defendants are incorporated and where Judge Jordan has for several years presided over a patent infringement lawsuit brought by Plaintiff related to the same patent at issue and is currently presiding over several declaratory judgment suits also involving the same patent.  If this Court declines to transfer this case, this Court is presented with the issue of whether to stay this action pending the declaratory judgment suits in the Delaware District Court.

<div align="center"><b><u>ARGUMENT</u></b></div>

**I.      THIS ACTION SHOULD BE TRANSFERRED
TO THE DELAWARE DISTRICT COURT**

This Court has authority to transfer any civil action to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  The purpose of Section 1404(a) is to "prevent the waste of time, energy, and money and

<div align="center">5</div>

to protect litigants, witnesses and the public against unnecessary inconvenience and expense." <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 616 (1964) (citations omitted) (superceded by statute on other grounds). In determining whether transfer is appropriate, courts consider numerous private and public interest factors, none of which individually has dispositive weight. <u>See, e.g.</u>, <u>In re Volkswagen AG</u>, 371 F.3d 201, 203 (5th Cir. 2004); <u>Action Indus., Inc. v. United States Fid. & Guar</u>, 358 F.3d 337, 340 (5th Cir. 2004). The private interest factors include: (1) relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. The public factors include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law. <u>In re Volkswagen AG</u>, 371 F.3d at 203. A court also considers the plaintiff's choice of forum, but this factor by itself "is neither conclusive nor determinative." <u>In re Horseshoe Entm't</u>, 337 F.3d 429, 434 (5th Cir. 2003).

Transfer of this action to the Delaware District Court would serve the "interest of justice" and the "convenience of the witnesses and parties" for the following reasons:

1. As an initial matter, the Delaware District Court is one where this action "might have been brought" as required under Section 1404(a). Delaware is the state of incorporation of all of the Defendants, and USA Video transacts business within Delaware and has purposefully availed itself of the Delaware District Court in connection with its <u>Movielink</u> litigation on the same patent at issue here. Moreover, Delaware is where the Comcast Defendants, as well as Coxcom, Inc. and Time Warner Cable, Inc., have filed declaratory judgment actions related to the '792 Patent. All of those actions are before Judge Jordan.

2. However, in an apparent attempt to forum shop in view of Judge Jordan's adverse <u>Movielink</u> decision interpreting its '792 Patent, USA Video commenced this action in a forum having no direct relation to the operative, underlying facts of the case. None of the alleged infringers in this case have principal places of business in Texas – which is "often the critical and

1  controlling consideration in adjudicating transfer of venue motions" in intellectual property

2  infringement actions. <u>Spiegelberg v. The Collegiate Licensing Co.</u>, 402 F. Supp. 2d 786, 791-792

3  (S.D. Tex. 2005). Likewise, the Complaint is devoid of any allegation that USA Video (the owner

4  of the '792 Patent and headquartered in Connecticut) has any connection to Texas whatsoever. <u>See</u>

5  Complaint ¶¶ 1, 13.

6       3.    This Court should reject USA Video's transparent attempt to forum shop and

7  transfer this case to the Delaware District Court, which has already presided and is presiding over

8  litigation related to the '792 Patent. <u>See</u> <u>Regents of the Univ. of Cal. v. Eli Lilly & Co.</u>, 119 F.3d

9  1559, 1565 (Fed. Cir. 1997) ("Consideration of the interest of justice, which includes judicial

10  economy, 'may be determinative to a particular transfer motion, even if the convenience of the

11  parties and witnesses might call for a different result.'") (internal citations omitted). Having

12  overseen the <u>Movielink</u> litigation for several years, Judge Jordan in particular is already familiar

13  with USA Video, the technology at hand, and the '792 Patent. <u>See</u> <u>Zoltar Satellite Sys., Inc. v. LG</u>

14  <u>Elecs. Mobile Commc'ns Co.</u>, 402 F. Supp. 2d 731, 735 (E.D. Tex. 2005) (noting that "[i]n cases

15  that involve a highly technical subject matter, such as patent litigation, judicial economy may favor

16  transfer to a court that is already familiar with the issues involved in the case" and granting

17  defendants' motions to transfer case from the Eastern District of Texas to the Northern District of

18  California). Not only has Judge Jordan presided over claim construction arguments regarding

19  seventeen separate terms used in the '792 Patent claims, he has also construed the patent's language

20  in a decision affirmed by the Federal Circuit. <u>See</u> Nguyen Decl. Ex. B.

21       4.    In a recent case, the United States District Court for the Northern District of Texas

22  indicated a willingness to stay or transfer a patent case to another district court where the presiding

23  judge had interpreted the claims of the patent-in-suit in a <u>Markman</u> hearing, examined the patent-

24  in-suit's prosecution history, and studied relevant prior art references over several years if that

25  judge consents to preside over the transferred case. <u>See</u> <u>Taylor v. Ishida</u>, No. 3:02-CV-0402-D,

26  2002 WL 1268028, at *7 (N.D. Tex. May 31, 2002). Specifically, the Court observed that, "[a]

27  court can defer to a second-filed [declaratory judgment] action when, as here, the judge in the

28  subsequent case has extensive prior experience concerning the patent-in-suit. . . . The interests of

1 justice strongly favor such a course when the judge who will preside over the case presided over

2 another action that involves the same parties and the same patents and has developed a familiarity

3 with the relevant technology." See id. at *7. Similarly, this Court should transfer this case to Judge

4 Jordan in the District of Delaware because, as in Taylor, Judge Jordan's considerable familiarity

5 with the '792 patent presents "compelling reasons" for such a transfer. See id.; see also Ricoh Co.,

6 Ltd. v. Honeywell, Inc., 817 F. Supp. 473, 487 (D.N.J. 1993) (permitting the transfer of an action

7 for patent infringement to the venue of a subsequently filed action for declaratory judgment).

8     5. Furthermore, once transferred, this case can be consolidated with the other

9 declaratory judgment lawsuits already pending before Judge Jordan for purposes of discovery. No

10 delay or prejudice would result from a transfer of this case to the Delaware District Court, as no

11 proceedings have occurred in this case to date. See Ruth v. KLI, Inc., 143 F. Supp. 2d 696, 698

12 (E.D. Tex. 2001) ("because this case is in the early stages, there is little chance that a transfer of

13 venue will result in delay or prejudice to either side.").

14     6. While the Comcast Defendants recognize that Judge Jordan has recently been

15 nominated to the U.S. Court of Appeals for the Third Circuit, see Nguyen Decl. Ex. H, it is

16 Delaware that has a significant interest in presiding over an action presiding over an action

17 commenced against entities that are all incorporated there. See Ricoh Co., 817 F. Supp. at 486

18 (noting the state of defendant's principal place of business has a "compelling interest in regulating

19 the conduct of business in its state"); see also John Forcillo v. LeMond Fitness, Inc., 220 F.R.D.

20 550, 552 (S.D. Ill. 2004) ("where the plaintiff's choice is not its resident forum, the chosen forum is

21 entitled to less deference."); Rock Bit Int'l, Inc. v. Smith Int'l, Inc., 957 F. Supp. 843, 844 (E.D.

22 Tex. 1997) ("This court, and many others, have ruled previously in a number of other cases . . . that

23 the usual deference accorded the plaintiff's choice of forum is of minimal value when none of the

24 parties reside in this division of this District."). Indeed, the Delaware District Court has invested

25 much time and resources in presiding over the disputes arising out of the '792 Patent already. That

26 court should not be deprived of the ability to continue to oversee such litigation as a result of USA

27 Video's forum shopping.

28

7. Finally, it should be stressed that USA Video must previously have determined that the District of Delaware was a convenient and cost-effective forum when USA Video opted to file it infringement claims against Movielink in the Delaware court. This further undercuts the minimal deference due USA Video's present choice of forum. See ConnecTel v. Cisco Sys., Inc., 2005 WL 366966, *2 (E.D. Tex. 2005) (plaintiff is presumed to have considered convenience and cost when choosing a forum). To verify that the Delaware District Court is the proper venue for this action, the Court need look no farther than USA Video's own arguments resisting Movielink's motion to transfer USA Video's previous action out of the Delaware court. See USA Video Delaware Brief (arguing that public and private interest factors, including Delaware court's patent expertise and U.S. Video's convenience, warranted keeping the case in Delaware).

8. Indeed, the case for venue in Delaware is even stronger now, given that the Delaware court invested its time and resources to construe the claims of the patent at issue and apply those claims to the technology at issue. That USA Video wants a "second bite" at the claim construction and infringement arguments that Judge Jordan already has heard, evaluated, and rejected is insufficient reason for this Court to invest its time and resources to duplicate the Delaware court's efforts.

## II. IN THE ALTERNATIVE, ALL PROCEEDINGS IN THIS MATTER SHOULD BE STAYED PENDING THE RESOLUTION OF THE DELAWARE PROCEEDINGS

In the alternative, the Court should stay all proceedings in this action pending resolution of the Delaware Declaratory Judgment Actions. The court's power to stay proceedings is "incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." See Landis v. N. Am. Co., 299 U.S. 248, 254 (1936); see also Clinton v. Jones, 520 U.S. 681, 706 (1997) ("The District Court has broad discretion to stay proceedings as an incident to its power to control its own docket.")

Here, staying this action would avoid duplicative litigation in two jurisdictions related to the same '792 Patent, and hence, would avoid the risk of inconsistent rulings related to that patent. Given that Judge Jordan has already construed the '792 Patent in the prior Movielink litigation, and is presiding over several declaratory judgment actions related to that patent, this Court should stay

this action until resolution of the declaratory judgment actions.  See Taylor v. Ishida, 2002 WL 1268028, at *7 (noting that the Court can "defer to a second-filed [declaratory judgment] action when, as here, the judge in the subsequent case has extensive prior experience concerning the patent-in-suit" and indicating the Court's willingness to stay or transfer the action to the Northern District of California if that judge consents to preside over the transferred case).  To the extent the '792 Patent is determined to be not infringed, invalid and/or unenforceable, such a decision would moot this action by USA Video.  Therefore, to the extent the Court declines to transfer this case to the Delaware District Court, it should stay this action pending resolution of the Declaratory Judgment Actions.

### CONCLUSION

For all of the foregoing reasons, the Comcast Defendants respectfully request that this Court enter an Order to transfer this action to the Delaware District Court.  In the alternative, the Comcast Defendants request that the Court stay all proceedings until such time as the Delaware Declaration Judgment Actions are resolved.

Respectfully submitted,

GILLAM & SMITH, L.L.P.

OF COUNSEL:
Matthew B. Lehr
Suong T. Nguyen
Duane Nash
Yiping Liao
DAVIS POLK & WARDWELL
1600 El Camino Real
Menlo Park, CA  94025
Telephone:     (650) 752-2000
Facsimile:      (650) 752-2111

/S/
_____
Harry L. "Gil" Gillam, Jr.
Lead Attorney
Texas State Bar No. 07921800
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile:  (903) 934-9257

**Lead Attorney for Cox Communications, Inc., Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP**

**CERTIFICATE OF CONFERENCE**

This is to certify that Suong Nguyen of Davis Polk & Wardwell, counsel for Defendants Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP, has conferred with Alisa Lipski of Goldstein, Faucett & Prebeg, LLP, counsel for Plaintiff USA Video Technology Corporation, regarding the matters included in this motion.  USA Video Technology Corporation states that this motion is OPPOSED.


_____

/S/

Harry Gillam, Jr. (State Bar No. 07921800)


**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 10th day of August 2006.


_____

/S/

Harry Gillam, Jr. (State Bar No. 07921800)

**UNITED STATES DISTRICT COURT
FOR THE FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

USA VIDEO TECHNOLOGY
CORPORATION,

           Plaintiff(s),

      v.

TIME WARNER INC.; COX
COMMUNICATIONS, INC.; CHARTER
COMMUNICATIONS, INC.; COMCAST
CABLE COMMUNICATIONS, LLC;
COMCAST OF RICHARDSON, LP;
COMCAST OF PLANO, LP; COMCAST OF
DALLAS, LP,

           Defendant(s).

))))))))))))))))

Case No.: 2-06CV-239(RHC)

JURY TRIAL DEMANDED

**DECLARATION OF SUONG T. NGUYEN IN SUPPORT OF THE COMCAST
DEFENDANTS' MOTION TO TRANSFER TO THE DISTRICT OF DELAWARE
PURSUANT TO 28 U.S.C. 1404(a) OR, IN THE ALTERNATIVE, TO STAY THE ACTION**

I, Suong T. Nguyen, declare:

      1.      I am a member of the bar of the State of California and I am counsel at the law firm

of Davis Polk & Wardwell, which represents Defendants Comcast Cable Communications, LLC,

Comcast of Richardson, LP, Comcast of Plano, LP and Comcast of Dallas, LP (collectively, the

"Comcast Defendants") in this action.  I make this declaration in support of The Comcast

Defendants' Motion to Transfer to the District of Delaware Pursuant to 28 U.S.C. 1404(a) Or, In

the Alternative, to Stay the Action.  Unless otherwise noted, the statements made herein are of my

own first-hand knowledge, and if called upon to testify thereto I could and would do so

competently.

      2.      Cox Communications, Charter Communications and Comcast are scheduled to

respond to the complaint in this action on August 14, 2006.  I have been informed by counsel for

TimeWarner that to date, TimeWarner has not been served with the complaint.  No proceedings

with respect to the case have occurred to date.

3.    On April 10, 2003,  USA Video Technology Corporation ("USVO") brought suit in the District of Delaware against Movielink LLC ("Movielink")  for alleged infringement of United States Patent No. 5,130,792 ("the '792 patent").  That case was assigned to the Honorable Kent A. Jordan, and the court held a Markman hearing on November 30, 2004, relating to the construction of seventeen separate claim terms.  On January 28, 2005, Judge Jordan issued a decision construing the term "initiates" in Claim 1 of the '792 Patent and granting summary judgment in favor of Movielink on non-infringement.

4.    Attached as Exhibit A is a true and correct copy of the District of Delaware decision in Movielink, captioned: USA Video Technology Corp. v. Movielink LLC, 354 F. Supp. 2d 507 (D. Del. 2005) (*affirmed* 2006 LEXIS 14699).

5.    Attached as Exhibit B is a true and correct copy of the Federal Circuit's affirmation of the Judge Jordan's opinion in Movielink, captioned: USA Video Technology Corp. v. Movielink LLC, 2006 U.S. App. LEXIS 14699 (Fed. Cir. June 7, 2006).

6.    Attached as Exhibit C is a true and correct copy of the Plaintiff USA Video Technology Corporation's Answering Brief in Opposition to Defendant Movielink's Motion to Transfer, filed by USA Video Technology in the Movielink litigation.

7.    Attached as Exhibit D is a true and correct copy of the Declaration of Edwin Molina filed in Support of Plaintiff USA Video Technology Corporation's Answering Brief in Opposition to Defendant Movielink's Motion to Transfer, filed by USA Video Technology in the Movielink litigation.

8.    Attached as Exhibit E is a true and correct copy of the Joint Claim Construction Chart filed by USVO and Movielink, LLC in the Movielink litigation.

9.    On June 15, 2006, Time Warner Cable, Inc. sought declaratory judgment in the District of Delaware of  the invalidity, unenforceability and non-infringement of the '792 patent. See TimeWarner Cable, Inc. v. USA Video Technology Corp., Case No. 1:06-cv-00387 KAJ (D. Del.)  On June 19, 2006, Coxcom, Inc. filed a complaint seeking analogous declaratory relief.  See CoxCom, Inc. v. USA Video Technology Corp., Case No. 1:06-cv-00394 KAJ (D. Del.)  On June 27, 2006, Comcast brought suit in the District of Delaware for declaratory judgment of the '792

2

1   patent's invalidity and non-infringement.  See Comcast Cable Communications, LLC et al. v. USA

2   Video Technology Corp., Case No. 1:06-cv-00407 KAJ (D. Del.)  All three declaratory judgment

3   actions are assigned to the Honorable Kent A. Jordan.

4          10.      USA Video answered each of the declaratory judgment actions on August 10, 2006.

5   USA Video also filed motions to dismiss, stay or transfer in those actions on August 10, 2006.

6          11.      Attached as Exhibit F is a true and correct copy of relevant excerpts of the File

7   History of the '792 patent, which states on page 394, in the Declaration of Anton J. Drescher, that

8   USVO's Texas subsidiary "ceased active operations in 1995."

9          12.      Attached as Exhibit G is a true and correct copy of the web page from the official

10  website of the State of Delaware stating that Time Warner Inc. is incorporated in Delaware.

11         13.      Attached as Exhibit H is a true and correct copy of a web page from the official

12  website of The White House describing Judge Kent A. Jordan's nomination to the United States

13  Court of Appeals for the Third Circuit.

14

15  Dated: Menlo Park, California
          August 10, 2006
16

17                                              By: _____
18                                                  Suong T. Nguyen

19                                                  DAVIS POLK & WARDWELL
                                                    1600 El Camino Real
20                                                  Menlo Park, CA 94025
                                                    Phone:  (650) 752-2000
21                                                  Fax:  (650) 752-2111
                                                    Email:  nguyen@dpw.com
22
                                                    Harry Gillam, Jr.
23                                                  GILLAM & SMITH LLP
                                                    303 S. Washington Avenue
24                                                  Marshall, TX  75670

25                                                  ATTORNEYS FOR DEFENDANTS
                                                    COMCAST CABLE COMMUNICATIONS,
26                                                  LLC, COMCAST OF RICHARDSON, LP,
                                                    COMCAST OF PLANO, LP AND
27                                                  COMCAST OF DALLAS, LP

28

                                                    3

equally frequent refusals to overrule the case leave this Court no discretion in the matter. If this Court cannot legitimately distinguish the case, it is obliged to apply it, regardless of the view it might take if the matter were presented afresh. For the reasons previously expressed, this Court cannot honestly distinguish *Kinoshita*.

Accordingly, the defendant's motion to dismiss and to compel arbitration [docket item 7] is denied. The plaintiff's claim for a declaration that SRI's claim for rescission or avoidance is not subject to arbitration and for a stay of arbitration is dismissed in the exercise of discretion, as there is no need for such relief in view of the denial of SRI's motion to compel arbitration. The plaintiff's motion for partial summary judgment [docket item 13] is denied as moot.

SO ORDERED.



## USA VIDEO TECHNOLOGY CORPORATION, Plaintiff,

### v.

## MOVIELINK LLC, Defendant.

### No. CIV.A.03–368–KAJ.

United States District Court,
D. Delaware.

Jan. 28, 2005.

**Background:** Owner of patent for video-on-demand technology sued competitor for infringement. Competitor moved for summary judgment.

**Holdings:** The District Court, Jordan, J., held that:

(1) patent was not infringed, and

(2) owner was estopped from asserting equivalent infringement.

Motion granted.

**1. Patents ⚷314(5)**

Patent claims are construed as matter of law.

**2. Patents ⚷161**

Court's objective, when construing patent claim, is to determine plain meaning, if any, that those of ordinary skill in the art would apply to language used in patent claims.

**3. Patents ⚷165(3)**

Intrinsic record is best source of meaning of patent claim language.

**4. Patents ⚷165(1), 167(1), 168(2.1)**

Patent claims are properly construed only after examination of claims, specification, and, if in evidence, prosecution history of patent.

**5. Patents ⚷157(1)**

If patent claim language has ordinary and accustomed meaning in the art, there is heavy presumption that inventor intended that meaning to apply; such presumption may be overcome, however, where inventor has manifested express intent to depart from that meaning.

**6. Patents ⚷162**

Although presumption that patent claim term carries its ordinary meaning may not be rebutted simply by pointing to preferred embodiment, it may be rebutted where patentee has redefined term or characterized invention in intrinsic record using words or expressions of manifest exclusion or restriction, representing clear disavowal of claim scope.

**7. Patents ⚷159**

If patent claim language remains unclear after review of intrinsic record, con-

**354 FEDERAL SUPPLEMENT, 2d SERIES**

struing court may look to extrinsic evidence to help resolve lack of clarity.

**8. Patents ⟳159**

Patent-construing court may not use extrinsic evidence to contradict import of intrinsic record, and if intrinsic record is unambiguous, extrinsic evidence is entitled to no weight.

**9. Patents ⟳101(2)**

Requirement in patent for video-on-demand system, that central data facility's distribution interface "initiate" call to remote unit before transmitting data, meant that interface had to begin such contact.

**10. Patents ⟳226.6**

Patent infringement analysis involves two steps: claim construction as matter of law, and then factfinder's application of construed claim to accused process or product.

**11. Patents ⟳323.2(2)**

Summary judgment is appropriate in patent infringement suit when it is apparent that only one conclusion regarding infringement could be reached by reasonable jury.

**12. Patents ⟳235(2)**

Patent for video-on-demand system, calling for central data facility's distribution interface to initiate call to remote unit before transmitting data, was not literally infringed by accused system whose users initiated connections that allowed data transmissions from central system.

**13. Patents ⟳168(3)**

Inventors of video-on-demand system, who added claim language requiring central system to initiate connection with remote users in order to overcome prior art which had called for remote users to initiate connection, were estopped from asserting equivalent infringement by accused system in which it was users who initiated connection to central system.

**14. Patents ⟳259(1)**

Absent direct infringement, there can be no inducing or contributory infringement. 35 U.S.C.A. § 271(a–c).

**Patents ⟳328(2)**

4,949,187. Cited as Prior Art.

**Patents ⟳328(2)**

5,130,792. Not Infringed.

———

Richard D. Kirk, Esq., The Bayard Firm, Wilmington, DE, for plaintiff, Of Counsel: J. William Koegel, Jr., Esq., Stuart Huang, Esq., Scott D. Watkins, Esq., David A. Clark, Esq., and Anthony A. Onorato, Esq., Steptoe & Johnson LLP, Washington, DC.

Steven J. Balick, Esq. and John G. Day, Esq., Ashby & Geddes, Wilmington, DE, for defendant, Of Counsel: Jeffrey M. Olson, Esq. and Samuel N. Tiu, Esq., Sidley Austin Brown & Wood, LLP, Los Angeles, CA.

MEMORANDUM OPINION

JORDAN, District Judge.

**I. INTRODUCTION**

This is a patent infringement case. Presently before me are the parties' requests for construction of the disputed claim language of U.S. Patent No. 5,130,-792 (issued July 14, 1992) (the "'792 patent"), pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir. 1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), and several motions filed by plaintiff, USA Video Technology Corporation ("USVO"), and defendant, Movielink LLC ("Movielink"). The motions filed by USVO include a Motion for Summary Judgment as to the Gunter Article and the '792 Patent's Enablement of the Internet (Docket Item ["D.I."] 127) and a Motion to Exclude or

Limit Admissibility of the Expert Reports and Testimony of Richard T. Mihran and Joseph A. Konstan (D.I.129). The motions filed by Movielink include a Motion for Summary Judgment of Non–Infringement Relating to USVO's Infringement Allegations for Which No Support in the Record Exists (D.I.132), a Motion for Summary Judgment of Non–Infringement, and its Alterative Motion for Summary Judgment of Invalidity (D.I.134), and a Motion for Summary Judgment of Invalidity under 25 U.S.C. § 112 and to Strike Portions of Expert Report (D.I.136). Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338.

For the reasons that follow, including my decision on claim construction, USVO's Motion for Summary Judgment as to the Gunter Article and the '792 Patent's Enablement of the Internet (D.I.127) will be denied as moot,[1] and USVO's Motion to Exclude or Limit Admissibility of the Expert Reports and Testimony of Richard T. Mihran and Joseph A. Konstan (D.I.129) will be denied as moot.[2] Movielink's Motion for Summary Judgment of Non–Infringement Relating to USVO's Infringement Allegations for Which No Support in the Record Exists (D.I.132) will be granted in so far as it pertains to indirect infringement. Movielink's Motion for Summary Judgment of Non–Infringement, and its

Alterative Motion for Summary Judgment of Invalidity (D.I.134) will be granted as to non-infringement, and Movielink's Motion for Summary Judgment of Invalidity under 25 U.S.C. § 112 and to Strike Portions of Expert Report (D.I.136) will be denied as moot.[3]

## II.   BACKGROUND [4]

### A.   Procedural Background

USVO filed a complaint for patent infringement against Movielink on April 10, 2003. (D.I.1.) Movielink filed a counter-claim against USVO on May 30, 2003 (D.I.6), which it later withdrew (D.I.15). USVO and Movielink are scheduled to try this case to a jury beginning on April 4, 2005. (D.I.20.)

### B.   The Disclosed Technology

The '792 patent discloses a variant of what is commonly known as "video-on-demand" technology. More specifically, it discloses a system and method for transferring a video program for display at a remote location. (*See* '792 patent, col. 1, II. 7–9; D.I. 126 at 9.)

### 1.   The State of the Art [5]

In the United States during the 1980s, the majority of telecommunications were

---

**1.** This motion will be denied as moot because it pertains to the validity of the '792 patent. Because I find that Movielink's Multi-CDN system does not infringe claim 1 of the '792 patent, I need not, and do not, reach the issue of patent validity.

**2.** This motion will be denied as moot because it pertains to expert opinions on the issue of the validity of the '792 patent. As noted (*supra* n. 1), I need not, and do not, reach the issue of patent validity.

**3.** This motion will be denied as moot because it pertains to the validity of the '792 patent and an expert opinion that was not relied upon to reach my decision. Again, as noted (*supra*, n. 1), I need not reach the issue of

patent validity, nor do I need to determine whether the internet is a "switched telephone network" as opined by the portion of the expert opinion referred to in this motion.

**4.** The following rendition of background information does not constitute findings of fact and is cast in the light most favorable to the non-moving party, the plaintiff.

**5.** The uncontested state of the art, as described by plaintiff USVO, and reiterated herein, is taken from the reports of USVO's expert, Dr. William H. Beckman. (*See* D.I. 126 at 6–9 (citing the Opening Expert Report of Dr. Beckman and the Rebuttal Expert Report of Dr. Beckman)).

voice communications carried over the Public Switched Telephone Network (the "PSTN"). (D.I. 126 at 6.) The PSTN of that time consisted of "the network, business, and operations systems that were operated and maintained by AT & T for voice and data communications." (*Id.* at 6–7.) It could be accessed by consumers from their residences via copper wires that were capable of carrying voice and data calls in analog form. (*Id.*) All calls originating from consumer residences were directed to a telephone office, known as a "Central Office," that served a large number of customers. (*Id.*) There were two types of calls, "local" or "long distance." (*Id.*) A local call would remain in analog form and be switched in the Central Office to its intended destination. (*Id.*) A long distance call would be converted from its analog form into digital form, interleaved (or "multiplexed") with other "digitally converted calls," and sent via cable from one telephone switching office to another. (*Id.*)

The PSTN, as described above, was designed and used to transport calls "whose total transmission rate did not exceed 64 kb/s" (kilobits per second). (*Id.*) While optimal for voice calls, this transmission rate was too slow for certain data transmissions. (*Id.*) The typical movie in digital format is a large file which would take days to download at 64 kilobits per second. (*Id.*)

In the 1980s, telephone companies became interested "in enhancing their networks to be able to support telephone communications and very high speed . . . video applications. . . ." (*Id.* at 7–8.) One technology that offered such enhancing ability was called Asynchronous Transfer Mode ("ATM"), "a type of packet-switched network" that operated at very high speeds by utilizing so-called "packets" of data that were small and of fixed size. (*Id.* at 8.) In 1990–1992, the planned ATM network was

designed "to be accessed from consumer residences via fiber optic cable that carried voice, data, and video communications in digital form as ATM packets." (*Id.*) In the planned ATM network, the typical movie would be downloadable in minutes rather than days. (*Id.* at 9.)

## 2. The '792 Patent

The '792 patent is directed to a system and method for transmitting video programs to remote locations over "selected commercial telephone networks." ('792 patent, col. 2, II. 3–7.) This "video-on-demand" process allows a customer to obtain a video program whenever a customer requests it. (D.I. 126 at 9.) The preferred embodiment includes the following components. A central data facility is "connected to a commercial telephone network." ('792 patent, col. 2, II. 44–47.) A telephone and receiving unit are also connected to the telephone network, at a "remote location." (*Id.* at II. 54–55.) The receiving unit is connected to a video display device, such as a television, for "displaying video programs which have been transferred from the central data facility to the receiving unit." (*Id.* at II. 55–60.)

The preferred embodiment describes two different ways of ordering movies. ('792 patent, col. 2, I. 60–col. 3, I. 5.) The first is to use "the normal telephone" to call the central data facility and order a movie by entering "a proper set of codes" using the buttons on a push-button phone. ('792 patent, col. 2, II. 60–6, col. 3, II. 25–27.) The user then ends the phone call and switches the receiving unit to standby. (*Id.*, col. 2, II. 63–65.) The central data facility then calls the receiving unit and sends (or downloads) the requested program to the receiving unit. (*Id.* at II. 65–68.) The user may then view the program at any time thereafter. (*Id.* at II. 65–68.) The second way to order movies is have a

keyboard or input device attached to the receiver with which the user can identify the program and send the request to the central data facility. ('792 patent, col. 3, II. 1–3.) In this second embodiment, the patent "does not specify . . . how the connection is made from the receiver . . . to the central data facility." (D.I. 126 at 10.)

Figure 2 of the patent shows a "block diagram of a central data facility," in which "a central processor . . . is connected to one or more mass storage devices," which "are preferably high density devices such as optical disks." ('792 patent, col. 3, II. 6–10.) The video programs handled by the central data facility are digitized and compressed for retention in the mass storage devices. (*Id.* at II. 13–16.)

In the preferred embodiment where the user places a request by telephone, the tones generated by pushing the buttons on the phone are transferred to the request interface and are then converted to characters and transmitted to the central processor, which "identifies the caller and determines whether the requested selection is available." (*Id.* at II. 22–31.) In this situation, "[d]esired information, such as the availability of a selection, any delay which may be incurred prior to down loading [sic] the selected program, or an indication of the charges incurred in the transaction, can be returned to the viewer through a request interface by means of . . . tones or recorded or synthesized spoken messages." (*Id.* at II. 31–37.)

To respond to the request, the "central processor . . . selects an available output channel to [the] distribution interface . . . and requests a telephone switching network connection." (*Id.* at II. 38–41.) Based on the information contained in the user-entered codes, "the central processor . . . is able to call an authorized number at a known location corresponding to such user." (*Id.* at II. 41–44.) Once a connection is established between the central pro-

cessor and the user's receiver, "the requested program . . . [is] transferred from [the] mass storage . . . [devices] through the distribution interface to the remote location." (*Id.* at II. 44–47.)

Figure 5 of the patent "shows a preferred embodiment of the receiving unit." ('792 patent, col. 4, II. 64–65.) The incoming data is stored on a mass storage device in the receiver "until the entire requested program has been down loaded [sic] from the central data facility." (*Id.*, col. 5, II. 29–31.) Once play is selected, the stored data is decompressed and converted into a viewable image. (*See id.* at II. 44–61.)

## III. APPLICABLE LAW / STANDARD OF REVIEW

### A. Claim Construction

[1–4] Patent claims are construed as a matter of law. *Markman*, 52 F.3d at 979. A court's objective is to determine the plain meaning, if any, that those of ordinary skill in the art would apply to the language used in the patent claims. *Waner v. Ford Motor Co.*, 331 F.3d 851, 854 (Fed.Cir.2003) (citing *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir.2001)). In this regard, pertinent art dictionaries, treatises, and encyclopedias may assist a court. *Texas Digital Sys., Inc. v. Telegenix, Inc.*, 308 F.3d 1193, 1202–03 (Fed.Cir.2002). The intrinsic record, however, is the best source of the meaning of claim language. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed.Cir.1996). Therefore, patent claims are properly construed only after an examination of the claims, the specification, and, if in evidence, the prosecution history of the patent. *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1324 (Fed.Cir.2003) (citing *Vitronics*, 90 F.3d at 1582).

The intrinsic record is also of prime importance when claim language has no

ordinary meaning in the pertinent art, *see Bell Atl. Network Servs., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1269–70 (2001) (determining that claim language could only be construed with reference to the written description) (citation omitted), and where claim language has multiple potentially applicable meanings, *Texas Digital, Inc.*, 308 F.3d at 1203.

**[5]** If patent claim language has an ordinary and accustomed meaning in the art, there is a heavy presumption that the inventor intended that meaning to apply. *Bell Atl. Network Servs., Inc.*, 262 F.3d at 1268 (citing *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed.Cir.1999)). Thus, unless the inventor has manifested an express intent to depart from that meaning, the ordinary meaning applies. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed.Cir.2002) (internal citation omitted).

**[6]** To overcome that presumption, an accused infringer may demonstrate that "a different meaning is clearly set forth in the specification or . . . the accustomed meaning would deprive the claim of clarity." *N. Telecom Ltd. v. Samsung Elecs. Co., Ltd.*, 215 F.3d 1281, 1287 (Fed.Cir.2000). However, the presumption may not be rebutted "simply by pointing to the preferred embodiment . . . ." *Teleflex, Inc.*, 299 F.3d at 1327. It may be rebutted, though, where "the patentee . . . deviate[d] from the ordinary and accustomed meaning . . . by redefining the term or by characterizing the invention in the intrinsic record using words or expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope." *Id.*

**[7,8]** If claim language remains unclear after review of the intrinsic record, a court "may look to extrinsic evidence to help resolve the lack of clarity." *Interactive Gift Express, Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1332 (Fed.Cir.2001). The use of extrinsic evidence in the claim construction process, however, is "proper only when the claim language remains genuinely ambiguous after consideration of the intrinsic evidence." *Id.* (internal citation omitted). A court may not use extrinsic evidence to contradict the import of the intrinsic record, and if the intrinsic record is unambiguous, extrinsic evidence is entitled to no weight. *Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 706 (Fed.Cir.1997).

**B.   Summary Judgment**

Pursuant to Federal Rule of Civil Procedure 56(c), a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). In determining whether there is a triable issue of material fact, a court must review the evidence and construe all inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal citation omitted). The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there

is no genuine issue for trial." *Matsushita Elec. Inds. Co., Ltd.,* 475 U.S. at 587, 106 S.Ct. 1348 (internal citation omitted). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## IV.  CLAIM CONSTRUCTION / DISCUSSION

### A.  Claim Construction

USVO alleges that Movielink infringes the '792 patent by direct literal infringement, by inducing infringement, by contributing to infringement, and by infringement under the doctrine of equivalents. (D.I. 1 at ¶ 20.)  Specifically, USVO alleges that Movielink's Multi–CDN system infringes claim 1 of the '792 patent, and the parties' claim construction briefs and arguments regarding infringement are directed solely to interpreting claim 1. (D.I. 126 at 12;  D.I. 131 at 1.)

Claim 1 of the '792 patent is as follows:
1.  A system for transmitting video programs to remote locations over a switched telephone network, comprising:

   a central data facility having means for storing digital compressed versions of video programs;

   a request interface connected to said central data facility and to the telephone network, wherein said request interface receives requests for video programs made over the telephone network and communicates them to said central data facility;

   a distribution interface connected to said central data facility and to the telephone network, wherein said distribution interface initiates connections over the telephone network with remote locations in response to requests received by said request interface, and transmits thereto compressed versions of video programs

previously requested through said request interface, such compressed versions being transmitted in less time than is required to view the programs in real time;

   a receiver at each remote location for connecting to the telephone network and receiving compressed video programs transmitted from said distribution interface, for storing the received programs, and for subsequently playing the video programs at a real time rate on a video display.

('792 patent, col. 7, ll. 41–66 (emphasis added).)

While the parties have identified several terms in claim 1 as requiring construction, I have limited my discussion to interpreting one claim term which, as discussed in detail below, *see infra* Part IV.B.1–3, is dispositive of the outcome of this case. That term is "initiates," as noted in emphasis in the above quotation.

### 1.  The Parties' Proposed Constructions

The parties have identified this claim term as "initiates connections" and therefore their proposed constructions encompass not only the term "initiates," but also the term "connections."  (D.I. 148 at 12.) USVO proposes that I construe "initiates connections" to mean "creates an association between two or more endpoints (a distribution interface and the remote locations) for the transfer of data."  (D.I. 126 at 32;  D.I. 148 at 12.)  Movielink proposes that I construe "initiates connections" to mean "places calls over a switched telephone network by dialing preauthorized numbers."  (D.I. 131 at 22;  D.I. 148 at 12.) The arguments made by both parties in the claim construction briefing are focused on the term "connections," and not on the term "initiates."  USVO, however, recognizes that the term "initiates" is synony-

mous with "starts," when it states: "Even though both parties to the connection participate in forming the connection, one party *starts* or *initiates* the process." (D.I. 126 at 34 (emphasis added).)

**2.  The Court's Construction**

**[9]**  The claim term "initiates" in the phrase "<u>wherein said distribution interface *initiates* connections over the telephone network with remote locations in response to requests received by said request interface</u>" ('792 patent, col. 7, II. 52–56 (emphasis added)), has a plain and ordinary meaning.  I will not read limitations into the claim from the specification when the term is easily construed according to its ordinary meaning as understood by a person of ordinary skill in the art.  *See Texas Digital Sys., Inc.,* 308 F.3d at 1205.  According to Webster's Third New International Dictionary, "initiate" means "to begin or set going."  Webster's Third New International Dictionary 1164 (3d ed.1986).  The disclosures in the patent specification and prosecution history do not suggest that any other meaning of "initiates" was intended by inventors Tindell and Crawford.  *See Teleflex, Inc.,* 299 F.3d at 1325 (internal citation omitted).

Claim 1, as represented above, was not originally included in the patent application.  (D.I. 139, Tiu Dec., Ex. F at 18, Tiu Dec., '792 patent application.)  It was added by amendment (*id.,* Ex. H at 2, Amendment) after original claim 1 was withdrawn following its rejection for, among other things, being anticipated by Cohen, a prior art patent.  (*Id.,* Ex. G at 1–6, Office Action mailed Dec. 17, 1990.)  In arguments made to the Patent and Trademark Office distinguishing Cohen, the applicants stated:  "The Cohen reference describes a system in which *a local unit ... initiates* a download of a video program such as a movie....  The telephonic connection and request is made by the local unit itself...." (*Id.,* Ex. H at 7, Amendment

(emphasis added).)  The applicants argued that the invention claimed in the '792 patent, however, was distinguishable because of the function of the distribution interface:  "A *distribution interface ... initiates* a call to a remote unit, and transmits a compressed video program to it....  The *distribution interface initiates* all calls to remote units before transmitting the video programs to them." (*Id.,* Ex. H at 8, Amendment (emphasis added).)

In addition, the applicants argued that their claimed system was different than the prior art because in their system, the central unit is "in control," rather than the local unit.  The "control" aspect of the claimed system is directly related to the claim term "initiates" as seen in the following argument:

> The difference in the claimed system as described above and the references leads to a system which is construed on entirely different philosophical lines than in the prior art.  In the prior art, *the local unit is in charge of the transaction,* ordering and receiving a program at its convenience.  In the claimed system, the user merely requests a program; *the central facility ten* [sic] *initiates a new connection* at its convenience and sends a program to the remote unit identified in the request.  Since *the central unit is in control rather than the remote unit,* it is easier to design the central unit to make it run very efficiently.

(*Id.,* Ex. H at 9, Amendment (emphasis added).)

Based on the applicants' arguments, it is clear that the inventors did not manifest "an express intent to depart from [the plain and ordinary] meaning." *Teleflex, Inc.,* 299 F.3d at 1325 (internal citation omitted).  Therefore, consistent with its plain and ordinary meaning, I construe "initiates" to mean "begins."

**B. Summary Judgment on the Issue of Infringement**

[10, 11]   A patent infringement analysis involves two steps: claim construction and then the application of the construed claim to the accused process or product. *Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed.Cir.1995) (en banc), *aff'd,* 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996). The first step, claim construction, has been held to be purely a matter of law. *See Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1454 (Fed.Cir. 1998) (en banc). The second step, application of the claim to the accused product, is a fact-specific inquiry. *See Kustom Signals, Inc. v. Applied Concepts, Inc.,* 264 F.3d 1326, 1332 (Fed.Cir.2001) (Patent infringement, "whether literal or under the doctrine of equivalents, is a question of fact."). Summary judgment is appropriate in patent infringement suits when it is apparent that only one conclusion regarding infringement could be reached by a reasonable jury. *See Telemac Cellular Corp. v. Topp Telecom, Inc.,* 247 F.3d 1316, 1323 (Fed.Cir.2001).

**1.  Direct Literal Infringement**

Movielink has moved for summary judgment that it's Multi–CDN system does not literally infringe claim 1 of the '792 patent.[6] (D.I. 135 at 1.) Determining whether an accused product infringes is a two-step process. *Markman,* 52 F.3d at 976. I have just completed the first step, construing a disputed claim term, and now proceed to step two, a "comparison of the claim to the accused device, [which] requires a determination that every claim limitation or its equivalent be found in the accused device [or process in order to prove infringement]." *Transclean Corp. v. Bridgewood Servs., Inc.,* 290 F.3d 1364, 1370 (Fed.Cir.2002) (citing *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 29, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997)).

[12]   In order for Movielink to succeed on summary judgment of non-infringement based on allegations of direct literal infringement, it must prove that it does not practice at least one of the claim limitations of the asserted claim. Movielink argues that its Multi–CDN system does not infringe claim 1 of the '792 patent for three reasons:

> First, the Movielink system does not operate over any 'telephone network,' but rather can only operate using the Internet. Second, in the Movielink system it is the 'download' button on the consumer's home computer that 'initiates' the download of the requested movie—not any 'distribution interface' residing in Movielink's facilities. Third, it is not possible in Movielink's system to 'request' a movie telephonically from one location and then have Movielink transmit the movie to some 'remote location;' the movie is always transmitted to the very same local computer that generated the 'download' request, as part of a single request-and-receive transaction.

(D.I. 135 at 3–4.) Movielink's second argument is dispositive, namely that "it is the *user* in the Movielink system who 'initiates' . . . the connection between the user and the central system and the associated

---

6. Although Movielink has also moved for summary judgment that its Big–Foot network, a now-retired system replaced by the Multi–CDN system, does not infringe any of the claims of the '792 patent, I do not reach that issue because USVO has stated that it "will not pursue injunctive relief against a retired network that has no prospects for revival, and

[that it] has determined not to pursue damages against a network that generated little revenue." (D.I. 142 at 8.) Furthermore, Movielink has not asserted a counterclaim seeking a declaratory judgment of non-infringement. Therefore, the issue of whether Movielink's Big–Foot network infringes the '792 patent is not properly before me.

transmission of video data." (D.I. 158 at 7 (emphasis in original).) Accordingly, I need not determine whether the Movielink Multi–CDN system reads on any of the other limitations of claim 1.

Because the Movielink Multi–CDN system operates over the internet, a brief discussion of the technology at issue is appropriate.[7] Movielink operates using Hypertext Transfer Protocol ("HTTP"), a protocol for communication over the World Wide Web. (D.I. 139, Ex. P at 4, Dr. Joseph Konstan's Rebuttal Expert Report, dated Oct. 6, 2004.) An HTTP connection involves only two HTTP messages: a request and a reply. (*Id.*) More specifically, "HTTP defines a set of requests (also known as HTTP methods) that are used by a client to communicate with a server. It also defines a set of replies for those messages.... Defined responses include the successful response, which returns a document such as a file or web page, and a variety of non-successful responses, including error messages and informational messages such as a REDI-RECT which informs the client of a new address where the desired data can be found." (*Id.* at 4–5.) "HTTP defines an extensive collection of information to be passed as part of a request or reply," most critical of which is the Uniform Resource Identifier ("URI"), "which is HTTP's way of identifying a specific desired document." (*Id.* at 5.) The "key idea" behind HTTP's design is that "a web server only needs to handle a request and respond to it, then it can forget that the request ever existed. If a subsequent request is made, it is made via a new connection." (*Id.*)

HTTP is a "relatively high-level protocol," built "on top of the reliable communi-

cations protocol of the Internet," which includes the Transmission Control Protocol ("TCP") and Internet Protocol ("IP"). (*Id.*) IP "provides addressing of computers on the Internet, ... addressing of specific ports on each computer ... and mechanisms for addressing a message from a source ... to a destination...." (*Id.*) The following, describes TCP and its relation to HTTP.

> TCP ... is a protocol layered on top of IP to provide reliable bidirectional communications. TCP connections ... are established through a three-part handshake, after which messages may be transmitted in both directions. The first message in that handshake is sent from the source to the destination, and serves to initiate the TCP connection. The destination replies, and the source confirms the reply. After that, the data may flow in either or both directions until the TCP connection is terminated.... When an HTTP client sends a request to an HTTP server, it first does so by initiating a TCP connection. Once the TCP connection is established, it sends the request to the server. The server then replies, and the TCP connection is terminated after the reply is received.

(*Id.*)

Movielink's Multi–CDN system includes three main components: (1) a facility, located in Secaucus, New Jersey; (2) regional data centers located at various locations In the United States; and (3) Movielink Manager ("MM"), which is software located on Movielink customers' personal computers.[8] (D.I. 139, Ex. L at 23, Dr. Beckman's Expert Report, Sept. 25, 2004.) More specifically, the Secaucus facility

---

**7.** Although this background is taken mainly from Dr. Konstan's Rebuttal Expert Report (D.I. 139 at Ex. P), USVO has not alleged any inaccuracies in his description of the underlying technology.

**8.** The following description of the Movielink Multi–CDN system is drawn from both Dr.

Beckman's Expert Report (D.I. 139 at Ex. L) and Dr. Konstan's Rebuttal Expert Report (D.I. 139 at Ex. P). There were no significant differences between the descriptions of the Movielink Multi–CDN system as provided in these reports.

houses several components of the Moviel-ink System, including web servers that offer web pages for the Movielink website, three Content Delivery Sources ("CDS"s) that are responsible for downloading mov-ies to users' personal computers, multiple hard disks on which movies are stored, a Content Delivery Router ("CDR"), and an application server. (*Id.* at 24.) The CDR is an application that "receives requests from Movielink Manager for movies to download, looks up the appropriate CDS, and responds to MM with a redirect re-sponse indicating that [MM] should send the request to the appropriate server." (D.I. 139, Ex. P at 7, Dr. Konstan's Rebut-tal Expert Report, Oct. 6, 2004.) The CDSs "store movies and provide the actual service of transmitting them to the client when an appropriate request is received (one that matches an authorized transac-tion)." (*Id.*)[9]

The regional data centers are "facilities associated with regional networks." (D.I. 139, Ex. L at 25, Dr. Beckman's Expert Report, Sept. 25, 2004.) "Movies are stored on hard disks in the regional data centers . . . . Each Movielink regional data center contains [at least one] CDS that can distribute (download) the stored movies that have been rented by a user. These servers utilize the regional networks for distributing these rented movies." (*Id.*) The movies are stored at the regional data centers or at the Secaucus facility. (*Id.*)

MM is software that resides on Moviel-ink customers' personal computers and can be downloaded from the Movielink website. MM is required for renting, downloading, and playing movies from

Movielink. (*Id.*) In addition to MM, each customer must have a web browser, "a piece of software such as Microsoft's In-ternet Explorer that presents the user with an interface for 'browsing the web.' " (D.I. 139, Ex. P at 6, Dr. Konstan's Rebut-tal Expert Report.)

The Movielink Storefront (the "Website" or "Storefront") is "an application running through a Dynamo application server (e.g., www.movielink.com)." (D.I. 139, Ex. P at 7, Dr. Konstan's Rebuttal Expert Report, Oct. 6, 2004.) The Storefront's functions include "managing user accounts, handling payments, displaying the Movielink cata-log, and supporting the range of user navi-gation through the catalog and up to the point where the Movielink Manager pro-gram takes over." (*Id.*)

To determine whether the Movielink Multi–CDN system infringes claim 1 of the '792 patent, it is necessary to describe the sequence of operations for the Moviel-ink Multi–CDN system. The following de-scription of the sequence of operations was taken directly from Dr. Konstan's Rebuttal Expert Report because he provided more detail about the connections which are made and broken during the normal opera-tions of the Movielink Multi–CDN system. USVO acknowledges the accuracy of Dr. Konstan's rendition of the sequence of steps in the allegedly infringing Movielink system. (D.I. 143 at 6, note 5) ("the se-quence of steps is adequately set forth in the rebuttal report of . . . Dr. Kon-stan. . . ."). The undisputed sequence of operations for the Movielink Multi–CDN system, after the user has downloaded the MM software, is as follows:[10]

---

**9.** Movielink also has "other services executing to support these operations" which are not relevant to the infringement discussion. (D.I. 139, Ex. P at 7, Dr. Konstan's Rebuttal Expert Report, Oct. 6, 2004.)

**10.** "The numbers represent TCP connections and HTTP connections in the order [in which] they occur[, with] parallel communications [duly] noted. Letters indicate the sequence of messages, including messages among differ-ent servers. In other words, (1a) and (1b) form the first TCP and HTTP connection, with

. . . 4. Once the MM software is installed and up-to-date, the [customer's] machine . . . invoke[s] the MM software, passing to it a set of relevant data including a URL for fetching the movie (see step 5), a token for fetching the license from a known server (see step 7), and other data for display within MM including title, movie length, pointers to cover art, and similar data.

5. (a) MM uses the passed URL to send an HTTP request to the CDR; this request includes a download token that can be checked against the authorization to download. CDR uses Movielink's Authentication Service (and in turn, Movielink Databases) to check the token via an HTTP HEAD method that simply returns an indication of validity or invalidity. If the token is valid, the CDR uses the IP address and Domain Name of the requesting site, as well as purchase information, to look up the appropriate CDS (using the Movielink Databases). If no special mapping is found, the CDR selects a default central CDS. (b) The CDS identifier is returned to the MM through the HTTP REDIRECT response, a response that provides an alternative URL for MM to use to obtain the information. More specifically, the REDIRECT incorporates the same URL with the name of the CDR replaced with that of the appropriate CDS. Steps 6 through 8 occur in parallel.

6. (a) MM takes the returned URL in the REDIRECT and issues a new HTTP GET request to the CDS; this request includes a download token that can be checked against the authorization to download. CDS uses Movielink's Authentication Service (and in turn Moviel-

ink Databases) to check the token via an HTTP HEAD method that simply returns an indication of validity or invalidity. If the token is valid, (b) the CDS transmits the HTTP response, in this case including a digital movie file that is then stored by MM. Note that steps 5 and 6 could be completed using an ordinary web browser instead of MM, however an ordinary web browser would lack the facilities for managing the movies and, more important, for fetching and installing the license.

7. (a) MM sends a request to Website with the license token. If the token is valid, Website gets the license from the appropriate license server (which depends on the media player being used) and (b) returns it to MM.

8. During the process of steps 6 and 7, MM uses the HTTP POST method to send progress data back to Website. Such messages indicate when the download started, when the license was retrieved, etc. They are used to keep the storefront and customer service data up-to-date.

9. The user may commence playing any time after a sufficient portion of the video has been downloaded (in which case, the download continues as the playing commences). When the user plays the video (which occurs completely within the client computer), MM continues to POST progress data to the Website. If the computer is off-line, the progress data is held for later posting.

(D.I. 139, Ex. P at 8–9, Dr. Konstan's Rebuttal Expert Report, Oct. 6, 2004.)

Steps 6(a) and (b) are the focal points of the parties' arguments. Movielink argues

<hr />

(1a) being the initiating message and (1b) being the response. Only after (1b) is concluded (and the TCP and HTTP connection is closed) does the TCP and HTTP connection formed from (2a) and (2b) commence.'' (D.I.

139, Ex. P at 7–8, Dr. Konstan's Rebuttal Expert Report, Oct. 6, 2004.) Steps 1 through 3 are omitted because they involve downloading the MM software and are not at issue in this case.

that its system does not have any component that could be considered a distribution interface and that regardless of this missing component, no part of its central system "initiates" connections. (D.I. 135 at 19; D.I. 158 at 7.) Instead, Movielink argues, in its system it is the user's home computer that "initiates" connections which result in the transmission of the requested movie. (D.I. 135 at 19; D.I. 158 at 7.) To support its argument, Movielink cites to the prosecution history of claim 1 of '792 patent and Dr. Konstan's Rebuttal Expert Report. (D.I. 135 at 19.)

Assuming that the Movielink system has a distribution interface, which is made up of the CDR, the CDS, or both,[11] the focus in this infringement analysis is on which components in the system can be said to "initiate" connections as stated in claim 1 of the '792 patent. As noted, the MM software uses HTTP over TCP/IP to communicate. (D.I. 139, Ex. P at 13, Dr. Konstan's Rebuttal Expert Report, Oct. 6, 2004.) Movielink's argument is essentially that "[i]n each case (specifically . . . [steps] 5 and 6 [as identified] above), the Movielink manager initiates the HTTP and TCP connection to the CDR (5a) or CDS (6a)," and then receives a reply as noted in steps 5(b) and 6(b). (Id.) Dr. Konstan's opinion is that "each contact between the user's computer (which is both the device that receives the video and the device used to make user requests) and the servers is initiated from the user's computer." (Id.) Dr. Konstan's opinion is based on his study of the Movielink system and the workings of the Internet, "where it is often the case that a server is incapable of initiating a TCP connection to the client[,]" in part because of the presence of a firewall. (Id. at 14.)

USVO asserts, however, that Movielink's argument regarding initiating the transmission of the video program is irrelevant because the claim language recites "initiates connections," not "initiates transmission." (D.I. 143 at 9.) I agree. My focus, therefore, is on USVO's response to Movielink's argument that the user in its system initiates the connections which result in the transmission of the video program. USVO cites the opinion of its expert, Dr. Beckman, that the CDR and CDS in the Movielink system "collectively are a distribution interface." (D.I. 139, Ex. L at 30, Dr. Beckman's Expert Report, Sept. 25, 2004.) USVO then argues that the Movielink distribution interface actually initiates two connections with the user's computer at a remote location. (D.I. 143 at 7–9.) USVO makes two specific arguments. First, USVO says that the redirect URL, described in steps 5(b) and 6(a) above, is an "initiating message" that causes the user's computer to form the resulting TCP connection. (Id. at 7.) Second, USVO argues that, in response to the user's computer opening a TCP connection to the CDS, the CDS opens an HTTP session, which is a connection initiated by the CDS and is part of Movielink's distribution interface. (Id. at 7–8.) Based on these arguments, USVO contends that a question of fact exists as to whether the functions of the CDS and the CDR read on the limitation "distribution interface initiates connections." (See id. at 7.)

Movielink's response to USVO's first argument, as noted in oral argument, is that USVO is improperly arguing to expand the claim term "initiates connections" to initiating "message." (Transcript, *Markman* Hearing, Nov. 30, 2004, at 63:19–21.) The point is correct. An initiating message is

---

**11.** Movielink vigorously asserts that it has no such interface (D.I. 135 at 19), but USVO contends that the CDR and CDS function as a distribution interface (D.I. 143 at 7.) For purposes of this analysis, I assume, without deciding, that USVO is correct.

not the same thing as initiating a connection. USVO's argument directly contradicts the express claim language requiring that the distribution interface initiate "connections" with the remote units. In fact, USVO's own expert, Dr. Beckman seems to recognize this when he states that "*Movielink Manager,* upon receipt of this HTTP Redirect, *automatically opens a TCP connection* with the CDS part of the distribution interface." (D.I. 139, Ex. L at 31, Dr. Beckman's Expert Report, Sept. 25, 2004 (emphasis added).) As shown in this quotation, it is MM, on the customer's computer, that initiates the TCP connection. Whether this occurs because the user pushes download, or because the HTTP Redirect instructs the user's computer to do it, is irrelevant. Either way, it is still the user's computer that actually "initiates" or begins the connections. USVO's argument is further weakened by the fact that the HTTP Redirect message is actually a *response* from the CDR to the request initiated by MM on the user's computer. Dr. Beckman agrees that the HTTP Redirect is a response when he notes, "[t]his message is sent in direct response to the user clicking the 'Start Download Now' button. . . ." (*Id.*) Therefore, I agree with Movielink that it is the user's computer and not the CDR that "initiates" this TCP connection with the CDS.

USVO's second argument simply lacks a foundation. USVO argues that Dr. Konstan, Movielink's expert, agreed that "a session is a connection." (D.I. 143 at 7.) Specifically, USVO cited to the following deposition testimony:

> A . . . And there is nothing in the Movielink system that gives the CDS the permission to decide when it would be convenient to send a movie back.

Q So you do believe that is a requirement of the patent?

A Yes.

(D.I. 143, Ex. 3 at 121:9–14, Dep. Dr. Joseph Konstan, Oct. 13, 2004.) This deposition testimony does not support USVO's argument that a "session is a connection." [12] (D.I. 143 at 7–8.) Furthermore, there is no evidence that the CDS "initiates" the HTTP session. As described in step 6(a) above, after MM receives the HTTP Redirect, it sends an HTTP GET to the CDS. Then, as described in step 6(b), the CDS responds to the HTTP GET by "creat[ing] the data structures needed within its own code to participate in the session." (D.I. 139, Ex. P at 15, Dr. Konstan's Rebuttal Expert Report, Oct. 6, 2004.) Calling this "opening" the session, does not mean that the CDS "initiates" the session, or the connection. An appropriate analogy is to the use of the telephone. When A calls B and B picks up the phone and says "hello," B can be considered to have "opened the call," but it is still A who "initiated" the connection. Thus, the TCP and HTTP connections are both initiated by the MM software that resides on the user's computer, and not by Movielink's distribution interface, assuming it has one.

Based on the foregoing, there is no issue of fact to prevent the conclusion that the Movielink Multi–CDN system does not have a distribution interface that "initiates connections," as "initiates" has been construed in claim 1. Therefore, because I find that Movielink does not practice all of the limitations of claim 1 of the '792 patent, it cannot literally infringe.

### 2. Doctrine of Equivalents

[13] Movielink argues that USVO is not entitled to any scope of equivalents

---

**12.** It is not readily apparent that Dr. Konstan was testifying about the HTTP session because USVO submitted only a single page of his deposition testimony.

with respect to the limitation "distribution interface initiates connections." (D.I. 135 at 20.) Specifically, Movielink points to the prosecution history of claim 1 of the '792 patent, stating that "these limitations were added to the claimed subject matter in response to a prior art rejection." (Id.) Movielink argues that, based on the prosecution history, it is clear that USVO added the "distribution interface initiates connections" limitation to claim 1 of the '792 patent in order to avoid prior art, which is a well-settled basis for invoking prosecution history estoppel to infringement under the doctrine of equivalents. (See id.)

USVO's original United States application for the '792 patent was filed on February 1, 1990. Original Claim 1 was drafted as follows:

> 1. A system for displaying stored video programs at a remote location, comprising:
>
> a central storage facility for storing programs in digitized, compressed form;
>
> a communications link for transmitting stored programs to the remote location;
>
> a receiver at the remote location for decompressing the transmitted program and converting it to a signal suitable for display; and
>
> a display connected to said receiver for displaying the transmitted program.

(D.I. 139, Ex. F, Original Specification at 18.) At that time, original claim 1 did not contain any reference to the "distribution interface initiates connections" limitation. (Id.) In response to the Examiner's Office Action rejecting all of the original claims, and specifically claim 1 as anticipated by Cohen, a prior art patent reference, the applicants substituted an entirely new claim, and, for the first time, incorporated the "distribution interface initiates connections" limitation. (Id., Ex. H at 2, Amendment.) As discussed above, supra Part IV.A.2, the applicants argued that "[t]he Cohen reference describes a system in which a local unit calls a central unit over telephone lines, and initiates a download of a video program such as a movie. . . . The telephonic connection and request is made by the local unit itself. . . ." (Id., Ex. H at 7, Amendment.) The applicants then relied on the "distribution interface initiates connections" limitation to distinguish the claimed invention from Cohen and the other references. See supra Part IV.A.2.

There is no question that the applicants' amendments during prosecution were made to narrow the literal scope of the claim, and that the reason for the amendment "was a substantial one relating to patentability." Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd., 344 F.3d 1359, 1366 (Fed.Cir.2003) (citing Pioneer Magnetics, Inc. v. Micro Linear Corp., 330 F.3d 1352, 1356 (Fed.Cir.2003)). It is clear from the prosecution history that amending the claim to include the "distribution interface initiates connections" limitation was an important factor in the applicants' efforts to overcome the Examiner's prior art rejection. Thus, USVO must overcome the presumption that it "has surrendered all territory between the original claim limitation and the amended claim limitation." Id. at 1367 (citing Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd., 535 U.S. 722, 740, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002) ("Festo VIII")).

USVO may rebut that presumption if it can demonstrate "that the alleged equivalent would have been unforeseeable at the time of the narrowing amendment, that the rationale underlying the narrowing amendment bore no more than a tangential relation to the equivalent in question, or that there was 'some other reason' suggesting that the patentee could not reasonably have been expected to have described

the alleged equivalent." *Id.* at 1368 (citing *Festo VIII,* 535 U.S. at 740–41, 122 S.Ct. 1831). USVO does not respond to Movielink's argument regarding the import of *Festo VIII* in its Opposition to Movielink's Motion for Summary Judgment on Non–Infringement and Invalidity (D.I.143). The only response offered by USVO was made in its Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment of Non–Infringement (D.I.142). USVO did not attempt to rebut the presumption but instead argued that the issue of infringement under the doctrine of equivalents is "moot or not ripe for determination" because "[t]he parties have not yet joined issue on [these] questions . . . ." (D.I. 142 at 21.) USVO's argument is essentially that "questions of infringement under the doctrine of equivalents cannot be finally answered until *after* the Court's claim construction." (*Id.* at 23 (emphasis in original).) In support, USVO cites *Exxon Chemical Patents, Inc. v. Lubrizol Corp.,* 137 F.3d 1475, 1478–79 (Fed.Cir.1998), *cert. denied,* 525 U.S. 877, 119 S.Ct. 181, 142 L.Ed.2d 148 (1998), for the proposition that a "patentee must be permitted to try infringement theories becoming relevant only after final claim construction." (D.I. 142 at 22.)

USVO's reliance on *Exxon Chemical Patents* is misplaced and does not rebut the presumption detailed above. In that case, the Federal Circuit held that it was improper for the district court not to entertain a motion for new trial on the issue of infringement under the doctrine of equivalents when "[t]he question whether there could be doctrine-of-equivalents infringement under the claim construction adopted by [the Federal Circuit] became a critical issue in the case only after this court's decision on appeal." *Exxon Chemical Patents,* 137 F.3d at 1479. That is not the same situation presented here. The issue of infringement under the doctrine of

equivalents was pled by USVO in its Complaint and was appropriately briefed and argued by Movielink in its two motions for summary judgment (D.I.132, 134). Therefore, USVO's citation to *Exxon Chemical Patents* is inapposite.

I find that, based on the prosecution history and lack of evidence presented by USVO on the issue of infringement under the doctrine of equivalents, USVO has not rebutted the presumption that it "has surrendered all territory between the original claim limitation and the amended claim limitation." *Festo Corp.,* 344 F.3d at 1367 (citing *Festo VIII,* 535 U.S. at 740, 122 S.Ct. 1831). Therefore, USVO is estopped from asserting that Movielink's Multi–CDN system infringes claim 1 of the '792 patent under the doctrine of equivalents.

### 3. Indirect Literal Infringement: Inducement and Contributory Infringement

Movielink has moved for summary judgment that it does not indirectly infringe claim 1 of the '792 patent. (D.I. 133 at 1.) Whether directly infringing or not, "a party may still be liable for inducement or contributory infringement of a method claim under 35 U.S.C. §§ 271(b), (c) if it sells infringing devices to customers who use them in a way that directly infringes the method claim." *Linear Tech. Corp. v. Impala Linear Corp.,* 379 F.3d 1311, 1326 (Fed.Cir.2004) (citing *RF Del., Inc. v. Pac. Keystone Techs., Inc.,* 326 F.3d 1255, 1267 (Fed.Cir.2003)). In its Complaint, USVO alleged that Movielink's activities infringe the '792 patent by inducing infringement and contributing to infringement. (D.I. 1 at ¶ 20.)

Movielink argues that it is entitled to summary judgment on the issue of indirect infringement because USVO "never advanced any evidence or explanation to support inducement and/or contributory in-

fringement." (D.I. 159 at 8–9.) While USVO has presented some evidence of indirect infringement, its explanation for the lack of a more fully articulated position is explained in its Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment of Non–Infringement (D.I.142). USVO explains that "[b]ecause Movielink has not denied such responsibility [for forming the combination of all the allegedly infringing elements], questions of inducement and contributory infringement are not in issue." (D.I. 142 at 23.) USVO continues, "[h]owever, if Movielink were to change its position and argue that it is not responsible for some or all of the accused components, USVO should be permitted to respond that Movielink is nevertheless 'liable as an infringer,' as permitted by the Patent Act, for induced or contributory infringement . . . ." (*Id.*)

[14] Accordingly, because Movielink has not changed its position, USVO essentially has admitted that indirect infringement is not at issue. (*Id.*) Even if USVO had not admitted that indirect infringement is not at issue, it is well settled that, absent direct infringement, there can be no inducing or contributory infringement. *Met–Coil Sys. Corp. v. Korners Unlimited, Inc.,* 803 F.2d 684, 687 (Fed.Cir.1986). As discussed above, I have found that Movielink's activities do not infringe because its Multi–CDN system does not practice the "distribution interface initiates connections" limitation of claim 1. Because the distribution interface in Movielink's system, if Movielink's system has one at all, resides at its Secaucus facility, no one using the Movielink system could be in the position to practice this limitation besides Movielink itself. Thus, there is no possibility that someone other than Movielink could directly infringe claim 1, and as such, Movielink cannot be liable for indirect infringement.

## V. CONCLUSION

Accordingly, USVO's Motion for Summary Judgment as to the Gunter Article and the '792 Patent's Enablement of the Internet (D.I.127) will be denied as moot, USVO's Motion to Exclude or Limit Admissibility of the Expert Reports and Testimony of Richard T. Mihran and Joseph A. Konstan (D.I.129) will be denied as moot. Movielink's Motion for Summary Judgment of Non–Infringement Relating to USVO's Infringement Allegations for Which No Support in the Record Exists (D.I.132) will be granted in so far as it pertains to indirect infringement. Movielink's Motion for Summary Judgment of Non–Infringement, and its Alterative Motion for Summary Judgment of Invalidity (D.I.134) will be granted as to non-infringement, and Movielink's Motion for Summary Judgment of Invalidity under 25 U.S.C. § 112 and to Strike Portions of Expert Report (D.I.136) will be denied as moot.

### ORDER

For the reasons set forth in the Memorandum Opinion issued in this matter today, IT IS HEREBY ORDERED that USVO's Motion for Summary Judgment as to the Gunter Article and the '792 Patent's Enablement of the Internet (D.I.127) is DENIED as moot, USVO's Motion to Exclude or Limit Admissibility of the Expert Reports and Testimony of Richard T. Mihran and Joseph A. Konstan (D.I.129) is DENIED as moot. Movielink's Motion for Summary Judgment of Non–Infringement Relating to USVO's Infringement Allegations for Which No Support in the Record Exists (D.I.132) is GRANTED in so far as it pertains to indirect infringement. Movielink's Motion for Summary Judgment of Non–Infringement, and its Alterative Motion for Summary Judgment of Invalidity (D.I.134) is GRANTED as to non-infringement, and Movielink's Motion for Summary Judgment of Invalidity under 25

U.S.C. § 112 and to Strike Portions of Expert Report (D.I.136) is DENIED as moot.



**UNITED STATES of America, Plaintiff,**

**v.**

**Thomas P. GORDON, Sherry L. Freebery, and Janet K. Smith, Defendants.**

**No. CRIM.A.04–63–KAJ.**

United States District Court, D. Delaware.

Feb. 3, 2005.

**Background:** Defendants, indicted for conspiracy, racketeering, wire fraud, and mail fraud in a political corruption case, moved to recuse.

**Holding:** The District Court, Jordan, J., held that alleged business interactions between defendants and another judge of the district court resulted in an appearance of partiality on the part of the trial judge, requiring recusal.

Motion granted.

**1. Judges ⚖49(1)**

Recusal is mandated whenever an appearance of partiality is created even though no actual partiality exists. 28 U.S.C.A. § 455(a).

**2. Judges ⚖45**

Alleged business interactions between defendants and another judge of the dis-

trict court, which might be relevant to the case, resulted in an appearance of partiality on the part of the trial judge, requiring recusal in prosecution based on allegations of political corruption in local government; allegations were specific enough to require inquiry, and reasonable people could question the trial judge's impartiality in matters involving a colleague's reputation and privacy. 28 U.S.C.A. § 455(a).

———————

Colm F. Connolly, Leonard P. Stark, U.S. Attorney's Office, Wilmington, DE, for Plaintiff.

Hamilton P. Fox, III, Washington, DC, Joseph A. Hurley, Joseph A. Hurley, Wilmington, DE, for Defendants.

**MEMORANDUM ORDER**

JORDAN, District Judge.

*INTRODUCTION*

I have before me a motion to recuse (the "Motion") that was presented orally by counsel for defendant Gordon and counsel for defendant Freebery at a hearing in chambers on January 26, 2005.[1]  Those defendants have filed a joint letter memorandum, dated January 21, 2005 (Docket Item ["D.I."] 58), and a supplemental "Memorandum on Recusal," filed on January 31, 2005 (D.I. 62), laying out arguments under 28 U.S.C. § 455(a) and Canon 3C of the Code of Judicial Conduct which, they say, compel me to recuse myself and seek the intervention of the Chief Judge of

---

**1.** The hearing took place in chambers at the request of the moving defendants (the "Defendants") because, in the first instance, they were approaching with understandable circumspection the topic of recusal based on allegations relating to the extrajudicial activities of a judge of this court.  Nevertheless,

both the Government and the Defendants have acknowledged that the submissions in support and in opposition to the Motion and the transcript of the hearing should be unsealed, given the public character of these proceedings.  I agree with that conclusion and have ordered that they be unsealed.

LEXSEE 2006 US APP LEXIS 14699

**USA VIDEO TECHNOLOGY CORPORATION, Plaintiff-Appellant, v. MOVIELINK, LLC, Defendant-Appellee.**

**05-1451**

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

*2006 U.S. App. LEXIS 14699*

**June 7, 2006, Decided**
**June 7, 2006, Filed**

**NOTICE:** [*1] DECISION WITHOUT PUBLISHED OPINION

**PRIOR HISTORY:** ON APPEAL from the UNITED STATES DISTRICT COURT FOR THE DISTRICT OF DELAWARE In CASE NO(S). 03-CV-368. *USA Video Tech. Corp. v. Movielink LLC, 354 F. Supp. 2d 507, 2005 U.S. Dist. LEXIS 1550 (D. Del., 2005)*

**JUDGES:** MICHEL, Chief Judge, PLAGER, Senior Circuit Judge and BRYSON, Circuit Judge.

**OPINION:**

Judgment

This CAUSE having been heard and considered, it is ORDERED and ADJUDGED:

Per Curiam:

AFFIRMED. See *Fed. Cir. R. 36.*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| **USA VIDEO TECHNOLOGY CORPORATION,** ) ) ) ) *Plaintiff*, ) ) v. ) **MOVIELINK LLC,** ) ) ) *Defendant*. ) ) ) | **C.A. No. 03-368-KAJ** |

## DECLARATION OF EDWIN MOLINA IN SUPPORT OF PLAINTIFF USA VIDEO TECHNOLOGY CORP.'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT MOVIELINK, LLC'S MOTION TO TRANSFER

I, Edwin Molina, declare as follows:

1.    I am the Chief Executive Officer of USA Video Interactive Corporation and the the Plaintiff USA Video Technology Corporation (or collectively "USVO"). USVO's principal place of business is at 83 Halls Road, P.O. Box 245, Old Lyme, Connecticut, 06371.

2.    I submit this declaration in support of Plaintiff USVO's Answering Brief in Opposition to Defendant Movielink's Motion to Transfer the above-referenced case from the District of Delaware to the Central District of California.  As USVO's CEO, I am familiar with the financial condition and operations of the Company.

3.    USVO's principal place of business is located in Connecticut.  We are a very small operation:  we have four full-time employees, including the two senior executive officers,

one technology and one administrative employee.  Two of the employees reside in Connecticut, of which I am one, and two reside in Vancouver, Canada.

4.      At the moment, USVO has no products or services to offer and no sales to speak of.  Indeed, during the past nine-months USVO had no sales and sales in the current quarter are expected to be minimal.  For that same period, the company had a net loss of $513,115.  These numbers were set forth in USVO's most recent Form 10-Q filed with the Securities and Exchange Commission.  USVO, however, continues to explore opportunities that it hopes will result in new products and revenue streams and it recently announced plans to release a new software product that can be used to deter video content piracy.

5.      Conducting this litigation in California would represent a substantial financial hardship to USVO due to USVO's limited resources.

I declare, under the penalty of perjury under the laws of the United States of America that the foregoing its true and correct.

Executed on this 19 November, 2003.

Edwin Molina

-2-



ATTENTION: OFFICE OF PETITIONS



IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Attorney Docket No. **1026KH-15938**

In Re Patent of:

**ELBERT G. TINDELL et al.**

Patent No.  **5,130,792**

Issued:  **July 14, 1992**

Serial No.  **07/475,137**

Filed:  **February 1, 1990**

For:   **STORE AND FORWARD VIDEO SYSTEM**

**DECLARATION OF ANTON J. DRESCHER**

Declarant, being over 18 years of age and of sound mind, declares as follows:

1.    I am the same Anton J. Drescher who executed a declaration on January 8, 1999 filed in support of a petition to accept late payment of a maintenance fee filed for the patent identified above.  All statements made in that declaration are true to the best of my belief and understanding.  This declaration is supplemental to my previous declaration.

2.    As I stated in my previous declaration, I am the secretary and a director

for USA Video Interactive, Corp. (referred to as CANADA). I first became actively involved in protecting the patent properties of the company during the spring or summer of 1995. My previous declaration contains a typographical error in paragraph 6, stating that I first became involved in 1996, but the spring or summer of 1995 is the correct time frame. Attached as Exhibit 5 is a copy of a facsimile transmitted to me by Mr. Kenneth Hill of the Felsman firm, dated May 2, 1995. This is consistent with my recollection of my first involvement, and is the earliest written correspondence I have been able to find clearly establishing my involvement. I have remained as the responsible person until the present time.

3.     CANADA, under its previous name, Micron Metals Canada Corp., acquired USA Video, Inc. (referred to as TEXAS), the owner of record of the '792 patent, by purchase of 100% of its stock shares in 1992. In April 1992, CANADA changed its name to USA Video Corporation Canada, and changed it again to USA Video Interactive Corporation in January, 1995. TEXAS has remained a subsidiary of CANADA to the present day, and has at all times been the owner of the '792 patent. The name of TEXAS was changed to USA Video Corporation in July 1993 without any change in ownership. CANADA changed its name to its current name in January 1995.

4.     CANADA has another wholly owned subsidiary, USA Video (California) Corp. (referred to as CALIFORNIA). This subsidiary, along with CANADA and TEXAS, were described in my previous declaration.

5.     TEXAS continues to be a fully reporting corporation, and remains in good standing. Although TEXAS currently has no active operations, it remains as a subsidiary of CANADA. It is still the owner of the '792 patent, and has always been the owner since the day the patent issued.

Attorney Docket No. 1026KH-15938

6.      TEXAS is also the owner of foreign applications and patents which are counterparts to the '792 patent.  These include applications currently pending in Canada and Japan, and a granted European patent.  An application pending in Mexico was dropped in spring 1995.  The European patent has recently been issued in Germany, France, Spain, Italy, and the United Kingdom, and all fees have been paid to maintain them in good standing.  The Canadian and Japanese applications are currently undergoing examination, and all required fees have been paid to maintain them in good standing.

7,      TEXAS ceased active operations in 1995, at which time the corporate structure underwent a consolidation of operations and financial matters.  The US and foreign patent assets remained with the TEXAS subsidiary throughout.

8.      During the consolidation, the US and foreign patent assets were deemed extremely important, and were maintained in force even though other assets were not maintained.  I give some details of this in the following paragraphs.

9.      Attached as Exhibit 4 is a copy from the TEXAS files of a FINAL REMINDER sent from the Felsman firm to Larry Steele of the TEXAS operation.  This letter indicates that maintenance fees must be paid on the foreign applications to prevent them from going abandoned.  During the process of consolidating operations, these foreign maintenance fees were not paid on time.

10.     I became involved in approximately late April of 1995, and myself and the other directors of CANADA immediately understood the importance of the foreign applications.  I telephoned Mr. Hill at the Felsman firm, asking if the applications could be revived.  In facsimiles dated May 2 and May 15, 1995 (Exhibits 5 and 6),

Attorney Docket No. 1026KH-15938                                                                    Page 3

Mr. Hill informed me that the Japanese application was in good standing, the European and Canadian applications could be revived, and the Mexican application could not be revived.

11.     In a letter dated August 9, 1995, Mr. Hill summarized the status of the foreign applications. (Exhibit 7)  I responded a few days later to pay all outstanding renewal fees, and sent money to cover the expenses, and shown by my handwritten note at the bottom of his letter. (Exhibit 8)

12.     In the fall of 1995, as part of a corporate consolidation, the active operations of TEXAS were wound down.   Rather than dissolve the TEXAS subsidiary, or declare it bankrupt, arrangements were made to settle outstanding claims with creditors on a reduced percentage basis.   During this period, the Felsman firm was paid in full to ensure the continuation of the patent property rights. (Exhibit 14)  This was done to preserve the US and foreign patents and applications, which were the principal assets of TEXAS at that time.

13.     At this time, I had instructed the Felsman firm to pay all maintenance fees of which I was aware, and brought our financial dealings with them to a current status.  That status has remained current until the present time.

14.     At all times, I relied on the information provided by the Felsman firm to pay all fees of which I was aware to maintain all US and foreign patents in effect.  In December, 1995 and January, 1996, I received reminders from the Felsman firm that maintenance fees were again due in March for the Canadian and European applications.  These were paid in a timely fashion, and subsequent payments have

TOTAL P.06

all been made on time.  I did not receive a reminder from the Felsman firm that a maintenance fee was due on the US patent.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application or any patent issued thereon.

Further Declarant sayeth not.

DEC. 06 / 1999
Date

Anton J. Drescher



# State of Delaware
## The Official Website for the First State



Visit the Governor | General Assembly | Courts | Other Elected Officials | Federal, State &

State Directory | Help | Search Delaware                    Citizen Services | Business Services

**Department of State: Division of Corporations**

**HOME**
About Agency
Secretary's Letter
Newsroom
Frequent Questions
Related Links
Contact Us
Office Location

**SERVICES**
Pay Taxes
File UCC's
Delaware Laws Online
Name Reservation
General Information
Status
Validate Certificate

**INFORMATION**
Corporate Forms
Corporate Fees
UCC Forms and Fees
UCC Searches
Taxes
Expedited Services
Service of Process
Registered Agents
Get Corporate Status
Submitting a Request

Frequently Asked Questions   View Search Results

## Entity Details

### THIS IS NOT A STATEMENT OF GOOD STANDING

| | | | |
|---|---|---|---|
| File Number: | **2190473** | Incorporation Date / Formation Date: | **03/15/1989** (mm/dd/yyyy) |
| Entity Name: | **TIME WARNER INC.** | | |
| Entity Kind: | **CORPORATION** | Entity Type: | **GENERAL** |
| Residency: | **DOMESTIC** | State: | **DE** |

### REGISTERED AGENT INFORMATION

| | | | |
|---|---|---|---|
| Name: | **THE CORPORATION TRUST COMPANY** | | |
| Address: | **CORPORATION TRUST CENTER 1209 ORANGE STREET** | | |
| City: | **WILMINGTON** | County: | **NEW CASTLE** |
| State: | **DE** | Postal Code: | **19801** |
| Phone: | **(302)658-7581** | | |

Additional Information is available for a fee. You can retrieve Status for a fee of $10.00 or more detailed information including current franchise tax assessment, current filing history and more for a fee of $20.00.

Would you like ⚪ Status ⚪ Status,Tax & History Information   [ Submit ]

[ Back to Entity Search ]

To contact a Delaware Online Agent click here.

site map | about this site | contact us | translate | delaware.gov

Case 2:06-cv-00239-SLR    Document 73-20    Filed 08/05/2006    Page 1 of 2



President ∗ News ∗ Vice President ∗ History & Tours ∗ First Lady ∗ |

YOUR GOVERNMENT    KIDS   ESPAÑOL   CONTACT   PRIVACY POLICY   SITE

# The White House
### PRESIDENT GEORGE W. BUSH
HOME

 EMAIL UPDATES

**Issues**
- Budget Management
- Education
- Energy
- Health Care
- Homeland Security
- Hurricane Recovery
- Immigration
- Jobs & Economy
- Medicare
- National Security
- Pandemic Flu
- Patriot Act
- Renewal in Iraq
- Social Security
- **More Issues »**

**News**
- Current News
- Press Briefings
- Proclamations
- Executive Orders
- Radio
- RSS  RSS Feeds

**Major Speeches**
- Iraq
- Stem Cell Research
- G-8 Summit
- Press Conference

**Interact**
- Ask the White House
- White House Interactive

**Your Government**
- President's Cabinet
- USA Freedom Corps
- Faith-Based & Community
- OMB
- NSC
- **More Offices »**

**Appointments**
- Nominations
- Application



PHOTO ESSAYS

Home > News & Policies > Policies in Focus

📧 Email This Page



JUDICIAL NOMINATIONS

### Judge Kent A. Jordan
*Nominee to the U.S. Court of Appeals for the Third Circuit*



JUDGE KENT A. JOR



- Judge Kent Jordan of the U.S. District Court for the District of Delaware is a highly respected jurist who is widely praised by lawyers and fellow judges alike for his intellect, integrity and judicial temperament.
  - Judge Jordan has been nominated to the Third Circuit, which hears appeals from the federal district courts of Delaware, New Jersey, Pennsylvania and the Virgin Islands
  - Judge Jordan is known for his keen intellect and analytical skills, courteous manner, command of the courtroom, and evenhanded approach to the law.
- Judge Jordan has a distinguished record as a practicing attorney in the public and private sectors and as a district court judge.
  - In 2002, Judge Jordan was confirmed to the U.S. District Court for the District of Delaware, where he sits today
  - From 1997 until 2002, Judge Jordan was General Counsel and Vice President of Corporation Service Company (CSC), where he managed all of the corporation's legal affairs.
  - In 1992, Judge Jordan joined the Wilmington, Delaware firm of Morris James Hitchens & Williams as an associate, becoming a partner in 1994. His practice focused on patent and related disputes in the U.S. District Court for the District of Delaware.
  - Judge Jordan served as an Assistant United States Attorney for the District of Delaware from 1987 to 1992, becoming Chief of the Office's Civil Division in 1991. His clients in civil cases consisted mainly of federal agencies with a broad array of legal disputes, from basic torts to complex federal regulatory and contractual problems. He also prosecuted a variety of criminal cases, involving matters such as drug trafficking, environmental crime, extortion, tax violations, and fraud.
  - Judge Jordan has written and spoken on a number of legal issues, predominantly on intellectual property and patent law.
- Judge Jordan has impeccable academic credentials and professional training.
  - Judge Jordan served as a law clerk to the Honorable James L. Latchum of the United States District Court for the District of Delaware.
  - He attended Brigham Young University and graduated in 1981 with high honors and a B.A. in Economics.
  - Judge Jordan received his J.D. cum laude from the Georgetown University Law Center in 1984.
- Judge Jordan has been an active member of his community in both legal and non-legal capacities.
  - Judge Jordan is a member of the Board of Directors of the Community Legal Aid Society in Wilmington, Delaware, and from 1998 to 2002 was a member of the Delaware Bar Association's Standing Committee on the Provision of Legal Services to Low Income People.
  - Judge Jordan is active in a variety of non-legal organizations, including his

**RELATED LINKS**

June 29, 2006
Press Briefing by Tony Snow

June 28, 2006
Nominations Sent to the Senate

July 30, 2002
Nominations Sent to the Senate

July 25, 2002
Nominations Sent to the Senate

July 25, 2002
Nominations to Federal Judiciary

« Back to Nominees



WHITE HOUSE
FEATURES

learn more

church and local civic organizations, and has regularly volunteered at a local group home for the disabled.

O  During 1977 to 1978, Judge Jordan served in Japan as a full missionary with the Church of Jesus Christ of Latter-Day Saints.

✉ **Email This Page**

President | Vice President | First Lady | Mrs. Cheney | News & Policies |
History & Tours | Kids | Your Government | Appointments | Jobs | Contact | Text only

Accessibility | Search | Privacy Policy | Help

1
2

**UNITED STATES DISTRICT COURT**
**FOR THE FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

3
4
5
6
7
8
9
10
11
12

USA VIDEO TECHNOLOGY                    )
CORPORATION,                            )
                                        )
              Plaintiff(s),             )
                                        )
       v.                               )
                                        )
TIME WARNER INC.; COX                   )    Case No.:  2-06CV-239(RHC)
COMMUNICATIONS, INC.; CHARTER           )
COMMUNICATIONS, INC.; COMCAST           )    JURY TRIAL DEMANDED
CABLE COMMUNICATIONS, LLC;              )
COMCAST OF RICHARDSON, LP;              )
COMCAST OF PLANO, LP; COMCAST OF        )
DALLAS, LP,                             )
                                        )
              Defendant(s).             )
                                        )
                                        )
_____ )

13
14
15

**[PROPOSED] ORDER GRANTING THE COMCAST DEFENDANTS' MOTION**
**TO TRANSFER TO THE DISTRICT OF DELAWARE PURSUANT TO 28 U.S.C. 1404(a)**
**OR, IN THE ALTERNATIVE, TO STAY THE ACTION**

16
17
18
19

On this day came to be heard The Comcast Defendants' Motion to Transfer to the District of Delaware Pursuant to 28 U.S.C. 1404(a) Or, In the Alternative, To Stay the Action.  After considering the motion, the response, the evidence submitted, and the issues involved, the Court hereby GRANTS the motion to transfer and denies the motion to stay as moot.

20
21

It is hereby ORDERED that this action, in its entirety, be immediately transferred to the United States District Court for the District of Delaware.

22
23
24
25
26
27
28

1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

FILED-CLERK
US DISTRICT COURT

06 AUG 10  PM 2:48

TX EASTERN-MARSHALL

BY_____

| | |
|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, §<br>§<br>§<br>Plaintiff, §<br>§<br>v. §<br>§<br>TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>Defendants. §<br>§<br>§ | CASE NO. 2-06CV-239-RHC<br><br>**APPLICATION TO APPEAR PRO HAC VICE**<br><br>Judge: The Honorable Ron Clark |

1.    This application is being made for the following: Case No. 2-06cv-239,

Style: USA VIDEO TECHNOLOGY CORPORATION v TIME WARNER INC.; COX

COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE

COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP;

COMCAST OF DALLAS, LP

2.    Applicant is representing the following parties: DEFENDANTS, TIME WARNER INC.;

COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST

CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF

PLANO, LP; COMCAST OF DALLAS, LP.

3.    Applicant was admitted to practice in California on June 4, 2001.

4.    Applicant is in good standing and is otherwise eligible to practice law before this court.

5.    Applicant is not currently suspended or disbarred in any other court.

6.    Applicant has not had an application for admission to practice before another court denied.

7.    Applicant has not ever had the privilege to practice before another court suspended.

8.  Applicant has not been disciplined by a court or Bar Association or committee thereof that would reflect unfavorably upon applicant's conduct, competency or fitness as a member of the Bar.

9.  Describe in detail on a separate page any charges, arrests or convictions for criminal offenses(s) filed against you. Omit minor traffic offenses.

10.  There are no pending grievances or criminal matters pending against the applicant.

11.  Applicant has been admitted to practice in the following courts: Delaware; D. Delaware; U.S. Court of Appeal 3rd Circuit; U.S. Court of Appeal 10th Circuit; New York; S.D. New York; U.S. Supreme Court; U.S. Court of Appeal Federal Cir.; E.D. Michigan; N.D. of California; U.S. Court of Appeal 9th Circuit; D. Col.; U.S. Court of Appeal 2nd Circuit; C.D. of California.

12.  Applicant has read and will comply with the Local Rules of the Eastern District of Texas, including Rule AT-3, the "Standards of Practice to be Observed by Attorneys."

13.  Applicant has included the requisite $25 fee (see Local Rule AT-1(d)).

14.  Applicant understands the he is being admitted for the limited purpose of appearing in the case specified above only.

**Application Oath:**

I, Matthew B. Lehr do solemnly swear that the above information is true; that I will discharge the duties of attorney and counselor of this court faithfully; that I will demean myself uprightly under the law and the highest ethics or our profession; and that I will support and defend the Constitution of the United States.

Dated: August 10, 2006

Signature

Name (please print) Matthew B. Lehr

State Bar Number California 213139

Firm Name: Davis Polk & Wardwell

Address/P.O. Box: 1600 El Camino Real

City/State/Zip: Menlo Park, CA 94025

Telephone #: (650) 752-2000

Fax #: (650) 752-2111

E-mail Address: matthew.lehr@dpw.com

APPLICATION TO APPEAR PRO HAC VICE, CASE NO. 2-06CV-239

Applicant is authorized to enter an appearance as counsel for the parties listed above. This
application has been approved for the court this $10$ day of _____, 2006.

David J. Maland, Clerk

U.S. District Court, Eastern District of Texas

By _____

APPLICATION TO APPEAR PRO HAC VICE, CASE NO. 2-06CV-239

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

FILED-CLERK
US DISTRICT COURT

06 AUG 10  PM 2: 48

TX EASTERN-MARSHALL

BY_____

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | § | |
| | § | |
| | § | |
| Plaintiff, | § | CASE NO. 2-06CV-239-RHC |
| | § | |
| v. | § | |
| | § | **APPLICATION TO APPEAR** |
| TIME WARNER INC.; COX | § | **PRO HAC VICE** |
| COMMUNICATIONS, INC.; CHARTER | § | |
| COMMUNICATIONS, INC.; COMCAST | § | Judge:  The Honorable Ron Clark |
| CABLE COMMUNICATIONS, LLC; | § | |
| COMCAST OF RICHARDSON, LP; | § | |
| COMCAST OF PLANO, LP; COMCAST OF | § | |
| DALLAS, LP, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

1.      This application is being made for the following:  Case No. 2-06cv-239,

Style: USA VIDEO TECHNOLOGY CORPORATION v. TIME WARNER INC.; COX

COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE

COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP;

COMCAST OF DALLAS, LP

2.      Applicant is representing the following parties:  DEFENDANTS, TIME WARNER INC.;

COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST

CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF

PLANO, LP; COMCAST OF DALLAS, LP.

3.      Applicant was admitted to practice in California on December 5, 2005.

4.      Applicant is in good standing and is otherwise eligible to practice law before this court.

5.      Applicant is not currently suspended or disbarred in any other court.

6.      Applicant has not had an application for admission to practice before another court denied.

7.      Applicant has not ever had the privilege to practice before another court suspended.

APPLICATION TO APPEAR PRO HAC VICE, CASE NO. 2-06CV-239

8.    Applicant has not been disciplined by a court or Bar Association or committee thereof that would reflect unfavorably upon applicant's conduct, competency or fitness as a member of the Bar.

9.    Describe in detail on a separate page any charges, arrests or convictions for criminal offenses(s) filed against you. Omit minor traffic offenses.

10.    There are no pending grievances or criminal matters pending against the applicant.

11.    Applicant has been admitted to practice in the following courts: California, N.D. California.

12.    Applicant has read and will comply with the Local Rules of the Eastern District of Texas, including Rule AT-3, the "Standards of Practice to be Observed by Attorneys."

13.    Applicant has included the requisite $25 fee (see Local Rule AT-1(d)).

14.    Applicant understands the he is being admitted for the limited purpose of appearing in the case specified above only

**Application Oath:**

I, Yiping Liao do solemnly swear that the above information is true; that I will discharge the duties of attorney and counselor of this court faithfully; that I will demean myself uprightly under the law and the highest ethics or our profession; and that I will support and defend the Constitution of the United States.

Dated: August 10, 2006

Signature _____

Name (please print) Yiping Liao

State Bar Number California 238319

Firm Name: Davis Polk & Wardwell

Address/P.O. Box: 1600 El Camino Real

City/State/Zip: Menlo Park, CA 94025

Telephone #: (650) 752-2000

Fax #: (650) 752-2111

E-mail Address: yiping.liao@dpw.com

APPLICATION TO APPEAR PRO HAC VICE, CASE NO. 2-06CV-239

1  Applicant is authorized to enter an appearance as counsel for the parties listed above.  This

2  application has been approved for the court this _10_ day of _Aug_____, 2006

3

4                                    David J. Maland, Clerk

5                                    U.S. District Court, Eastern District of Texas

6

7                                    By _____

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLICATION TO APPEAR PRO HAC VICE, CASE NO. 2-06CV-239

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

FILED-CLERK
S. DISTRICT COURT

06 AUG 10 PM 2:48

TX EASTERN-MARSHALL

BY_____

|  |  |  |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | § § § | |
| Plaintiff, | § § | CASE NO. 2-06CV-239-RHC |
| v. | § § | |
| TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | § § § § § § § § § | **APPLICATION TO APPEAR PRO HAC VICE**<br><br>Judge: The Honorable Ron Clark |
| Defendants. | § § § § | |

1.    This application is being made for the following: Case No. 2-06cv-239,

Style: USA VIDEO TECHNOLOGY CORPORATION v. TIME WARNER INC.; COX

COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE

COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP;

COMCAST OF DALLAS, LP

2.    Applicant is representing the following parties: DEFENDANTS, TIME WARNER INC.;

COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST

CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF

PLANO, LP; COMCAST OF DALLAS, LP.

3.    Applicant was admitted to practice in California on November 19, 2002.

4.    Applicant is in good standing and is otherwise eligible to practice law before this court.

5.    Applicant is not currently suspended or disbarred in any other court.

6.    Applicant has not had an application for admission to practice before another court denied.

7.    Applicant has not ever had the privilege to practice before another court suspended.

APPLICATION TO APPEAR PRO HAC VICE, CASE NO. 2-06CV-239

8.    Applicant has not been disciplined by a court or Bar Association or committee thereof that would reflect unfavorably upon applicant's conduct, competency or fitness as a member of the Bar.

9.    Describe in detail on a separate page any charges, arrests or convictions for criminal offenses(s) filed against you. Omit minor traffic offenses.

10.    There are no pending grievances or criminal matters pending against the applicant.

11.    Applicant has been admitted to practice in the following courts: California; N.D. California; E.D. California; C.D. California; S.D. California.

12.    Applicant has read and will comply with the Local Rules of the Eastern District of Texas, including Rule AT-3, the "Standards of Practice to be Observed by Attorneys."

13.    Applicant has included the requisite $25 fee (see Local Rule AT-1(d)).

14.    Applicant understands the he is being admitted for the limited purpose of appearing in the case specified above only.

**Application Oath:**

I, Duane Nash do solemnly swear that the above information is true; that I will discharge the duties of attorney and counselor of this court faithfully; that I will demean myself uprightly under the law and the highest ethics or our profession; and that I will support and defend the Constitution of the United States.

Dated: August 10, 2006

Signature _Duane Nash_

Name (please print) Duane Nash

State Bar Number California 220785

Firm Name:  Davis Polk & Wardwell

Address/P.O. Box:  1600 El Camino Real

City/State/Zip:  Menlo Park, CA  94025

Telephone #:  (650) 752-2000

Fax #:  (650) 752-2111

E-mail Address:  duane.nash@dpw.com

APPLICATION TO APPEAR PRO HAC VICE, CASE NO  2-06CV-239

1  Applicant is authorized to enter an appearance as counsel for the parties listed above. This

2  application has been approved for the court this _10_ day of _____, 2006.

3

4                                    David J. Maland, Clerk

5                                    U.S. District Court, Eastern District of Texas

6

7                                    By _____

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLICATION TO APPEAR PRO HAC VICE, CASE NO. 2-06CV-239

Case 1:06-cv-00737-SLR    Document 76-27    Filed 12/05/2006    Page 1 of 3
Case 2:06-cv-00239-RHC    Document 22    Filed 08/10/2006    Page 1 of 79
2-1-1779

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

FILED-CLERK
DISTRICT COURT

06 AUG 10  PM 2: 48

TX EASTERN-MARSHALL

| | |
|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | § <br> § <br> § |
| Plaintiff, | § <br> § <br> § CASE NO. 2-06CV-239-RHC |
| v. | § <br> § |
| TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | § **APPLICATION TO APPEAR** <br> § **PRO HAC VICE** <br> § <br> § Judge: The Honorable Ron Clark <br> § <br> § <br> § |
| Defendants. | § <br> § <br> § |

1.    This application is being made for the following: Case No. 2-06cv-239,

Style: USA VIDEO TECHNOLOGY CORPORATION v. TIME WARNER INC.; COX

COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE

COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP;

COMCAST OF DALLAS, LP

2.    Applicant is representing the following parties: DEFENDANTS, TIME WARNER INC.;

COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST

CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF

PLANO, LP; COMCAST OF DALLAS, LP.

3.    Applicant was admitted to practice in California on August 5, 2005

4.    Applicant is in good standing and is otherwise eligible to practice law before this court.

5.    Applicant is not currently suspended or disbarred in any other court

6.    Applicant has not had an application for admission to practice before another court denied.

7.    Applicant has not ever had the privilege to practice before another court suspended.

APPLICATION TO APPEAR PRO HAC VICE, CASE NO. 2-06CV-239

8.    Applicant has not been disciplined by a court or Bar Association or committee thereof that would reflect unfavorably upon applicant's conduct, competency or fitness as a member of the Bar.

9.    Describe in detail on a separate page any charges, arrests or convictions for criminal offenses(s) filed against you. Omit minor traffic offenses.

10.    There are no pending grievances or criminal matters pending against the applicant.

11.    Applicant has been admitted to practice in the following courts: S.D. New York; E.D. New York; U.S. Patent & Trademark Office; California.

12.    Applicant has read and will comply with the Local Rules of the Eastern District of Texas, including Rule AT-3, the "Standards of Practice to be Observed by Attorneys."

13.    Applicant has included the requisite $25 fee (see Local Rule AT-1(d)).

14.    Applicant understands the he is being admitted for the limited purpose of appearing in the case specified above only.

**Application Oath:**

I, Suong Nguyen do solemnly swear that the above information is true; that I will discharge the duties of attorney and counselor of this court faithfully; that I will demean myself uprightly under the law and the highest ethics or our profession; and that I will support and defend the Constitution of the United States.

Dated: August 10, 2006

Signature _____

Name (please print) Suong Nguyen
State Bar Number California 237557
Firm Name: Davis Polk & Wardwell
Address/P.O. Box: 1600 El Camino Real
City/State/Zip: Menlo Park, CA 94025
Telephone #: (650) 752-2000
Fax #: (650) 752-2111
E-mail Address: suong.nguyen@dpw.com

APPLICATION TO APPEAR PRO HAC VICE, CASE NO. 2-06CV-239

1  Applicant is authorized to enter an appearance as counsel for the parties listed above. This

2  application has been approved for the court this _10_ day of _Aug_____, 2006.

3

4                             David J. Maland, Clerk

5                             U.S. District Court, Eastern District of Texas

6

7                             By _____

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLICATION TO APPEAR PRO HAC VICE, CASE NO. 2-06CV-239

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, §<br>§<br>§<br>Plaintiff, §<br>§<br>v. §<br>§<br>TIME WARNER INC.; COX §<br>COMMUNICATIONS, INC.; CHARTER §<br>COMMUNICATIONS, INC.; COMCAST §<br>CABLE COMMUNICATIONS, LLC; §<br>COMCAST OF RICHARDSON, LP; §<br>COMCAST OF PLANO, LP; COMCAST OF §<br>DALLAS, LP, §<br>§<br>Defendants. §<br>§<br>§<br>§ | CASE NO. 2-06CV-239-RHC<br><br>**CORRECTED APPLICATION TO APPEAR PRO HAC VICE**<br><br>Judge:  The Honorable Ron Clark |

1.     This application is being made for the following:  Case No. 2-06cv-239,

Style: USA VIDEO TECHNOLOGY CORPORATION v. TIME WARNER INC.; COX

COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE

COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP;

COMCAST OF DALLAS, LP

2.     Applicant is representing the following parties:  DEFENDANTS, COMCAST CABLE

COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP;

COMCAST OF DALLAS, LP.

3.     Applicant was admitted to practice in California on June 4, 2001.

4.     Applicant is in good standing and is otherwise eligible to practice law before this court.

5.     Applicant is not currently suspended or disbarred in any other court.

6.     Applicant has not had an application for admission to practice before another court denied.

7.     Applicant has not ever had the privilege to practice before another court suspended.

8.     Applicant has not been disciplined by a court or Bar Association or committee thereof that

CORRECTED APPLICATION TO APPEAR PRO HAC VICE, CASE NO. 2-06CV-239

1    would reflect unfavorably upon applicant's conduct, competency or fitness as a member of the Bar.

2    9.      Describe in detail on a separate page any charges, arrests or convictions for criminal

3    offenses(s) filed against you.  Omit minor traffic offenses.

4    10.     There are no pending grievances or criminal matters pending against the applicant.

5    11.     Applicant has been admitted to practice in the following courts:  Delaware;  D. Delaware;

6    U.S. Court of Appeal 3rd Circuit; U.S. Court of Appeal 10th Circuit;  New York; S.D. New York;

7    U.S. Supreme Court; U.S. Court of Appeal Federal Cir.;  E.D. Michigan; N. D. of California; U.S.

8    Court of Appeal 9th Circuit; D. Col.; U.S. Court of Appeal 2nd Circuit; C. D. of California.

9    12.     Applicant has read and will comply with the Local Rules of the Eastern District of Texas,

10   including Rule AT-3, the "Standards of Practice to be Observed by Attorneys."

11   13.     Applicant has included the requisite $25 fee (see Local Rule AT-1(d)).

12   14.     Applicant understands the he is being admitted for the limited purpose of appearing in the

13   case specified above only.

14   **Application Oath:**

15          I, Matthew B. Lehr do solemnly swear that the above information is true; that I will

16   discharge the duties of attorney and counselor of this court faithfully; that I will demean myself

17   uprightly under the law and the highest ethics or our profession; and that I will support and defend

18   the Constitution of the United States.

19   Dated: <u>August 11, 2006</u>          Signature _Matthew B. Lehr_ /s/

20                                         Name (please print) <u>Matthew B. Lehr</u>

21                                         State Bar Number <u>California 213139</u>
                                           Firm Name:  <u>Davis Polk & Wardwell</u>
22                                         Address/P.O. Box:  <u>1600 El Camino Real</u>

23                                         City/State/Zip:  <u>Menlo Park, CA  94025</u>

24                                         Telephone #:  <u>(650) 752-2000</u>

25                                         Fax #:  <u>(650) 752-2111</u>
                                           E-mail Address:  <u>matthew.lehr@dpw.com</u>
26

27

28

CORRECTED APPLICATION TO APPEAR PRO HAC VICE, CASE NO. 2-06CV-239

1    Applicant is authorized to enter an appearance as counsel for the parties listed above.  This

2    application has been approved for the court this _____ day of _____, 2006.

3

4                                    David J. Maland, Clerk

5                                    U.S. District Court, Eastern District of Texas

6

7                                    By _____

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, § § § Plaintiff, § § v. § § TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, § § § § § § § § § § § Defendants. § § § | CASE NO. 2-06CV-239-RHC **CORRECTED APPLICATION TO APPEAR PRO HAC VICE** Judge: The Honorable Ron Clark |

1.      This application is being made for the following:  Case No. 2-06cv-239,

Style: USA VIDEO TECHNOLOGY CORPORATION v. TIME WARNER INC.; COX

COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE

COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP;

COMCAST OF DALLAS, LP

2.      Applicant is representing the following parties:  DEFENDANTS, COMCAST CABLE

COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP;

COMCAST OF DALLAS, LP.

3.      Applicant was admitted to practice in California on August 5, 2005.

4.      Applicant is in good standing and is otherwise eligible to practice law before this court.

5.      Applicant is not currently suspended or disbarred in any other court.

6.      Applicant has not had an application for admission to practice before another court denied.

7.      Applicant has not ever had the privilege to practice before another court suspended.

8.      Applicant has not been disciplined by a court or Bar Association or committee thereof that

CORRECTED APPLICATION TO APPEAR PRO HAC VICE, CASE NO. 2-06CV-239

would reflect unfavorably upon applicant's conduct, competency or fitness as a member of the Bar.

9.     Describe in detail on a separate page any charges, arrests or convictions for criminal

offenses(s) filed against you.  Omit minor traffic offenses.

10.     There are no pending grievances or criminal matters pending against the applicant.

11.     Applicant has been admitted to practice in the following courts:  S.D. New York; E.D. New

York; U.S. Patent & Trademark Office; California.

12.     Applicant has read and will comply with the Local Rules of the Eastern District of Texas,

including Rule AT-3, the "Standards of Practice to be Observed by Attorneys."

13.     Applicant has included the requisite $25 fee (see Local Rule AT-1(d)).

14.     Applicant understands the he is being admitted for the limited purpose of appearing in the

case specified above only.

**Application Oath:**

     I, Suong Nguyen do solemnly swear that the above information is true; that I will discharge

the duties of attorney and counselor of this court faithfully; that I will demean myself uprightly

under the law and the highest ethics or our profession; and that I will support and defend the

Constitution of the United States.

Dated: <u>August 11, 2006</u>                    Signature _____

                                        Name (please print) <u>Suong Nguyen</u>
                                        State Bar Number <u>California 237557</u>
                                        Firm Name:  <u>Davis Polk & Wardwell</u>
                                        Address/P.O. Box:  <u>1600 El Camino Real</u>
                                        City/State/Zip:  <u>Menlo Park, CA  94025</u>
                                        Telephone #:  <u>(650) 752-2000</u>
                                        Fax #:  <u>(650) 752-2111</u>
                                        E-mail Address:  <u>suong.nguyen@dpw.com</u>

CORRECTED APPLICATION TO APPEAR PRO HAC VICE, CASE NO. 2-06CV-239

1   Applicant is authorized to enter an appearance as counsel for the parties listed above.  This

2   application has been approved for the court this ____ day of _____, 2006.

3

4                    David J. Maland, Clerk

5                    U.S. District Court, Eastern District of Texas

6

7                    By _____

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CORRECTED APPLICATION TO APPEAR PRO HAC VICE, CASE NO. 2-06CV-239

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, §<br>§<br>§ Plaintiff, §<br>§<br>v. §<br>§<br>TIME WARNER INC.; COX §<br>COMMUNICATIONS, INC.; CHARTER §<br>COMMUNICATIONS, INC.; COMCAST §<br>CABLE COMMUNICATIONS, LLC; §<br>COMCAST OF RICHARDSON, LP; §<br>COMCAST OF PLANO, LP; COMCAST OF §<br>DALLAS, LP, §<br>§<br>Defendants. §<br>§<br>§ | CASE NO. 2-06CV-239-RHC<br><br>**CORRECTED APPLICATION TO APPEAR PRO HAC VICE**<br><br>Judge: The Honorable Ron Clark |

1.       This application is being made for the following:  Case No. 2-06cv-239,

Style: USA VIDEO TECHNOLOGY CORPORATION v. TIME WARNER INC.; COX

COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE

COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP;

COMCAST OF DALLAS, LP

2.       Applicant is representing the following parties:  DEFENDANTS, COMCAST CABLE

COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP;

COMCAST OF DALLAS, LP.

3.       Applicant was admitted to practice in California on November 19, 2002.

4.       Applicant is in good standing and is otherwise eligible to practice law before this court.

5.       Applicant is not currently suspended or disbarred in any other court.

6.       Applicant has not had an application for admission to practice before another court denied.

7.       Applicant has not ever had the privilege to practice before another court suspended.

8.       Applicant has not been disciplined by a court or Bar Association or committee thereof that

CORRECTED APPLICATION TO APPEAR PRO HAC VICE, CASE NO. 2-06CV-239

would reflect unfavorably upon applicant's conduct, competency or fitness as a member of the Bar.

9.      Describe in detail on a separate page any charges, arrests or convictions for criminal offenses(s) filed against you.  Omit minor traffic offenses.

10.     There are no pending grievances or criminal matters pending against the applicant.

11.     Applicant has been admitted to practice in the following courts: California; N.D. California; E.D. California; C.D. California; S.D. California .

12.     Applicant has read and will comply with the Local Rules of the Eastern District of Texas, including Rule AT-3, the "Standards of Practice to be Observed by Attorneys."

13.     Applicant has included the requisite $25 fee (see Local Rule AT-1(d)).

14.     Applicant understands the he is being admitted for the limited purpose of appearing in the case specified above only.

**Application Oath:**

I, Duane Nash do solemnly swear that the above information is true; that I will discharge the duties of attorney and counselor of this court faithfully; that I will demean myself uprightly under the law and the highest ethics or our profession; and that I will support and defend the Constitution of the United States.

Dated: August 11, 2006

Signature _Duane N Nash_

Name (please print) Duane Nash
State Bar Number California 220785
Firm Name:  Davis Polk & Wardwell
Address/P.O. Box:  1600 El Camino Real
City/State/Zip:  Menlo Park, CA  94025
Telephone #:  (650) 752-2000
Fax #:  (650) 752-2111
E-mail Address:  duane.nash@dpw.com

CORRECTED APPLICATION TO APPEAR PRO HAC VICE, CASE NO. 2-06CV-239

1  Applicant is authorized to enter an appearance as counsel for the parties listed above.  This

2  application has been approved for the court this _____ day of _____, 2006.

3

4                                            David J. Maland, Clerk

5                                            U.S. District Court, Eastern District of Texas

6

7                                            By _____

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CORRECTED APPLICATION TO APPEAR PRO HAC VICE, CASE NO. 2-06CV-239

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| USA VIDEO TECHNOLOGY CORPORATION,<br><br>    Plaintiff,<br><br>  v.<br><br>TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP,<br><br>    Defendants. | § § § § § § § § § § § § § § § § § § § |

CASE NO. 2-06CV-239-RHC

**CORRECTED APPLICATION TO APPEAR PRO HAC VICE**

Judge:  The Honorable Ron Clark

1. This application is being made for the following:  Case No. 2-06cv-239,

Style: USA VIDEO TECHNOLOGY CORPORATION v. TIME WARNER INC.; COX

COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE

COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP;

COMCAST OF DALLAS, LP

2. Applicant is representing the following parties:  DEFENDANTS, COMCAST CABLE

COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP;

COMCAST OF DALLAS, LP.

3. Applicant was admitted to practice in California on December 5, 2005.

4. Applicant is in good standing and is otherwise eligible to practice law before this court.

5. Applicant is not currently suspended or disbarred in any other court.

6. Applicant has not had an application for admission to practice before another court denied.

7. Applicant has not ever had the privilege to practice before another court suspended.

8. Applicant has not been disciplined by a court or Bar Association or committee thereof that

CORRECTED APPLICATION TO APPEAR PRO HAC VICE, CASE NO. 2-06CV-239

1  would reflect unfavorably upon applicant's conduct, competency or fitness as a member of the Bar.

2  9.      Describe in detail on a separate page any charges, arrests or convictions for criminal

3  offenses(s) filed against you.  Omit minor traffic offenses.

4  10.     There are no pending grievances or criminal matters pending against the applicant.

5  11.     Applicant has been admitted to practice in the following courts:  California, N.D. California.

6  12.     Applicant has read and will comply with the Local Rules of the Eastern District of Texas,

7  including Rule AT-3, the "Standards of Practice to be Observed by Attorneys."

8  13.     Applicant has included the requisite $25 fee (see Local Rule AT-1(d)).

9  14.     Applicant understands the he is being admitted for the limited purpose of appearing in the

10  case specified above only.

11  **Application Oath:**

12          I, Yiping Liao do solemnly swear that the above information is true; that I will discharge the

13  duties of attorney and counselor of this court faithfully; that I will demean myself uprightly under

14  the law and the highest ethics or our profession; and that I will support and defend the Constitution

15  of the United States.

16  Dated: <u>August 11, 2006</u>

Signature _____

Name (please print) <u>Yiping Liao</u>

State Bar Number <u>California 238319</u>

Firm Name:  <u>Davis Polk & Wardwell</u>

Address/P.O. Box:  <u>1600 El Camino Real</u>

City/State/Zip:  <u>Menlo Park, CA  94025</u>

Telephone #:  <u>(650) 752-2000</u>

Fax #:  <u>(650) 752-2111</u>

E-mail Address:  <u>yiping.liao@dpw.com</u>

17

18

19

20

21

22

23

24

25

26

27

28

CORRECTED APPLICATION TO APPEAR PRO HAC VICE, CASE NO. 2-06CV-239

1  Applicant is authorized to enter an appearance as counsel for the parties listed above.  This

2  application has been approved for the court this _____ day of _____, 2006.

3

4                                    David J. Maland, Clerk

5                                    U.S. District Court, Eastern District of Texas

6

7                                    By _____

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CORRECTED APPLICATION TO APPEAR PRO HAC VICE, CASE NO. 2-06CV-239

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | § § § | |
| Plaintiff | § § | |
| v | § § | CASE NO. 2:06CV239(DF) |
| TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | § § § § § § § § | JURY TRIAL DEMANDED |
| Defendants | § | |

**DEFENDANTS' COMCAST CABLE COMMUNICATIONS, LLC, COMCAST OF RICHARDSON, LP, COMCAST OF PLANO, LP AND COMCAST OF DALLAS LP'S UNOPPOSED MOTION TO ENLARGE TIME TO ANSWER OR OTHERWISE RESPOND TO USA VIDEO TECHNOLOGY CORPORATION'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

1. Defendants' Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP hereby move the Court to enlarge the time within which Defendants Cox Communications, Inc., Charter Communications, Inc., Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP are required to move, answer, or otherwise respond to Plaintiff USA Video Technology Corporation's Original Complaint up to and including August 21, 2006.

2.  Good cause exists for the granting of this motion and the motion is made for the reason and on the grounds that the additional time is necessary in order to allow counsel to adequately confer with their clients and respond appropriately to USA Video Technology Corporation's Original Complaint.

WHEREFORE, Defendants' Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP hereby move the Court to enlarge the time within which Defendants Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP pray respectfully that the time to answer or otherwise move or respond to USA Video Technology Corporation's Original Complaint be enlarged up to and including August 21, 2006.

Respectfully submitted,

GILLAM & SMITH, L.L.P.

_____/s/_____
Melissa R. Smith
Texas State Bar No.  24001351
Harry L. "Gil" Gillam, Jr.
Texas State Bar No. 07921800
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, Texas  75670
Telephone:  (903) 934-8450
Facsimile:   (903) 934-9257

**Lead Attorney for Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP**

CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP and counsel for USA Video Technology Corporation conferred and USA Video Technology Corporation does not oppose this motion.

_____/s/_____
Melissa R. Smith

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who have consented to electronic service.  Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 14th day of August 2006.

 /s/_____
Melissa R. Smith

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | § § § | |
| Plaintiff | § § | |
| v | § § | CASE NO. 2:06CV239(DF) |
| TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | § § § § § § § § | JURY TRIAL DEMANDED |
| Defendants | § | |

**ORDER GRANTING DEFENDANTS' COMCAST CABLE COMMUNICATIONS, LLC, COMCAST OF RICHARDSON, LP, COMCAST OF PLANO, LP AND COMCAST OF DALLAS LP'S UNOPPOSED MOTION TO ENLARGE TIME TO ANSWER OR OTHERWISE RESPOND TO USA VIDEO TECHNOLOGY CORPORATION'S ORIGINAL COMPLAINT**

On this date came on for consideration, Defendants', Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP Unopposed Motion to Enlarge Time to Answer or Otherwise Respond to USA Video Technology Corporations Original Complaint, and the Court being of the opinion that same should be GRANTED, it is therefore,

ORDERED that Defendants', Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP, be and hereby are, granted an extension of time within which to respond to USA Video Technology Corporations Original Complaint up to and including August 21, 2006.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | ) ) ) |
| Plaintiff | ) ) |
| v. | ) ) |  Case No. 2-06CV-239 |
| TIME WARNER INC; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; and COMCAST OF DALLAS, LP, | ) ) ) ) ) ) ) ) |
| Defendants | ) |

JOINDER IN MOTION TO TRANSFER BY
DEFENDANT CHARTER COMMUNICATIONS, INC.

Defendant Charter Communications, Inc. ("Charter") hereby joins in The Comcast

Defendants' Motion to Transfer to the District of Delaware Pursuant to 28 U.S.C. 1404(a) or, in

the Alternative, to Stay the Action, and Brief in Support Thereof ("the Comcast Motion" filed at

Docket #18).  In further support of the Motion, Charter states that Charter is incorporated in the

state of Delaware and does not have its principal place of business within the Eastern District of

Texas, the state of Texas, or any state neighboring the state of Texas.  *See* Complaint and Answer

and Counterclaims of Charter Communications, Inc.

In addition, transfer of this case to Delaware would serve the interests of justice as it

would allow litigation in a forum where the Court has personal jurisdiction over each of the

parties thereto.  Upon information and belief, defendant Cox Communications, Inc. has filed, or

is planning to file, a Motion to Dismiss for Lack of Personal Jurisdiction or in the Alternative to

Transfer Venue to Delaware ("Cox Motion").  If the Cox Motion is successful, USA Video would

be unable to proceed with this case in this forum against all of the named parties. Rather than create this untenable situation, it is in the interests of justice to transfer this case to a forum where personal jurisdiction exists for all parties.

Accordingly, Charter Communications, Inc. joins Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP and Comcast of Dallas, LP in their Motion to Transfer to the District of Delaware or, in the Alternative, to Stay the Action.

Respectfully submitted,

GILLAM & SMITH, L.L.P.

_____/s/_____
Melissa R. Smith
Texas State Bar No. 24001351
Harry L. "Gil" Gillam, Jr.
Texas State Bar No. 07921800
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

**Attorney for Charter Communications, Inc.**

Of Counsel for Charter
Communications, Inc.:
Dean L. Franklin
Nicholas B. Clifford Jr.
Matt A. Rosenberg
THOMPSON COBURN LLP
One US Bank Plaza
St. Louis, Missouri 63101
Telephone: (314) 552-6000
Facsimile: (314) 552-7000

**CERTIFICATE OF CONFERENCE**

The undersigned hereby certifies that counsel for Charter Communications, Inc. and counsel for USA Video Technology Corporation conferred in a good faith attempt to resolve this matter without Court intervention and USA Video Technology Corporation opposes this motion.

_____/s/_____
Melissa R. Smith


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 14th day of August 2006.

_/s/_____
Melissa R. Smith

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | § § § | |
| Plaintiff | § § | |
| v | § § | CASE NO. 2:06CV239(DF) |
| TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | § § § § § § § § § | JURY TRIAL DEMANDED |
| Defendants | § | |

**DEFENDANT CHARTER COMMUNICATIONS, INC.'S UNOPPOSED MOTION
TO ENLARGE TIME TO ANSWER OR OTHERWISE RESPOND TO USA
VIDEO TECHNOLOGY CORPORATION'S ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

1.   Defendant Charter Communications, Inc. hereby moves the Court to enlarge the time within which Defendant Charter Communications, Inc. is required to move, answer, or otherwise respond to Plaintiff USA Video Technology Corporation's Original Complaint up to and including August 21, 2006.

2.   Good cause exists for the granting of this motion and the motion is made for the reason and on the grounds that the additional time is necessary in order to allow counsel to adequately confer with their clients and respond appropriately to USA Video Technology Corporation's Original Complaint.

WHEREFORE, Defendant Charter Communications, Inc. hereby moves the Court

to enlarge the time within which Defendant Charter Communications, Inc. prays

respectfully that the time to answer or otherwise move or respond to USA Video

Technology Corporation's Original Complaint be enlarged up to and including August

21, 2006.

Respectfully submitted,

GILLAM & SMITH, L.L.P.

_____/s/_____
Melissa R. Smith
Texas State Bar No. 24001351
Harry L. "Gil" Gillam, Jr.
Texas State Bar No. 07921800
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

**Lead Attorney**

CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Charter Communications, Inc.
and counsel for USA Video Technology Corporation conferred and USA Video
Technology Corporation does not oppose this motion.

_____/s/_____
Melissa R. Smith

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 14th day of August 2006.

_/s/_____

Melissa R. Smith

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | § § § | |
| Plaintiff | § § | |
| v | § § | CASE NO. 2:06CV239(DF) |
| TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | § § § § § § § § § | JURY TRIAL DEMANDED |
| Defendants | § | |

**ORDER GRANTING DEFENDANT CHARTER COMMUNICATIONS, INC.'S UNOPPOSED MOTION TO ENLARGE TIME TO ANSWER OR OTHERWISE RESPOND TO USA VIDEO TECHNOLOGY CORPORATION'S ORIGINAL COMPLAINT**

On this date came on for consideration, Defendant Charter Communications, Inc.'s Unopposed Motion to Enlarge Time to Answer or Otherwise Respond to USA Video Technology Corporations Original Complaint, and the Court being of the opinion that same should be GRANTED, it is therefore,

ORDERED that Defendant Charter Communications, Inc. be and hereby is, granted an extension of time within which to respond to USA Video Technology Corporations Original Complaint up to and including August 21, 2006.

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORP., | ) ) ) | |
| Plaintiff, | ) ) | Case No.  2-06cv-239 |
| v. | ) ) | Honorable Ron Clark |
| TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS INC.) COMCAST CABLE; COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP | ) ) ) ) ) ) ) ) ) | JURY |
| Defendants. | ) ) | |
| _____ | ) | |

### COX COMMUNICATIONS, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR IN THE ALTERNATIVE, TO TRANSFER VENUE TO THE DISTRICT OF DELAWARE AND BRIEF IN SUPPORT THEREOF

OF COUNSEL:
Matthew B. Lehr
Suong T. Nguyen
Duane Nash
Yiping Liao
DAVIS POLK & WARDWELL
1600 El Camino Real
Menlo Park CA  94025
Telephone:  650-752-2000
Facsimile:  650-752-2111

Mitchell G. Stockwell
Lead Attorney
Georgia Bar No.
KILPATRICK STOCKTON LLP
1100 Peachtree St NE
Suite 2800
Atlanta GA  30309-4530
Telephone:  404-815-6214
Facsimile:   404-815-6555

Michael Edwin Jones
POTTER MINTON PC
110 N. College, Suite 500
P.O. Box 359
Tyler, TX  75710-0359
Telephone:  903-597-8311
Facsimile:  903-593-0846
**Attorneys for Cox Communications, Inc.**

# TABLE OF CONTENTS

Page

I.    Undisputed Material Facts ................................................................................3

II.   Issues Presented ................................................................................................5

III.  Argument ...........................................................................................................5

      A.    U.S. Video Cannot Sustain Its Burden Of Proving Personal
            Jurisdiction Over Cox ...........................................................................5

            1.    Cox Has Not Committed a Tortious Act Within Texas and
                  Cannot be Subject to Jurisdiction Under Texas' Long Arm
                  Statute. ..........................................................................................5

            2.    Cox Has Insufficient Contacts With Texas Under
                  Constitutional Due Process Requirements To Support
                  General Personal Jurisdiction. ......................................................6

            3.    Cox is Not Subject to Specific Jurisdiction Because it has
                  No Contacts with Texas Related to U.S. Video's Claim. .............8

            4.    Actions of Cox's Affiliates Do Not Matter for Personal
                  Jurisdiction Purposes. ..................................................................9

      B.    If Plaintiff May Pursue this Action Against Cox, Delaware is the
            Appropriate Forum ...............................................................................11

            1.    Cox's Lack of Jurisdictional Contacts Renders Texas an
                  Improper Forum for this Action ..................................................11

            2.    Delaware is the Proper, More Convenient Forum for
                  Resolving Plaintiff's Claims. ......................................................12

IV.   CONCLUSION ................................................................................................13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Akro Corp. v. Luker*, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995) ....................................... 7

*Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000) ....................... 6

*Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925) ..................................... 9

*Carmichael v. United Techs. Corp.*, 835 F.2d 109, 111 (5th Cir. 1988) ........................ 5

*Coastal Plains, Inc.*, 1779 F.3d 197, 205-06 (5th Cir. 1999) ......................................... 12

*Data General Corp. v. Johnson,* 78 F.3d 1556, 1565 (Fed.Cir.1996) ........................... 12

*Dunn v. Svitzer*, 885 F. Supp. 980, 987 (S.D. Tex. 1995) ................................................ 9

*Entek Corp. v. Southwest Pipe and Supply Co.*, 683 F. Supp. 1092, 1104-05 (N.D. Tex. 1988) ......................................................................................................... 9

*Frito-Lay, Inc. v. Proctor & Gambell Co.*, 364 F. Supp. 243, 250 (N.D. Tex. 1973) ............................................................................................................................ 6

Great Northeastern Lumber & Millwork Corp. v. Pepsi-Cola Metro. Bottling Co., 785 F. Supp. 514 (E.D. Pa. 1992) ...................................................................... 10

*Hargrave v. Fibre Board Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983) ........................... 9

*Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984) ................... 7

*Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001) .................................... 5

*International Shoe Co. v. Washington*, 326 U.S. 310,. 316 (1945) ................................... 8

*J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 550 (S.D. N.Y. 2001) ...................................................................................................................... 10

Naxon Telesign Corp. v. GTE Information Sys., Inc., 89 F.R.D. 333 (N.D. Ill. 1980) ..................................................................................................................... 11

*Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1468 (Fed. Cir. 1998) ............................................................................................................................ 9

*Shaffer v. Heitner*, 433 U.S. 186, 213-14 (1977) ............................................................ 7

*Silent Drive, Inc. v. Strong Indus., Inc.,* 326 F.3d 1194, 1200 (Fed. Cir. 2003) ............ 7

Tandy Corp. v. Comus Int'l, Inc., 704 F. Supp. 115 (N.D. Tex. 1987) (Mahon, J.) .................. 5, 7

USA Video Tech. Corp. v. MovieLink LLC, 354 F. Supp. 2d 507, 509-13 (D. Del. 2005) ............................................................................................................... 3, 4

Von Grabe v. Sprint PCS, 312 F. Supp. 2d 1285, 1301 (S.D. N.Y. 2003) ................................... 10

**Rules**

Fed. R. Civ. P. 15 ...................................................................................................... 10

Fed. R. Civ. P. 21 ...................................................................................................... 12

Federal Rule of Civil Procedure 12(b)(2) ............................................................. 1, 13

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| USA VIDEO TECHNOLOGY CORPORATION,<br><br>Plaintiff(s),<br><br>v.<br><br>TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP,<br><br>Defendant(s). | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No.:  2-06CV-239 (RC)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COX COMMUNICATIONS, INC.'S MOTION TO DISMISS
### FOR LACK OF PERSONAL JURISDICTION OR IN THE ALTERNATIVE, TO TRANSFER VENUE TO THE DISTRICT OF DELAWARE <u>AND BRIEF IN SUPPORT THEREOF</u>

Defendant Cox Communications, Inc. ("Cox") moves to dismiss Plaintiff's claims against it under Federal Rule of Civil Procedure 12(b)(2) because this Court lacks personal jurisdiction over Cox.  In the alternative, Cox moves to transfer venue to the District of Delaware, pursuant to 28 U.S.C. §1404(a).

First, Plaintiff has sued the wrong company.  Cox is a Delaware corporation, headquartered in Atlanta, Georgia.  Cox only provides services in Georgia.  Cox is not in the business of providing the video-on-demand services the Complaint alleges infringe Plaintiff's patent.  Cox does not own or operate and has never owned or operated cable systems in Texas; does not offer or provide and has never offered or provided video-on-demand services in Texas; and does not otherwise reside or operate in Texas.  Cox does not have the minimum contacts

with Texas sufficient to support personal jurisdiction and there is thus no basis for this Court to exercise personal jurisdiction over Cox. Therefore, Plaintiff's Complaint should be dismissed with prejudice.

Second, Plaintiff has sued in the wrong forum. Venue over U.S. Video's purported claims against Cox is not appropriate in Texas. Neither Cox nor U.S. Video have ties to Texas that could invoke any local interest. The District of Delaware is the court that has most recently considered and ruled upon key patent claim construction issues that will be raised in addressing U.S. Video's complaint. Venue is proper in Delaware, where plaintiff has previously sued on the patent at issue and where Cox is incorporated. The public interest in judicial economy and avoidance of conflicting decisions thus militates for transfer. Moreover, U.S. Video previously resisted transfer of venue on the ground that Delaware was the appropriate and more convenient venue for litigating the same patent U.S. Video now asserts. Having prevailed in that argument, U.S. Video is estopped from arguing that Delaware would be an inconvenient forum in which to litigate.

Finally, one of Cox's affiliates, CoxCom, Inc. does offer cable communications services, albeit not in Texas. But it is an independent entity and it has long been settled that a subsidiary's contacts with a forum state do not give rise to personal jurisdiction over the parent. Moreover, because CoxCom has initiated a declaratory judgment suit in Delaware, judicial economy warrants transferring this suit to that District. Thus, even assuming Plaintiff's claims can go forward against Cox, they should be transferred to Delaware, the most appropriate forum for this matter.

2

## I.    <u>Undisputed Material Facts</u>

1.    Cox is a diversified broadband telecommunications company, incorporated in Delaware, with a principal place of business in Atlanta, Georgia.  (Declaration of John Spalding, attached as Exhibit A, ¶ 2. "Spalding Dec.")

2.    Cox is not registered to do business in Texas.  (*Id.*, ¶5.)  Cox does not provide cable television or video-on-demand services in Texas.  (*Id.*, ¶¶ 4-5.)  Cox does not maintain any place of business, does not have offices, and does not keep any corporate books or records in Texas.  (*Id.*, ¶3.)

3.    CoxCom, Inc. is an affiliate of Cox that initiated a declaratory judgment action against U.S. Video in the District of Delaware.  (Exhibit B.)

4.    Cox's affiliates are party to an Asset Transfer Agreement by which all Texas assets of Cox's affiliates were sold.  (*Id.*, ¶ 4.)  The sole Texas material asset of the affiliates of Cox  that was not transferred was the Henderson, Texas cable television franchise, as to which the city government refused to consent to transfer.  The Henderson, Texas cable television franchise does not offer video-on-demand services and is not managed or operated by any of Cox's affiliates, but rather by a third party, under a Management Agreement.  (*Id.*, ¶¶ 4-7.)

5.    Plaintiff U.S. Video is a Connecticut corporation, with a principal place of business in Connecticut.  (Complaint, ¶ 1.)

6.    In April 2003, U.S. Video filed suit in the District of Delaware contending that video-on-demand services infringed claim 1 of United States Patent No. 5,130,792 ("the '792 patent") entitled "Store and Forward Video System."  *See USA Video Tech. Corp. v. MovieLink LLC*, 354 F. Supp. 2d 507, 509-13 (D. Del. 2005) ("Delaware action").

7.      Here, U.S. Video likewise contends that Cox provides "video-on-demand" services that infringe claim 1 of the '792 patent.  (Complaint, ¶¶ 11-13, 15.)

8.      The Delaware District Court evaluated the parties' evidence, including expert reports on claim construction and the accused technology, and in January of 2005 construed claim 1 of the '792 patent.  *USA Video Tech. Corp.,* 354 F. Supp. 2d  at 509-11, 514.

9.      The Delaware court grappled with numerous motions, including the following: Motion for Summary Judgment of Non-Infringement Relating to U.S. Video's Infringement Allegations for Which No Support in the Record Exists; Motion for Summary Judgment on Non-Infringement, and Alternative Motion for Summary Judgment of Invalidity; Motion for Summary Judgment of Invalidity under 25 U.S.C. § 112 and to Strike Portions of Expert Report; Motion for Summary Judgment as to the Gunter Article and the '792 Patent's Enablement; and Motion to Exclude or Limit Admissibility of the Expert Reports and Testimony of Richard T. Mihran and Joseph A. Konstan.  *USA Video Tech. Corp.,* 354 F. Supp. 2d at 508-09.

10.     The Delaware court found that the language of Claim 1, which describes a "distribution interface" that "initiates connections over the telephone network," requires that the "distribution interface" <u>begin</u> forming the connection.   In other words, a system that involves starting the claimed "connections over the telephone network" by anything other than the claimed "distribution interface," is outside the scope of the '792 patent.  *Id.* at 514-15.

11.     The Delaware court's construction, which has been upheld by the Federal Circuit, 2006 U.S. App. LEXIS 14699 (Fed. Cir. June 7, 2006), substantially limited the scope of the rights U.S. Video was purporting to assert and resulted in a finding that MovieLink did not infringe claim 1 of the '792 patent.  *Id.* at 515-16.

4

## II.    Issues Presented

1.    Are there sufficient "minimum contacts" between Cox and Texas to confer personal jurisdiction over Cox?

2.    In the alternative, should this case be transferred to the District of Delaware pursuant to 28 U.S.C. § 1404(a)?

## III.    Argument

### A.    U.S. Video Cannot Sustain Its Burden Of Proving Personal Jurisdiction Over Cox

U.S. Video has the burden of establishing that Cox has "minimum contacts" with Texas sufficient to establish personal jurisdiction.  *See Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001) (Federal Circuit law controls personal jurisdiction issues and requires plaintiff to show personal jurisdiction over defendant in patent case).  U.S. Video cannot meet its burden because (i) Cox has not committed any act that would trigger application of the Texas Long Arm Statute to authorize Plaintiff's service of process on Cox, and (ii) Cox lacks constitutional minimum contacts with Texas.[1]

### 1.    Cox Has Not Committed a Tortious Act Within Texas and Cannot be Subject to Jurisdiction Under Texas' Long Arm Statute.

To establish that the service of process Plaintiff made upon Cox was proper, U.S. Video must show that Cox "engages in business" in Texas and that this proceeding "arises out of the business done in this state and to which [Cox] is a party." Tex. Civ. Prac. & Rem. Code Ann., § 17.044(b) (Vernon 1997).  Acts which constitute engaging in business comprise contracting with Texas residents or "commit[ting] a tort in whole or in part in" Texas.  *Id.* at § 17.042.  *See Carmichael v. United Techs. Corp.*, 835 F.2d 109, 111 (5th Cir. 1988) (service of process

---

[1]    The absence of personal jurisdiction over Cox requires dismissal under Rule 12(b)(2) (lack of personal jurisdiction), but Rule 12(b)(5) (insufficiency of process) also would direct dismissal upon the same grounds. That is because Plaintiff served pursuant to the Texas Long Arm Statute, which requires personal jurisdiction to exist for service to be proper.  *E.g., Tandy Corp. v. Comus Int'l, Inc.*, 704 F. Supp. 115, 116 (N.D. Tex. 1987).

US2000 9429628.2

through secretary of state insufficient where "none of the businesses mentioned has agents or officers in Texas or does business in Texas, nor did the cause of action arise from business dealings in Texas."); *Frito-Lay, Inc. v. Proctor & Gambell Co*., 364 F. Supp. 243, 250 (N.D. Tex. 1973) ("amenability to service turns on whether a defendant has 'done business' or 'committed a tort' in the forum") (citations omitted).

Here, Cox has done neither.  U.S. Video alleges that Cox wrongfully made, imported, used or sold allegedly infringing video-on-demand services.  (Complaint, at ¶14.)  Cox, however, does not engage in these acts within Texas.  (Spalding Decl., ¶¶3, 4.)  Cox thus has not committed any tortious act or engaged in any business within Texas from which this action could arise, thereby rendering improper Plaintiff's service of process upon Cox via the Texas Secretary of State.

## 2. Cox Has Insufficient Contacts With Texas Under Constitutional Due Process Requirements To Support General Personal Jurisdiction.

This Court's personal jurisdiction over a non-resident corporate defendant such as Cox is appropriate only if authorized by the Texas Long Arm Statute, which has been construed to be coextensive with constitutional due process requirements.  *See Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000); *see also* Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1997).   This Court thus must determine (1) if Cox has "purposefully availed [it]self of the benefits and protections" of Texas by establishing "minimum contacts" with Texas; and (2) whether exercising jurisdiction over Cox would "offend 'traditional notions of fair play and substantial justice.'" *Alpine View Co.,* 205 F.3d at 215 (citations omitted).

In evaluating "minimum contacts," the Court may look both to evidence of minimum contacts that would support specific personal jurisdiction – that is, contacts that are related to the subject matter of the litigation, and the more extensive contacts that would support general

jurisdiction – contacts that are unrelated to the instant cause of action. *See Silent Drive, Inc. v. Strong Indus., Inc.,* 326 F.3d 1194, 1200 (Fed. Cir. 2003) (evidence of substantial, systematic, continuous contacts with the forum state may support general jurisdiction ); *Akro Corp. v. Luker*, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995) (evidence to support specific jurisdiction includes defendant's activities purposefully directed at the forum, out of which the cause of action arises). Here, U.S. Video has shown no facts sufficient to support either general or specific jurisdiction.

General jurisdiction exists when a court exercises jurisdiction in an action not arising out of Cox's specific contacts with Texas. *Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9 (1984). The Court explained that for causes of action unrelated to forum activities, jurisdiction may be proper "when there are sufficient contacts between the State and the foreign corporation." *Id.* at 414. Only the presence of substantial, regular and systematic contacts that are qualitatively different from contacts sufficing for specific jurisdiction allow a defendant to foresee being haled before a Texas court. For example, property ownership does not establish general jurisdiction. *Shaffer v. Heitner*, 433 U.S. 186, 213-14 (1977). Nor does purchasing or selling products within the state alone establish general jurisdiction. *Helicopteros*, 466 U.S. at 418.

Cox is a Delaware corporation that is not registered or even qualified to do business in Texas because it does none here. (Spalding Decl., ¶3.) Cox does not provide services to any customers in Texas. (*Id.*) Cox does not operate or maintain offices or even books or records in Texas. (*Id.*) This case is like the patent case in *Tandy Corp. v. Comus Int'l, Inc.*, 704 F. Supp. at 118-19 (N.D. Tex. 1987, in which the court concluded that it lacked general jurisdiction over a defendant who lacked the kinds of qualitative minimum contacts required by the Supreme Court to satisfy Constitutional due process. The defendant Comus did not lease or own Texas property,

7

was not licensed to do business in Texas, and maintained no bank accounts, phone listings, or employees here.  *Id.*  Like Comus, Cox has no "continuous and systematic general business contacts" with Texas.

U.S. Video has not alleged any facts relevant to personal jurisdiction, aside from the conclusory (and erroneous) allegation that "Cox is doing business in Texas."[2]  (Complaint, at ¶3.)  In fact, Cox is <u>not</u> doing business in Texas and has neither the "substantial, systematic, and continuous contacts" that would support general jurisdiction nor the specific, litigation-related contacts that would support specific personal jurisdiction.  Cox does not have any property, offices, employees, records, or other assets in Texas.  Cox does not offer, sell, or otherwise provide any telecommunications services in Texas, much less digital cable systems services or "video-on-demand" services.  *See generally*, Spalding Declaration, Exhibit A.  Cox's minimal contacts with Texas are <u>not</u> such that maintenance of U.S. Video's suit would "not offend traditional notions of fair play and substantial justice," because Cox could <u>not</u> reasonably have anticipated being haled into Texas court.  *International Shoe Co. v. Washington*, 326 U.S. 310,. 316 (1945) (internal quotation omitted).  In short, no substantial contacts between Texas and Cox exist to make reasonable the exercise of personal jurisdiction over Cox.

### 3.     Cox is Not Subject to Specific Jurisdiction Because it has No Contacts with Texas Related to U.S. Video's Claim.

U.S. Video likewise cannot carry its burden of establishing minimum contacts necessary to show specific personal jurisdiction because it cannot show any contacts between Cox and Texas that are related to its claims.  Only by meeting three requirements can such specific

---

[2]     According to U.S Video, Cox is "organized under the laws of the State of Delaware . . .is doing business in Texas . .  and has a principal place of business in Atlanta, GA,"  Complaint at ¶3, and that Cox "operates digital cable systems in which it provides video-on-demand (VOD) services . . . [and] provides its subscribers with digital set-top boxes to enable access to the VOD services."  *Id.* at ¶15.

jurisdiction be shown.  First, the defendant must have "'purposefully directed' its activities at residents of the forum." *Inamed*, 249 F.3d at 1356.  Second, the claim must "'arise[] out of or relate[] to' the defendant's activities within the forum." *Id.*  Third, the exercise of personal jurisdiction must be reasonable and fair. *Id.* None of these requirements can be shown here.

Undoubtedly, using the accused video-on-demand services within Texas could show that Cox purposefully directed its actions toward Texas residents.  But Cox does not offer such services in Texas – and neither have any of its affiliates.  (Spalding Decl., ¶¶ 3,6,7.)  U.S. Video thus cannot demonstrate any facts that could meet its burden of showing that its claims to arise out of or relate to Cox's alleged, but unproven, actions in Texas.  As a result, there can be no specific personal jurisdiction.

### 4. Actions of Cox's Affiliates Do Not Matter for Personal Jurisdiction Purposes.

Cox does not do business in Texas.  (Spalding Decl., ¶3.)  It is settled law that the activities of Cox's affiliated companies, some of which have done business in Texas, are irrelevant to determining whether Cox has sufficient contacts with Texas to support jurisdiction. *See Cannon Mfg. Co. v. Cudahy Packing Co*., 267 U.S. 333 (1925) (subsidiary's acts in North Carolina not imputed to parent for jurisdictional purposes); *Phonometrics, Inc. v. Northern Telecom Inc*., 133 F.3d 1459, 1468 (Fed. Cir. 1998) (Sprint not subject to jurisdiction in Florida despite activities of its United Telephone subsidiary); *Hargrave v. Fibre Board Corp*., 710 F.2d 1154, 1159 (5th Cir. 1983) ("Generally, a foreign parent corporation is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there."); *Dunn v. Svitzer*, 885 F. Supp. 980, 987 (S.D. Tex. 1995) ("As long as a parent and subsidiary maintain separate and distinct corporate entities, the presence of one in the forum may not be attributed to the other*."); Entek Corp. v. Southwest Pipe and Supply Co*., 683 F. Supp. 1092, 1104-05 (N.D. Tex. 1988) (no jurisdiction over parent corporation for subsidiaries' acts in Texas

in the absence of an allegation of a lack of formal separation between parent and subsidiaries and absence of greater control than "normally associated with common ownership and directorship"). Cox and its affiliates share the same name and webpage, but that is insufficient where the Federal Circuit has cautioned in this context that "the corporate form is not to be lightly cast aside."  *3D Sys.*, 160 F.3d at 1380-81 (no jurisdiction over out-of-state parent company of alleged infringer).  *See also, e.g., Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1301 (S.D. N.Y. 2003) (subsidiary Sprint Spectrum L.P.'s use "Sprint" trade name "was not a sufficient basis for establishing personal jurisdiction" over its parent); *J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 550 (S.D. N.Y. 2001) (parent's failure to distinguish between itself and subsidiary on webpage and in annual report did not support exercise of personal jurisdiction).

Here, as noted, Plaintiff has simply sued the wrong party.  Cox is not responsible for its affiliates' actions and Plaintiff cannot point to the affiliates' contacts to justify this action.  U.S. Video has not even alleged, and cannot show, that there is anything other than a normal parent-subsidiary relationship between Cox and its affiliates.  It thus cannot ignore the corporate forms.

Moreover, Plaintiff cannot now amend its complaint to add such affiliates – especially where one of Cox's affiliates has already initiated a declaratory judgment action in Delaware, the most appropriate forum for resolving this dispute.  *See* Exhibit B.  Even if an amendment were sought or allowed, however, such an amendment would not relate back to the filing of plaintiff's original Complaint under Fed. R. Civ. P. 15 because plaintiff could (and should) have known for some time about these others yet purposefully chose not to name them. *See, e.g., Great Northeastern Lumber & Millwork Corp. v. Pepsi-Cola Metro. Bottling Co.*, 785 F. Supp. 514, 516 (E.D. Pa. 1992) (no relation back under Rule 15(c) because "an amendment should relate back only where there has been an error made concerning the identity of the proper party" and

the proposed defendant may have believed plaintiff made a deliberate choice rather than a mistake); *Naxon Telesign Corp. v. GTE Information Sys., Inc.*, 89 F.R.D. 333, 337-38 (N.D. Ill. 1980) (filing of patent infringement action against corporate parent did not relate back to original complaint against the parent's subsidiary).

**B.      If Plaintiff May Pursue this Action Against Cox, Delaware is the Appropriate Forum.**

Cox joins and incorporates by reference herein the motion for transfer filed by Defendant Comcast on August 10, 2006.  (Docket Entry No. 18)  Cox's case for transfer is, however, even stronger, given that Cox does nothing in Texas, much less anything relevant to the subject-matter of this case.  There are thus no local interests to counter the clear public interest in efficient and consistent resolution of claims.  The convenience of the parties, neither of which resides or does business in Texas, clearly favors transfer.  Moreover, U.S. Video is estopped by its own sworn assertions in the MovieLink matter from contesting that Delaware is an appropriate and convenient forum.

**1.      Cox's Lack of Jurisdictional Contacts Renders Texas an Improper Forum for this Action.**

Venue in patent suits is proper a) where the defendant resides, which for corporate defendants includes any forum in which they are amenable to personal jurisdiction, or b) where the defendant has infringed and has a regular and established place of business.  28 U.S.C. §§ 1391, 1400.   Cox is not subject to personal jurisdiction in Texas and has no place of business there.  *Supra*.  Cox is, however, subject to personal jurisdiction in Delaware because it is incorporated there.  (Complaint at ¶6.)  Delaware, therefore, is the proper forum for Plaintiff's suit.

### 2. Delaware is the Proper, More Convenient Forum for Resolving Plaintiff's Claims.

As stated, Cox has done nothing that would support Plaintiff's claims for infringement. Even if Plaintiff were able to pursue this action against Cox, and even if jurisdiction and venue were proper, this Court may, "[f]or the convenience of parties and witnesses [and] in the interest of justice," transfer this action "to any other district . . . where it might have been brought." 28 U.S.C. § 1404(a). This provision and the Federal Rules allow for severing and transferring a cause of action against one defendant to a different forum while maintaining plaintiff's action against other defendants in the original forum. *See* Fed. R. Civ. P. 21 ("Any claim against a party may be severed and proceeded with separately."). At minimum, given the absence of contacts with Texas and in light of the "public and private interest factors" discussed in Comcast's motion, the Court should transfer Plaintiff's claim against Cox to the District of Delaware.

Comcast's motion demonstrated numerous grounds for transfer. In addition, the propriety of transfer is further buttressed by U.S. Video's previous insistence in the *MovieLink* litigation that the District of Delaware was the appropriate venue in which to bring its infringement claims based on the '792 patent, because the District of Delaware was its "home district." When a party has succeeded in obtaining a ruling on the basis of its factual and legal arguments, that party may not turn to a different court and seek an inconsistent advantage by pursuing an incompatible argument. *See Data General Corp. v. Johnson,* 78 F.3d 1556, 1565 (Fed.Cir.1996) ("The doctrine of judicial estoppel is that where a party successfully urges a particular position in a legal proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed"), *In re Coastal Plains, Inc*., 1779 F.3d 197, 205-06 (5th Cir. 1999) (equitable doctrine of judicial estoppel precludes a litigant from

taking inconsistent positions in successive litigations); *see also* Wright & Miller, 18B Fed. Prac. & Proc. Juris.2d § 4477 (discussing judicial estoppel or "preclusion of inconsistent positions").[3] Indeed, U.S. Video should be judicially estopped from taking any inconsistent position concerning venue in Delaware. Because the Delaware court ruled in favor of U.S. Video and denied MovieLink's motion to transfer, see Order of January 9, 2004, attached as Exhibit C, U.S. Video may not now turn to this Court and assert inconsistent venue arguments.

## IV.    <u>CONCLUSION</u>

For the reasons stated above, the Court should grant Cox Communications, Inc.'s Motion to Dismiss For Lack of Personal Jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). Alternatively, the Court should transfer this matter to the District of Delaware, pursuant to 28 U.S.C. § 1404(a).

Respectfully submitted, this 14th day of August, 2006.

OF COUNSEL:
Matthew B. Lehr
Suong T. Nguyen
Duane Nash
Yiping Liao
DAVIS POLK & WARDWELL
1600 El Camino Real
Menlo Park CA  94025
Telephone:  650-752-2000
Facsimile:  650-752-2111

_____/s/_____
Mitchell G. Stockwell
Lead Attorney
Georgia Bar No. 682912
KILPATRICK STOCKTON LLP
1100 Peachtree St NE
Suite 2800
Atlanta GA  30309-4530
Telephone:  404-815-6214
Facsimile:   404-815-6555

---

[3] Judicial estoppel protects the finality of decisions and promotes consistency of disposition by preventing a party from "playing fast and loose" with the judicial system and taking contradictory positions to serve its self interests. *See Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988).

13

Michael Edwin Jones
POTTER MINTON PC
110 N. College, Suite 500
P.O. Box 359
Tyler, TX  75710-0359
Telephone:  903-597-8311
Facsimile:  903-593-0846

**Attorneys for Cox Communications, Inc.**

## CERTIFICATE OF CONFERENCE

This is to certify that Candice C. Decaire, counsel for Defendants Cox Communications, Inc., has conferred with Edward Goldstein, counsel for Plaintiff, regarding the matters included in this motion.  Counsel for Plaintiff states that this motion is OPPOSED.

_____/s/_____
Candice C. Decaire

15

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORP., | ) ) ) | |
| Plaintiff, | ) ) | Case No.  2-06cv-239 |
| v. | ) ) | Honorable Ron Clark |
| TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS INC.) COMCAST CABLE; COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP | ) ) ) ) ) ) ) ) | JURY |
| Defendants. | ) ) ) | |

_____ )

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this 14th day of August, 2006.  Any other counsel of record will be served by first class mail.


_____
/s/
Mitchell G. Stockwell

16

# Exhibit A

**UNITED STATES DISTRICT COURT**
**FOR THE FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, <br><br> Plaintiff(s), <br><br> v. <br><br> TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, <br><br> Defendant(s). | Case No.: 2-06CV-239 (RC) |

## DECLARATION OF JOHN SPALDING

1.      I, John Spalding, am employed by Cox Communications, Inc., as Vice President, Government Affairs.  My responsibilities include oversight of mergers and acquisitions and corporate records.

2.      Cox Communications, Inc. is incorporated in Delaware with its principal place of business in Atlanta, Georgia.

3.      Cox Communications, Inc. is not registered to do business in Texas, does not operate any offices in Texas, and does not keep any corporate books or records in Texas.  Cox

Communications, Inc. does not provide cable television services or "video-on-demand" services in Texas.

4.    Under an Asset Transfer Agreement dated October 31, 2005, several of the affiliates of Cox Communications, Inc. sold their Texas assets used in the operation of cable television systems.  The sale closed on May 5, 2006.

5.    All material Texas assets of the affiliates of Cox Communications, Inc. were transferred, with the exception of the Henderson, Texas cable television franchise, which is under third party management pursuant to a Management Agreement dated May 5, 2006.  The Henderson franchise, which expires in 2007, was not transferred to the buyer solely because the city government withheld its consent to the transfer.

6.    Since the May 5, 2006 sale of the Texas assets, none of the affiliates of Cox Communications, Inc. have offered cable television services in Texas.

7.    None of the affiliates of Cox Communications, Inc. have ever provided "video-on-demand" services in Texas.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 14, 2006.


John Spalding

2

**Exhibit B**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

COXCOM, INC. )
                                         )
           Plaintiff, )
                                           )
      v. )          C. A. No. _____
                                           )
USA VIDEO TECHNOLOGY CORP., )
                                           )
           Defendant. )

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Coxcom, Inc. ("Coxcom"), files this original complaint for declaratory judgment relief against Defendant, USA Video Technology Corporation ("USVO"), and avers as follows:

## PARTIES

1.     Plaintiff Coxcom is a corporation organized under the laws of the State of Delaware with its principal place of business at 1400 Lake Hearn Dr., Atlanta, GA 30319.

2.     On information and belief, USVO is a corporation organized under the laws of the State of Connecticut with its principal place of business at 83 Halls Road, P.O. Box 245, Old Lyme, Connecticut 06371.

## JURISDICTION AND VENUE

3.     This action is for declaratory relief of non-infringement, invalidity and/or unenforceability of U.S. Patent No. 5,130,792 ("the 792 patent") that arises under the United States patent laws (35 U.S.C. §§ 101, et. seq.). The Court has subject matter jurisdiction over this action pursuant to the Declaratory Judgment Act (28 U.S.C. §§ 2201 and 2202) and 28 U.S.C. §§ 1331 and 1338.

4.      This Court has general and specific personal jurisdiction over USVO because USVO transacts business within this judicial district (Delaware), and because USVO has purposefully availed itself of the laws and protection of the courts in Delaware in filing a prior patent infringement action based on the same 792 patent in the United States District Court for the District of Delaware.   This prior patent infringement action was captioned *USA Video Technology Corporation v. Movielink, LLC,* C.A. No. 03-368-KAJ ("USVO v. Movielink litigation").

5.      The USVO v. Movielink litigation related to alleged infringement, invalidity, and unenforceability of the 792 patent.  This action related to a declaration that Coxcom has not infringed the 792 patent.

6.      The present action is related to the USVO v. Movielink litigation under Local Rule 3.1(b) because it at least involves the same patent.

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) and 1400(b).

## APPREHENSION OF IMMINENT LEGAL ACTION BY USVO

8.      On June 13, 2006, USVO filed a complaint in the United States District Court for the Eastern District of Texas ("Texas Action") alleging that multiple defendants, including Cox Communications, Inc., an affiliate of Coxcom, infringe the 792 patent by operating digital cable systems in which they provide video-on-demand (VOD) services to their subscribers and by providing their subscribers with digital set-top boxes to enable access to the VOD services.   Other defendants in the Texas Action include various other cable television companies.  A copy of the 792 patent is attached as

Exhibit A. A copy of the complaint filed in the Texas Action (excluding the 792 patent) is attached as Exhibit B.

9.    By virtue of the allegations against Cox Communications, Inc. and other cable television operators, Coxcom has a real and reasonable apprehension that USVO is also intending to file suit against Coxcom alleging infringement of the 792 patent and threatening to seek injunction of Coxcom's business activities of operating digital cable services.

## DECLARATORY JUDGMENT COUNT

## (NONINFRINGEMENT, INVALIDITY AND/OR UNENFORCEABILITY OF THE 792 PATENT)

10.    Coxcom restates and realleges the allegations set forth in paragraphs 1 through 9 above and incorporates them by reference.

11.    Coxcom has not directly infringed, contributed to the infringement, or actively induced the infringement of any claim of the 792 patent, nor has it otherwise committed any acts of infringement on any rights of USVO.

12.    Upon information and belief, the claims of the 792 patent are invalid under 35 U.S.C. §§ 102, 103 and/or 112.

13.    Upon information and belief, the relief sought by USVO is barred by waiver, laches, estoppel or acquiescence and, therefore, the 792 patent is unenforceable.

## PRAYER FOR RELIEF

WHEREFORE, Coxcom prays for the following:

3

1.    A judgment and declaration that Coxcom has not infringed and does not infringe in any manner any claim of the 792 patent, directly, contributorily or by inducement, and has not otherwise infringed or violated any rights of USVO.

2.    A judgment that each claim in the 792 patent is invalid and unenforceable.

3.    An injunction against USVO and its affiliates, subsidiaries, assigns, employees, agents or anyone acting in privity or concert with USVO from charging infringement or instituting any legal action for infringement of the 792 patent against Coxcom or anyone acting in privity with Coxcom, including the divisions, successors, assigns, agents, suppliers, manufacturers, contractors and customers of Coxcom.

4.    A judgment and declaration that this is an exceptional case within the meaning of 35 U.S.C. § 285, entitling Coxcom to an award of its reasonable attorneys' fees, expenses and costs in this action.

5.    A judgment for such other and further relief in law or in equity as this Court deems just or proper.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By: _____

Mitchell G. Stockwell                    Richard L. Horwitz (#2246)
KILPATRICK STOCKTON LLP              Kenneth L. Dorsney (#3726)
1100 Peachtree Street, N.E., Suite 2800   Hercules Plaza, 6th Floor
Atlanta, GA 30309                       1313 N. Market Street
mstockwell@kilpatrickstockton.com        Wilmington, Delaware 19801
Tel: (404) 815-6500                     Tel: (302) 984-6000
                                        rhorwitz@potteranderson.com
Dated: June 19, 2006                    kdorsney@potteranderson.com

                                        Attorneys for Plaintiff CoxCom, Inc.

737550

4

**Exhibit C**

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

USA VIDEO TECHNOLOGY          )
CORPORATION,                  )
                              )
            Plaintiff,        )
                              )
      v.                      )          Civil Action No. 03-368-KAJ
                              )
MOVIELINK, LLC,               )
                              )
            Defendant.        )

**ORDER**

For the reasons stated in open court on January 8, 2004,

IT IS HEREBY ORDERED that defendant's Motion to Transfer Case to the

Central District of California (D.I. 28), is DENIED.

UNITED STATES DISTRICT JUDGE

January 9, 2004
Wilmington, Delaware

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | ) ) ) |
| Plaintiff(s), | ) ) |
| v. | ) ) |
| TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | ) ) ) ) ) ) ) ) ) |
| Defendant(s). | ) ) ) |

Case No.:  2-06CV-239 (RC)

**ORDER GRANTING DEFENDANT COX COMMUNICATIONS INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

After considering Defendant's motion to dismiss and evaluating the issues involved, it is hereby ORDERED that Plaintiff's action against Cox Communications, Inc. shall be dismissed for lack of personal jurisdiction.

_____

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | ) ) ) | |
| Plaintiff(s), | ) ) | |
| v. | ) ) | |
| TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | ) ) ) ) ) ) ) ) ) | Case No.:  2-06CV-239 (RC) |
| Defendant(s). | ) ) | |

## ORDER GRANTING DEFENDANT COX COMMUNICATIONS INC.'S MOTION TO TRANSFER TO THE DISTRICT OF DELAWARE

After considering Defendant's motion to dismiss, or in the alternative, to transfer to the District of Delaware, and evaluating the issues involved, it is hereby ORDERED that this action, in its entirety, be immediately transferred to the United States District Court for the District of Delaware.

_____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | § § § | |
| Plaintiff | § § | |
| v | § § | CASE NO. 2:06CV239 |
| TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | § § § § § § § § § | JURY TRIAL DEMANDED |
| Defendants | § | |

**ORDER GRANTING DEFENDANT CHARTER COMMUNICATIONS, INC.'S UNOPPOSED MOTION TO ENLARGE TIME TO ANSWER OR OTHERWISE RESPOND TO USA VIDEO TECHNOLOGY CORPORATION'S ORIGINAL COMPLAINT**

On this date came on for consideration, Defendant Charter Communications, Inc.'s Unopposed Motion to Enlarge Time to Answer or Otherwise Respond to USA Video Technology Corporations Original Complaint, and the Court being of the opinion that same should be GRANTED, it is therefore,

ORDERED that Defendant Charter Communications, Inc. be and hereby is, granted an extension of time within which to respond to USA Video Technology Corporations Original Complaint up to and including August 21, 2006.

This extension of time shall not serve as a basis for an extension for any other deadline.

So **ORDERED** and **SIGNED** this **15** day of **August, 2006.**

_____
Ron Clark, United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | § § § | |
| Plaintiff, | § § | Civil Action No. 2:6-CV-239 |
| v. | § § | JUDGE RON CLARK |
| TIME WARNER, INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | § § § § § § § | |
| Defendants. | § | |

**ORDER GRANTING EXTENSION OF TIME**

Before the court is Defendants' Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP Unopposed Motion to Enlarge Time to Answer or Otherwise Respond to USA Video Technology Corporation's Original Complaint [Doc. # 27]. Defendants request an extension to file a responsive pleading until August 21, 2006. The request is unopposed and the court will grant it. This extension of time shall not serve as a basis for an extension of any other deadline.

IT IS THEREFORE ORDERED that Defendants' Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP Unopposed Motion to Enlarge Time to Answer or Otherwise Respond to USA Video Technology Corporation's Original Complaint [**Doc. # 27**] is **GRANTED**.

So **ORDERED** and **SIGNED** this **15** day of **August, 2006.**

_____
Ron Clark, United States District Judge

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORP., | ) ) ) | |
| Plaintiff, | ) ) | Case No.  2-06cv-239 |
| v. | ) ) | Honorable Ron Clark |
| TIME WARNER INC.; COX COMMUNICATIONS, INC.; | ) ) | JURY |
| CHARTER COMMUNICATIONS INC.) COMCAST CABLE; COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP | ) ) ) ) ) ) | NOTICE OF ERRATA |
| Defendants. | ) ) | |

## NOTICE OF ERRATA

Cox Communications Inc. hereby gives notice to the Court that Cox Communications Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction Or In The Alternative To Transfer Pursuant to 28 U.S.C §1404 (a) And Brief In Support Thereof, filed August 14, 2006, should be corrected as follows:

- To remove the erroneous designation of Davis Polk as "Of Counsel" from the cover page and signature page;  and
- To correct page numbers, font, and statute citations in the Table of Authorities.

The corrected Table of Authorities, as well as the corrected signature page and title page, are attached hereto as Exhibit A.

Respectfully submitted this 15th day of August, 2006.

_____/s/_____

Mitchell G. Stockwell
Lead Attorney
Georgia Bar No. 682912
KILPATRICK STOCKTON LLP
1100 Peachtree St NE
Suite 2800
Atlanta GA  30309-4530
Telephone:  404-815-6214
Facsimile:   404-815-6555

Michael Edwin Jones
POTTER MINTON PC
110 N. College, Suite 500
P.O. Box 359
Tyler, TX  75710-0359
Telephone:  903-597-8311
Facsimile:  903-593-0846

**Attorneys for Cox Communications, Inc.**

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic

service are being served with a copy of this **NOTICE OF ERRATA** via the Court's

CM/ECF system per Local Rule CV-5(a)(3) on this 16th day of August, 2006.  Any other

counsel of record will be served by first class mail.

<div align="right">

_____/s/_____
Mitchell G. Stockwell
KILPATRICK STOCKTON LLP
1100 Peachtree St NE
Suite 2800
Atlanta GA  30309-4530
Telephone:  404-815-6214
Facsimile:   404-815-6555

</div>

# Exhibit A

# TABLE OF AUTHORITIES

**Page**

**Cases**

*3D Sys., Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1380-81 (Fed. Cir. 1998) ............. 10

*Akro Corp. v. Luker*, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995) ....................................................... 7

*Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 214 (5th Cir. 2000) ....................................... 6

*Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988) ................................................... 13

*Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925) ................................................... 9

*Carmichael v. United Techs. Corp.*, 835 F.2d 109, 111 (5th Cir. 1988) ....................................... 5

*Data General Corp. v. Johnson,* 78 F.3d 1556, 1565 (Fed.Cir.1996) .......................................... 12

*Dunn v. Svitzer*, 885 F. Supp. 980, 987 (S.D. Tex. 1995) ............................................................. 9

*Entek Corp. v. Southwest Pipe and Supply Co.*, 683 F. Supp. 1092, 1104-05 (N.D. Tex. 1988)... 9

*Frito-Lay, Inc. v. Procter & Gamble Co.*, 364 F. Supp. 243, 250 (N.D. Tex. 1973) ..................... 6

*Great Northeastern Lumber & Millwork Corp. v. Pepsi-Cola Metro. Bottling Co.*, 785 F. Supp.
    514, 516 (E.D. Pa. 1992).......................................................................................................... 10

*Hargrave v. Fibre Board Corp.*, 710 F.2d 1154, 1159 (5th Cir. 1983) .......................................... 9

*Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.9, 418 (1984) ......... 7, 8

*In re Coastal Plains, Inc.*, 1779 F.3d 197, 205-06 (5th Cir. 1999)................................................. 12

*Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1359 (Fed. Cir. 2001)................................................. 5, 9

*International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ................................................. 8

*J.L.B. Equities, Inc. v. Ocwen Fin. Corp.*, 131 F. Supp. 2d 544, 550 (S.D. N.Y. 2001) .............. 10

*Naxon Telesign Corp. v. GTE Information Sys., Inc.*, 89 F.R.D. 333, 337-38 (N.D. Ill. 1980) ... 11

*Phonometrics, Inc. v. Northern Telecom Inc.*, 133 F.3d 1459, 1468 (Fed. Cir. 1998) .................. 9

*Shaffer v. Heitner*, 433 U.S. 186, 213-14 (1977) ......................................................................... 7

*Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1200 (Fed. Cir. 2003)............................ 7

*Tandy Corp. v. Comus Int'l, Inc.*, 704 F. Supp. 115, 116 (N.D. Tex. 1987) (Mahon, J.)........... 5, 7

*USA Video Tech. Corp. v. MovieLink LLC*, 354 F. Supp. 2d 507, 509-13 (D. Del. 2005)......... 3, 4

*Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1301 (S.D. N.Y. 2003) ................................... 10

**Rules**

Fed. R. Civ. P. 12(b)(2)…………………………………………………………..1, 13

Fed. R. Civ. P. 15 .............................................................................................................. 11

Fed. R. Civ. P. 21 .............................................................................................................. 12

Federal Rule of Civil Procedure 12(b)(2) .................................................................... 1, 13

Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1997)......................................... 6

Tex. Civ. Prac. & Rem. Code Ann., § 17.044(b) (Vernon 1997) .................................... 5

28 U.S.C. §1391………………………………………………………..…………………11

28 U.S.C. §1400…………………………………………………………………………...11

28 U.S.C. §1404(a)………………………………………………….…………...………1,12, 13

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORP., | ) ) ) | |
| Plaintiff, | ) ) | Case No.  2-06cv-239-(RC) |
| v. | ) ) ) | Honorable Ron Clark |
| TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS INC.) COMCAST CABLE; COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP | ) ) ) ) ) ) ) ) | JURY |
| Defendants. | ) ) ) | |

## COX COMMUNICATIONS, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION OR IN THE ALTERNATIVE, TO TRANSFER VENUE TO THE DISTRICT OF DELAWARE AND BRIEF IN SUPPORT THEREOF

Michael Edwin Jones
POTTER MINTON PC
110 N. College, Suite 500
P.O. Box 359
Tyler, TX  75710-0359
Telephone:  903-597-8311
Facsimile:  903-593-0846

Mitchell G. Stockwell
Lead Attorney
Georgia Bar No. 682912
KILPATRICK STOCKTON LLP
1100 Peachtree St NE
Suite 2800
Atlanta GA  30309-4530
Telephone:  404-815-6214
Facsimile:   404-815-6555

**Attorneys for Cox Communications, Inc.**

US2000 9448528.1

taking inconsistent positions in successive litigations); *see also* Wright & Miller, 18B Fed. Prac. & Proc. Juris.2d § 4477 (discussing judicial estoppel or "preclusion of inconsistent positions").[3] Indeed, U.S. Video should be judicially estopped from taking any inconsistent position concerning venue in Delaware. Because the Delaware court ruled in favor of U.S. Video and denied MovieLink's motion to transfer, see Order of January 9, 2004, attached as Exhibit C, U.S. Video may not now turn to this Court and assert inconsistent venue arguments.

## IV.   CONCLUSION

For the reasons stated above, the Court should grant Cox Communications, Inc.'s Motion to Dismiss For Lack of Personal Jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(2). Alternatively, the Court should transfer this matter to the District of Delaware, pursuant to 28 U.S.C. § 1404(a).

Respectfully submitted, this 14th day of August, 2006.

_____/s/_____
Mitchell G. Stockwell
Lead Attorney
Georgia Bar No. 682912
KILPATRICK STOCKTON LLP
1100 Peachtree St NE
Suite 2800
Atlanta GA  30309-4530
Telephone:  404-815-6214
Facsimile:   404-815-6555

---

[3] Judicial estoppel protects the finality of decisions and promotes consistency of disposition by preventing a party from "playing fast and loose" with the judicial system and taking contradictory positions to serve its self interests. *See Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988).

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA Video Technology Corporation, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Case No.2:06-cv-239 RHC |
| | § | |
| TIME WARNER CABLE, INC.; COX | § | |
| COMMUNICATIONS, INC.; CHARTER | § | |
| COMMUNICATIONS, INC.; | § | **JURY TRIAL DEMANDED** |
| COMCAST CABLE | § | |
| COMMUNICATIONS, LLC; COMCAST | § | |
| OF RICHARDSON, LP; COMCAST OF | § | |
| PLANO, LP; COMCAST OF DALLAS, | | |
| LP | | |
| | | |
| Defendants | | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff, USA Video Technology Corporation ("USVO"), files this Original Complaint against Defendants, Time Warner Cable, Inc. ("Time Warner"), Cox Communications, Inc. ("Cox"), Charter Communications, Inc. ("Charter"), Comcast Cable Communications LLC ("Comcast"),Comcast of Richardson, LP ("Comcast Richardson"), Comcast of Plano, LP ("Comcast Plano"), and Comcast of Dallas, LP ("Comcast Dallas") and alleges as follows:

### THE PARTIES

1.  USVO is a corporation organized under the laws of the State of Connecticut with its principal place of business at 83 Halls Road, P.O. Box 245, Old Lyme, Connecticut, 06371.

2.  Time Warner, on information and belief, is a corporation organized under the laws of the State of Delaware. Time Warner is doing business in Texas, and, on information and belief, has a principal place of business at 290 Harbor Drive; Stamford, CT 06902. Time

Warner may be served with process by serving its registered agent, the CT Corporation System, 350 North St. Paul St., Dallas, TX 75201.

3.    Cox, on information and belief, is a corporation organized under the laws of the State of Delaware. Cox is doing business in Texas, and, on information and belief, has a principal place of business at 1400 Lake Hearn Drive, Atlanta, GA 30319. Cox may be served with process by serving its registered agent, Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, DE 19808.

4.    Charter, on information and belief, is a corporation organized under the laws of the State of Delaware. Charter is doing business in Texas, and, on information and belief, has a principal place of business at 12405 Powerscourt Drive, St. Louis, MO 63131. Charter may be served with process by serving its registered agent, Corporation Service Company DBA CSC-Lawyers Incorporating Service Company, 701 Brazos, Suite 1050, Austin, TX 78701.

5.    Comcast, on information and belief, is a corporation organized under the laws of the State of Delaware. Comcast is doing business in Texas, and, on information and belief, has a principal place of business at 1500 Market Street, Philadelphia, PA 19102-2148. Comcast may be served with process by serving its registered agent, Comcast Capital Corporation at 1201 Market Street, Suite 1000, Wilmington, DE 19801.

6.    Comcast Richardson on information and belief, is a corporation organized under the laws of the State of Delaware. Comcast Richardson is doing business in Texas, and, on information and belief, has a principal place of business at 1201 Market Street, Suite 1405, Wilmington, DE 19801. Comcast Richardson may be served with process by

serving its registered agent, CT Corporation System, 350 North St. Paul St., Dallas, TX 75201.

7.   Comcast Plano on information and belief, is a corporation organized under the laws of the State of Delaware.  Comcast Plano is doing business in Texas, and, on information and belief, has a principal place of business at 1201 Market Street, Suite 1405, Wilmington, DE  10901.  Comcast Plano may be served with process by serving its registered agent, CT Corporation System, 350 North St. Paul Street, Dallas, TX  75201.

8.   Comcast Dallas on information and belief, is a corporation organized under the laws of the State of Delaware.  Comcast Dallas is doing business in Texas, and, on information and belief has a principal place of business at 1201 Market Street, Suite 1405, Wilmington, DE  19801.  Comcast Dallas may be served with process by serving its registered agent, CT Corporation System, 350 North St. Paul Street, Dallas, TX  75201.

## JURISDICTION & VENUE

9.   This is an action for infringement of a United States patent.  Accordingly, this action arises under the patent laws of the United States of America, 35 U.S.C. § 1 et. seq. and jurisdiction is properly based on Title 35 United States Code, particularly § 271, and title 28 United States Code, particularly § 1338(a).

10.   Venue is proper in this court under Title 28 United States Code § 1391(b) and 1400(b).

## PATENT INFRINGEMENT COUNT

11.   On July 14, 1992, United States Patent No. 5,130,792 ("the '792 patent") entitled "Store and Forward Video System" was duly and legally issued. A true and correct copy of the '792 patent is attached as Exhibit A.  The '792 patent is directed to systems that communicate

3

video programs to subscribers upon request, commonly referred to as video-on-demand (VOD).

12.    Pursuant to 35 U.S.C. § 282, the above-listed United States Patent is presumed valid.

13.    USVO is the owner of the '792 patent.

14.    Time Warner, on information and belief, operates digital cable systems in which it provides video-on-demand (VOD) services to its subscribers.  Time Warner provides its subscribers with digital set-top boxes to enable access to the VOD services.  By offering such products and/or services Time Warner has in the past and continues to infringe at least claim 1 of the '792 patent.

15.    Cox, on information and belief, operates digital cable systems in which it provides video-on-demand (VOD) services to its subscribers.  Cox provides its subscribers with digital set-top boxes to enable access to the VOD services.  By offering such products and/or services Cox has in the past and continues to infringe at least claim 1 of the '792 patent.

16.    Charter, on information and belief, operates digital cable systems in which it provides video-on-demand (VOD) services to its subscribers.  Charter provides its subscribers with digital set-top boxes to enable access to the VOD services.  By offering such products and/or services Charter has in the past and continues to infringe at least claim 1 of the '792 patent.

17.    Comcast, on information and belief, operates digital cable systems in which it provides video-on-demand (VOD) services to its subscribers.  Comcast provides its subscribers with digital set-top boxes to enable access to the VOD services.  By offering such products and/or services Comcast has in the past and continues to infringe at least claim 1 of the '792 patent.

18.    Comcast Richardson, on information and belief, operates digital cable systems in which it provides video-on-demand (VOD) services to its subscribers.  Comcast Richardson provides

4

its subscribers with digital set-top boxes to enable access to the VOD services. By offering such products and/or services Comcast has in the past and continues to infringe at least claim 1 of the '792 patent.

19. Comcast Plano, on information and belief, operates digital cable systems in which it provides video-on-demand (VOD) services to its subscribers. Comcast Plano provides its subscribers with digital set-top boxes to enable access to the VOD services. By offering such products and/or services Comcast has in the past and continues to infringe at least claim 1 of the '792 patent.

20. Comcast Dallas, on information and belief, operates digital cable systems in which it provides video-on-demand (VOD) services to its subscribers. Comcast Dallas provides its subscribers with digital set-top boxes to enable access to the VOD services. By offering such products and/or services Comcast has in the past and continues to infringe at least claim 1 of the '792 patent.

21. The Defendants' infringement of the '792 patent alleged above has injured USVO and thus, it is entitled to recover damages adequate to compensate for the Defendants' infringement, which in no event can be less than a reasonable royalty.

## DEMAND FOR JURY TRIAL

22. USVO hereby demands a jury trial on all claims and issues triable of right by a jury.

## PRAYER FOR RELIEF

Wherefore, USVO prays for entry of judgment:

A. that Defendants, Time Warner, Cox, Charter, Comcast, Comcast Richardson, Comcast Plano and Comcast Dallas, have infringed one or more claims of the '792 patent;

B.      that Defendants, Time Warner, Cox, Charter, Comcast, Comcast Richardson, Comcast Plano and Comcast Dallas, account for and pay to USVO all damages caused by the infringement of the '792 patent, which by statute can be no less than a reasonable royalty;

C.      that USVO be granted pre-judgment and post-judgment interest on the damages caused to them by reason of Defendants, Time Warner, Cox, Charter, Comcast, Comcast Richardson, Comcast Plano and Comcast Dallas's infringement of the '792 patent;

D.      that USVO be granted its attorneys' fees in this action;

E.      that costs be awarded to USVO;

F.      that USVO be granted such other and further relief as the Court may deem just and proper under the current circumstances.

<div style="margin-left: 50%;">

Respectfully submitted,

</div>

Date:  August 18, 2006

<div style="margin-left: 50%;">

/s/ Edward W. Goldstein
Edward W. Goldstein
Texas Bar. No. 08099500
GOLDSTEIN, FAUCETT & PREBEG, LLP
1177 West Loop South, Suite 400
Houston, TX  77027
Tel:  713/877-1515
Fax:  713/877-1737
E-mail:  egoldstein@gfiplaw.com

</div>

T. John Ward, Jr.
State Bar No. 00794818
Law Office of T. John Ward, Jr., P.C.
P.O. Box 1231
Longview, Texas 75606-1231
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)
E-mail: jw@jwfirm.com

ATTORNEYS FOR PLAINTIFF

Of Counsel:

GOLDSTEIN, FAUCETT & PREBEG, L.L.P
Corby R. Vowell
Texas Bar No. 24031621
1177 West Loop South, Suite 400
Houston, Texas 77027
(713) 877-1515 – Telephone
(713) 877-1737 – Facsimile

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 18, 2006. Any other counsel of record will be served by first class U.S. mail.

/s/ Edward W. Goldstein_____
Edward W. Goldstein

# EXHIBIT A

US005130792A

# United States Patent [19]

## Tindell et al.

[11] Patent Number: **5,130,792**

[45] Date of Patent: **Jul. 14, 1992**

[54] **STORE AND FORWARD VIDEO SYSTEM**

[75] Inventors: **Elbert G. Tindell**, Dallas; **Kyle Crawford**, Grand Prarie, both of Tex.

[73] Assignee: **USA Video Inc.**, Dallas, Tex.

[21] Appl. No.: **475,137**

[22] Filed: **Feb. 1, 1990**

[51] Int. Cl.⁵ ................................. H04N 7/14
[52] U.S. Cl. ........................... 358/85; 358/86;
358/102; 358/134; 379/100
[58] Field of Search .................. 358/86, 133, 85, 134,
358/102; 379/53, 100

[56] **References Cited**

### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 4,028,733 | 6/1977 | Ulicki | 358/102 X |
| 4,506,387 | 3/1985 | Walter | 455/612 |
| 4,513,390 | 4/1985 | Walter et al. | 358/102 X |
| 4,703,348 | 10/1987 | Yuasa | 358/133 |
| 4,769,833 | 9/1988 | Farleigh et al. | 358/86 X |
| 4,772,956 | 9/1988 | Roche et al. | 358/134 X |
| 4,782,397 | 11/1988 | Kimoto | 358/102 X |
| 4,816,901 | 3/1989 | Music et al. | 358/85 X |
| 4,890,320 | 12/1989 | Monslow | 380/10 |

| | | | |
|---|---|---|---|
| 4,890,321 | 12/1989 | Seth-Smith et al. | 358/86 X |
| 4,918,523 | 4/1990 | Simon | 358/133 |
| 4,924,311 | 5/1990 | Ohki et al. | 358/133 X |
| 4,947,244 | 8/1990 | Fenwick | 358/86 |
| 4,949,187 | 8/1990 | Cohen | 358/102 X |
| 4,953,196 | 8/1990 | Ishiwaka et al. | 358/85 X |

*Primary Examiner*—Victor R. Kostak
*Attorney, Agent, or Firm*—Kenneth C. Hill

[57] **ABSTRACT**

A system and method for transferring video programs from a first location to a remote location provides for communication of the programs over selected commercial telephone networks. The program signals are digitized, compressed, and stored at the first location, and transferred to the remote location on request of a viewer. Due to the compression of the program, the time required for electronically transferring the program to the remote location is much less than the viewing time for such program. The compressed program is reconstructed at the remote location for viewing on available video display devices.

**9 Claims, 4 Drawing Sheets**



Case 1:06-cv-00737-SLR    Document 76-48    Filed 12/05/2006    Page 3 of 11
Case 2:06-cv-00239-RHC    Document 34-2    Filed 08/18/2006    Page 3 of 11



*Fig. 1*

*Fig. 2*

*Fig. 3*

Case 1:06-cv-00737-SLR     Document 76-48     Filed 12/05/2006     Page 4 of 11
Case 2:06-cv-00239-RHC     Document 34-2     Filed 08/18/2006     Page 4 of 11



Fig. 4

Case 1:06-cv-00737-SLR　　Document 76-48　　Filed 12/05/2006　　Page 5 of 11
Case 2:06-cv-00239-RHC　　Document 34-2　　Filed 08/18/2006　　Page 5 of 11



*Fig. 5*

U.S. Patent          July 14, 1992          Sheet 4 of 4          5,130,792



*Fig. 6*

*Fig. 7*

5,130,792

1

## STORE AND FORWARD VIDEO SYSTEM

### BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates generally to video systems and more specifically to a system and method for transferring a video program for display at a remote location.

2. Description of the Prior Art

Viewing of various types of video programs has become increasingly popular. These programs are generally viewed on standard television sets. Typical video programs include motion pictures, entertainment produced for television, and educational and training programs. An extremely wide variety of programs have been designed or adapted for television viewing.

In order to transfer the video programs to a remote location where they can be viewed, programs can be broadcast using radio waves, transferred to the remote location by means of a specially installed dedicated cable, or transfer of a physical copy on video tape or video disk can be made. Each method of distributing video programs has drawbacks for certain applications.

When video programs are transferred using radio waves, there is little or no control over who receives and views the program. This method of transferring video programs is not suitable for limited distribution of pay programs. In addition, the number of channels for transferring programs is not unlimited, and picture quality of the program can be degraded by atmospheric conditions.

Barring technical problems, programs transferred to a remote location along a specially installed, dedicated cable generally have a reliably good picture quality. However, the cable must be installed at each remote location, and controlled through a centralized facility. Although many video channels can be carried over some cable systems, the number of channels is, again, not unlimited. As is the case with broadcast systems, transmitting equipment must be made available at the time any particular program is to be viewed. The selection of programs and times for viewing are made centrally, as is the case with broadcast systems, and are not under the control of a viewer at a remote location.

Physical transport of video tapes to a remote location allows the viewer to select the program to be viewed and the time for viewing. However, such tapes must be physically transported to the remote location. This takes time, and is often not convenient for the viewer. In addition, the physical video tape or disk containing the programming is subject to loss, theft, and deterioration.

It would be desirable to provide a system and method for transmitting video programs to remote locations which overcomes various drawbacks as described above.

### SUMMARY OF THE INVENTION

It is therefore an object of the present invention to provide a system and method for transferring video programs from a first location to a remote location.

It is another object of the present invention to provide such a system and method wherein the programs are electronically transferred in a short period of time relative to the viewing time of the programs.

It is a further object of the present invention to provide such system and method which does not require

2

that special, dedicated cables be connected to the remote location.

Therefore, according to the present invention, a system and method for transferring video programs from a first location to a remote location provides for communication of the programs over selected commercial telephone networks. The program signals are digitized, compressed, and stored at the first location, and transferred to the remote location on request of a viewer. Due to the compression of the program, the time required for electronically transferring the program to the remote location is much less than the viewing time for such program. The compressed program is reconstructed at the remote location for viewing on available video display devices.

### BRIEF DESCRIPTION OF THE DRAWINGS

The novel features believed characteristic of the invention are set forth in the appended claims. The invention itself however, as well as a preferred mode of use, and further objects and advantages thereof, will best be understood by reference to the following detailed description of an illustrative embodiment when read in conjunction with the accompanying drawings, wherein:

FIG. 1 is a high level block diagram of a system for transferring video programs to a remote location;

FIG. 2 is a block diagram of a central data facility;

FIG. 3 is a block diagram of a system for digitizing and compressing video programs;

FIG. 4 is a block diagram of a distribution interface for use with the system of FIG. 1;

FIG. 5 is a block diagram of a receiver for use at a remote location;

FIG. 6 is a flowchart describing a method for making video programs available for transfer to a remote location; and

FIG. 7 is a flowchart illustrating a method for requesting, receiving, and displaying video programs at a remote location.

### DESCRIPTION OF THE PREFERRED EMBODIMENT

Referring to FIG. 1, a system for transferring video programs to a remote location includes a central data facility 10 connected to a commercial telephone network 12. The central data facility 10 will be described in further detail in connection with the following figures. Telephone network 12 preferably includes optical fiber connections capable of transferring digital data at very high rates. Such optical fiber systems are currently being installed in selected locations in the United States, and are expected to be widely available in the future.

At a remote location, a telephone 14 and receiving unit 16 are connected to the telephone network 12. A video display device 18, such as a television conforming to the NTSC standard, is connected to the receiving unit 16 for displaying video programs which have been transferred from the central data facility 10 to the receiving unit 16. A viewer who wishes to down load a program from the central data facility 10 into his receiving unit 16 calls the central data facility 10 using the normal telephone 14. After the program has been ordered, the user places the telephone 14 on-hook and switches the receiving unit 16 to standby. The central data facility 10 then returns the call and down loads the requested program into the receiving unit 16 for viewing at a time selected by the viewer.

5,130,792

3

A keyboard or other input device is preferably provided on the receiving unit 16 for the viewer to identify the requested program. Identifying information for the receiving unit, used for billing and call-back, can be stored in the receiving unit.

A block diagram of the central data facility 10 is shown in FIG. 2. The central data facility 10 includes a central processor 20 connected to one or more mass storage devices 22. Mass storage devices 22 are preferably high density devices such as optical disks. Programs which are to be handled by the central data facility 10 are originally provided from one or several different types of video source 22 as known in the art. The video programs are digitized and compressed in a digitizing processor 26, and transferred to the central processor 20 for retention in mass storage devices 22.

Incoming requests for programs are connected to a request interface 28, which is in turn connected to the central processor 20. Outgoing programs being transmitted to remote receiving units are routed through a distribution interface 30.

In a preferred embodiment, a user connects to the central data facility 10 through the request interface 28 by means of a standard TOUCH-TONE (DTMF) telephone. Once a connection has been made, the viewer can identify himself and request any available program by entering a proper set of codes. The DTMF tones transferred to the request interface 28 are converted to characters and transmitted to the central processor 20. Central processor 20 identifies the caller and determines whether the requested selection is available. Desired information, such as the availability of a selection, any delay which may be incurred prior to down loading the selected program, or an indication of the charges incurred in the transaction, can be returned to the viewer through a request interface 28 by means of DTMF tones or recorded or synthesized spoken messages.

Once a request has been made and acknowledged, central processor 20 selects an available output channel to distribution interface 30, and requests a telephone switching network connection. Since each viewer must identify himself when the request is made, central processor 20 is able to call an authorized number at a known location corresponding to such user. Once the connection is established, the requested program can be transferred from mass storage 22 through the distribution interface 30 to the remote location. Accounting data regarding the transaction is logged by the central processor 20 for administrative purposes.

Referring to FIG. 3, a block diagram of the digitizing and compression processor 26 is shown. Source 24 provides separate video and audio signals to processor 26. The video signal is applied to a sync and blanking stripper circuit 32. The various sync signals and blanking intervals contained in the video signal are necessary only for display of the program, and can be recreated in the receiving unit 16. The output from sync and blanking stripper 32 is connected to a signal separator 34, which breaks the video signal into its various basic elements. The number of separate channels into which the video signal is separated at this point will depend upon system implementation, with signals such as luminance and chromanance being likely candidates for separate handling.

The separated signals are then converted to digital signals in analog to digital converters 36, and stored in a buffer 38. As shown in FIG. 3, three separate video signals are digitized, but one, two, or more than three

4

signals may be used. If the video signal is not split into two or more parts, the output of the sync and blanking stripper 32 can be input directly to an analog to digital converter 36.

Since the audio signal is frequency modulated instead of amplitude modulated, it is preferably handled separately from the video signal. The audio signal is demodulated and filtered in filter 40, and digitized in analog to digital converter 42. The audio signal is also stored in buffer 38.

Digital data from buffer 38 is input to a data compression circuit 44. Compressed data is input to an encoder 46, which encrypts the data in order to preserve privacy. From the encoder 46, the digital data representing the program originally provided by the source 24 is transferred to the central processor 20.

Buffer 38 can be a relatively small buffer, which requires that data be extracted therefrom and compressed in data compression circuit 44 as it is being generated by the source 24. In the alternative, buffer 38 can include mass storage capable of holding an entire program. In this event, the compression and encoding of the data can be performed after the entire program has been digitized, if desired.

Referring to FIG. 4, a block diagram of a preferred embodiment for the distribution interface 30 is shown. Central processor 20 is connected to a high speed bus 48, which is in turn connected to several gateways 50. Although two gateways 50 are shown in FIG. 4, the number actually used depends upon details of the system implementation, especially with reference to the data throughput capabilities of the central processor 20 and the gateways 50.

Each gateway 50 is connected to a low speed bus 52. Each low speed bus 52 is preferably a commercially available local area network. A plurality of optical converters 54 are connected to each low speed bus 52. In FIG. 4, only two converters 54 are shown connected to each low speed bus 52, but more are preferably connected in an actual implementation. The number of converters 54 connected each low speed bus 52 depends on the data transfer rate of the converters 54 and data handling capability of the buses 52.

Data transferred to a converter 54 is placed into an internal buffer 56. Control circuitry 58 controls operation of the converter 54 and communicates with the gateway 50 over low speed bus 52. Control circuitry 58 also controls operation of optical drivers 60, 62. Each optical driver 60, 62 transmits the data from buffer 56 via a modulated light signal as known in the art. Each optical driver 60, 62 is connected to an optical coupler 64, which combines the different light signals onto a single optical fiber. In a preferred embodiment, optical drivers 60, 62 generate light having different wavelengths, which is multiplexed onto a single optical fiber by coupler 64. Particular system designs can utilize only a single optical driver 60, or more than the two optical drivers 60, 62 shown in FIG. 4.

The distribution interface 30 shown in FIG. 4 allows a single central processor 20 to drive a relatively large number of converters 54 at one time. Various alternative designs to that shown in FIG. 4 can, of course, be utilized if desired.

FIG. 5 shows a preferred embodiment of receiving unit 16. The receiving unit 16 shown in FIG. 5 is used only as a stand alone receiver, and does not incorporate the automatic program request facilities described in connection with FIG. 1.

5,130,792

5

The incoming optical signals are filtered by wavelength and split in optical splitter 64, and converted to digital electrical signals. In the embodiment shown in FIG. 5, two different wavelengths of light were used to transmit information over the optical fiber connection, so two separate channels of digital information are generated by splitter 64. The number of optical drivers 60, 62 as described in connection with FIG. 4 determines the number of channels into which the incoming data is split by splitter 64.

Each channel of digital data is connected from splitter 64 to a serial to parallel converter 66, which converts the serial data to byte-wide data. As is known in the art, the serial transmission of the program data preferably includes redundant error correcting code (ECC), allowing for correction of errors within the receiving unit 16. Error correction is performed in error correction units 68, and the data is temporarily stored in buffer 70.

Under control of control unit 72, data is removed from buffer 70 and transferred to decoder 74. Decoder 74 decrypts the compressed data, undoing the encryption effects of encoder 46 described in connection with FIG. 3. Decoded data is then transferred through storage interface 76 and stored into mass storage device 78. Mass storage device 78 is preferably an erasable optical disk, or other similar relatively low cost, high density storage medium.

Data is stored onto mass storage device 78 until the entire requested program has been down loaded from the central data facility 10. Due to the removal of unnecessary information, compression of the remaining data, and high speed transfer, this down loading can be accomplished in much less time than is required to view the program in real time. Once transfer has been completed, control unit 72 communicates such fact to user interface 80, which indicates through visual or audible means to a viewer that the down loaded program is now available for viewing. User interface 80 provides basic functions for the viewer, such as setup for down loading a program, play a program, and pause during play of a down loaded program.

Once a viewer selects the play mode, control unit 72 causes the data stored in mass storage device 78 to be transferred through storage interface 76 to a data decompression unit 82. Data decompression unit 82 restores the compressed data to its raw, uncompressed form, and transfers it to buffer 84. Data is extracted from buffer 84 in real time as needed for viewing, and converted to analog form in digital to analog converter 86. The original video and audio signals are then restored in signal reconstruction circuit 88, which restores blanking intervals, sync signals, and the like which were removed in the digitizing and compression processor 26. The output of signal reconstruction circuitry 88 is a composite video signal or a modulated RF signal suitable for input to a standard television set. If desired, the program signal can alternatively be recreated as a digital signal suitable for display on a digital monitor as known in the art.

Referring to FIG. 6, a preferred method for making a video program available for transmission to a remote location is shown. The program is first digitized 90 and compressed 92 as described in connection with FIG. 3. The program is also preferably encoded 94, and stored 96 in a non-volatile mass storage device. If desired, the encoding step 94 may be left out.

6

At this point, the program is compressed and stored in condition to be transferred. The number of programs which can be stored at one time is limited only by the capabilities of the central processor 20, and the storage available in mass storage devices 22. When a request is received for a particular program 98, a check is made to see whether that program is available 100. If the requested program is not available, perhaps because the viewer made a mistake when entering his selection, such fact is indicated to the viewer 102. If the program is available for down loading, that fact is confirmed to the viewer 104 and the central data facility 10 sets up a telephone connection with the remote location 106. Transfer of the program 108 is then performed as described above.

Referring to FIG. 7, a preferred method is shown by which the receiving unit 16 at the remote location receives and displays a requested program. First, a connection is made to the central data facility 110. As described above in connection with FIG. 1 this is preferably done by utilizing a standard TOUCH-TONE (DTMF) telephone handset to dial the central facility and enter a selection.

The viewer then requests the desired program 112, and waits to see if it is available 114. If not, the process is complete. If the requested selection is available, the viewer hangs up the telephone handset and switches the receiving unit 16 to standby. The program is then received by the receiving unit 118, decoded, and stored into mass storage 122. When the viewer is ready to view the program, it is decompressed 124 and played back 126 for viewing on a video display. The viewer may preferably pause display of the program at any time by entering a command at the user interface 80, and may view the program multiple times.

The convenience and usefulness of the system described above depends in large part on the ability to be able to quickly down load a video program to the receiving unit 16. In order to illustrate the convenience of the system described above, an example illustrating the numbers involved will now be described.

A single television channel has a 6 megahertz bandwidth. By stripping unnecessary signals as described above, a video signal can be sampled at a rate of 16 megahertz and retain a good signal quality. Samples having a resolution of 8 bits provide sufficient video fidelity for television purposes. This results in a raw data rate of 16 megabytes per second of video data.

Assuming a desired program, such as a motion picture, to have a length of two hours, 7200 seconds of data must be digitized and stored. At a rate of 16 megabytes per second, this results in 115.2 gigabytes of raw data. As is known in the art, video information is highly redundant, so that large compression factors are obtainable. This means that a total data storage requirement of approximately 2–4 gigabytes is expected to be sufficient for a two hour video program. This is the storage requirement for a single program both in the central data facility 10 and the receiving unit 16. This amount of data is well within the capability of optical disks which are presently becoming available.

Assuming 2.3 gigabytes are required for a compressed program, and that a 50% overhead is required for serial transmission of the program data, for error correcting code, blocking, and the like, 3.45 gigabytes of serial data must be transmitted between the central data facility 10 and the receiving unit 16. At eight bits per byte, this results in 27.6 gigabits to be transferred.

5,130,792

7

Optical fiber connections currently planned for installation to residential customers will have a maximum data transfer rate of 144 megabits per second. At this rate, the required 27.6 gigabits can be transferred to the receiving unit 16 in 192 seconds, which is just over three minutes. Thus, approximately three minutes is required to transfer a typical video program to the receiving unit 16.

Note that the numbers described above do not require the use of more than one wavelength of light on a single optical fiber. If it is necessary to increase the sampling rate, or the magnitude of each sample, two or more wavelengths of light can be multiplexed on a single cable as described in connection with FIGS. 4 and 5. This would allow better resolution of the video signal with no increase in transmission time.

If a video camera and compression circuitry is available at a remote location, it is possible to use the system described above to transfer video information between two remote locations. A call to the central data facility can be used to initialize the connection between two remote locations, and the central data facility is no longer involved once the connection is setup. Near real-time video signals obtained at one location are compressed and transferred to the second remote location over the phone lines. Instead of storing the signals onto the mass storage device 78, they are transferred directly to the data decompression circuitry 82 and displayed at the second remote location. Near real-time video communication can be accomplished by providing cameras and compression circuitry at each end of a conversation.

While the invention has been particularly shown and described with reference to a preferred embodiment, it will be understood by those skilled in the art that various changes in form and detail may be made therein without departing from the spirit and scope of the invention.

What is claimed is:

1. A system for transmitting video programs to remote locations over a switched telephone network, comprising:

a central data facility having means for storing digital compressed versions of video programs;

a request interface connected to said central data facility and to the telephone network, wherein said request interface receives requests for video programs made over the telephone network and communicates them to said central data facility;

a distribution interface connected to said central data facility and to the telephone network, wherein said distribution interface initiates connections over the telephone network with remote locations in response to requests received by said request interface, and transmits thereto compressed versions of video programs previously requested through said request interface, such compressed versions being transmitted in less time than is required to view the programs in real time;

a receiver at each remote location for connecting to the telephone network and receiving compressed video programs transmitted from said distribution interface, for storing the received programs, and for subsequently playing the video programs at a real time rate on a video display.

2. The system of claim 1, wherein requests are made to said request interface through preselected sequences

8

of DTMF transmissions made from a telephone transceiver.

3. The system of claim 1, wherein said distribution interface comprises:

a plurality of converters for converting digital video programs to a format suitable for transmission over a telephone line; and

a controller for simultaneously providing data representative of digital compressed video programs to each of said converters, wherein a plurality of the remote receivers can be simultaneously receiving such programs.

4. The system of claim 3, wherein said controller comprises:

a high speed central processor for providing processing and data transfer functions;

at least one gateway connected to said central processor by a high speed communications bus; and

a communications network having a lower data carrying capacity than the high speed communications bus connected to each of said gateways, wherein a plurality of converters are connected to each communications network, and wherein said central processor controls the transfer of data to said converters through said gateways over the high speed communications bus and said communications network.

5. The system of claim 1, further comprising:

means for inputting video programs; and

conversion means connected to said inputting means and to said central data facility for digitizing and compressing video programs read in to said inputting means, and for transmitting such compressed video programs to said central data facility for storage and subsequent transmission to remote locations.

6. A method for viewing video programs at a location remote from a central data facility, comprising the steps of:

receiving at the central data facility a request for a selected program over a switched telephone network, such request identifying a preregistered requester;

determining whether the selected program is available;

if the selected program is available, initiating a connection over the telephone network to a remote receiving unit previously associated with the preregistered requester;

transmitting a previously stored compressed version of the selected program over the initiated connection in less time than is required to view the program in real time;

receiving the selected program at the remote receiving unit and storing it on a mass storage device; and

after all of the selected program has been stored on the mass storage device, decompressing the selected program and playing it back in real time on a video display.

7. The method of claim 6, wherein the request received at the central data facility comprises a sequence of tones generated by a DTMF telephone.

8. The method of claim 6 wherein, if the selected program is available, such availability is confirmed during a connection in which such request is made, followed by terminating such connection prior to said step of initiating a connection.

9. A system for transmission of video programs over a switched telephone network, comprising:

5,130,792

**9**

a central data facility for storing a plurality of video programs in a digital, compressed format;

means connected to said central data facility for digitizing and compressing video programs, and communicating them to said central data facility for storage;

a request interface connected to the telephone network and to said central data facility for receiving requests for desired video programs over the telephone network, such request being communicated to said request interface by sequences of tones generated by a DTMF telephone in response to a user pressing buttons thereon in selected patterns, such patterns identifying the user and the desired video program, wherein said request communicates to the user a confirmation of availability if a desired video program is available for the communication to the user;

a distribution interface connected to said central data facility and to the telephone network, said distribution interface containing a plurality of converters for converting compressed digital data to a form suitable for transmission over the telephone network, wherein said distribution interface initiates a connection with a receiving unit at a preselected remote location in response to the user's request and transmits the digitized, compressed video program to such remote unit over such connection in less time than is required to view the program in real time;

**10**

a plurality of receiving units at a plurality of remote locations, each of said receiving units connected to the telephone network and being capable of completing a connection initiated by said distribution interface and receiving digitized, compressed video programs over such connections, wherein each of said receiving units includes a mass storage subsystem for storing a received video program in compressed format, and a decompression subsystem for reading a stored video program from the mass storage subsystem at the user's convenience and converting it to a decompressed form suitable for display in real time; and

a video display device connected to each receiving unit for displaying the converted video program.

*  *  *  *  *

25

30

35

40

45

50

55

60

65

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | § § § | |
| Plaintiff | § | |
| v. | § § | Case No. 2:06-cv-00239-RHC |
| TIME WARNER CABLE, INC.; | § | Honorable Ron Clark |
| COX COMMUNICATIONS, INC.; | § | |
| CHARTER COMMUNICATIONS, | § | |
| INC.; COMCAST CABLE | § | JURY TRIAL DEMANDED |
| COMMUNICATIONS, LLC; | § | |
| COMCAST OF RICHARDSON, LP; | § | |
| COMCAST OF PLANO, LP; | § | |
| COMCAST OF DALLAS, LP | § | |
| | § | |
| Defendants | § | |

## PLAINTIFF USA VIDEO TECHNOLOGY CORP.'S OPPOSITION TO DEFENDANT COMCAST'S MOTION TO TRANSFER TO THE DISTRICT OF DELAWARE, OR, IN THE ALTERNATIVE, TO STAY THE ACTION

Plaintiff USA Video Technology Corporation ("USVO") hereby files this

Opposition to the Motion to Transfer to the District of Delaware, or, In the Alternative,

To Stay the Action, filed by Defendants Comcast Cable Communications, LLC; Comcast

of Richardson, LP; Comcast of Plano, LP; and Comcast of Dallas, LP (collectively, the

"Comcast Defendants")

### I.    SUMMARY OF THE CASE

The Comcast Defendants' Motion To Transfer is based on three premises: (1)

This suit would be more convenient in Delaware; (2) Delaware District Court Judge Kent

A. Jordan has already construed the claims of U.S. Patent No. 5,130,792 ("the '792

1

Patent), which was at issue in the earlier case involving Defendant Movielink LLC and this current case, and (3) related cases (asking for declaratory judgments of non-infringement of the '792 patent) are already pending in Delaware.   Those arguments gloss over some well-established legal principles, as well as paint a picture that is murky at best.  For example, Defendants give little credence to the issue of the heavy weight afforded to Plaintiff's choice of forum.   They rely heavily on the declaratory judgment actions currently pending in Delaware[1] yet give little weight to the fact that those actions were filed **after** the onset of this litigation, affording them less significance to black letter first-to-file law.   They focus on the fact that Judge Jordan is familiar with '792 patent, yet place little significance to the fact that Judge Jordan has been nominated to the U.S. Court of Appeals for the Third Circuit[2], making it highly unlikely that he would be the sitting judge by the time the declaratory judgment case were heard.   In addition, they focus heavily on the fact that Judge Jordan has already construed the patent claims, while the truth is that Judge Jordan construed only one word in the patent at suit.

## II.    RESPONSE TO LIST OF UNDISPUTED MATERIAL FACTS

### A.  The Parties Involved

    1.  Undisputed

    2.  Undisputed

    3.  Undisputed

    4.   Undisputed

    5.  Undisputed

---

[1] Plaintiff USVO has filed motions to dismiss, stay or transfer in each of the three declaratory judgment actions.
[2] According to the website www.whitehouse.gov, Judge Kent A. Jordan's nomination to the Third Circuit Court of Appeals was sent to the Senate by President George W. Bush on June 26, 2006.

B. **Nature and Stage of Proceedings**

    1.  Undisputed

    2.  Disputed as to service.  The statement by Comcast that Time Warner had not been served was accurate when written.  Since then, Plaintiff has begun service of the First Amended Original Complaint on Time Warner.

C. **The '792 Patent Litigation in Delaware District Court**

    1.  Undisputed

    2.  Undisputed

    3.  Undisputed

III.    **ISSUES PRESENTED**

    The issue presented is whether the weighing of private and public factors weighs so heavily in favor of transfer as to upset the Plaintiff's choice of forum.

IV.    **ARGUMENT AGAINST TRANSFER**

    It is not at all unusual for the same patent to be litigated in different forums against different defendants, as would be the case here.   The infringement analysis in this case will be completely different since it involves a significantly different technology. The Defendant in the prior litigation, Movielink LLC, operates a video-on-demand (VOD) service over the Internet.    In Movielink's system, movies are ordered by the customer and delivered to the customer's computer over the Internet using the Hyper Text Transfer Protocol (HTTP) and the Transmission Control Protocol (TCP).  The grant

of summary judgment of non-infringement in the Movielink litigation hinged on the particular way that connections are created between computers over the Internet using the HTTP and TCP protocols.

In the present case, the Defendant Coxcom operates a VOD service over its digital cable network.  In a digital cable service, the television content and VOD content is transmitted from the cable company's local facility, called a head-end, to a cable set-top box in the subscriber's home. Coxcom's VOD service involves completely different technologies than were at issue in the Movielink case for creating connections and communicating data between the cable head-end and the subscriber's set-top box.

It is hard to claim with a straight face that a Markman hearing in the Eastern District of Texas would be a waste of judicial time and resources when (1) only one word was construed by the Delaware Court, and (2) USVO is bound by that construction in this action and any others related to the '792 patent.  And it's equally hard to buy the argument that Judge Jordan's familiarity with the patent should be a deciding factor when Judge Jordan is not expected to be still be sitting on the District of Delaware bench when this case is heard.

In addition, since one defendant has not filed a declaratory judgment in Delaware and two defendants have not filed motions to transfer, it is a certainty that this case will be tried in Texas – against at least one defendant – no matter how this court rules on the two pending motions to transfer.   It would therefore be more judicially economic to keep all defendants in Texas.

This brief will further demonstrate that USVO had significant reasons for filing in the Eastern District of Texas and that Comcast has not met the burden required to upset the Plaintiff's choice of forum.

### A. Plaintiff's Choice of Forum Should Rarely Be Disturbed

USVO does not dispute the premise that this suit could have been brought in Delaware and that Delaware would be an appropriate forum. However, it strongly disagrees with the notion that public and private factors favor upsetting Plaintiff's choice of forum by transferring this case to Delaware.

While Plaintiff's forum choice by itself is not conclusive or determinative, it should only be disturbed if Defendant can show that the balance is strongly in favor of transfer. *Symbol Techs. v. Metrologic Instruments, Inc.*, 2006 U.S. Dist. LEXIS 55099 (E.D. Tex. 2006), citing *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.,* 796 F. 2d 821, 828 (5th Cir. 1986). The movant bears the burden of proof in demonstrating that transfer is warranted. *Z-Tel Communs., Inc. v. SBC Communs. Inc., v. SBC Communs., Inc.* 331 F. Supp. 2d 567, 570 (E.D. Tex. 2004)

### B. Weighing of Interests Favors Keeping This Case in The Eastern District of Texas

In order to favor transfer, the Defendant(s) must convince the Court that a weighing of public and private factors strongly favors transfer. These factors include the relative ease of access to the sources of proof; the cost of obtaining attendance of witnesses and other trial expenses; the place of the alleged wrong; and the possibility of delay and prejudice if granted. Id. at 571, quoting *Mortensen v. Maxwell House Coffee Co.*, 879 F. Supp. 54, 56 (E. D. Tex. 1995); See also *Walter Fuller Aircraft Sales v. Republic of Philippines*, 965 F.2d 1375, 1389 (5th Cir. 1992)). Additionally, the court

should consider the public interest factors of: 1) the relative backlog and other administrative difficulties in the two jurisdictions; 2) the fairness of placing the burdens of jury duty on the citizens of the state with the greater interest in the dispute; 3) the local interest in adjudicating local disputes; and 4) the appropriateness of having the case in a jurisdiction whose law will govern the dispute in order to avoid difficult problems in conflicts of laws. *Id.*

### 1. Delaware Judge is Not Expected to Hear This Case, So Familiarity With the Patent/Issues is a Moot Argument

Many of the arguments supporting Defendants' Motion to Transfer revolve around the idea that Judge Jordan is already familiar with the patent and has already construed the claim in a Markman hearing.   This argument fails to be persuasive for several reasons, including the fact that Judge Jordan has recently been nominated to the U.S. Court of Appeals for the Third circuit.  If this case were transferred to Delaware, it is highly unlikely that Judge Jordan would be the one to hear this case, and his colleagues on the bench in Delaware are no more familiar with the '792 patent than is this Court.

The Comcast Defendants also rely heavily on the fact that Judge Jordan conducted a Markman hearing in the earlier case against Movielink.   In that case, Judge Jordan eventually construed one word – "initiate."   While Defendants seem worried that a second Markman would be a waste of judicial time and resources, they can rest assured that this Court will not have to duplicate any prior efforts unless it sees fit to do so since USVO is precluded under the theory of collateral estoppel from offering any alternative construction than the one already adopted by one court.  *Tex. Instruments, Inc. v. Linear Techs. Corp.*, 182 F. Supp. 2d 580, 585-586 (E. D. Tex. 2002).   Furthermore, since the

Delaware Court construed only one word from one claim, it is expected that another

Markman hearing will be necessary no matter which court tries this case.

To further their argument about conserving judicial resources, Comcast

Defendants point out that the District of Delaware currently has jurisdiction over three

Declaratory Judgment lawsuits (asking the Court find no infringement of the '792 patent)

filed against USVO by the same Defendants that appear in this suit. USVO has filed

Motions to Dismiss, Stay or Transfer in each of those three actions. Those Motions are

based on the fact that this action was pending in the Eastern District of Texas prior to the

filing of those Declaratory Judgment suits. Those suits never should have been brought.

Instead, the proper action would be to have those issues litigated as defenses and/or

counterclaims in this suit.

And while the Northern District of Texas did express a willingness to stay or

transfer a patent case to another district where a second-filed action sat, the Court's

reasoning for doing so makes it distinguishable from this matter. See *Taylor v. Ishida*

Co., 2002 U.S. Dist. LEXIS 9916 (D. Tex. 2002). In *Taylor*, the Court held "This court

can defer to a second-filed action when, as here, the judge in the subsequent case has

extensive prior experience concerning the patent-in-suit." Id. Again, this reasoning

becomes moot as soon as Judge Jordan leaves the District of Delaware to take a seat on

the Third Circuit of Appeals. This is expected to happen before his "extensive prior

experience concerning the patent-in-suit" will be of any use to this litigation. In addition,

as noted earlier, while the patent is the same, the technology is quite different, thus any

court that hears this case will have to become familiar with the technology practiced by

these Defendants. USVO believes that the Eastern District of Texas is as capable of doing so as the District of Delaware.

### 2. Eastern District Will Have to Hear At Least One Suit

It should also be noted that this suit involves four distinct defendants: Time Warner Cable, Cox Communications, Charter Communications and the Comcast Defendants. Only three of the Defendants filed declaratory judgments in Delaware. The same three filed motions to transfer. Charter Communications did neither. In addition, Time Warner Cable has not filed a Motion to Transfer. Therefore, at a minimum, USVO's suit against Charter Communications and Time Warner Cable will go forward in the Eastern District of Texas regardless of its rulings on transfer for the other defendants. The Eastern District of Texas will be forced to become familiar with the patent and technology and will have to conduct a Markman hearing. Hence, contrary to what the Comcast Defendants have argued, it would in fact be more judicially economic and efficient to deny transfer and keep all defendants in Texas.

### 3. Eastern District of Texas Is Favorable Venue For Efficient Patent Litigation

Defendants accuse USVO of "forum shopping" in its selection of the Eastern District of Texas in which to file suit. All Plaintiffs engage in some degree of forum shopping when they file a suit. As the Eastern District pointed out in Z-Tel, "it seems quite logical that a plaintiff would hope for favorable outcome for its lawsuit" *Z-Tel Communs.* At 572. In *Z-Tel*, the Eastern District of Texas enumerated several factors that are legitimate reasons to choose a forum. "A court may be selected because its docket moves rapidly, its discovery procedures are liberal, its jurors are generous, the rules of law applied more favorable, or the judge who presides in that forum is thought

more likely to rule in the litigant's favor." Id. quoting *In re Triton Secs. Litig.*, 70 F.

Supp. 2d 678, 689 (D. Tex. 1999).   USVO chose the Eastern District of Texas for many

of the same reasons enunciated recently by the attorney for Symbol in *Symbol Techs.*

LEXIS 55099 at *7-8.

> Frankly, there's nothing like the patent rules up in New York. . . .
> . . . [J]ust the fact that we have the early disclosures of infringement
> positions; we've got the claim charts underway; we're going to get that
> to them, you know, promptly; the requirement of having their
> invalidity contentions to us promptly, those are things we don't have in
> other courts. . . .
> . . . And so it will save us time, it will save us money, and it will much
> more likely lead to a prompt determination, respectfully, Your Honor,
> if you keep the case…
> . . . I try patent cases all over the country. And when we get before a
> judge-and obviously they all work hard and mean well and want to do
> the best-that doesn't understand patents or doesn't like patent cases, it's
> -- it takes years longer; it's much [*8]  more expensive; there are no
> procedures in place to make it work efficiently.

*Symbol Techs.* LEXIS 55099 at *7-8.   In his holding in that case, Judge Davis said

Symbol's most convincing argument focuses on "the interest of justice and that the most

convenient district is the district which would provide the parties and judicial system with

the most efficient and least expensive resolution of the case."   Id at *9.   The District of

Delaware averaged 23.5 months from filing to trial last year.   The Eastern District of

Texas, on the other hand, averaged a mere 15.9 months.[3]   In its own Motion, the Comcast

Defendants point out that the Movielink case, which was disposed of at the summary

judgment stage, consisted of "several years of discovery and a Markman hearing."   The

Eastern District of Texas - with rules regarding early disclosure of infringement

positions, claim charts and Markman hearings - will not allow a case to drag on in that

manner, which causes undue burden and financial stress on all parties.

---

[3] Federal Court Management Statistics as detailed on www.uscourts.gov

### 4. Comcast Makes No Argument that The Private Interests Favor Transfer

Comcast makes no arguments regarding the relative ease of access to proof, the availability of witnesses, the cost of attendance for witnesses or any other practical problem related to trial in the Eastern District of Texas versus trial in Delaware. Therefore, this Court should assume that these are non-factors.  In fact, with Defendants' having principal places of business in New York (TimeWaner), Georgia (Cox), Missouri Charter) and Pennsylvania and Delaware (Comcast Defendants), there is no single forum that would afford all parties relative ease to proof, availability of witnesses and a low cost of attendance for witnesses.

### V.     ARGUMENT AGAINST STAYING ALL PROCEEDINGS

The Comcast Defendants' argument for a stay is again based on the declaratory judgment actions filed in Delaware.  Again, these cases were filed <u>after</u> this suit.  If this Court is to allow the suit to remain in Texas and go forward, all claims in the declaratory judgment actions could properly be brought as defenses and/or counterclaims.   USVO agrees that the slew of litigation should be conducted in one jurisdiction rather than two.  However, USVO strongly believes that the proper course of action would be to continue with this first-filed action and assume that the District of Delaware will properly rule to either dismiss or stay those declaratory judgment actions pending a result in this case.

### VI.    CONCLUSION

This Court has ruled in the past that a Plaintiff's desire to achieve the most efficient and least expensive resolution of the case is a good reason for choosing a particular forum.  That choice of forum should only be upset if the movant makes a convincing showing that a weighing of private and public factors favors transfer.   The

Comcast Defendants have not succeeded in meeting this burden and this case should

continue to go forward in the Eastern District of Texas.


Respectfully submitted,


Date: August 22, 2006                /s/ Edward W. Goldstein
                                     Edward W. Goldstein, Esq.
                                     Texas Bar. No. 08099500
                                     **GOLDSTEIN, FAUCETT & PREBEG, LLP**
                                     1177 West Loop South, Suite 400
                                     Houston, TX  77027
                                     (713) 877-1515 – Telephone
                                     (713) 877-1737 – Facsimile
                                     E-mail: egoldstein@gfpiplaw.com

                                     T. John Ward, Jr., Esq.
                                     State Bar No. 00794818
                                     **LAW OFFICE OF T. JOHN WARD, JR., P.C.**
                                     P.O. Box 1231
                                     Longview, Texas 75606-1231
                                     (903) 757-6400 – Telephone
                                     (903) 757-2323 – Facsimile
                                     E-mail: jw@jwfirm.com

                                     **ATTORNEYS FOR PLAINTIFF**
                                     **USA VIDEO TECHNOLOGY CORP.**


**OF COUNSEL:**

Corby R. Vowell, Esq.
Texas Bar No. 24031621
**GOLDSTEIN, FAUCETT & PREBEG, LLP**
1177 West Loop South, Suite 400
Houston, Texas  77027
(713) 877-1515 – Telephone
(713) 877-1737-Facsimile
E-mail: cvowell@gfpiplaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 22, 2006. Any other counsel of record will be served by first class U.S. mail.

/s/ Edward W. Goldstein
Edward W. Goldstein

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORP., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:06-CV-239(RHC) |
| | § | |
| TIME WARNER, INC; COX | § | |
| COMMUNICATIONS, INC.; CHARTER | § | |
| COMMUNICATIONS, INC.; COMCAST | § | |
| CABLE COMMUNICATIONS, LLC; COMCAST | § | |
| OF RICHARDSON, LP; COMCAST OF PLANO, | § | |
| LP; and COMCAST OF DALLAS, LP, | § | |
| | § | |
| Defendants. | § | |

NOTICE OF APPEARANCE OF COUNSEL FOR DEFENDANT
CHARTER COMMUNICATIONS, INC.

Defendant CHARTER COMMUNICATIONS, INC. ("Charter") files this Notice of

Appearance of Counsel, and hereby notifies the Court that Matthew A. Rosenberg of the law

firm Thompson Coburn, LLP, One US Bank Plaza, St. Louis, Missouri 63101, is appearing as

counsel for Charter in the above-referenced matter. All pleadings, discovery, correspondence

and other material should be served upon counsel at the address referenced above.

Respectfully submitted,
**THOMPSON COBURN LLP**
One US Bank Plaza
St. Louis, Missouri 63101
Telephone: (314) 552-6000
Facsimile: (314) 552-7000

By: \_\_\_/s/ Matthew A. Rosenberg\_\_\_\_\_
MATTHEW A. ROSENBERG
State (Missouri) Bar No. 45670
mrosenberg@thompsoncoburn.com

3403619

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service and are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 25, 2006. Any other counsel of record will be served by first class mail on this same date.

<div align="right">
   /s/ Matthew A. Rosenberg
Matthew A. Rosenberg
</div>

3403619

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORP., | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:06-CV-239(RHC) |
| | § | |
| TIME WARNER, INC; COX | § | |
| COMMUNICATIONS, INC.; CHARTER | § | |
| COMMUNICATIONS, INC.; COMCAST | § | |
| CABLE COMMUNICATIONS, LLC; COMCAST | § | |
| OF RICHARDSON, LP; COMCAST OF PLANO, | § | |
| LP; and COMCAST OF DALLAS, LP, | § | |
| | § | |
|     Defendants. | § | |

---

**NOTICE OF APPEARANCE OF COUNSEL FOR DEFENDANT
CHARTER COMMUNICATIONS, INC.**

---

Defendant CHARTER COMMUNICATIONS, INC. ("Charter") files this Notice of

Appearance of Counsel, and hereby notifies the Court that Dean L. Franklin of the law firm

Thompson Coburn, LLP, One US Bank Plaza, St. Louis, Missouri 63101, is appearing as counsel

for Charter in the above-referenced matter.  All pleadings, discovery, correspondence and other

material should be served upon counsel at the address referenced above.

                    Respectfully submitted,

                    **THOMPSON COBURN LLP**
                    One US Bank Plaza
                    St. Louis, Missouri  63101
                    Telephone:  (314) 552-6000
                    Facsimile:  (314) 552-7000

                    By:   /s/ Dean L. Franklin
                          DEAN L. FRANKLIN
                          State (Missouri) Bar No. 31423
                          dfranklin@thompsoncoburn.com

3403619 v3

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who have consented to electronic service and are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 25, 2006. Any other counsel of record will be served by first class mail on this same date.

                                                  _/s/ Dean L. Franklin_____
                                                  Dean L. Franklin

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORP., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:06-CV-239(RHC) |
| | § | |
| TIME WARNER, INC; COX | § | |
| COMMUNICATIONS, INC.; CHARTER | § | |
| COMMUNICATIONS, INC.; COMCAST | § | |
| CABLE COMMUNICATIONS, LLC; COMCAST | § | |
| OF RICHARDSON, LP; COMCAST OF PLANO, | § | |
| LP; and COMCAST OF DALLAS, LP, | § | |
| | § | |
| Defendants. | § | |

---

NOTICE OF APPEARANCE OF COUNSEL FOR DEFENDANT
CHARTER COMMUNICATIONS, INC.

---

Defendant CHARTER COMMUNICATIONS, INC. ("Charter") files this Notice of

Appearance of Counsel, and hereby notifies the Court that Nicholas B. Clifford of the law firm

Thompson Coburn, LLP, One US Bank Plaza, St. Louis, Missouri 63101, is appearing as counsel

for Charter in the above-referenced matter. All pleadings, discovery, correspondence and other

material should be served upon counsel at the address referenced above.

Respectfully submitted,
**THOMPSON COBURN LLP**
One US Bank Plaza
St. Louis, Missouri 63101
Telephone: (314) 552-6000
Facsimile: (314) 552-7000

By: __/s/ Nicholas B. Clifford_____
NICHOLAS B. CLIFFORD
State (Missouri) Bar No. 44477
nclifford@thompsoncoburn.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that all counsel of record who have consented to electronic service and are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 25, 2006. Any other counsel of record will be served by first class mail on this same date.

<div align="right">

_____/s/ Nicholas B. Clifford_____
Nicholas B. Clifford

</div>

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA Video Technology Corporation, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Case No.2:06-cv-239 RHC |
| | § | |
| TIME WARNER CABLE, INC.; COX | § | |
| COMMUNICATIONS, INC.; | § | |
| CHARTER COMMUNICATIONS, | § | **JURY TRIAL DEMANDED** |
| INC.; COMCAST CABLE | § | |
| COMMUNICATIONS, LLC; | § | |
| COMCAST OF RICHARDSON, LP; | § | |
| COMCAST OF PLANO, LP; | § | |
| COMCAST OF DALLAS, LP | § | |
| | | |
| Defendants | | |

**OPPOSITION TO COX COMMUNICATIONS, INC.'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION, OR, IN THE ALTERNATIVE, TO
TRANSFER VENUE TO THE DISTRICT OF DELAWARE**

Plaintiff USA Video Technology Corporation ("USVO") hereby files this

Opposition to Cox Communications, Inc.'s ("Cox") Motion to Dismiss for Lack of

Personal Jurisdiction, or, in the Alternative, to Transfer Venue to the District of

Delaware.

**I.      SUMMARY OF THE CASE**

Cox essentially advances three arguments in its Motion to Dismiss, or in the

alternative, To Transfer Venue to the District of Delaware.  First and foremost, Cox

argues that USVO has sued the wrong party for infringing United States Patent No.

5,130,7092 ("the '792 patent).  Cox argues that it is its wholly-owned subsidiary,

Coxcom, Inc. ("Coxcom"), not the parent company, that provides the "video-on-demand"

services that USVO has alleged infringe its patent.  Secondly, Cox argues this case should be dismissed due to lack of jurisdiction as to both Cox and Coxcom because neither party does business in Texas.  Thirdly, Cox argues that even if this Court does not see fit to dismiss this action, this action should be transferred to Delaware.

## II.   RESPONSE TO LIST OF UNDISPUTED MATERIAL FACTS

1. Undisputed

2. Can not respond to this fact without additional discovery.  USVO believes it necessary to take a 30(b)(6) deposition to glean the full extent of Cox's business dealings in Texas.  USVO is unable to give a time schedule for this hearing since no case management plan has been entered by the Court.

3. Undisputed

4. Can not respond to this fact without additional discovery.  USVO believes it necessary to take a 30(b)(6) deposition to glean the full extent of Cox's business dealings in Texas.  Some of the business deals referred to in Paragraph 4 are quite recent and USVO has not been able to confirm or deny the truth of the allegations.  USVO is unable to give a time schedule for this hearing since no case management plan has been entered by the Court.

5. Undisputed

6. Disputed.  USVO disputes Cox's characterization that USVO contends that video-on-demand services in general infringe claim 1 of the '792

patent. In the 2003 suit in Delaware, cited in Paragraph 6, USVO alleged that the Movielink system specifically infringed claim 1 of the '792 patent.

7. Undisputed

8. Disputed. Again USVO dispute's Cox's characterization of the prior lawsuit. In that suit, the Court construed only one word in claim 1 of the '792 patent. The parties disputed other claim terms, but the Court declined to rule on those constructions. (Memorandum Opinion entered 1-31-05)

9. Disputed. While each Motion cited in Paragraph 9 was filed before the Court, it ruled only on one motion.

10. Disputed. USVO does not dispute that the Delaware Court held that "initiates" means "begins." USVO disagrees with Cox's summary of the rest of the claim. The Court declined to construe any additional terms in Claim 1. The rest of the claim is therefore given its plain and ordinary meaning. See claim 1 of the '792 patent.

11. Disputed. USVO disputes the assertion that "the Court substantially limited the scope of rights U.S. video was purporting to assert." The Court's only determination was that Movielink's particular system didn't fall within the scope of claim 1 of the '792 patent.


III.   **ISSUES PRESENTED**

1. Are there sufficient "minimum contacts" with the state of Texas to

confer personal jurisdiction over Cox?

2.  After evaluating the private and public factors, does the scale tip so heavily in favor of transfer as to upset the Plaintiff's choice of forum.

## IV.   ARGUMENT OPPOSING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### A.  USVO Has Added Coxcom As a Party Based On Cox's Representations

Cox argues in its Motion to Dismiss that its affiliate CoxCom would be the proper party in a lawsuit to determine whether Cox's video-on-demand service infringes Plaintiff's patent.  Based on that representation, USVO has filed, concurrent with this Opposition, a Second Amended Complaint that adds CoxCom as a Defendant in this suit.

### B.  Cox Meets *International Shoe* Standards for Personal Jurisdiction in the Eastern District of Texas

### 1.  Public Documents Show Cox Does Business in Texas

The seminal case on personal jurisdiction, *International Shoe Co. v. Washington*, 326 U.S. 310 (1945), set the standard of "minimum contacts such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice." Id. at 316. The first "minimum contacts" prong of the due process inquiry focuses on whether the defendant "has purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471 (U.S. 1985).  The second prong of "fair play and substantial justice" gives the defendant an opportunity to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Id. at 476-77.  In the first prong, the burden of proof is on the plaintiff to

4

establish "minimum contacts." However, in the second prong, the burden of proof is on the defendant to demonstrate the presence of other considerations that render the exercise of jurisdiction unreasonable. *Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995).

In its brief, Cox admits, at the very least, that it still owns a cable television franchise in Henderson, Texas.   That franchise is listed as Cox Communications, 109 North High Street, Henderson, Texas, 75652.   Secondly, a company press release dated March 10, 2005, listed several U.S. markets, 12 of those being in Texas cities (see Exhibit A).

Additionally, Cox Communications is listed by the Texas Secretary of State as having affiliates in Texas.  See Exhibit B, listing Cebridge Telecom Tx., L.P. Cablevision of Pflugerville, Inc., Cablevision of Leander, Inc., Cox Cable Midland, Inc., Cox Communications (Dallas), Cox Communications (Irving), Cox Communications (Austin).

Cox Communications is listed as having ownership of mineral rights by the City of Lubbock.  And Conroe Cable TV, an affiliate of Cox Communications, is listed as owning property in Conroe, Tx.  See Exhibit B.

Furthermore, searches found Coxcom doing business as TCA Communications, LLC, a Texas corporation, Texas Community Antennas, Inc., TCA Management Company and MT Associates, Inc.  See Exhibit C

These ties satisfy the first prong of the test, proving that, at a bare minimum, Cox has set out to do business with and derived income from residents of Texas so that maintenance of this suit would not offend notions of fair play and justice.   Cox has thus far failed to meet its burden of proving that jurisdiction is unreasonable.

## 2. Cox Has Not Argued Jurisdiction in Other Texas Lawsuits

Cox is the named Defendant – along with CoxCom – in four other Texas suits, three of those in the Eastern District.[1]  In at least one of those cases (also alleging patent infringement), case no. 2:05cv318, filed in Marshall, Texas, Coxcom specifically did not contest jurisdiction in the Eastern District of Texas.  (See Page 19, Paragraph 3 of Defendant Coxcom, Inc.'s Answer and Counterclaim, attached hereto as Exhibit D.)   It is not possible for Cox, or Coxcom to have enough ties to remain in the Eastern District for the purposes of one suit, but not enough for another.   A Defendant should not be allowed to pick and choose when to contest jurisdiction.

### C.  USVO Should Be Allowed Some Discovery As To The Extent of Cox's Ties to Texas

If this Court is not persuaded by Exhibits A-C detailing Cox's business dealings with Texas, USVO asks for leave of Court to conduct discovery directed at this jurisdiction issue.  While Cox alleges in its undisputed facts (Page 3, Paragraph 4) that an Asset Transfer Agreement eliminated most of its Texas holdings, it has not provided Plaintiff or the Court with that agreement.  In Exhibit A of its Motion to Dismiss, John Spaulding testifies via declaration that the Asset Transfer Agreement was executed on October 31, 2005, less than one year ago.  USVO has not been provided with any documentation, but has been forced to rely solely on public records in making its jurisdictional allegations.

### V.     ARGUMENT OPPOSING TRANSFER

---

[1] In the Eastern District of Texas, Cox is a named Defendant in *Rembrandt Technologies, LP v. Charter Communications, Inc. et al.*  cause no. 2:06cv223; *Fogent Networks, Inc. v. Echostar Communications Corp. et al*, cause no. 2:05cv318; and *Fogent  Networks, Inc. v. Echostar Communications Corporation et al* cause no. 6:06cv208.   Cox is also a Defendant in the Northern District of Texas in *Fogent Networks, Inc. et. al. v. Echostar Communications Corp. et al*. cause no. 3:06mc50.

Cox joined and incorporated by reference the arguments advanced by the
Comcast Defendants in their Motion To Transfer.  The Comcast Motion was based on
three premises: (1) This suit would be more convenient in Delaware; (2) Delaware
District Court Judge Kent A. Jordan has already construed the claims of U.S. Patent No.
5,130,792 ("the '792 Patent), which was at issue in the earlier case involving Defendant
Movielink LLC and this current case, and (3) related cases (asking for declaratory
judgments of non-infringement of the '792 patent) are already pending in Delaware.   In
addition, Cox argues that its lack of jurisdictional contacts renders Texas an improper
forum.  None of these factors warrants transfer.

### A.  Plaintiff's Choice of Forum Should Rarely Be Disturbed

USVO does not dispute the premise that this suit could have been brought in
Delaware and that Delaware would be an appropriate forum.  However, it strongly
disagrees with the notion that public and private factors favor upsetting Plaintiff's choice
of forum by transferring this case to Delaware.

While Plaintiff's forum choice by itself is not conclusive or determinative, it
should only be disturbed if Defendant can show that the balance is strongly in favor of
transfer.  *Symbol Techs. v. Metrologic Instruments, Inc.*, 2006 U.S. Dist. LEXIS 55099
(E.D. Tex. 2006), citing *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.,* 796 F. 2d
821, 828 (5th Cir. 1986).  The movant bears the burden of proof in demonstrating that
transfer is warranted. *Z-Tel Communs., Inc. v. SBC Communs. Inc., v. SBC Communs.,
Inc.* 331 F. Supp. 2d 567, 570 (E.D. Tex. 2004)

### B.  Weighing of Interests Favors Keeping This Case in The Eastern
### District of Texas

In order to favor transfer, the Defendant(s) must convince the Court that a

weighing of public and private factors strongly favors transfer.   These factors include

the relative ease of access to the sources of proof;  the cost of obtaining attendance of

witnesses and other trial expenses; the place of the alleged wrong; and  the possibility of

delay and prejudice if granted.  Id. at 571, quoting *Mortensen v. Maxwell House Coffee*

*Co*., 879 F. Supp. 54, 56 (E. D. Tex. 1995); See also *Walter Fuller Aircraft Sales v.*

*Republic of Philippines*, 965 F.2d 1375, 1389 (5th Cir. 1992)). Additionally, the court

should consider the public interest factors of: 1) the relative backlog and other

administrative difficulties in the two jurisdictions; 2) the fairness of placing the burdens

of jury duty on the citizens of the state with the greater interest in the dispute; 3) the local

interest in adjudicating local disputes; and 4) the appropriateness of having the case in a

jurisdiction whose law will govern the dispute in order to avoid difficult problems in

conflicts of laws. *Id.*

**1.  Delaware Judge is Not Expected to Hear This Case, So Familiarity With
the Patent/Issues is a Moot Argument**

Many of the arguments supporting Cox's  Motion to Transfer[2] revolve around the

idea that Judge Jordan is already familiar with the patent and has already construed the

claim in a Markman hearing.   This argument fails to be persuasive for several reasons,

including the fact that Judge Jordan has recently been nominated to the U.S. Court of

Appeals for the Third circuit.  If this case were transferred to Delaware, it is highly

unlikely that Judge Jordan would be the one to hear this case, and his colleagues on the

bench in Delaware are no more familiar with the '792 patent than is this Court.

The Comcast Defendants also rely heavily on the fact that Judge Jordan

conducted a Markman hearing in the earlier case against Movielink.   In that case, Judge

---

[2] As incorporated by reference from the Comcast Defendant's Motion to Transfer.  For the remainder of
this brief, USVO will refer to the points made by the Comcast Defendants in their brief.

Jordan eventually construed one word – "initiate."   While Defendants seem worried that a second Markman would be a waste of judicial time and resources, they can rest assured that this Court will not have to duplicate any prior efforts unless it sees fit to do so since USVO is precluded under the theory of collateral estoppel from offering any alternative construction than the one already adopted by one court.  *Tex. Instruments, Inc. v. Linear Techs. Corp.*, 182 F. Supp. 2d 580, 585-586 (E. D. Tex. 2002).   Furthermore, since the Delaware Court construed only one word from one claim, it is expected that another Markman hearing will be necessary no matter which court tries this case.

To further their argument about conserving judicial resources, the Comcast Defendants point out that the District of Delaware currently has jurisdiction over three Declaratory Judgment lawsuits (asking the Court find no infringement of the '792 patent) filed against USVO by the same Defendants that appear in this suit.  USVO has filed Motions to Dismiss, Stay or Transfer in each of those three actions.  Those Motions are based on the fact that this action was pending in the Eastern District of Texas prior to the filing of those Declaratory Judgment suits.  Those suits never should have been brought.  Instead, the proper action would be to have those issues litigated as defenses and/or counterclaims in this suit.

And while the Northern District of Texas did express a willingness to stay or transfer a patent case to another district where a second-filed action sat, the Court's reasoning for doing so makes it distinguishable from this matter.  See *Taylor v. Ishida Co.*, 2002 U.S. Dist. LEXIS 9916 (D. Tex. 2002).  In *Taylor*, the Court held "This court can defer to a second-filed action when, as here, the judge in the subsequent case has extensive prior experience concerning the patent-in-suit."  Id.   Again, this reasoning

becomes moot as soon as Judge Jordan leaves the District of Delaware to take a seat on the Third Circuit of Appeals. This is expected to happen before his "extensive prior experience concerning the patent-in-suit" will be of any use to this litigation. In addition, as noted earlier, while the patent is the same, the technology is quite different, thus any court that hears this case will have to become familiar with the technology practiced by these Defendants. USVO believes that the Eastern District of Texas is as capable of doing so as the District of Delaware.

**2. Eastern District Will Have to Hear At Least One Suit**

It should also be noted that this suit involves four distinct defendants: Time Warner Cable, Cox Communications, Charter Communications and the Comcast Defendants. Only three of the Defendants filed declaratory judgments in Delaware. The same three filed motions to transfer. Charter Communications did neither. In addition, Time Warner Cable has not filed a Motion to Transfer. Therefore, at a minimum, USVO's suit against Charter Communications and Time Warner Cable will go forward in the Eastern District of Texas regardless of its rulings on transfer for the other defendants. The Eastern District of Texas will be forced to become familiar with the patent and technology and will have to conduct a Markman hearing. Hence, contrary to what the Comcast Defendants have argued, it would in fact be more judicially economic and efficient to deny transfer and keep all defendants in Texas.

**3. Eastern District of Texas Is Favorable Venue For Efficient Patent Litigation**

Defendants accuse USVO of "forum shopping" in its selection of the Eastern District of Texas in which to file suit. All Plaintiffs engage in some degree of forum shopping when they file a suit. As the Eastern District pointed out in Z-Tel, "it seems

quite logical that a plaintiff would hope for favorable outcome for its lawsuit" *Z-Tel Communs.* At 572. In *Z-Tel*, the Eastern District of Texas enumerated several factors that are legitimate reasons to choose a forum. "A court may be selected because its docket moves rapidly, its discovery procedures are liberal, its jurors are generous, the rules of law applied more favorable, or the judge who presides in that forum is thought more likely to rule in the litigant's favor." Id. quoting *In re Triton Secs. Litig.*, 70 F. Supp. 2d 678, 689 (D. Tex. 1999). USVO chose the Eastern District of Texas for many of the same reasons enunciated recently by the attorney for Symbol in *Symbol Techs.* LEXIS 55099 at *7-8.

> Frankly, there's nothing like the patent rules up in New York. . . .
> . . . [J]ust the fact that we have the early disclosures of infringement
> positions; we've got the claim charts underway; we're going to get that
> to them, you know, promptly; the requirement of having their
> invalidity contentions to us promptly, those are things we don't have in
> other courts. . . .
> . . . And so it will save us time, it will save us money, and it will much
> more likely lead to a prompt determination, respectfully, Your Honor,
> if you keep the case…
> . . . I try patent cases all over the country. And when we get before a
> judge-and obviously they all work hard and mean well and want to do
> the best-that doesn't understand patents or doesn't like patent cases, it's
> -- it takes years longer; it's much [*8] more expensive; there are no
> procedures in place to make it work efficiently.

*Symbol Techs.* LEXIS 55099 at *7-8. In his holding in that case, Judge Davis said Symbol's most convincing argument focuses on "the interest of justice and that the most convenient district is the district which would provide the parties and judicial system with the most efficient and least expensive resolution of the case." Id at *9. The District of Delaware averaged 23.5 months from filing to trial last year. The Eastern District of Texas, on the other hand, averaged a mere 15.9 months.[3] In its own Motion, the Comcast

---

[3] Federal Court Management Statistics as detailed on <u>www.uscourts.gov</u>

Defendants point out that the Movielink case, which was disposed of at the summary judgment stage, consisted of "several years of discovery and a Markman hearing."   The Eastern District of Texas - with rules regarding early disclosure of infringement positions, claim charts and Markman hearings - will not allow a case to drag on in that manner, which causes undue burden and financial stress on all parties.

### 4.   Comcast Makes No Argument that The Private Interests Favor Transfer

Comcast makes no arguments regarding the relative ease of access to proof, the availability of witnesses, the cost of attendance for witnesses or any other practical problem related to trial in the Eastern District of Texas versus trial in Delaware. Therefore, this Court should assume that these are non-factors.  In fact, with Defendants' having principal places of business in New York (TimeWaner), Georgia (Cox), Missouri Charter) and Pennsylvania and Delaware (Comcast Defendants), there is no single forum that would afford all parties relative ease to proof, availability of witnesses and a low cost of attendance for witnesses.

### VI.   CONCLUSION

USVO has proven that Cox has enough ties to meet the minimum standard enunciated in *International Shoe* to confer jurisdiction in the Eastern District of Texas. In addition, this Court has found that the Plaintiff's desire to achieve the most efficient and least expensive resolution of the case is a good reason for choosing a particular forum.  That choice of forum should only be upset if the movant makes a convincing showing that a weighing of private and public factors favors transfer.  Cox has  not succeeded in meeting this burden and this case should continue to go forward in the

Eastern District of Texas.

Respectfully submitted,

Date: August 28, 2006

/s/ Edward W. Goldstein_____
Edward W. Goldstein
Texas Bar. No. 08099500
GOLDSTEIN, FAUCETT & PREBEG, LLP
1177 West Loop South, Suite 400
Houston, TX  77027
Telephon: 713/877-1515
Fax:  713/877-1737
E-mail:  egoldstein@gfpiplaw.com

T. John Ward, Jr.
State Bar No. 00794818
Law Office of T. John Ward, Jr., P.C.
P.O. Box 1231
Longview, Texas 75606-1231
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)
E-mail: jw@jwfirm.com
ATTORNEYS FOR PLAINTIFF

Of Counsel:

GOLDSTEIN, FAUCETT & PREBEG, L.L.P
Corby R. Vowell
Texas Bar No. 24031621
1177 West Loop South, Suite 400
Houston, Texas  77027
(713) 877-1515 – Telephone
(713) 877-1737-Facsimile
E-mail: cvowell@gfpiplaw.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 28, 2006. Any other counsel of record will be served by first class U.S. mail.

/s/ Edward W. Goldstein_____
Edward W. Goldstein

# EXHIBIT A

**PRIMARY NAICS:**
515210 - Cable and Other Subscription Programming
**SECONDARY NAICS:**
517110 - Wired Telecommunications Carriers
517212 - Cellular and Other Wireless Telecommunications
**PRIMARY SIC:**
4841 - Cable & Other Pay Television Services
**SECONDARY SIC:**
4812 - Radiotelephone Communications
4822 - Telegraph & Other Message Comm

* * * * * * * * * FINANCIALS * * * * * * * * * *
**FISCAL YEAR DATE:** December 31, 2000

REVENUES: $180.0 M
REVENUE TYPE: SALES
REVENUE SOURCE: Estimate


Return

**VARIANTS:**
Cox Cable CA,
Cox Communications San Diego, Does Business as Name
Cox Communications Bakersfield, Does Business as Name
Cox Communications Cleveland Area, Does Business as Name
Cox Communications Desert Valley, Does Business as Name
Cox Communications Gainesville/Ocala, Does Business as Name
Cox Communications Humboldt, Does Business as Name
Cox Communications New England, Does Business as Name
Cox Communications North Carolina, Does Business as Name
Cox Communications Oklahoma City, Does Business as Name
Cox Communications Orange Co., Does Business as Name
Cox Communications Palos Verdes, Does Business as Name
Cox Communications Pensecola, Does Business as Name
Cox Communications Phoenix, Does Business as Name
Cox Communications Santa Barabara, Does Business as Name
Cox Communications Sierra Vista, Does Business as Name
Cox Communications Louisiana, Does Business as Name
Cox Communications West Texas, Does Business as Name
Cox Communications Tucson, Does Business as Name

**LOAD-DATE:** April 22, 2006


**Company Press Releases (Document number: 1 ☑ )**

*Cox Communications Rolls out SORPRESA! to 23 Additional Markets; Children's Entertainment Network Added to Paquete Latino, Cox's New Spanish-language Package Business Wire March 10, 2005 Thursday*

Copyright 2005 Business Wire, Inc.
Business Wire

March 10, 2005 Thursday 3:01 PM GMT

**DISTRIBUTION:** Business Editors; TV/Cable Writers

**LENGTH:** 820 words

**HEADLINE:** Cox Communications Rolls out SORPRESA! to 23 Additional Markets; Children's Entertainment Network Added to Paquete Latino, Cox's New Spanish-language Package

**DATELINE:** DALLAS & FORT WORTH, Texas March 10, 2005

**BODY:**

SORPRESA!, America's first network dedicated to entertaining Spanish-speaking children and teens, continues to build momentum in extending its reach to Hispanic households across the nation with the addition of its programming to 23 additional Cox Communications, Inc. markets. The announcement was made today by Dallas/Fort Worth-based Firestone Communications, Inc., a privately held media company that owns and manages SORPRESA!

Already offered on over 285 systems throughout the United States through affiliate agreements with Cablevision, Charter, Comcast, Cox, Time Warner Cable, Verizon and the National Cable TV Cooperative, SORPRESA! serves the fastest growing and youngest demographic in the country and is the only all-Spanish children and teen network. The network broadcasts 24 hours a day, entertaining Hispanic young people with award-winning animation, educational series, variety and special events programming from around the Hispanic world. The channel's late evening schedule appeals to tweens by featuring comedy, talk, games, music and movies. Relevant to the younger Hispanic generation, the channel's programming reflects their unique dual-culture lifestyle.

"Over the last two years SORPRESA! has established itself as the premier destination for quality Spanish language children and teens' programming. We found that families are extremely appreciative of our network, and we are thrilled to extend our distribution footprint with Cox Communications," said Christopher Firestone, executive vice president of operations for Firestone Communications and SORPRESA!

Cox Communications is a multi-service broadband communications company with approximately 6.6 million total customers, including 6.3 million basic cable subscribers. Cox offers both analog cable TV and advanced digital video service under the Cox Digital Cable brand, and, with the addition of SORPRESA!, Cox will be able to attract an even larger number of Spanish-speaking households to its cable service and Hispanic video package. Cox is currently the nation's third-largest cable television provider.

Under the agreement with Cox, SORPRESA! has been, or soon will be added to the following markets:

-- Bakersfield, Calif.

-- Eureka, Calif.

-- Santa Barbara, Calif.

-- Tucson, Ariz.

-- North Virginia

-- Plainview, Texas

-- Manchester, Conn.

-- West Warwick, R.I.

-- Abilene/Sweetwater, Texas

-- Amarillo, Texas

-- Big Spring, Texas

-- Conroe, Texas

-- Georgetown/Round Rock, Texas

-- Lubbock, Texas

-- Midland, Texas

-- San Angelo, Texas

-- Berryville/Eureka Springs, Ariz.

-- Sulphur Springs, Texas

-- Clarksville, Ariz.

-- Huntsville, Texas

-- Fort Smith, Ark.

-- Gainesville, Texas

-- Sun Valley, Idaho

About SORPRESA!

SORPRESA! is a digital cable network with carriage deals in place on Cablevision, Charter, Comcast, Cox, Time Warner Cable, Verizon and the National Cable TV Cooperative. These firm carriage agreements with the nation's top MSOs brings SORPRESA! into America's highest Hispanic population regions including New York, California, Texas, Florida, Arizona, Illinois, and New Jersey, making the channel the premier TV vehicle for advertisers seeking to target Hispanic children. Relevant to the younger Hispanic generation, SORPRESA! and its programming reflect the new Hispanic-American lifestyle, delicately blending culturally appealing educational and entertainment programming into an appealing entertainment destination. Based in Dallas/Fort Worth, SORPRESA! is owned and managed by Firestone Communications, Inc., a privately held media company.

About Cox Communications

Cox Communications Inc. is a multi-service broadband communications company with approximately 6.6 million total customers, including approximately 6.3 million basic cable subscribers. The nation's third-largest cable television provider, Cox offers analog cable television under the Cox Cable brand as well as digital video service under the Cox Digital Cable brand. Cox provides an array of other communications and entertainment services including local and long-distance telephone under the Cox Digital Telephone brand, high-speed Internet service under the Cox High Speed Internet brand, video on demand programming under the Entertainment on Demand brand, digital video recorders, high-definition television and home networking. Commercial voice and data services are offered via Cox Business Services. Local cable advertising, promotional opportunities and production services are sold under the Cox Media brand. Cox is an investor in programming services including Discovery Communications Inc. Cox Communications is a wholly-owned subsidiary of Cox Enterprises Inc. More information about Cox Communications can be accessed on the Internet at .

Editor's note: The company name "SORPRESA!" is written with an inverted exclamation mark at the beginning.

CONTACT: Trinity PR for SORPRESA! Matt Averitt, 214-278-0180, ext. 303

**URL:**

**LOAD-DATE:** March 11, 2005

**Combined Corporation and Limited Partnership Information (Document number: 1 ☑ )**
*TEXAS SECRETARY OF STATE*

**THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY**

# EXHIBIT B

**CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE ISSUING GOVERNMENT AGENCY**

TEXAS SECRETARY OF STATE

**Company Name:** CABLEVISION OF PFLUGERVILLE, INC.

**Business Address:**
```
1400 LAKE HEARN DRIVE NE M/S CP-12
ATLANTA, GA 30319
```

**Type:** DOMESTIC FOR-PROFIT CORPORATION

**Status:** MERGED

**Filing Date:** 7/30/1980

**Inactive Date:** 12/31/2003

**Duration:** PERPETUAL

**Registered Agent:** CORPORATION SERVICE COMPANY D/B/A+

**Registered Office:**
```
701 BRAZOS STREET, SUITE 1050
AUSTIN, TX 78701
```

**Other Name Information:**
```
CABLEVISION OF PFLUGERVILLE, INC.
Type: LEGAL
Status: INACTIVE
Creation Date: 7/30/1980
Inactive Date: 12/31/2003

COX COMMUNICATIONS
Type: ASSUMED
Status: ACTIVE
Creation Date: 12/13/1999
Expiration Date: 12/13/2009
Counties: SMITH; TRAVIS

TCA CABLE TV OF CENTRAL TEXAS, INC.
Status: NON-SURVIVOR
File Date: 4/29/1999
Inactive Date: 8/4/1999
File Number: 000153356300

CABLEVISION OF LEANDER, INC.
Status: NON-SURVIVOR
File Date: 12/31/2003
Inactive Date: 12/31/2003
```

File Number: 000058262400


WILLIAMSON COUNTY CABLEVISION COMPANY
Status: NON-SURVIVOR
File Date: 12/31/2003
Inactive Date: 12/31/2003
File Number: 000030908400


**Filing Number:** 0052722100

**State Taxpayer Number:** 17421270145

**Officers, Directors:**
PRESTON B BARNETT
VICE PRESIDENT
1400 LAKE HEARN DRIVE NE M/S CP-12
ATLANTA, GA 30319


SUSAN W COKER
TREASURER
1400 LAKE HEARN DRIVE NE M/S CP-12
ATLANTA, GA 30319


JIMMY W HAYES
VICE PRESIDENT, DIRECTOR
1400 LAKE HEARN DRIVE NE M/S CP-12
ATLANTA, GA 30319


ANDREW A MERDEK
SECRETARY
1400 LAKE HEARN DRIVE NE M/S CP-12
ATLANTA, GA 30319


JAMES O ROBBINS
PRESIDENT, DIRECTOR
1400 LAKE HEARN DRIVE NE M/S CP-12
ATLANTA, GA 30319


**History:**
File Date: 12/31/2004
Transaction: PUBLIC INFORMATION REPORT (PIR)
Microfilm Number: 085927110001


File Date: 12/31/2003
Transaction: ARTICLES OF MERGER
Microfilm Number: 050593550002

File Date: 12/31/2003
Transaction: PUBLIC INFORMATION REPORT (PIR)
Microfilm Number: 052899310001


File Date: 7/31/2003
Transaction: CHANGE OF REGISTERED AGENT/ OFFICE
Microfilm Number: 039207690355


File Date: 12/31/2002
Transaction: PUBLIC INFORMATION REPORT (PIR)
Microfilm Number: 033021480001


File Date: 2/11/2000
Transaction: CHANGE OF REGISTERED AGENT/OFFICE
Microfilm Number: 000004559913


File Date: 12/31/1999
Transaction: PUBLIC INFORMATION REPORT (PIR)
Microfilm Number: 000007378373


File Date: 12/13/1999
Transaction: ASSUMED NAME CERTIFICATE
Microfilm Number: 000004559912


File Date: 8/4/1999
Transaction: ARTICLES OF MERGER
Microfilm Number: 000004559911


File Date: 4/27/1988
Transaction: CHANGE OF REGISTERED AGENT/OFFICE
Microfilm Number: 000004559909


File Date: 3/25/1987
Transaction: ARTICLES OF AMENDMENT
Microfilm Number: 000004559908


File Date: 7/30/1980
Transaction: LEGACY FILING
Microfilm Number: 000004559910


**Combined Corporation and Limited Partnership Information (Document number: 2 ☑ )**
*TEXAS SECRETARY OF STATE*


**THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY**

**CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE ISSUING GOVERNMENT AGENCY**

TEXAS SECRETARY OF STATE

**Company Name:** CABLEVISION OF LEANDER, INC.

**Business Address:**
```
MAILSTOP CP 12 1400 LAKE HEARN DRIVE NE
ATLANTA, GA 30319
```

**Type:** DOMESTIC FOR-PROFIT CORPORATION

**Status:** MERGED

**Filing Date:** 10/20/1981

**Inactive Date:** 12/31/2003

**Duration:** PERPETUAL

**Registered Agent:** CORPORATION SERVICE COMPANY D/B/A+

**Registered Office:**
```
701 BRAZOS STREET, SUITE 1050
AUSTIN, TX 78701
```

**Other Name Information:**
```
CABLEVISION OF LEANDER, INC.
Type: LEGAL
Status: INACTIVE
Creation Date: 10/20/1981
Inactive Date: 12/31/2003

COX COMMUNICATIONS
Type: ASSUMED
Status: ACTIVE
Creation Date: 12/13/1999
Expiration Date: 12/13/2009
Counties: SMITH; TRAVIS; WILLIAMSON

TCA CABLE TV OF CENTRAL TEXAS II, INC.
Status: NON-SURVIVOR
File Date: 7/16/1999
Inactive Date: 8/4/1999
File Number: 000154320900

CABLEVISION OF PFLUGERVILLE, INC.
Status: NON-SURVIVOR
File Date: 12/31/2003
Inactive Date: 12/31/2003
```

File Number: 000052722100


WILLIAMSON COUNTY CABLEVISION COMPANY
Status: NON-SURVIVOR
File Date: 12/31/2003
Inactive Date: 12/31/2003
File Number: 000030908400


**Filing Number:** 0058262400

**State Taxpayer Number:** 17422098206

**Officers, Directors:**
PRESTON B BARNETT
VICE PRESIDENT
MAILSTOP CP 12 1400 LAKE HEARN DRIVE NE
ATLANTA, GA 30319


SUSAN W COKER
TREASURER
MAILSTOP CP 12 1400 LAKE HEARN DRIVE NE
ATLANTA, GA 30319


ANDREW A HERDEK
SECRETARY
MAILSTOP CP 12 1400 LAKE HEARN DRIVE NE
ATLANTA, GA 30319


JAMES D ROBBINS
PRESIDENT, DIRECTOR
MAILSTOP CP 12 1400 LAKE HEARN DRIVE NE
ATLANTA, GA 30319


**History:**
File Date: 12/31/2004
Transaction: PUBLIC INFORMATION REPORT (PIR)
Microfilm Number: 079872000001


File Date: 12/31/2003
Transaction: ARTICLES OF MERGER
Microfilm Number: 050593550001


File Date: 12/31/2003
Transaction: PUBLIC INFORMATION REPORT (PIR)
Microfilm Number: 052900050001

File Date: 7/31/2003
Transaction: CHANGE OF REGISTERED AGENT/ OFFICE
Microfilm Number: 039207690361

File Date: 12/31/2002
Transaction: PUBLIC INFORMATION REPORT (PIR)
Microfilm Number: 036038420001

File Date: 2/11/2000
Transaction: CHANGE OF REGISTERED AGENT/OFFICE
Microfilm Number: 000004722867

File Date: 12/31/1999
Transaction: PUBLIC INFORMATION REPORT (PIR)
Microfilm Number: 000007382178

File Date: 12/13/1999
Transaction: ASSUMED NAME CERTIFICATE
Microfilm Number: 000004722866

File Date: 8/4/1999
Transaction: ARTICLES OF MERGER
Microfilm Number: 000004722864

File Date: 4/27/1988
Transaction: CHANGE OF REGISTERED AGENT/OFFICE
Microfilm Number: 000004722863

File Date: 3/25/1987
Transaction: ARTICLES OF AMENDMENT
Microfilm Number: 000004722862

File Date: 10/20/1981
Transaction: LEGACY FILING
Microfilm Number: 000004722865

**Combined Corporation and Limited Partnership Information (Document number: 3 ☑ )**
*TEXAS SECRETARY OF STATE*

**THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY**

**CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE ISSUING GOVERNMENT AGENCY**

TEXAS SECRETARY OF STATE

**Company Name:** CEBRIDGE TELECOM TX, L.P.

**Type:** FOREIGN LIMITED PARTNERSHIP (LP)

**Status:** IN EXISTENCE

**Filing Date:** 8/26/1998

**Duration:** PERPETUAL

**State or Country of Incorporation:** DELAWARE

**Registered Agent:** C T CORPORATION SYSTEM

**Registered Office:**
350 NORTH ST. PAUL ST.
DALLAS, TX 75201

**Members, Managers, Partners:**
CEBRIDGE TELECOM GENERAL, LLC
GENERAL PARTNER
12444 POWERSCOURT DRIVE, STE. 140
SAINT LOUIS, MO 63131

**Other Name Information:**
COX TEXAS TELCOM, L.P.
Type: LEGAL
Status: PRIOR
Creation Date: 8/26/1998
Inactive Date: 6/16/2006

COX COMMUNICATIONS
Type: ASSUMED
Status: ACTIVE
Creation Date: 2/20/2004
Expiration Date: 2/20/2014
Counties: ALL

COX BUSINESS SERVICES
Type: ASSUMED
Status: ACTIVE
Creation Date: 2/20/2004
Expiration Date: 2/20/2014
Counties: ALL

COX TEXAS TELECOM
Type: ASSUMED
Status: ACTIVE
Creation Date: 2/20/2004
Expiration Date: 2/20/2014
Counties: ALL

```
COX COMMUNICATIONS
Type: ASSUMED
Status: ACTIVE
Creation Date: 8/31/2004
Expiration Date: 8/31/2014
Counties: ALL


COX BUSINESS SERVICES
Type: ASSUMED
Status: ACTIVE
Creation Date: 8/31/2004
Expiration Date: 8/31/2014
Counties: ALL


SUDDENLINK COMMUNICATIONS
Type: ASSUMED
Status: ACTIVE
Creation Date: 5/3/2006
Expiration Date: 5/3/2016
Counties: ALL


CEBRIDGE TELECOM TX, L.P.
Type: LEGAL
Status: IN USE
Creation Date: 6/16/2006
```

**Filing Number:** 0011195711

**History:**
```
File Date: 6/16/2006
Transaction: AMENDED REGISTRATION OF LIMITED PARTNERSHIP
Microfilm Number: 133478770002


File Date: 6/14/2006
Transaction: CHANGE OF REGISTERED AGENT/OFFICE
Microfilm Number: 133201720002


File Date: 5/3/2006
Transaction: CERTIFICATE OF ASSUMED BUSINESS NAME
Microfilm Number: 128404320003


File Date: 8/31/2004
Transaction: CERTIFICATE OF ASSUMED BUSINESS NAME
Microfilm Number: 068806300002


File Date: 8/31/2004
```

```
Transaction: CERTIFICATE OF ASSUMED BUSINESS NAME
Microfilm Number: 068806250002


File Date: 2/20/2004
Transaction: CERTIFICATE OF ASSUMED BUSINESS NAME
Microfilm Number: 054280060002


File Date: 2/20/2004
Transaction: CERTIFICATE OF ASSUMED BUSINESS NAME
Microfilm Number: 054280200002


File Date: 2/20/2004
Transaction: CERTIFICATE OF ASSUMED BUSINESS NAME
Microfilm Number: 054280330002


File Date: 7/31/2003
Transaction: CHANGE OF REGISTERED AGENT/OFFICE
Microfilm Number: 039206720376


File Date: 2/16/1999
Transaction: LP(CRO)
Microfilm Number: 000003370630


File Date: 8/26/1998
Transaction: REGISTRATION OF LIMITED PARTNERSHIP
Microfilm Number: 000003370629
```

**Combined Corporation and Limited Partnership Information (Document number: 4 ☑ )**
*TEXAS SECRETARY OF STATE*

### THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY

### CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE ISSUING GOVERNMENT AGENCY

TEXAS SECRETARY OF STATE

**Company Name:** COX CABLE MIDLAND, INC.

**Type:** DOMESTIC FOR-PROFIT CORPORATION

**Status:** MERGED

**Filing Date:** 4/11/1968

**Inactive Date:** 8/30/1995

**Duration:** PERPETUAL

**Registered Agent:** CT CORP SYSTEM

**Registered Office:**

```
811 DALLAS AVENUE
HOUSTON, TX
```

**Other Name Information:**
```
COX CABLE MIDLAND, INC.
Type: LEGAL
Status: INACTIVE
Creation Date: 4/11/1968
Inactive Date: 8/30/1995


DIMENSION CABLE SERVICES
Type: ASSUMED
Status: EXPIRED
Creation Date: 7/5/1988
Expiration Date: 7/5/1998
Inactive Date: 7/5/1998
Counties: MIDLAND


TALL CITY TV CABLE COMPANY
Type: LEGAL
Status: PRIOR
Inactive Date: 5/27/1982


TIMES MIRROR CABLE TELEVISION OF MIDLAND, INC.
Type: LEGAL
Status: PRIOR
Inactive Date: 3/23/1995


COX COMMUNICATIONS WEST TEXAS, INC.
Status: SURVIVOR
File Date: 4/11/1968
File Number: 000006884506
State/Country: DELAWARE
```

**Filing Number:** 0024600400

**State Taxpayer Number:** 17416018335

**History:**
```
File Date: 8/30/1995
Transaction: ARTICLES OF MERGER
Microfilm Number: 000003733837


File Date: 3/23/1995
Transaction: ARTICLES OF AMENDMENT
Microfilm Number: 000003733836
```

```
File Date: 7/5/1988
Transaction: CERTIFICATE OF ASSUMED BUSINESS NAME
Microfilm Number: 000003733834


File Date: 5/27/1982
Transaction: ARTICLES OF AMENDMENT
Microfilm Number: 000003733838


File Date: 4/11/1968
Transaction: ARTICLES OF INCORPORATION
Microfilm Number: 000003733835
```

**Combined Fictitious Business NAME Information (Document number: 1 ☑ )**
*HARRIS COUNTY, TEXAS, ASSUMED BUSINESS NAMES*


**THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY**

**CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE ISSUING GOVERNMENT AGENCY**

HARRIS COUNTY, TEXAS, ASSUMED BUSINESS NAMES

**DBA Name:** CAROL COX COMMUNICATIONS

**Business Address:**
```
13623 PEBBLEBROOK
HOUSTON, TX 77079
District: CLAY
```


**Type:** ASSUMED NAME

**Filing Date:** 6/9/1999

**Term of Assumed Name:** 10 YEARS

**Owner(s):**
```
COX CAROL
13623 PEBBLEBROOK
HOUSTON, TX 77079
```


**Filing Number:** 0084116

**Microfilm Number:** 228811892

**Combined Fictitious Business NAME Information (Document number: 2 ☑ )**
*TEXAS FICTITIOUS BUSINESS NAMES*


**THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY**

**CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE ISSUING GOVERNMENT AGENCY**

TEXAS FICTITIOUS BUSINESS NAMES

**DBA Name:** CAROL COX COMMUNICATIONS

**Business Address:**
13623 PEBBLEBROOK DR
HOUSTON, TX 77079-5939

**Filing Date:** 6/9/1999

**County:** HARRIS

**Business Description:** COMMUNICATIONS

**Contact Name:** CAROL COX

**Industry Classification Code:** 489903

**Combined Fictitious Business NAME Information (Document number: 3 ☑ )**
*DALLAS COUNTY, TEXAS, ASSUMED BUSINESS NAMES*

### THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY

### CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE ISSUING GOVERNMENT AGENCY

DALLAS COUNTY, TEXAS, ASSUMED BUSINESS NAMES

**DBA Name:** COX COMMUNICATIONS

**Business Address:**
17400 DAL N
DALLAS, TX

**Filing Date:** 4/2/1981

**Owner(s):**
GUSTAFSON COMMUNI INC

**Filing Number:** 81016531

**Combined Fictitious Business NAME Information (Document number: 4 ☑ )**
*DALLAS COUNTY, TEXAS, ASSUMED BUSINESS NAMES*

### THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY

### CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE ISSUING GOVERNMENT AGENCY

DALLAS COUNTY, TEXAS, ASSUMED BUSINESS NAMES

**DBA Name:** COX COMMUNICATIONS

**Business Address:**

```
2626 COLE
DALLAS, TX 75214
```

**Type:** ASSUMED NAME

**Filing Date:** 2/21/1992

**Owner(s):**
```
COX RITA A
4934 TREMONT
DALLAS, TX 75214
```

**Filing Number:** 92148333

**Combined Fictitious Business NAME Information (Document number: 5 ☑ )**
*DALLAS COUNTY, TEXAS, ASSUMED BUSINESS NAMES*

**THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY**

**CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE ISSUING GOVERNMENT AGENCY**

DALLAS COUNTY, TEXAS, ASSUMED BUSINESS NAMES

**DBA Name:** COX COMMUNICATIONS

**Business Address:**
```
7750 O N MAC ARTHUR
IRVING, TX 75062
```

**Type:** ASSUMED NAME

**Filing Date:** 4/18/1997

**Owner(s):**
```
BANKS MADELINE
3023 KINMORE ST
DALLAS, TX 75223
```

**Filing Number:** 97047200

**Combined Fictitious Business NAME Information (Document number: 6 ☑ )**
*TEXAS FICTITIOUS BUSINESS NAMES*

**THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY**

**CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE ISSUING GOVERNMENT AGENCY**

TEXAS FICTITIOUS BUSINESS NAMES

**DBA Name:** COX COMMUNICATIONS

**Business Address:**
    5225 E CESAR CHAVEZ ST
    AUSTIN, TX 78702-5143


**Telephone:** (512) 349-2209

**Filing Date:** 9/14/1998

**County:** TRAVIS

**Business Description:** COMMUNICATIONS

**Contact Name:** DANA COX

**Contact Address:**
    8844 MOUNTAIN RIDGE CIR
    AUSTIN, TX 78759


**Industry Classification Code:** 489903

**Combined Uniform Commercial Code Liens Filings (Document number: 1 ☑ )**
*NEVADA SECRETARY OF STATE, UCC RECORD*


Copyright 2004 Dun & Bradstreet, Inc.

**\*\*\* THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY. CERTIFICATION CAN ONLY BE**
OBTAINED THROUGH THE NEVADA SECRETARY OF STATE \*\*\*

NEVADA SECRETARY OF STATE, UCC RECORD

Debtors: COX COMMUNICATIONS P C S LP

**Debtor Address:** COX COMMUNICATIONS P C S LP
            18200 VON KARMAN #100
            IRVINE, CA 92612
            DUNS: 926685371

Secured Parties: NATIONSBANK OF TEXAS AS ADMINISTRATIVE AGENT

**Secured Party Address:** NATIONSBANK OF TEXAS AS ADMINISTRATIVE AGENT
            901 MAIN ST 14TH FL
            DALLAS, TX 75202

**Filing Type:** TERMINATION

**Filing Date:** 10/13/1999

**Filing Time:** 1:05PM

**Filing Number:** 9803355

**Original Filing Number:** 9803355

**Original Filing Date:** 3/5/1998

**Filing Office:** SECRETARY OF STATE/UCC DIVISION
            STATE CAPITOL

CARSON CITY, NV 89714

## Combined Deed Transfers and Tax Assessor Records (Document number: 1 ☑ )
*LUBBOCK COUNTY, TX*

### \*\*\* THIS DATA IS FOR INFORMATION PURPOSES ONLY \*\*\*

### PROPERTY RECORD FOR LUBBOCK COUNTY, TX

### ESTIMATED ROLL CERTIFICATION DATE JULY 25, 2005

**Owner:** CABLEREP, WEST TEXAS; DIV OF COX COMMUNICATIONS

**Mailing Address:** C/O CORPORATE TAX MANAGEMENT, 9001 AIRPORT FREEWAY #700, FORT WORTH, TX 76180-7769

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* **ASSESSMENT INFORMATION** \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Assessor's Parcel Number:** N20003379

**Legal Description:** CITY: CITY OF LUBBOCK; OWNERSHIP RECORD TYPE: MINERAL RIGHTS

Brief Description: COMPUTER EQUIPMENT , 100%, FULL

**Market Value Year:** 2005

**Market Improvement Value:** $ 450,890

**Total Market Value:** $ 450,890

**Land Use:** IMPROVED - USE NOT SPECIFIED

**Assessment Year:** 2005

**Assessed Improvement Value:** $ 450,890

**Total Assessed Value:** $ 450,890

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* **TAX INFORMATION** \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Tax Rate Code:** CLB GLB HSP WHP

**TAPE PRODUCED BY COUNTY:** 8/2005

## Combined Deed Transfers and Tax Assessor Records (Document number: 2 ☑ )
*LUBBOCK COUNTY, TX*

### \*\*\* THIS DATA IS FOR INFORMATION PURPOSES ONLY \*\*\*

### PROPERTY RECORD FOR LUBBOCK COUNTY, TX

### ESTIMATED ROLL CERTIFICATION DATE JULY 25, 2005

**Owner:** CABLEREP, WEST TEXAS; DIV OF COX COMMUNICATIONS

**Mailing Address:** C/O CORPORATE TAX MANAGEMENT, 9001 AIRPORT FREEWAY #700, FORT WORTH, TX 76180-7769

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* **ASSESSMENT INFORMATION** \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Assessor's Parcel Number:** N20003380

**Legal Description:** CITY: CITY OF LUBBOCK; OWNERSHIP RECORD TYPE: MINERAL RIGHTS

Brief Description: FURNITURE AND FIXTURES , 100%, FULL

**Market Value Year:** 2005

**Market Improvement Value:** $ 49,580

**Total Market Value:** $ 49,580

**Land Use:** IMPROVED - USE NOT SPECIFIED

**Assessment Year:** 2005

**Assessed Improvement Value:** $ 49,580

**Total Assessed Value:** $ 49,580

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* TAX INFORMATION \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**Tax Rate Code:** CLB GLB HSP WHP

**TAPE PRODUCED BY COUNTY:** 8/2005

**Combined Deed Transfers and Tax Assessor Records (Document number: 3 ☑ )**
*LUBBOCK COUNTY, TX*

**\*\*\* THIS DATA IS FOR INFORMATION PURPOSES ONLY \*\*\***

**PROPERTY RECORD FOR** LUBBOCK COUNTY, TX

**ESTIMATED ROLL CERTIFICATION DATE** JULY 25, 2005

**Owner:** CABLEREP, WEST TEXAS; DIV OF COX COMMUNICATIONS

**Mailing Address:** C/O CORPORATE TAX MANAGEMENT, 9001 AIRPORT FREEWAY #700, FORT WORTH, TX 76180-7769

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* ASSESSMENT INFORMATION \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**Assessor's Parcel Number:** N20003381

**Legal Description:** CITY: CITY OF LUBBOCK; OWNERSHIP RECORD TYPE: MINERAL RIGHTS

Brief Description: TEST EQUIPMENT , 100%, FULL

**Market Value Year:** 2005

**Market Improvement Value:** $ 30

**Total Market Value:** $ 30

**Land Use:** IMPROVED - USE NOT SPECIFIED

**Assessment Year:** 2005

**Assessed Improvement Value:** $ 30

**Total Assessed Value:** $ 30

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* TAX INFORMATION \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**Tax Rate Code:** CLB GLB HSP WHP

**TAPE PRODUCED BY COUNTY:** 8/2005

**Combined Deed Transfers and Tax Assessor Records (Document number: 4 ☑ )**
*LUBBOCK COUNTY, TX*


**\*\*\* THIS DATA IS FOR INFORMATION PURPOSES ONLY \*\*\***

**PROPERTY RECORD FOR** LUBBOCK COUNTY, TX

**ESTIMATED ROLL CERTIFICATION DATE** JULY 25, 2005

**Owner:** CABLEREP, WEST TEXAS; DIV OF COX COMMUNICATIONS

**Mailing Address:** C/O CORPORATE TAX MANAGEMENT, 9001 AIRPORT FREEWAY #700, FORT WORTH, TX 76180-7769

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* ASSESSMENT INFORMATION \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**Assessor's Parcel Number:** N20003382

**Legal Description:** CITY: CITY OF LUBBOCK; OWNERSHIP RECORD TYPE: MINERAL RIGHTS

Brief Description: STUDIO AND TECHNICAL EQUIPMENT ADDED TO ITEM 10 , 100%, FULL

**Land Use:** UNIMPROVED - USE NOT SPECIFIED

**Assessment Year:** 2005

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* TAX INFORMATION \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**Tax Rate Code:** CLB GLB HSP WHP

**TAPE PRODUCED BY COUNTY:** 8/2005

**Combined Deed Transfers and Tax Assessor Records (Document number: 5 ☑ )**
*LUBBOCK COUNTY, TX*


**\*\*\* THIS DATA IS FOR INFORMATION PURPOSES ONLY \*\*\***

**PROPERTY RECORD FOR** LUBBOCK COUNTY, TX

**ESTIMATED ROLL CERTIFICATION DATE** JULY 25, 2005

**Owner:** CABLEREP, WEST TEXAS; DIV OF COX COMMUNICATIONS

**Mailing Address:** C/O CORPORATE TAX MANAGEMENT, 9001 AIRPORT FREEWAY #700, FORT WORTH, TX 76180-7769

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* ASSESSMENT INFORMATION \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**Assessor's Parcel Number:** N20003383

**Legal Description:** CITY: CITY OF LUBBOCK; OWNERSHIP RECORD TYPE: MINERAL RIGHTS

Brief Description: MICROWAVE HEADEND , 100%, FULL

**Market Value Year:** 2005

**Market Improvement Value:** $ 83,360

**Total Market Value:** $ 83,360

**Land Use:** IMPROVED - USE NOT SPECIFIED

**Assessment Year:** 2005

**Assessed Improvement Value:** $ 83,360

**Total Assessed Value:** $ 83,360

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* TAX INFORMATION \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**Tax Rate Code:** CLB GLB HSP WHP

**TAPE PRODUCED BY COUNTY:** 8/2005

Combined Deed Transfers and Tax Assessor Records (Document number: 6 ☑ )
*MONTGOMERY COUNTY, TX 504 BRYANT RD, CONROE, TX 77303*

**\*\*\* THIS DATA IS FOR INFORMATION PURPOSES ONLY \*\*\***

**PROPERTY RECORD FOR** MONTGOMERY COUNTY, TX

**ESTIMATED ROLL CERTIFICATION DATE** JULY 25, 2005

**Owner:** CONROE CABLE TV; COX COMMUNICATIONS

**Mailing Address:** C/O PROPERTY TAX DEPT, PO BOX 130489, TYLER, TX 75713-0489

**Property Address:** 504 BRYANT RD, CONROE, TX 77303

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* ASSESSMENT INFORMATION \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**Assessor's Parcel Number:** 2590-00-00310

**Legal Description:** LOT: 3; BLOCK: A; CITY: CITY OF CONROE; SUBDIVISION: SUBDIVISION CODE: S259000

Brief Description: BENNETTE J O H-ALLEN, BLOCK A, LOT 3 PT, ACRES 0.410

**Market Value Year:** 2005

**Market Land Value:** $ 8,930

**Market Improvement Value:** $ 79,630

**Total Market Value:** $ 88,560

**Land Use:** COMMERCIAL IMPROVED

**Assessment Year:** 2005

**Assessed Land Value:** $ 8,930

**Assessed Improvement Value:** $ 79,630

**Total Assessed Value:** $ 88,560

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* TAX INFORMATION \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**Tax Rate Code:** CCO GMO HM1 JNH

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* PROPERTY CHARACTERISTICS \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

```
Year Built:       1969         No. of Buildings:
Stories:                       Style:
Units:                         Air Conditioning:    Central
Bedrooms:                      Heating:             Electric
Baths:                         Construction:
Partial Baths:                 Basement:
Total Rooms:                   Exterior Walls:      Concrete Block
Fireplace:                     Foundation:
Garage Type:                   Roof:
Garage Size:                   Elevator:
Pool/Spa:                      Lot Size:            17860 SF
                               Building Area:       1800
```

**TAPE PRODUCED BY COUNTY:** 8/2005

About LexisNexis™| Terms and Conditions| Privacy Policy |Support Identifier

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

# EXHIBIT C

Search - 88 Results - Coxcom                                           Page 1 of 4

Case 1:06-cv-00737-SLR    Document 76-56    Filed 12/05/2006    Page 2 of 15
Case 2:06-cv-00239-RHC    Document 39-4    Filed 08/28/2006    Page 2 of 15

Source: <u>Public Records</u> > <u>People, Business & Asset Locators</u> > <u>Business Locator</u> > <u>Combined Business & Corporation Information</u> > **Combined Business and Corporation Information** ⓘ
Terms: **coxcom** (<u>Edit Search</u> | <u>Suggest Terms for My Search</u>)

☑ Select for FOCUS™ or Delivery

☐

### TEXAS SECRETARY OF STATE

### THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY

### CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE ISSUING GOVERNMENT AGENCY

TEXAS SECRETARY OF STATE

**Company Name:** MT ASSOCIATES, INC.

**Business Address:**
 1400 LAKE HEARN DR NE MAILSTOP CP-12
 ATLANTA, GA 30319

**Type:** DOMESTIC FOR-PROFIT CORPORATION

**Status:** MERGED

**Filing Date:** 10/18/1993

**Inactive Date:** 12/31/2003

**Duration:** PERPETUAL

**Registered Agent:** CORPORATION SERVICE COMPANY D/B/A +

**Registered Office:**
 701 BRAZOS STREET, SUITE 1050
 AUSTIN, TX 78701

**Other Name Information:**
 MT ASSOCIATES, INC.
 Type: LEGAL
 Status: INACTIVE
 Creation Date: 10/18/1993
 Inactive Date: 12/31/2003

 INTERMEDIA TECHNOLOGIES, INC.
 Type: LEGAL
 Status: PRIOR
 Inactive Date: 10/11/1995

Search - 88 Results - Coxcom                                                    Page 2 of 4
Case 1:06-cv-00737-SLR    Document 76-56    Filed 12/05/2006    Page 3 of 15
Case 2:06-cv-00239-RHC    Document 39-4    Filed 08/28/2006    Page 3 of 15

TCA MANAGEMENT COMPANY
Status: NON-SURVIVOR
File Date: 12/31/2003
Inactive Date: 12/31/2003
File Number: 000058778200

**COXCOM,** INC.
Status: SURVIVOR
File Date: 12/31/2003
Inactive Date: 12/31/2003
File Number: 000011504706
State/Country: DELAWARE


**Filing Number:** 0128815400

**State Taxpayer Number:** 17525074062

**Officers, Directors:**
PRESTON B BARNETT
VICE PRESIDENT
1400 LAKE HEARN DR NE MAILSTOP CP-12
ATLANTA, GA 30319

SUSAN W COKER
TREASURER
1400 LAKE HEARN DR NE MAILSTOP CP-12
ATLANTA, GA 30319

ANDREW A MERDEK
SECRETARY
1400 LAKE HEARN DR NE MAILSTOP CP-12
ATLANTA, GA 30319

JAMES O ROBBINS
PRESIDENT, DIRECTOR
1400 LAKE HEARN DR NE MAILSTOP CP-12
ATLANTA, GA 30319


**History:**
File Date: 12/31/2004
Transaction: PUBLIC INFORMATION REPORT (PIR)
Microfilm Number: 085880760001


File Date: 12/31/2004

Search - 88 Results - Coxcom                                             Page 3 of 4
Case 1:06-cv-00737-SLR    Document 76-56    Filed 12/05/2006    Page 4 of 15
Case 2:06-cv-00239-RHC    Document 39-4    Filed 08/28/2006    Page 4 of 15

Transaction: PUBLIC INFORMATION REPORT (PIR)
Microfilm Number: 086408760001


File Date: 12/31/2003
Transaction: ARTICLES OF MERGER
Microfilm Number: 050601690002


File Date: 12/31/2003
Transaction: PUBLIC INFORMATION REPORT (PIR)
Microfilm Number: 052899340001


File Date: 7/31/2003
Transaction: CHANGE OF REGISTERED AGENT/ OFFICE
Microfilm Number: 039206720688


File Date: 12/31/2002
Transaction: PUBLIC INFORMATION REPORT (PIR)
Microfilm Number: 035627870001


File Date: 6/6/2000
Transaction: CHANGE OF REGISTERED AGENT/OFFICE
Microfilm Number: 000006463020


File Date: 12/31/1999
Transaction: PUBLIC INFORMATION REPORT (PIR)
Microfilm Number: 000007495559


File Date: 9/18/1998
Transaction: CHANGE OF REGISTERED AGENT/OFFICE
Microfilm Number: 000006463019


File Date: 10/11/1995
Transaction: ARTICLES OF AMENDMENT
Microfilm Number: 000006463018


File Date: 10/18/1993
Transaction: ARTICLES OF INCORPORATION
Microfilm Number: 000006463017


Source:  Public Records > People, Business & Asset Locators > Business Locator > Combined Business & Corporation
         Information > Combined Business and Corporation Information ⓘ
Terms:  coxcom  (Edit Search | Suggest Terms for My Search)
View:  Full
Date/Time:  Thursday, August 24, 2006 - 2:15 PM EDT

Search - 88 Results - Coxcom                                                                  Page 1 of 4
Case 1:06-cv-00737-SLR    Document 76-56    Filed 12/05/2006    Page 5 of 15
Case 2:06-cv-00239-RHC    Document 39-4    Filed 08/28/2006    Page 5 of 15

Source: Public Records > People, Business & Asset Locators > Business Locator > Combined Business & Corporation
Information > **Combined Business and Corporation Information** ℹ️
Terms: **coxcom** (Edit Search | Suggest Terms for My Search)

✔Select for FOCUS™ or Delivery
☐

### TEXAS SECRETARY OF STATE

## THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY

## CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE ISSUING GOVERNMENT AGENCY

TEXAS SECRETARY OF STATE

**Company Name:** TCA MANAGEMENT COMPANY

**Business Address:**
1400 LAKE HEARN DRIVE NE M/S CP-12
ATLANTA, GA 30319

**Type:** DOMESTIC FOR-PROFIT CORPORATION

**Status:** MERGED

**Filing Date:** 12/4/1981

**Inactive Date:** 12/31/2003

**Duration:** PERPETUAL

**Registered Agent:** CORPORATION SERVICE COMPANY DBA +

**Registered Office:**
701 BRAZOS STREET, SUITE 1050
AUSTIN, TX 78701

**Other Name Information:**
TCA MANAGEMENT COMPANY
Type: LEGAL
Status: INACTIVE
Creation Date: 12/4/1981
Inactive Date: 12/31/2003

MT ASSOCIATES, INC.
Status: NON-SURVIVOR
File Date: 12/31/2003
Inactive Date: 12/31/2003
File Number: 000128815400

Search - 88 Results - Coxcom                                                    Page 2 of 4

Case 1:06-cv-00737-SLR    Document 76-56    Filed 12/05/2006    Page 6 of 15
Case 2:06-cv-00239-RHC    Document 39-4    Filed 08/28/2006    Page 6 of 15

**COXCOM,** INC.
Status: SURVIVOR
File Date: 12/31/2003
Inactive Date: 12/31/2003
File Number: 000011504706
State/Country: DELAWARE

**Filing Number:** 0058778200

**State Taxpayer Number:** 17517981878

**Officers, Directors:**
  PRESTON B BARNETT
  VICE PRESIDENT
  MAILSTOP CP-12 1400 LAKE HEARN DRIVE NE
  ATLANTA, GA 30319

  SUSAN W COKER
  TREASURER
  MAILSTOP CP-12 1400 LAKE HEARN DRIVE NE
  ATLANTA, GA 30319

  JAMES A HATCHER
  DIRECTOR
  MAILSTOP CP-12 1400 LAKE HEARN DRIVE NE
  ATLANTA, GA 30319

  JIMMY W HAYES
  DIRECTOR
  MAILSTOP CP-12 1400 LAKE HEARN DRIVE NE
  ATLANTA, GA 30319

  ANDREW A MERDEK
  SECRETARY
  MAILSTOP CP-12 1400 LAKE HEARN DRIVE NE
  ATLANTA, GA 30319

  JAMES O ROBBINS
  PRESIDENT, DIRECTOR
  MAILSTOP CP-12 1400 LAKE HEARN DRIVE NE
  ATLANTA, GA 30319

**History:**

Search - 88 Results - Coxcom

Page 3 of 4

Case 1:06-cv-00737-SLR    Document 76-56    Filed 12/05/2006    Page 7 of 15
Case 2:06-cv-00239-RHC    Document 39-4    Filed 08/28/2006    Page 7 of 15

File Date: 12/31/2004
Transaction: PUBLIC INFORMATION REPORT (PIR)
Microfilm Number: 085930180001


File Date: 12/31/2003
Transaction: ARTICLES OF MERGER
Microfilm Number: 050601690001


File Date: 12/31/2003
Transaction: PUBLIC INFORMATION REPORT (PIR)
Microfilm Number: 051424800001


File Date: 7/31/2003
Transaction: CHANGE OF REGISTERED AGENT/ OFFICE
Microfilm Number: 039207690651


File Date: 12/31/2002
Transaction: PUBLIC INFORMATION REPORT (PIR)
Microfilm Number: 036040150001


File Date: 6/6/2000
Transaction: CHANGE OF REGISTERED AGENT/OFFICE
Microfilm Number: 000004738092


File Date: 12/31/1999
Transaction: PUBLIC INFORMATION REPORT (PIR)
Microfilm Number: 000007456370


File Date: 1/8/1998
Transaction: CHANGE OF REGISTERED AGENT/OFFICE
Microfilm Number: 000004738090


File Date: 5/2/1988
Transaction: CHANGE OF REGISTERED AGENT/OFFICE
Microfilm Number: 000004738089


File Date: 12/4/1981
Transaction: LEGACY FILING
Microfilm Number: 000004738091


Source: Public Records > People, Business & Asset Locators > Business Locator > Combined Business & Corporation
Information > **Combined Business and Corporation Information** ⓘ
Terms: **coxcom** (Edit Search | Suggest Terms for My Search)

Search - 88 Results - Coxcom
Page 4 of 4

Case 1:06-cv-00737-SLR   Document 76-56   Filed 12/05/2006   Page 8 of 15
Case 2:06-cv-00239-RHC   Document 39-4   Filed 08/28/2006   Page 8 of 15

View: Full
Date/Time: Thursday, August 24, 2006 - 2:14 PM EDT



About LexisNexis  | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights
reserved.

Search - 88 Results - Coxcom                                    Page 1 of 5
Case 1:06-cv-00737-SLR    Document 76-56    Filed 12/05/2006    Page 9 of 15
Case 2:06-cv-00239-RHC    Document 39-4    Filed 08/28/2006    Page 9 of 15

Source: Public Records > People, Business & Asset Locators > Business Locator > Combined Business & Corporation Information > Combined Business and Corporation Information [i]
Terms: coxcom (Edit Search | Suggest Terms for My Search)

 ↰Select for FOCUS™ or Delivery
 ☐

### TEXAS SECRETARY OF STATE

**THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY**

**CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE ISSUING GOVERNMENT AGENCY**

TEXAS SECRETARY OF STATE

**Company Name:** TEXAS COMMUNITY ANTENNAS, INC.

**Business Address:**
 1400 LAKE HEARN DRIVE NE M/S CP-12
 ATLANTA, GA 30319


**Type:** DOMESTIC FOR-PROFIT CORPORATION

**Status:** MERGED

**Filing Date:** 11/5/1953

**Inactive Date:** 12/31/2003

**Duration:** PERPETUAL

**Registered Agent:** CORPORATION SERVICE COMPANY D/B/A +

**Registered Office:**
 701 BRAZOS STREET, SUITE 1050
 AUSTIN, TX 78701


**Other Name Information:**
 TEXAS COMMUNITY ANTENNAS, INC.
 Type: LEGAL
 Status: INACTIVE
 Creation Date: 11/5/1953
 Inactive Date: 12/31/2003

 GRAND SALINE CABLE TV
 Type: ASSUMED
 Status: EXPIRED
 Creation Date: 12/27/1978
 Expiration Date: 12/27/1988

Search - 88 Results - Coxcom                    Page 2 of 5
Case 1:06-cv-00737-SLR    Document 76-56    Filed 12/05/2006    Page 10 of 15
Case 2:06-cv-00239-RHC    Document 39-4    Filed 08/28/2006    Page 10 of 15

Inactive Date: 12/27/1988
Counties: GREGG; HENDERSON; HOPKINS; NACOGDOCHES; SMITH; VAN ZANDT; WOOD

WINNSBORO CABLE TV
Type: ASSUMED
Status: EXPIRED
Creation Date: 12/27/1978
Expiration Date: 12/27/1988
Inactive Date: 12/27/1988
Counties: GREGG; HENDERSON; HOPKINS; NACOGDOCHES; SMITH; VAN ZANDT; WOOD

MINEOLA CABLE TV
Type: ASSUMED
Status: EXPIRED
Creation Date: 12/27/1978
Expiration Date: 12/27/1988
Inactive Date: 12/27/1988
Counties: GREGG; HENDERSON; HOPKINS; NACOGDOCHES; SMITH; VAN ZANDT; WOOD

LINDALE CABLE TV
Type: ASSUMED
Status: EXPIRED
Creation Date: 12/27/1978
Expiration Date: 12/27/1988
Inactive Date: 12/27/1988
Counties: GREGG; HENDERSON; HOPKINS; NACOGDOCHES; SMITH; VAN ZANDT; WOOD

SULPHUR SPRINGS CABLE TV
Type: ASSUMED
Status: EXPIRED
Creation Date: 12/27/1978
Expiration Date: 12/27/1988
Inactive Date: 12/27/1988
Counties: GREGG; HENDERSON; HOPKINS; NACOGDOCHES; SMITH; VAN ZANDT; WOOD

GLADEWATER CABLE TV
Type: ASSUMED
Status: EXPIRED
Creation Date: 12/27/1978
Expiration Date: 12/27/1988
Inactive Date: 12/27/1988
Counties: GREGG; HENDERSON; HOPKINS; NACOGDOCHES; SMITH; VAN ZANDT; WOOD

QUITMAN CABLE TV

Search - 88 Results - Coxcom                                    Page 3 of 5
Case 1:06-cv-00737-SLR     Document 76-56     Filed 12/05/2006     Page 11 of 15
Case 2:06-cv-00239-RHC     Document 39-4      Filed 08/28/2006     Page 11 of 15

Type: ASSUMED
Status: EXPIRED
Creation Date: 12/27/1978
Expiration Date: 12/27/1988
Inactive Date: 12/27/1988
Counties: GREGG; HENDERSON; HOPKINS; NACOGDOCHES; SMITH; VAN ZANDT; WOOD

HENDERSON CABLE TV
Type: ASSUMED
Status: EXPIRED
Creation Date: 12/27/1978
Expiration Date: 12/27/1988
Inactive Date: 12/27/1988
Counties: GREGG; HENDERSON; HOPKINS; NACOGDOCHES; SMITH; VAN ZANDT; WOOD

NACOGDOCHES CABLE TV
Type: ASSUMED
Status: EXPIRED
Creation Date: 12/27/1978
Expiration Date: 12/27/1988
Inactive Date: 12/27/1988
Counties: GREGG; HENDERSON; HOPKINS; NACOGDOCHES; SMITH; VAN ZANDT; WOOD

ATHENS CABLE TV
Type: ASSUMED
Status: EXPIRED
Creation Date: 12/27/1978
Expiration Date: 12/27/1988
Inactive Date: 12/27/1988
Counties: GREGG; HENDERSON; HOPKINS; NACOGDOCHES; SMITH; VAN ZANDT; WOOD

**COXCOM,** INC.
Status: SURVIVOR
File Date: 12/31/2003
Inactive Date: 12/31/2003
File Number: 000011504706
State/Country: DELAWARE

**Filing Number:** 0011730400

**State Taxpayer Number:** 17508780917

**Officers, Directors:**
PRESTON B BARNETT

Search - 88 Results - Coxcom                    Page 4 of 5
Case 1:06-cv-00737-SLR    Document 76-56    Filed 12/05/2006    Page 12 of 15
Case 2:06-cv-00239-RHC    Document 39-4    Filed 08/28/2006    Page 12 of 15

VICE PRESIDENT
6205 PEACHTREE DUNWOODY RD
ATLANTA, GA 30328


JILL CAMPBELL
VICE PRESIDENT
1400 LAKE HEARN DRIVE NE M/S CP-12
ATLANTA, GA 30319


SUSAN W COKER
TREASURER
1400 LAKE HEARN DRIVE NE M/S CP-12
ATLANTA, GA 30319


ANDREW A MERDEK
SECRETARY
1400 LAKE HEARN DRIVE NE M/S CP-12
ATLANTA, GA 30319


JAMES O ROBBINS
PRESIDENT, DIRECTOR
1400 LAKE HEARN DRIVE NE M/S CP-12
ATLANTA, GA 30319


**History:**
  File Date: 12/31/2004
  Transaction: PUBLIC INFORMATION REPORT (PIR)
  Microfilm Number: 085880790001


  File Date: 12/31/2003
  Transaction: ARTICLES OF MERGER
  Microfilm Number: 050592750001


  File Date: 12/31/2003
  Transaction: PUBLIC INFORMATION REPORT (PIR)
  Microfilm Number: 051424790001


  File Date: 7/31/2003
  Transaction: CHANGE OF REGISTERED AGENT/ OFFICE
  Microfilm Number: 039206720417


  File Date: 12/31/2002
  Transaction: PUBLIC INFORMATION REPORT (PIR)

Microfilm Number: 036038540001

File Date: 6/6/2000
Transaction: CHANGE OF REGISTERED AGENT/OFFICE
Microfilm Number: 000003400257

File Date: 12/31/1998
Transaction: PUBLIC INFORMATION REPORT (PIR)
Microfilm Number: 000007434497

File Date: 10/24/1997
Transaction: CHANGE OF REGISTERED AGENT/OFFICE
Microfilm Number: 000003400256

File Date: 5/5/1988
Transaction: CHANGE OF REGISTERED AGENT/OFFICE
Microfilm Number: 000003400255

File Date: 11/15/1985
Transaction: ARTICLES OF MERGER
Microfilm Number: 000003400252

File Date: 12/27/1978
Transaction: ASSUMED NAME CERTIFICATE
Microfilm Number: 000003400253

File Date: 11/5/1953
Transaction: LEGACY FILING
Microfilm Number: 000003400254

Source:   Public Records > People, Business & Asset Locators > Business Locator > Combined Business & Corporation
          Information > **Combined Business and Corporation Information** 
Terms:    **coxcom**  (Edit Search | Suggest Terms for My Search)
View:     Full
Date/Time: Thursday, August 24, 2006 - 2:16 PM EDT

®  LexisNexis®    About LexisNexis  | Terms & Conditions
                  Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights
                  reserved.

Search - 87 Results - Coxcom, Inc.                                    Page 1 of 2
Case 1:06-cv-00737-SLR     Document 76-56     Filed 12/05/2006     Page 14 of 15
Case 2:06-cv-00239-RHC     Document 39-4      Filed 08/28/2006     Page 14 of 15

Source: Public Records > People, Business & Asset Locators > Business Locator > Combined Business & Corporation Information > Combined Business and Corporation Information ⓘ
Terms: coxcom, inc. (Edit Search | Suggest Terms for My Search)

☞ Select for FOCUS™ or Delivery
☐

### ARKANSAS SECRETARY OF STATE

### THIS DATA IS FOR INFORMATIONAL PURPOSES ONLY

### CERTIFICATION CAN ONLY BE OBTAINED THROUGH THE ISSUING GOVERNMENT AGENCY

ARKANSAS SECRETARY OF STATE

**Company Name:** TCA COMMUNICATIONS, L.L.C.

**Mailing Address:**
 1400 LAKE HEARN DRIVE
 ATLANTA, GA 30319

**Type:** FOREIGN LIMITED LIABILITY CO

**Status:** GOOD STANDING

**Filing Date:** 9/15/2005

**State or Country of Incorporation:** TEXAS

**Registered Agent:** CORPORATION SERVICE COMPANY

**Registered Office:**
 101 SOUTH SPRING STREET, STE 220
 LITTLE ROCK, AR 72201

**Members, Managers, Partners:**
 JAMES WILLIAMS
 TAX PREPARER

 **COXCOM INC**
 MEMBER

 **COXCOM INC**
 MEMBER

 **COXCOM INC**
 MEMBER

 **COXCOM INC**

MEMBER

## COXCOM INC
MEMBER

**Filing Number:** 800067436

Source:  Public Records > People, Business & Asset Locators > Business Locator > Combined Business & Corporation
            Information > **Combined Business and Corporation Information** 
Terms:  **coxcom, inc.**  (Edit Search | Suggest Terms for My Search)
View:  Full
Date/Time:  Thursday, August 24, 2006 - 2:23 PM EDT

LexisNexis®        About LexisNexis  | Terms & Conditions
                   Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights
                   reserved.

# EXHIBIT D

Case 1:06-cv-00737-SLR    Document 76-57    Filed 12/05/2006    Page 2 of 21
Case 2:06-cv-00239-RHC    Document 39-5    Filed 08/28/2006    Page 2 of 21
Case 2:05-cv-00318-LED    Document 38    Filed 09/19/2005    Page 1 of 20

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| **FORGENT NETWORKS, INC.,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **V.** | § | |
| | § | |
| **ECHOSTAR COMMUNICATIONS** | § | |
| **CORPORATION, ECHOSTAR DBS** | § | |
| **CORPORATION, ECHOSTAR** | § | |
| **TECHNOLOGIES CORPORATION,** | § | **Civil Action No. 2-05CV-318** |
| **ECHOSPHERE LIMITED LIABILITY** | § | |
| **COMPANY, DIRECTV GROUP, INC.,** | § | |
| **DIRECTV, INC., DIRECTV** | § | |
| **ENTERPRISES, LLC, DIRECT** | § | |
| **OPERATIONS, LLC, CHARTER** | § | |
| **COMMUNICATIONS, INC., COX** | § | |
| **COMMUNICATIONS, INC., COXCOM,** | § | |
| **INC., COMCAST CORPORATION,** | § | |
| **COMCAST STB SOFTWARE DVR,** | § | |
| **LLC, TIME WARNER CABLE, INC.,** | § | |
| **AND CABLE ONE, INC.** | § | |
| | § | |
| *Defendants.* | § | |

---

### DEFENDANT COXCOM, INC.'S ANSWER AND COUNTERCLAIM

---

Defendant CoxCom, Inc. (hereinafter referred to as "CoxCom") hereby answers

Plaintiff's Complaint for Patent Infringement, and submits its Counterclaim as follows:

## I.    THE PARTIES

1.    CoxCom is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 1 of the Complaint and therefore denies the same.

2.    CoxCom is without knowledge or information sufficient to form a belief as to the

truth of the allegations contained in paragraph 2 of the Complaint and therefore denies the same.

DEFENDANT COXCOM, INC.'S ANSWER AND COUNTERCLAIM

Case 1:06-cv-00737-SLR    Document 76-57    Filed 12/05/2006    Page 3 of 21
Case 2:06-cv-00238-RHC    Document 39-5    Filed 08/28/2006    Page 3 of 21
Case 2:05-cv-00318-LED    Document 38    Filed 09/19/2005    Page 2 of 20

3.    CoxCom is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3 of the Complaint and therefore denies the same.

4.    CoxCom is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 4 of the Complaint and therefore denies the same.

5.    CoxCom is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 5 of the Complaint and therefore denies the same.

6.    CoxCom is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 6 of the Complaint and therefore denies the same.

7.    CoxCom is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 7 of the Complaint and therefore denies the same.

8.    CoxCom is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 8 of the Complaint and therefore denies the same.

9.    CoxCom is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 9 of the Complaint and therefore denies the same.

10.    CoxCom is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of the Complaint and therefore denies the same.

11.    CoxCom admits paragraph 11 of the Complaint.

12.    CoxCom admits paragraph 12 of the Complaint.

13.    CoxCom is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 13 of the Complaint and therefore denies the same.

DEFENDANT COXCOM, INC.'S ANSWER AND COUNTERCLAIM

Case 1:06-cv-00737-SLR   Document 76-57   Filed 12/05/2006   Page 4 of 21
Case 2:06-cv-00239-RHC   Document 39-5   Filed 08/28/2006   Page 4 of 21
Case 2:05-cv-00318-LED   Document 38   Filed 09/19/2005   Page 3 of 20

14.     CoxCom is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 14 of the Complaint and therefore denies the same.

15.     CoxCom is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 15 of the Complaint and therefore denies the same.

16.     CoxCom is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16 of the Complaint and therefore denies the same.

17.     Paragraph 17 does not contain any allegations that require a response from CoxCom.

## II.     JURISDICTION AND VENUE

18.     CoxCom admits that the Complaint purports to state a cause of action that arises under the patent laws of the United States, Title 35, United States Code. CoxCom denies any remaining allegations in paragraph 18.

19.     CoxCom denies that it has committed acts of infringement within this district. CoxCom does not contest personal jurisdiction in this district solely for the purpose of this action as otherwise pled in paragraph 19 of the Complaint. CoxCom denies any remaining allegations in paragraph 19.

20.     In response to paragraph 20 of the Complaint and solely for the purpose of this action, CoxCom does not contest venue in this district. However, the interests and convenience of the parties would be better served by transferring this case to a different district or to a different division within this judicial district. CoxCom denies any remaining allegations in paragraph 20.

DEFENDANT COXCOM, INC.'S ANSWER AND COUNTERCLAIM

Case 1:06-cv-00737-SLR    Document 76-57    Filed 12/05/2006    Page 5 of 21
Case 2:06-cv-00239-RHC    Document 39-5    Filed 08/28/2006    Page 5 of 21
Case 2:05-cv-00318-LED    Document 38    Filed 09/19/2005    Page 4 of 20

### III.    BACKGROUND

21.    CoxCom denies that United States Patent No. 6,285,746 B1 ("the '746 patent") is entitled "Computer Controlled Video Systems Allowing Playback During Recording." CoxCom denies that the '746 patent was duly and legally issued. CoxCom denies that the '746 patent was duly and legally issued to Joe W. Duran, Michael Vayden Jenkins and William Todd Clayton. CoxCom denies that the '746 patent is valid and subsisting. CoxCom denies any remaining allegations in paragraph 21.

22.    CoxCom is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 22 of the Complaint and therefore denies the same.

23.    CoxCom is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 23 of the Complaint and therefore denies the same.

### IV.    PLAINTIFF'S CLAIM OF PATENT INFRINGEMENT

24.    CoxCom denies the allegations of paragraph 24 of the Complaint as directed to CoxCom and its products. As to the other defendants and their products, CoxCom is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 24 of the Complaint and therefore denies the same.

25.    CoxCom denies the allegations of paragraph 25 of the Complaint as directed to CoxCom and its products. As to the other defendants and their products, CoxCom is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 of the Complaint and therefore denies the same.

26.    CoxCom denies the allegations of paragraph 26 of the Complaint as directed to CoxCom and its products. As to the other defendants and their products, CoxCom is without

Case 1:06-cv-00737-SLR    Document 76-57    Filed 12/05/2006    Page 6 of 21
Case 2:06-cv-00239-RHC    Document 39-5    Filed 08/28/2006    Page 6 of 21
Case 2:05-cv-00318-LED    Document 38    Filed 09/19/2005    Page 5 of 20

knowledge or information sufficient to form a belief as to the truth of the allegations contained in

paragraph 26 of the Complaint and therefore denies the same.

27.     Paragraphs A-D do not contain any allegations that require a response from

CoxCom, but CoxCom denies that Forgent is entitled to any of the requested relief.

## V.     **AFFIRMATIVE AND OTHER DEFENSES**

### INVALIDITY

28.     The claims of the '746 Patent are invalid for failure to satisfy one or more

conditions of patentability set forth in Title 35 of the United States Code, including, but not

limited to, 35 U.S.C. §§101, 102, 103 and 112.

### NONINFRINGEMENT

29.     CoxCom has not infringed and is not infringing any valid and enforceable claim

of the '746 Patent; and CoxCom has not induced, and is not inducing, infringement of the '746

Patent.

### INEQUITABLE CONDUCT

30.     The '746 Patent is unenforceable due to inequitable conduct having been

practiced by applicants and / or their attorneys during prosecution of the '746 Patent and in those

applications on which the '746 patent relies for priority.  The details of such inequitable conduct

are recited in CoxCom's counterclaim herein in paragraphs 49-77, which are incorporated here

by reference.

### ESTOPPEL

31.     By reason of the proceedings in the United States Patent and Trademark Office

during the prosecution of the application for the '746 Patent, specifically the admissions,

representations, and amendments made on behalf of the applicants(s) for such patent, Plaintiff is

estopped from asserting any construction and/or scope of the claims of the '746 Patent to cover

DEFENDANT COXCOM, INC.'S ANSWER AND COUNTERCLAIM

Case 1:06-cv-00737-SLR    Document 76-57    Filed 12/05/2006    Page 7 of 21
Case 2:06-cv-00239-RHC    Document 39-5    Filed 08/28/2006    Page 7 of 21
Case 2:05-cv-00318-LED    Document 38    Filed 09/19/2005    Page 6 of 20

or include any digital video recording device offered for sale, sold, offered for lease, or leased by CoxCom.

## LIMITATION OF DAMAGES

32.    Plaintiff's claims for relief and prayer for damages are limited by Plaintiff's failure to comply with the requirements of 35 U.S.C. § 287.

## LACHES AND ESTOPPEL

33.    Plaintiff's claims are barred in whole or in part by the doctrines of laches and/or estoppel.

## PROSECUTION LACHES

34.    Plaintiff's claims are barred in whole or in part by the doctrine of prosecution laches.

## NO INJUNCTIVE RELIEF

35.    Plaintiff is not entitled to injunctive relief because any injury to Plaintiff is not immediate or irreparable, and Plaintiff has an adequate remedy at law.

## FAILURE TO STATE A CLAIM FOR WHICH
## THE REQESTED RELIEF CAN BE GRANTED

36.    Plaintiff has failed to state a claim for which the requested relief can be granted.

## UNCLEAN HANDS

37.    Plaintiff comes to this Court with unclean hands, and is precluded at law and in equity from asserting any of the claims purported to be set forth in the Complaint. CoxCom is accordingly entitled to its attorneys' fees and costs.

DEFENDANT COXCOM, INC.'S ANSWER AND COUNTERCLAIM

Case 1:06-cv-00737-SLR    Document 76-57    Filed 12/05/2006    Page 8 of 21
Case 2:06-cv-00238-RHC    Document 39-5    Filed 08/28/2006    Page 8 of 21
Case 2:05-cv-00318-LED    Document 38    Filed 09/19/2005    Page 7 of 20

## VI.    COXCOM'S COUNTERCLAIM

Pursuant to Rule 13 of the FEDERAL RULES OF CIVIL PROCEDURE, Defendant CoxCom,

Inc. (hereinafter referred to as "CoxCom"), for its Counterclaim against Plaintiff, alleges as

follows:

### PARTIES

38.    CoxCom is a corporation incorporated under the laws of the State of Delaware

with its principal place of business at 1400 Lake Hearn Drive, Atlanta, Georgia 30319.

39.    On information and belief, Forgent Networks, Inc. ("Forgent") is a corporation

organized under the laws of the State of Texas with corporate headquarters located at 108 Wild

Basin Drive, Austin, Texas.

### JURISDICTION AND VENUE

40.    This Court has subject matter jurisdiction over this counterclaim pursuant to 28

U.S.C. §§ 1331, 1338, 2201 and 2202.

41.    This Court has personal jurisdiction over Forgent because Forgent submitted to

jurisdiction in the Court by bringing its Complaint in this judicial district.

42.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and 1391(c).

### COUNTERCLAIM

43.    CoxCom incorporates by reference paragraphs 1-42 above.

44.    The '746 Patent was issued, albeit improperly, by the United States Patent and

Trademark Office on September 4, 2001. Forgent claims to own all rights, title, and interests in

and to the '746 Patent.

45.    Forgent has alleged that CoxCom infringes the '746 Patent.

46.    As set forth in the following paragraphs, an actual controversy exists between

CoxCom and Forgent regarding the enforceability, validity, and infringement of the '746 Patent.

DEFENDANT COXCOM, INC.'S ANSWER AND COUNTERCLAIM

Case 1:06-cv-00737-SLR    Document 76-57    Filed 12/05/2006    Page 9 of 21
Case 2:06-cv-00238-RHC    Document 39-5    Filed 08/28/2006    Page 9 of 21
Case 2:05-cv-00318-LED    Document 38    Filed 09/19/2005    Page 8 of 20

47.    The '746 Patent is invalid for failure to satisfy one or more of the conditions of

patentability set forth in Part II of Title 35 of the United States Code, including, but not limited

to, 35 U.S.C. §§ 101, 102, 103 and 112.

48.    CoxCom has not infringed and is not infringing any valid or enforceable claim of

the '746 Patent, and CoxCom has not induced, and is not inducing, infringement of any valid or

enforceable claim of the '746 Patent.

49.    The '746 patent is unenforceable due to inequitable conduct in its procurement

and the procurement of related patents and patent applications, in violation of the duties imposed

upon the applicants by 37 C.F.R. §1.56.

50.    The '746 patent is unenforceable due to inequitable conduct committed during the

prosecution of U.S. Patent Applications Nos. 07/703,685 ("the '685 application"), 08/158,045

("the '045 application"), 08/425,729 ("the '729 application"), 09/490,905 ("the '905

application"), 09/757,392 ("the '392 application"), 09/894,051 ("the '051 application"),

10/264,749 ("the '749 application"), and/or 10/691,675 ("the '675 application") ("collectively

"The Applications") for failure to disclose, to the patent examiner during prosecution of The

Applications, material subject matter contained in Duran, et al., "A PC-compatible,

multiprocessor workstation for video, data, and voice communication," *Visual Communications

& Image Processing IV*, (SPIE 1989) pp. 232-236 ("the Duran article").

51.    Each of the named inventors on The Applications and each of the prosecuting

attorneys, had a duty of candor and good faith, including a duty to disclose, under 37 C.F.R.

§1.56 – ("Rule 56"), during the pendency of The Applications.

52.    Each person substantively involved in the preparation and prosecution of any of

The Applications had a duty of candor and good faith, including a duty to disclose, under 37

DEFENDANT COXCOM, INC.'S ANSWER AND COUNTERCLAIM

Case 1:06-cv-00737-SLR    Document 76-57    Filed 12/05/2006    Page 10 of 21
Case 2:06-cv-00239-RHC    Document 39-5    Filed 08/28/2006    Page 10 of 21
Case 2:05-cv-00318-LED    Document 38    Filed 09/19/2005    Page 9 of 20

C.F.R. §1.56 – ("Rule 56"), during the pendency of each of The Applications with which the person was substantively involved.

53.    "Applicants" as used herein includes the named inventors and their agents, including their prosecuting attorneys, for any events occurring prior to any assignment of their rights in The Applications and any assignee and their agents, including their prosecuting attorneys, for events occurring after any such assignment.

54.    Although the Duran article is mentioned in the '746 Patent, neither that article nor all of the relevant subject matter in it was disclosed to the patent examiner during prosecution, even though upon information and belief the inventors and their prosecuting attorneys appreciated its materiality. Only some, but not all, of the content of the Duran article was disclosed to the USPTO in the specifications of The Applications. The undisclosed, remaining content in the Duran article included the disclosure of communication multiplexer functions and circuitry and magnetic disks (hard disks) for the storage and retrieval for later playback of video telephone conferences and other multimedia. For example, the Duran article discloses: (1) "communication multiplexer which combines compressed video and audio with PC data, serial inputs, and FAX;" (2) "communications multiplexer uses a DSP" (3) "DSP chip development has provided general purpose programmable processor chips;" (4) "storing and retrieving video sequences (with sound) and still pictures on magnetic or optical discs;" (5) "it is now economically possible to provide users a desktop workstation for processing video and audio in real time – for real time communication, for storage for later playback, or for 'store and forward' communication;" and (6) "During video phone calls, users may transfer computer files, execute programs, send snapshots of computer screens, send FAX messages, and transfer data from other devices through serial data ports built into the workstation. The design also supports storing and

DEFENDANT COXCOM, INC.'S ANSWER AND COUNTERCLAIM

Case 1:06-cv-00737-SLR    Document 76-57    Filed 12/05/2006    Page 11 of 21
Case 2:06-cv-00239-RHC    Document 39-5    Filed 08/28/2006    Page 11 of 21
Case 2:05-cv-00318-LED    Document 38    Filed 09/19/2005    Page 10 of 20

retrieving video sequences (with sound) and still pictures on magnetic or optical discs." As a further example, although Applicants disclosed to the USPTO in the specifications of The Applications that the Duran article disclosed an alternative Video Processor 24 of Figure 2 of The Applications, the Applicants failed to disclose that the Duran article at Figure 3 and accompanying text disclosed the remainder of Figure 2 of The Applications.

55.    At all times during the prosecution of The Applications, one or more of the individuals who were subject to Rule 56 had knowledge of the Duran article and appreciated its materiality, including the remaining content of the Duran article that was not disclosed to the USPTO. Upon information and belief these individuals included at least the inventors and their prosecuting attorneys and such failure to disclose was with the intent to mislead the patent examiner into wrongfully granting claims of The Applications.

56.    During the prosecution of the '685 application, the applicants submitted an Information Disclosure Statement bearing a certificate of mailing dated July 15, 1991 ("the July 1991 IDS"), indicating that the applicants appreciated the materiality of the Duran article. Although the July 1991 IDS listed the Duran article and U.S. Patent No. 4,965,822, the copy of the Duran article submitted by Applicants lacked any indication of a date of publication, and the Examiner refused to accept it for consideration.

57.    The Examiner of the '685 application did not consider the Duran article as prior art to the '685 application. In an office action dated October 9, 1992, the Examiner of the '685 application stated that he did not consider the Duran article as prior art and suggested that the Applicants submit additional material to establish the date of the Duran article. At no time during the prosecution of the '685 application did the Examiner retract that statement or otherwise indicate that he considered the Duran article as prior art. Contemporaneously with that

October 9, 1992 office action, the Examiner returned FORM PTO-1449 to the Applicants with his initials next to the first line of the citation of the Duran article, a line or strike-out through the second line of the citation to the Duran article, and the word "undated" next to the first line of the citation of the Duran article. At no time during the prosecution of the '685 application did the Examiner retract the strike-out, the "undated" note, or otherwise indicate on the FORM PTO-1449 that he considered the Duran article as prior art. In an office action dated August 24, 1993, the Examiner of the '685 application noted Applicants' statements regarding the publication date of the Duran article, but again suggested that the Applicants submit additional material to establish the date of the Duran article, including a copy of the table of contents and the copyright page of the Duran article. In an Advisory Action dated November 3, 1993 the Examiner refused to enter Applicants' amendment. At no time during the prosecution of the '685 application did the Examiner allow any claim over the prior art of record and, therefore, it was not necessary for the Examiner to consider the Duran article as prior art.

58.    Applicants failed to disclose the remaining content of the Duran article to the USPTO during the prosecution of the '045 application. At no time during the prosecution of the '045 application did the Examiner indicate that he had considered the Duran article as prior art. At no time during the prosecution of the '045 application did the Examiner retract the strike-out, the "undated" note, or otherwise indicate on the FORM PTO-1449 that he considered the Duran article as prior art. At no time during the prosecution of the '045 application did the Examiner allow any claim over the prior art of record and, therefore, it was not necessary for the Examiner to consider the Duran article as prior art.

59.    Applicants failed to disclose the remaining content of the Duran article to the USPTO during the prosecution of the '729 application. At no time during the prosecution of the

DEFENDANT COXCOM, INC.'S ANSWER AND COUNTERCLAIM

Case 1:06-cv-00737-SLR   Document 76-57   Filed 12/05/2006   Page 13 of 21
Case 2:06-cv-00239-RHC   Document 39-5   Filed 08/28/2006   Page 13 of 21
Case 2:05-cv-00318-LED   Document 38   Filed 09/19/2005   Page 12 of 20

'729 application did the Examiner indicate that he had considered the Duran article as prior art. At no time during the prosecution of the '729 application did the Examiner retract the strike-out, the "undated" note, or otherwise indicate on the FORM PTO-1449 that he considered the Duran article as prior art. At no time during the prosecution of the '729 application did the Examiner allow any claim over the prior art of record and, therefore, it was not necessary for the Examiner to consider the Duran article as prior art.

60.   Applicants' failure to obtain consideration of the Duran article as prior art in any of the '685, '045, and/or '729 applications did not result in the issuance of any of those applications as a patent because none of the claims in any of those applications were ever allowed over the prior art of record. Applicants' subsequent intentional failure to disclose the Duran article in the '905 and later applications was an improper attempt to deceive the USPTO into obtaining claims focused on the undisclosed, remaining content of the Duran article— communications multiplexers functions and circuitry and disk storage for recording and later playback of video teleconferences and multimedia.

61.   Applicants failed to disclose the remaining content of the Duran article to the USPTO during the prosecution of the '905 application. During the prosecution of the '905 application Applicants submitted a preliminary amendment bearing a certificate of mailing dated January 25, 2000 (the "January 2000 Preliminary Amendment"). In the January 2000 Preliminary Amendment Applicants represented to the USPTO that claims 31 and 32 of the '905 application were directed to a multiplexer function and that none of the '685, '045 and/or '729 applications were directed to a multiplexer function and circuitry. Claims 31 and 32 of the '905 application are directed to a multiplexer function and none of the '685, '045 and/or '729 applications are directed to a multiplexer function and circuitry.

DEFENDANT COXCOM, INC.'S ANSWER AND COUNTERCLAIM

Case 1:06-cv-00737-SLR    Document 76-57    Filed 12/05/2006    Page 14 of 21
Case 2:05-cv-00239-RHC    Document 39-5    Filed 08/28/2006    Page 14 of 21
Case 2:05-cv-00318-LED    Document 38-5    Filed 09/19/2005    Page 13 of 20

62.     As described above, the Duran article discloses a communication multiplexer function and circuitry. The Duran article discloses that the communication multiplexer circuitry can include a digital signal processor that could comprise a general purpose programmable processor. The discussion of the Duran article in the '905 application did not disclose those facts. Accordingly, the undisclosed, remaining content in the Duran article was material to the patentability of the '905 application. Applicants failed to disclose the undisclosed, remaining content in the Duran article with the intent to deceive the USPTO.

63.     During prosecution of the '905 application Applicants submitted an Information Disclosure Statement bearing a certificate of mailing dated April 18, 2000 ("April 2000 IDS") in which Applicants intentionally recited voluminous and cumulative prior art already of record in the '685, '045, and/or '729 applications. However, Applicants failed to cite the Duran article in order to bury the Duran article and thereby prevent the Examiner from considering the Duran article for the first time as prior art. Applicants also intentionally misrepresented to the USPTO that the April 2000 IDS disclosed the "best" art of which the Applicants were aware. Specifically, the Applicants intentionally misrepresented to the USPTO that "this statement discloses only the best art of which the Applicant is aware."

64.     The April 2000 IDS cited every single non-patent publication reference cited in the '685 application, the '045 application, and/or the '729 application, with the exception of the Duran article. Upon information and belief, this intentional and selective omission of the Duran article was a deliberate attempt to bury the Duran article and prevent the Examiner from considering the Duran article for the first time as prior art. Applicants further misleadingly represented that "[t]he attached references were cited in parent Appl. Ser. No. 08/158,045, filed November 24, 1993 and are recited herein for the convenience of the Examiner." Applicants

-13-

DEFENDANT COXCOM, INC.'S ANSWER AND COUNTERCLAIM

Case 1:06-cv-00737-SLR    Document 76-57    Filed 12/05/2006    Page 15 of 21
Case 2:06-cv-00239-RHC    Document 39-5    Filed 08/28/2006    Page 15 of 21
Case 2:05-cv-00318-LED    Document 38    Filed 09/19/2005    Page 14 of 20

even misleadingly apologized for not submitting a new copy of the So, et al. reference. Upon information and belief, Applicants made these misleading statements to deceive the Examiner into believing that the Examiner "conveniently" had a complete copy set of all non-patent prior art (with the exception of the So, et al. reference) in the hope, and with the expectation, that the Examiner would not consider the Duran article for the first time as prior art. These misleading statements served no other purpose than to bury the Duran article.

65.    Upon information and belief, the failure to disclose the Duran article in the April 2000 IDS was intentional. The April 2000 IDS disclosed U.S. Patent No. 4,965,822. The only place that U.S. Patent No. 4,965,822 was cited prior to the April 2000 IDS was in the original July 1991 IDS that cited only two references—that patent and the Duran article. The fact that Applicants submitted only the patent from the July 1991 IDS shows that the failure to disclose the Duran article was intentional.

66.    Each patent issuing with a claim of priority to the '685, '045, '729, and '905 applications is unenforceable, including the '746 patent, because of the inequitable conduct conducted during the prosecution of the '685, '045, '729, and '905 applications.

67.    Applicants failed to disclose the remaining content of the Duran article to the USPTO during the prosecution of the '392 application. Applicants did not submit any Information Disclosure Statements during the prosecution of the '392 application.

68.    During the prosecution of the '392 application Applicants submitted a preliminary amendment bearing a certificate of mailing dated February 7, 2001 (the "February 2001 Preliminary Amendment"). In the February 2001 Preliminary Amendment Applicants represented to the USPTO that claim 31 of the '392 application was directed to a data storage device and that a data storage device was not the primary subject matter of the '685, '045 and/or

DEFENDANT COXCOM, INC.'S ANSWER AND COUNTERCLAIM

Case 1:06-cv-00737-SLR    Document 76-57    Filed 12/05/2006    Page 16 of 21
Case 2:06-cv-00239-RHC    Document 39-5    Filed 08/28/2006    Page 16 of 21
Case 2:05-cv-00318-LED    Document 38    Filed 09/19/2005    Page 15 of 20

'729 applications. Claim 31 of the '392 application is directed to a data storage device and a data storage device was not the primary subject matter of the '685, '045 and/or '729 applications.

69.    The Duran article discloses a data storage device, including magnetic disks (hard drives). The Duran article discloses and, upon information and belief, enables all of the limitations of claim 31 of the '392 application to the same extent that those limitations are disclosed and enabled in the '392 application. The discussion of the Duran article in the '392 application did not disclose those facts. Accordingly, the remaining content in the Duran article was material to the patentability of the '392 application. Applicants failed to disclose the remaining content in the Duran article with the intent to deceive the USPTO.

70.    During the prosecution of the '392 application Applicants submitted a supplemental preliminary amendment bearing a certificate of mailing dated May 7, 2001 (the "May 2001 Amendment"). In the May 2001 Amendment Applicants cancelled claim 31 of the '392 application and added claims 32-36.

71.    The Duran article discloses and, upon information and belief, enables all of the limitations of claims 32-36 of the '392 application to the same extent that those limitations are disclosed and enabled in the '392 application. The discussion of the Duran article in the '392 application did not disclose those facts. Accordingly, the remaining content in the Duran article was material to the patentability of the '392 application. Applicants failed to disclose the remaining content in the Duran article with the intent to deceive the USPTO.

72.    Each patent issuing with a claim of priority to the '685, '045, '729, '905, and '392 applications is unenforceable, including the '746 patent, because of the inequitable conduct committed during the prosecution of the '685, '045, '729, '905, and '392 applications.

DEFENDANT COXCOM, INC.'S ANSWER AND COUNTERCLAIM

Case 1:06-cv-00737-SLR    Document 76-57    Filed 12/05/2006    Page 17 of 21
Case 2:06-cv-00239-RHC    Document 39-5    Filed 08/28/2006    Page 17 of 21
Case 2:05-cv-00318-LED    Document 38    Filed 09/19/2005    Page 16 of 20

73. Applicants have continued to commit inequitable conduct in additional applications that claim priority to the '685, '045, '729, '905, and '392 applications, including the '675 application. Applicants have failed to disclose the remaining content of the Duran article to the USPTO during the prosecution of the '675 application.

74. During prosecution of the '675 application Applicants submitted a Preliminary Amendment bearing a certificate of mailing dated July 28, 2005 (the "July 2005 Amendment") canceling claims 1-35 and adding claims 36 to 75. The Duran article discloses and, upon information and belief, enables each and every limitation of claims 36 to 75 to the same extent that those claims are disclosed and enabled by the '675 application. The discussion of the Duran article in the '675 application did not disclose those facts. Accordingly, the remaining content in the Duran article was material to the patentability of the '675 application. Applicants failed to disclose the remaining content in the Duran article with the intent to deceive the USPTO.

75. During the prosecution of the '685 application, Applicants submitted a declaration purportedly from the named inventors wherein each inventor declared that they were "an original, first and joint inventor of the subject matter which is claimed and for which a patent is sought on the invention entitled: A MULTIPLE MEDIUM MESSAGE RECORDING SYSTEM which was filed as S. N. 703,685 on May 21, 1991." (The "May 1991 Declaration.") The named inventors also declared in The May 1991 Declaration that "I have reviewed and understand the contents of the ['685 application] specification, including the claims." Thus, the May 1991 Declaration expressly recognized the difference between the subject matter in the specification and the remainder of the claims. The May 1991 Declaration did not include a declaration from any of the named inventors that they believed they were the inventor of any unclaimed subject matter in the specification of the '685 application.

-16-

Case 1:06-cv-00737-SLR    Document 76-57    Filed 12/05/2006    Page 18 of 21
Case 2:06-cv-00239-RHC    Document 39-5    Filed 08/28/2006    Page 18 of 21
Case 2:05-cv-00318-LED    Document 38-5    Filed 09/19/2005    Page 17 of 20

76.    During prosecution of the '392 application, Applicants cancelled all claims originally filed in the '685 application and added new claims drawn to what Applicants represented as disclosed but previously unclaimed subject matter.  During prosecution of the '392 application the USPTO stated in a Notice of Missing Parts dated April 3, 2001 that "[a] *properly signed oath or declaration in compliance with 37 CFR 1.63, identifying the application by the above Application Number and Filing Data, is required*."  (Emphasis in original.)  In response, Applicants submitted a copy of the May 1991 Declaration.  The May 1991 Declaration does not identify the '392 application by its application number and filing date.  The May 1991 Declaration does not include a declaration by any of the named inventors that they invented what is claimed in the '392 application.  Upon information and belief, Applicants ignored the USPTO's express request that they submit a new declaration and intentionally submitted a copy of the May 1991 Declaration because Applicants knew that none of the named inventors believed that they invented what was claimed in the new claims of the '392 application.

77.    In light of the foregoing, the claims of the '746 Patent were procured by inequitable conduct and are unenforceable.

## VII.    RELIEF REQUESTED

WHEREFORE, CoxCom respectfully requests the following relief:

78.    A judgment in favor of CoxCom denying Plaintiff all relief requested in its Complaint in this action and dismissing with prejudice all counts as plead and as could have been plead in Plaintiff's Complaint;

79.    A declaration that the claims of the '746 patent are invalid;

80.    A declaration that the claims of the '746 patent are unenforceable;

-17-

Case 1:06-cv-00737-SLR    Document 76-57    Filed 12/05/2006    Page 19 of 21
Case 2:06-cv-00239-RHC    Document 39-5    Filed 08/28/2006    Page 19 of 21
Case 2:05-cv-00318-LED    Document 38    Filed 09/19/2005    Page 18 of 20

81.    A declaration that CoxCom has not infringed and is not infringing any valid or enforceable claim of the '746 Patent, and that CoxCom has not induced and is not inducing infringement of the '746 Patent;

82.    A judgment declaring this to be an exceptional case and awarding CoxCom its costs, expenses, and reasonable attorneys' fees pursuant to 35 U.S.C. § 285 and as otherwise permitted by law; and

83.    Any and all other relief to which CoxCom may be entitled or which this Court deems just and proper.

DEFENDANT COXCOM, INC.'S ANSWER AND COUNTERCLAIM

Case 1:06-cv-00737-SLR    Document 76-57    Filed 12/05/2006    Page 20 of 21
Case 2:06-cv-00239-RHC    Document 39-5    Filed 08/28/2006    Page 20 of 21
Case 2:05-cv-00315-LED    Document 38    Filed 09/19/2005    Page 19 of 20

# VIII.   JURY DEMAND

CoxCom demands a trial by jury on all issues so triable.

Dated:  September 19, 2005.                              Respectfully submitted,

                                                         /s/ Michael E. Jones
                                                         Michael E. Jones
Wayne M. Harding                                         State Bar No.  10929400
State Bar No. 08978500                                   POTTER MINTON
wharding@deweyballantine.com                             A Professional Corporation
Brian Erickson (*Pro Hac* admission pending)             110 N. College, Suite 500
State Bar No. 24012594                                   Tyler, Texas 75702
berickson@deweyballantine.com                            903.597.8311
DEWEY BALLANTINE LLP                                     903.593.0846
401 Congress Avenue, Suite 3200
Austin, Texas 78701
512.226.0300
512.226.0333 (fax)

                                                         Tracy Crawford
                                                         Deron Dacus
                                                         Ramey & Flock LLP
                                                         100 East Ferguson
                                                         Suite 500
                                                         Tyler, Texas  75702
                                                         Phone: 903-597-3301
                                                         Fax: 903-597-2413
                                                         tcrawford@rameyflock.com
                                                         derond@rameyflock.com

                                                         ATTORNEYS FOR DEFENDANT
                                                         COXCOM, INC.

DEFENDANT COXCOM, INC.'S ANSWER AND COUNTERCLAIM

Case 1:06-cv-00737-SLR    Document 76-57    Filed 12/05/2006    Page 21 of 21
Case 2:06-cv-00239-RHC    Document 39-5    Filed 08/28/2006    Page 21 of 21
Case 2:05-cv-00318-LED    Document 38    Filed 09/19/2005    Page 20 of 20

CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on September 19, 2005. Any other counsel of record will be served by facsimile transmission and first class mail.

_/s/ Michael E. Jones_

DEFENDANT COXCOM, INC.'S ANSWER AND COUNTERCLAIM

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION | § § § | |
| VS. | § § | Case No. 2:06-CV-239 |
| TIME WARNER, INC., ET AL. | § § § | |

**REFERRAL ORDER**

In an effort to prevent undue delays in this complicated case, the undersigned hereby enters the following Referral Order.

It is **ORDERED** that discovery disputes and discovery motions, as well as certain other motions filed in this case, shall be **REFERRED**, at the discretion of, or in the absence of, the undersigned, to United States Magistrate Judge Earl S. Hines. The United States Magistrate Judge shall hear and determine such matters as are within the magistrate judge's dispositive jurisdiction and proceed in accordance with 28 U.S.C. § 636(b)(1)(B) and (C) concerning such matters that are excepted from the magistrate judge's dispositive jurisdiction.

So **ORDERED** and **SIGNED** this **28** day of **August, 2006.**

_____
Ron Clark, United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA Video Technology Corporation, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Case No.2:06-cv-239 RHC |
| | § | |
| TIME WARNER CABLE, INC.; COX | § | |
| COMMUNICATIONS, INC.; COXCOM, | § | |
| INC.; CHARTER COMMUNICATIONS, | § | **JURY TRIAL DEMANDED** |
| INC.; COMCAST CABLE | § | |
| COMMUNICATIONS, LLC; | § | |
| COMCAST OF RICHARDSON, LP; | § | |
| COMCAST OF PLANO, LP; COMCAST | | |
| OF DALLAS, LP | | |
| | | |
| Defendants | | |

## PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, Plaintiff, USA Video Technology Corporation ("USVO") moves the Court for an order granting leave to amend its Complaint to assert their claims against an additional Defendant, namely Coxcom Inc, making the full list of defendants Time Warner Cable, Inc. ("Time Warner"), Cox Communications, Inc. ("Cox"), Coxcom Inc. ("CoxCom"), Charter Communications, Inc. ("Charter"), Comcast Cable Communications LLC ("Comcast"),Comcast of Richardson, LP ("Comcast Richardson"), Comcast of Plano, LP ("Comcast Plano"), and Comcast of Dallas, LP ("Comcast Dallas"). A copy of the Second Amended Complaint is attached hereto as Exhibit A, and a proposed order is submitted herewith.

## I. Introduction

This is an action for infringement of U.S. Patent No. 5,130,792 ("the '792 patent"). In its original complaint, USVO asserted that Defendants are infringing by offering video-on-demand

(VOD) products and/or services.  After further research and review, it is now clear that Coxcom, Inc. is also infringing the '792 patent.

## II.     Argument

Federal Rule of Civil Procedure 15 states that leave to amend pleadings "shall be freely given when justice so requires." In determining whether to grant leave, a district court may consider such factors as (1) undue delay; (2) bad faith; (3) dilatory motive on the part of the movant; (4) repeated failure to cure deficiencies by any previously allowed amendment; (5) undue prejudice to the opposing party; and (6) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962). See also *Ellis v. Liberty Life Assur. Co.*, 394 F.3d 262, 268 (5th Cir. 2004).

None of these factors are applicable here.  Due to the nature of the cable business, names and business structure often change.  USVO originally sued Cox Communications, Inc., based on publicly available information, however Cox now argues that its wholly-owned subsidiary, Coxcom, provides the "video-on-demand" services that USVO has alleged infringe its patent.  In light of this information, USVO seeks leave at this early stage to amend the pleadings to include this subsidiary.  As no party has yet filed an Answer to USVO's First Amended Complaint, this timely and good faith addition would not pose undue prejudice to the opposing parties.

## III.     Conclusion

Because the amendment would not result in any undue delay and because there is no bad faith or dilatory motive on the part of USVO and no showing of undue prejudice to Defendants, leave to amend is proper and should be freely given.  USVO respectfully requests that the Court enter an Order granting it leave to amend its complaint as attached hereto in Exhibit A.

Respectfully submitted,

Date: August 29, 2006

/s/ Edward W. Goldstein
Edward W. Goldstein
Texas Bar. No. 08099500
GOLDSTEIN, FAUCETT & PREBEG, LLP
1177 West Loop South, Suite 400
Houston, TX 77027
Tel: 713/877-1515
Fax: 713/877-1737
E-mail: egoldstein@gfiplaw.com

T. John Ward, Jr.
State Bar No. 00794818
Law Office of T. John Ward, Jr., P.C.
P.O. Box 1231
Longview, Texas 75606-1231
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)
E-mail: jw@jwfirm.com

ATTORNEYS FOR PLAINTIFF

Of Counsel:

GOLDSTEIN, FAUCETT & PREBEG, L.L.P
Corby R. Vowell
Texas Bar No. 24031621
1177 West Loop South, Suite 400
Houston, Texas 77027
(713) 877-1515 – Telephone
(713) 877-1737 – Facsimile

## CERTIFICATE OF CONFERENCE

Defendant Cox Communications, Inc. is opposed to this Motion.

/s/ Edward W. Goldstein_____
Edward W. Goldstein

## <u>CERTIFICATE OF SERVICE</u>

 The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on August 29, 2006.  Any other counsel of record will be served by first class U.S. mail.

/s/ Edward W. Goldstein_____
Edward W. Goldstein

F I L E D
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

AUG 29 2006

DAVID J. MALAND, CLERK

DEPUTY_____

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION | § § § | |
| V. | § § | CIVIL NO.2:06-cv-239 JUDGE RON CLARK |
| TIME WARNER, INC., ET AL. | § § § | |

## PROTECTIVE ORDER

The Court, *sua sponte*, issues this Protective Order to facilitate document disclosure and production under the Local Rules of this Court and the Federal Rules of Civil Procedure. Unless modified pursuant to the terms contained in this Order, this Order shall remain in effect through the conclusion of this litigation.

In support of this order, the court finds that:

1.    Documents or information containing confidential proprietary and business information and/or trade secrets ("Confidential Information") that bear significantly on the parties' claims or defenses is likely to be disclosed or produced during the course of discovery in this litigation;

2.    The parties to this litigation may assert that public dissemination and disclosure of Confidential Information could severely injure or damage the party disclosing or producing the Confidential Information and could place that party at a competitive disadvantage;

3.    Counsel for the party or parties receiving Confidential Information are presently without sufficient information to accept the representation(s) made by the party or parties producing

Appendix A - Protective Order

Confidential Information as to the confidential, proprietary, and/or trade secret nature of such Confidential Information; and

4.    To protect the respective interests of the parties and to facilitate the progress of disclosure and discovery in this case, the following Order should issue:

**IT IS THEREFORE ORDERED THAT:**

1.    Documents or discovery responses containing Confidential Information disclosed or produced by any party in this litigation are referred to as "Protected Documents." Except as otherwise indicated below, all documents or discovery responses designated by the producing party as "Confidential" and which are disclosed or produced to the attorney's for the other parties to this litigation are Protected Documents and are entitled to confidential treatment as described below.

2.    Protected Documents shall not include (a) advertising materials, (b) materials that on their face show that they have been published to the general public, or (c) documents that have submitted to any governmental entity without request for confidential treatment.

3.    At any time after the delivery of Protected Documents, counsel for the party or parties receiving the Protected Documents may challenge the Confidential designation of all or any portion thereof by providing written notice thereof to counsel for the party disclosing or producing the Protected Documents. If the parties are unable to agree as to whether the confidential designation of discovery material is appropriate, the party or parties receiving the Protected Documents shall certify to the Court that the parties cannot reach an agreement as to the confidential nature of all or a portion of the Protected Documents. Thereafter, the

2

Appendix A - Protective Order

party or parties disclosing or producing the Protected Documents shall have ten (10) days

from the date of certification to file a motion for protective order with regard to any Protected

Documents in dispute. The party or parties producing the Protected Documents shall have

the burden of establishing that the disputed Protected Documents are entitled to confidential

treatment. If the party or parties producing the Protected Documents do not timely file a

motion for protective order, then the Protected Documents in dispute shall no longer be

subject to confidential treatment as provided in this Order. All Protected Documents are

entitled to confidential treatment pursuant to the terms of this Order until and unless the

parties formally agree in writing to the contrary, a party fails to timely move for a protective

order, or a contrary determination is made by the Court as to whether all or a portion of a

Protected Document is entitled to confidential treatment.

4.    Confidential Treatment. Protected Documents and any information contained therein shall

not be used or shown, disseminated, copied, or in any way communicated to anyone for any

purpose whatsoever, except as provided for below.

5.    Protected Documents and any information contained therein shall be disclosed only to the

following persons ("Qualified Persons"):

(a)    Outside counsel of record in this action for the party or party receiving Protected
Documents or any information contained therein;

(b)    Employees of such counsel (excluding experts and investigators) assigned to and
necessary to assist such counsel in the preparation and trial of this action; and

(c)    The Court.

Protected Documents and any information contained therein shall be used solely for the

3

Appendix A - Protective Order

prosecution of this litigation.

6.  Outside counsel of record for the party or parties receiving Protected Documents may create an index of the Protected Documents and furnish it to attorneys of record representing or having represented parties involved in litigation involving the claims alleged in this suit against the party or parties disclosing or producing the Protected Documents. The index may only identify the document, date, author, and general subject matter of any Protected Document, but may not reveal the substance of any such document. Counsel for the party or parties receiving Protected Documents shall maintain a current log of the names and addresses of persons to whom the index was furnished.

7.  The term "copy" as used herein means any photographic, mechanical or computerized copy or reproduction of any document or thing, or any verbatim transcript, in whole or in part, of such document or thing.

8.  To the extent that Protected Documents or information contained therein are used in depositions, at hearings, or at trial, such documents or information shall remain subject to the provisions of this Order, along with the transcript pages of the deposition testimony and/or trial testimony referring to the Protected Documents or information contained therein.

9.  Any court reporter or transcriber who reports or transcribes testimony in this action shall agree that all "confidential" information designated as such under this Order shall remain "confidential" and shall not be disclosed by them, except pursuant to the terms of this Order, and that any notes or transcriptions of such testimony (and any accompanying exhibits) will be retained by the reporter or delivered to counsel of record.

4

Appendix A - Protective Order

10.    Inadvertent or unintentional production of documents or information containing Confidential Information which are not designated "confidential" shall not be deemed a waiver in whole or in part of a claim for confidential treatment.

11.    The party or parties receiving Protected Documents shall not under any circumstances sell, offer for sale, advertise, or publicize Protected Documents or any information contained therein.

12.    After termination of this litigation, the provisions of this Order shall continue to be binding, except with respect to those documents and information that become a matter of public record.  This Court retains and shall have continuing jurisdiction over the parties and recipients of the Protected Documents for enforcement of the provisions of this Order following termination of this litigation.

13.    Upon termination of this action by dismissal, judgment, or settlement, counsel for the party or parties receiving Protected Documents shall return the Protected Documents to the counsel for the party or parties disclosing or producing the Protected Documents.  The party or parties receiving the Protected Documents shall keep their attorney work product which refers or relates to any Protected Documents.  Attorney work product may be used in subsequent litigation provided that such use does not disclose Protected Documents or any information contained therein.

14.    This Order shall be binding upon the parties and their attorneys, successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries,

5

Appendix A - Protective Order

divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.

15. The Court anticipates that the parties may file a motion to modify the terms hereof with respect to the sharing of Protected Documents with experts and consultants; shifting the cost burden of production equitably; and other terms that may be reasonably required to protect a party as provided in Rule 26(b) or (c) of the Federal Rules of Civil Procedure.

So ORDERED AND SIGNED this _28_ day of August, 2006.

_____
Ron Clark, United States District Judge

6

Appendix A - Protective Order

F I L E D
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

AUG 29 2006

DAVID J. MALAND, CLERK

DEPUTY_____



USA VIDEO TECHNOLOGY CORPORATION §

VS. §        Case No.  2:06-CV-239

TIME WARNER, INC., ET AL. §

# ORDER GOVERNING PROCEEDINGS
## (Patent Cases)

The case is **SET** for the Initial Rule 16 Management Conference on **October 31, 2006, at 2:00 p.m.**, in Courtroom 2 at the United States Courthouse in Beaumont, Texas.  Lead counsel for each party, with authority to bind their respective clients, and all unrepresented parties, shall be present.  If a party is a corporation or other business entity, the in-house counsel or officer supervising the case shall attend in person or by phone. Continuance of the management conference will not be allowed absent a showing of good cause[1].

<u>A.  Rule 26 Attorney Conference</u>

The Rule 26(f) attorney conference in this case must occur **by September 15, 2006.**  The conference may be by telephone.   Rule 26(f) requires attorneys of record and all unrepresented parties to confer and attempt in good faith to agree on a proposed scheduling order (See Appendix C) and to file with the clerk **a joint report** outlining their proposals **no later than 14 days after the conference**.

Before commencing the Rule 26(f) conference, counsel must discuss settlement options with their clients, including whether an offer or demand should be made at the Rule 26(f) attorney conference.  Counsel should also inquire whether their clients are amenable to trial before a United States magistrate judge.  Parties willing to consent should submit the appropriate form (appendix "B: to the Local Rules for the Eastern District of Texas) to the district clerk as soon as possible so that the case can be reset for management conference before the magistrate judge to whom the case is assigned.

---

[1] Before the case management conference, counsel and unrepresented parties should review the FEDERAL RULES OF CIVIL PROCEDURE, the LOCAL COURT RULES FOR THE EASTERN DISTRICT OF TEXAS, and the PATENT RULES of this court (all as most recently amended).  The Local Court Rules and the Patent Rules are available on the Eastern District of Texas website (http://www.txed.uscourts.gov)

Order Governing Proceedings
(Patent Cases) Rev. 8/25/06

The parties must include the following matters in the joint conference report.

(1)     Suggested modifications of the proposed deadlines for the scheduling order set out in Appendix C, including:.

     a.     The need for and any specific limits on discovery relating to claim construction, including depositions of witnesses, including expert witnesses;

     b.     The scheduling of a Claim Construction Pre-hearing Conference to be held after the Joint Claim Construction and Pre-hearing Statement provided for in P.R.4-3 has been filed.

(2)     If the parties believe mediation may be appropriate, and the parties can agree upon a mediator, the name, address, and phone number of that mediator should be stated.

(3)     What changes, if any, should be made to the limitations on discovery imposed by the rules, including the number of depositions and interrogatories.

(4)     The identity of persons expected to be deposed.

(5)     Any issues relating to disclosure or discovery of electronically stored information, including the form or forms in which it should be produced.

(6)     Any issues relating to preserving discoverable information, including whether a Preservation Order is needed to protect any documents and/or electronically stored information.

(7)     Whether any other orders should be entered by the Court pursuant to Fed. R. Civ. P. 26(c), Fed. R. Civ. P. 16(b) or Fed. R. Civ. P. 16(c).

(8)     Estimated trial time.

(9)     The names of the attorneys who will appear on behalf of the parties at the management conference (the appearing attorney must be an attorney of record and have full authority to bind the client).

(10)    Any other matters counsel deem appropriate for inclusion in the joint conference report.

B. Scheduling Conference

At the scheduling conference, counsel shall be prepared to discuss the proposed scheduling order and the following issues related to the Claim Construction Hearing:

(1)    Whether the court will hear live testimony at the Claim Construction Hearing;

(2)    The order of presentation at the Claim Construction Hearing;

(3)    Estimated time limits for the Claim Construction Hearing.

C. Protective Order

The Protective Order, attached as Appendix A is hereby entered in this case and shall apply to all discovery and disclosures herein.

D. Compliance with Patent Rules

The Local Patent Rules of the Eastern District of Texas (cited as P.R. ___), ( available on the Eastern District Website) shall apply to all proceedings in this case. In the absence of a showing of good cause by a party objecting to a required disclosure, the parties shall disclose, without further request or order, all information required by the Patent Rules in accordance with the deadlines set by the Rules.

E. Initial Discovery

**Mandatory Disclosures** consist of Initial Disclosures required by Fed. R. Civ. P. 26(a)(1) and the information listed below. To the extent any such information is not required by the Local Patent Rules to be disclosed at an earlier date, Mandatory Disclosures shall be completed by the date set in the Scheduling Order entered after the Rule 16 management conference.

(1)    the correct names of the parties to the action;

(2)    the name and, if known, address and telephone number of any potential parties to the action;

(3)    the name and, if known, the address and telephone number of persons having knowledge of facts relevant to the claim or defense of any party, a brief characterization of their connection to the case and a fair summary of the substance of the information known by such person (may be combined with list of persons required under Rule 26(a)(1)(A) so two list are not needed).

(4)    a copy of, or a description by category and location of, all documents, electronically stored information, and tangible things that are in the possession, custody, or control of the party relevant to the claims or defenses of any party, unless solely for impeachment.

Order Governing Proceedings
(Patent Cases) Rev. 8/25/06

*See* Local Rule CV-26(d) for meaning of "relevant to the claim or defense of any party."

The duty of disclosure is continuing and requires supplementation as set out in Fed. R. Civ. P. 26(e).

A party that fails to disclose any information required to be disclosed by any order of this court or the Patent Rules of this court will not, unless such failure is harmless, be permitted to use such evidence at trial, hearing or in support of a motion.

To the extent that any party pleads a claim for relief or defensive matter other than those addressed in the Court's Patent Rules, the parties shall also, without waiting for a request from other parties, exchange, by the date set for Mandatory Disclosures, all such information relevant to those additionally pleaded claims or defenses involved in this action.

Absent agreement of the parties, depositions of witnesses shall not be taken until after the Initial Rule 16 management conference. Following the management conference, the court will enter a scheduling order establishing parameters of discovery and setting deadlines controlling disposition of the case.

Discovery directed solely to damages shall usually be postponed until after the claim construction hearing. On the date set in the Scheduling Order, the parties shall complete discovery and Initial Disclosures on the issue of damages and shall respond to all damage discovery requests to which a response is due as of that date.

By written agreement of all parties, alternative forms of disclosure may be provided in lieu of paper copies. For example, the parties may agree to exchange images of documents electronically or by means of computer disk; or the parties may agree to review and copy disclosure materials at the offices of the attorneys representing the parties instead of requiring each side to furnish paper copies of the disclosure materials.

### F. Discovery Limitations

Given the extensive disclosures required without a request from opposing party, absent further order of this court, discovery in this cause is limited to the disclosures described in this order, the Local Patent Rules and the Scheduling Order, together with 45 interrogatories, 45 requests for admissions, depositions on written questions of custodians of business records for third parties, and 40 hours of deposition time per side. "Side" means a party or a group of parties with a common interest. Time will count whether used in direct examination or cross-examination of any witness. Any party may move at the Initial Management Conference to modify these limitations for good cause.

### G. Privileged Information

There is no duty to disclose privileged documents or information. However, the parties are directed to meet and confer concerning privileged documents or information at the Initial Rule 26 Conference. As directed in the Scheduling Order, the parties shall exchange privilege logs identifying the documents or information and the basis for any disputed claim of privilege in a manner that, without revealing information itself privileged or protected, will enable the other parties to assess the applicability of the privilege or protection. Any party may move the court for an order compelling the production of any documents or information identified on any other party's privilege log. If such a motion is made, the party asserting privilege

shall respond to the motion within the time period provided by Local Rule CV-7.  The party asserting privilege shall file with its response any proof in the form of declarations or affidavits to support assertions of privilege, along with the documents over which privilege is asserted for *in camera* inspection.   If the parties have no disputes concerning privileged documents or information, then the parties shall inform the court of that fact.

## H.  Failure to Serve

Any defendant who has not been served with the summons and complaint within **130 days** after the filing of the complaint **shall be dismissed, without further notice**, unless prior to such time the party on whose behalf such service is required shows good cause why service has not been made.  (*See* Fed. R. Civ. P. 4(m)).

## I.  Fictitious Parties

The name of every party shall be set out in the complaint (Fed. R. Civ. P. 10(a)).  The use of fictitious names is disfavored by federal courts.  *Doe v. Blue Cross & Blue Shield*, 112 F.3d. 869 (7th Cir.  1997).  It is hereby **ORDERED** that this action be **DISMISSED** as to all fictitious parties.  Dismissal is without prejudice to the right of any party to take advantage of the provisions of Fed. R. Civ. P. 15(c).

## J.  Contested Motion Practice

Parties shall comply with the guidelines in Appendix B - Contested Motion Practice.

## K.  Discovery Disputes

A magistrate judge is available during business hours to immediately hear discovery disputes and to enforce provisions of the rules.  The hotline is an appropriate means to obtain an immediate ruling on whether a discovery request is relevant to a claim or defense and on disputes which arise during depositions.  The hotline number is (903) 590-1198.  *See* Local Rule CV-26(e).

## L.  Settlement

Plaintiff's counsel shall immediately notify the court upon settlement.

## M.  Compliance

Attorneys and *pro se* litigants who appear in this court shall comply with the deadlines set forth in the Federal Rules of Civil Procedure the Local Rules for the Eastern District of Texas as modified by the Patent Rules of this court, and this court's orders.  A party is not excused from the requirements of an order by virtue of the fact that dispositive motions are pending, the party has not completed its investigation, the party challenges the sufficiency of the opposing party's disclosure, or because another party has failed to comply with this order or the rules.

Failure to comply with relevant provisions of the Local Rules, the Federal Rules of Civil Procedure, the Patent Rules of this court, or any order of this court may result in the exclusion of evidence at trial, the imposition of sanctions by the court, or both. If a fellow member of the Bar makes a just request for cooperation or seeks scheduling accommodation, a lawyer will not arbitrarily or unreasonable withhold consent. However, the court is not bound to accept agreements of counsel to extend deadlines imposed by rule or court order. *See* Local Rule AT-3(j).

<p style="text-align:center;">N.  Resources</p>

The Eastern District of Texas website (http://www.txed.uscourts.gov) contains the Eastern District Local Rules and the Local Patent Rules, links to other judicial sites and other information. For a fee, the PACER system allows you to access case information *via* the internet. To establish a PACER account, call (800) 676-6856.

Appendices A, B, and C, are attached and incorporated herein.

**SO ORDERED.**

**SIGNED** August 28, 2006.

_____
Ron Clark, United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION | § § § | |
| V. | § § | CIVIL NO.2:06-cv-239 JUDGE RON CLARK |
| TIME WARNER, INC., ET AL. | § § § | |

## **PROTECTIVE ORDER**

The Court, *sua sponte*, issues this Protective Order to facilitate document disclosure and production under the Local Rules of this Court and the Federal Rules of Civil Procedure. Unless modified pursuant to the terms contained in this Order, this Order shall remain in effect through the conclusion of this litigation.

In support of this order, the court finds that:

1.      Documents or information containing confidential proprietary and business information and/or trade secrets ("Confidential Information") that bear significantly on the parties' claims or defenses is likely to be disclosed or produced during the course of discovery in this litigation;

2.      The parties to this litigation may assert that public dissemination and disclosure of Confidential Information could severely injure or damage the party disclosing or producing the Confidential Information and could place that party at a competitive disadvantage;

3.      Counsel for the party or parties receiving Confidential Information are presently without sufficient information to accept the representation(s) made by the party or parties producing

Appendix A - Protective Order

Confidential Information as to the confidential, proprietary, and/or trade secret nature of such Confidential Information; and

4.    To protect the respective interests of the parties and to facilitate the progress of disclosure and discovery in this case, the following Order should issue:

**IT IS THEREFORE ORDERED THAT:**

1.    Documents or discovery responses containing Confidential Information disclosed or produced by any party in this litigation are referred to as "Protected Documents." Except as otherwise indicated below, all documents or discovery responses designated by the producing party as "Confidential" and which are disclosed or produced to the attorney's for the other parties to this litigation are Protected Documents and are entitled to confidential treatment as described below.

2.    Protected Documents shall not include (a) advertising materials, (b) materials that on their face show that they have been published to the general public, or (c) documents that have submitted to any governmental entity without request for confidential treatment.

3.    At any time after the delivery of Protected Documents, counsel for the party or parties receiving the Protected Documents may challenge the Confidential designation of all or any portion thereof by providing written notice thereof to counsel for the party disclosing or producing the Protected Documents. If the parties are unable to agree as to whether the confidential designation of discovery material is appropriate, the party or parties receiving the Protected Documents shall certify to the Court that the parties cannot reach an agreement as to the confidential nature of all or a portion of the Protected Documents. Thereafter, the

2

Appendix A - Protective Order

party or parties disclosing or producing the Protected Documents shall have ten (10) days from the date of certification to file a motion for protective order with regard to any Protected Documents in dispute. The party or parties producing the Protected Documents shall have the burden of establishing that the disputed Protected Documents are entitled to confidential treatment. If the party or parties producing the Protected Documents do not timely file a motion for protective order, then the Protected Documents in dispute shall no longer be subject to confidential treatment as provided in this Order. All Protected Documents are entitled to confidential treatment pursuant to the terms of this Order until and unless the parties formally agree in writing to the contrary, a party fails to timely move for a protective order, or a contrary determination is made by the Court as to whether all or a portion of a Protected Document is entitled to confidential treatment.

4.    Confidential Treatment. Protected Documents and any information contained therein shall not be used or shown, disseminated, copied, or in any way communicated to anyone for any purpose whatsoever, except as provided for below.

5.    Protected Documents and any information contained therein shall be disclosed only to the following persons ("Qualified Persons"):

(a)    Outside counsel of record in this action for the party or party receiving Protected Documents or any information contained therein;

(b)    Employees of such counsel (excluding experts and investigators) assigned to and necessary to assist such counsel in the preparation and trial of this action; and

(c)    The Court.

Protected Documents and any information contained therein shall be used solely for the

3

Appendix A - Protective Order

prosecution of this litigation.

6.  Outside counsel of record for the party or parties receiving Protected Documents may create an index of the Protected Documents and furnish it to attorneys of record representing or having represented parties involved in litigation involving the claims alleged in this suit against the party or parties disclosing or producing the Protected Documents. The index may only identify the document, date, author, and general subject matter of any Protected Document, but may not reveal the substance of any such document. Counsel for the party or parties receiving Protected Documents shall maintain a current log of the names and addresses of persons to whom the index was furnished.

7.  The term "copy" as used herein means any photographic, mechanical or computerized copy or reproduction of any document or thing, or any verbatim transcript, in whole or in part, of such document or thing.

8.  To the extent that Protected Documents or information contained therein are used in depositions, at hearings, or at trial, such documents or information shall remain subject to the provisions of this Order, along with the transcript pages of the deposition testimony and/or trial testimony referring to the Protected Documents or information contained therein.

9.  Any court reporter or transcriber who reports or transcribes testimony in this action shall agree that all "confidential" information designated as such under this Order shall remain "confidential" and shall not be disclosed by them, except pursuant to the terms of this Order, and that any notes or transcriptions of such testimony (and any accompanying exhibits) will be retained by the reporter or delivered to counsel of record.

4

Appendix A - Protective Order

10.    Inadvertent or unintentional production of documents or information containing Confidential Information which are not designated "confidential" shall not be deemed a waiver in whole or in part of a claim for confidential treatment.

11.    The party or parties receiving Protected Documents shall not under any circumstances sell, offer for sale, advertise, or publicize Protected Documents or any information contained therein.

12.    After termination of this litigation, the provisions of this Order shall continue to be binding, except with respect to those documents and information that become a matter of public record.  This Court retains and shall have continuing jurisdiction over the parties and recipients of the Protected Documents for enforcement of the provisions of this Order following termination of this litigation.

13.    Upon termination of this action by dismissal, judgment, or settlement, counsel for the party or parties receiving Protected Documents shall return the Protected Documents to the counsel for the party or parties disclosing or producing the Protected Documents.  The party or parties receiving the Protected Documents shall keep their attorney work product which refers or relates to any Protected Documents.  Attorney work product may be used in subsequent litigation provided that such use does not disclose Protected Documents or any information contained therein.

14.    This Order shall be binding upon the parties and their attorneys, successors, executors, personal representatives, administrators, heirs, legal representatives, assigns, subsidiaries,

5

Appendix A - Protective Order

divisions, employees, agents, independent contractors, or other persons or organizations over which they have control.

15.    The Court anticipates that the parties may file a motion to modify the terms hereof with respect to the sharing of Protected Documents with experts and consultants; shifting the cost burden of production equitably; and other terms that may be reasonably required to protect a party as provided in Rule 26(b) or (c) of the Federal Rules of Civil Procedure.

So ORDERED AND SIGNED this _28_ day of August, 2006.

_____
Ron Clark, United States District Judge

Appendix A - Protective Order

# APPENDIX B - CONTESTED MOTION PRACTICE

It is the court's goal to decide all motions in this case within eight weeks of the date they are ripe for consideration and decision under Local Rule CV-7. If you have not received a decision on a motion within nine weeks after the filing of the last response or reply permitted under Local Rule CV-7, you may call the court's Chief of Staff, Ms. V. J. Wisenbaker, at 409 654-2800, to determine the status of the motion.

The court's docket is growing and numerous motions must be considered every month. Accordingly, to assist the court in attaining the goal of resolving motions within eight weeks after they are ripe for decision (and to make it easier for the court to understand your position), counsel and parties shall comply with the following motion practice requirements in addition to the Federal Rules of Civil Procedure and Local Rules CV-7, CV-10, CV-11, and for motions for summary judgement, Local Rule CV-56.

1.    Format

All parties are required to comply with the E.D. Tex. electronic filing system. Parties are **REQUIRED** to send courtesy copies of documents over five pages. Make it easy for the Court to follow and understand your motion or response. Local Rule CV-7 requires you to attach affidavits and other supporting documents to the motion or response, and to highlight in the Court's copy, the portions which are cited in your motion or response. If there are more than two attachments, labeled tabs on the Court's copy will make it easier to find them. If the motion and attachments exceed 20 pages, consider spiral binding the Court's copy to make it easier to read.

2.    Summary of case (Optional)

Counsel should begin a motion or response with a short (1-3 paragraphs) summary of the basis of the motion or response. A good summary will quickly let the law clerks and the judge know what your case and the motion is about.

3.    Undisputed Material Facts (Required of Movant)

The movant shall list the undisputed facts upon which it relies to demonstrate that it is entitled to the relief requested. The list should contain only the facts which the movant contends are material[1] to the facts presented; true; and not in genuine dispute. Each such fact shall be set out in a separately numbered sentence and shall contain the specific reference to the evidentiary record which the movant

---

[1] A material fact" is one that might affect the outcome of the issue in dispute. The fact must be critical to the determination of the issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed 2d 202, 106 S. Ct. 2505 (1986). If you feel that background facts might be helpful to put the case in context, include them in narrative form (with citations to the evidence) in a section entitled "Background Facts-Not Material to Argument." Non-movant may, but is not required to, respond to these facts, and may include other background facts in a section with the same heading..

App. B, Patent Cases - Contested Motion Practice

claims supports it. Follow Local Rule CV-7(b) when attaching affidavits and other evidence, especially with regard to **highlighting the key references** in the copy provided to the court. The court is not going to search the record for facts which support your motion or response.

Counsel shall state the facts in clear and unambiguous, simple, declarative sentences. Color words, argument, and subtle inferences **will** be reserved for the argument portion of the motion. Each fact must be supported by a citation to the evidence on file. Conclusory allegations and unsubstantiated assertions in an affidavit are not evidence. *See Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075 (5th Cir. 1995)

4.    Response to List of Undisputed Material Facts (Required of Opposing Party)

Each opposing party's response shall include a response to the movant's claimed undisputed material facts. Remember that the purpose of the response is to focus the court's attention on the critical disputes over material facts. (*See* footnote 1)

The response to the movant's list of undisputed material facts shall be designated as such, and when responding to a motion for summary judgement shall take the place of the "Statement of Genuine Issues" required by Local Rule CV-56(b). The response shall contain a specific numbered reply to each numbered sentence in the movant's list of claimed undisputed facts. The reply shall be: the single word "undisputed"; the single word "disputed," followed by a specific reference to the evidentiary record; or a short explanatory phrase such as "undisputed but not material," or "undisputed but context clarified in sentence _____ below."[2]

Alternatively, the nonmoving party may demonstrate as to a particular fact listed by movant that additional discovery is needed to controvert such fact, pursuant to Rule 46 (f). The party must state exactly what discovery is needed, and from whom, and when the party proposes to complete such discovery. Anticipated evidence must be clearly delineated. A request for a fishing expedition in the hope that something may be obtained will not be sufficient.

Non-movant may then list any additional material (*See* Footnote 1) facts non-movant claims require denial of the motion. Set out each such fact in a separate sentence with a citation to the evidentiary record. Follow Local Rule CV-7(b) when attaching affidavits and other evidence.

Non-movant shall also state the facts in clear and unambiguous, simple, declarative sentences. Color words, argument, and subtle inferences **will** be reserved for the argument portion of the response. Each fact must be supported by a citation to the evidence on file. Conclusory allegations and unsubstantiated assertions in an affidavit are not evidence. *See Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075 (5th Cir. 1995)

---

[2]The court does not intend to prevent a non-movant from arguing that movant for summary judgment has failed to carry its initial burden under *Celotex Corp. v. Catrett*, 477 U. S. 317 (1986).

2

App. B, Patent Cases - Contested Motion Practice

5.     <u>Issues Presented</u> (Required)

The movant shall clearly set out in a separate section of the motion, "Issues Presented," the precise issues, a favorable finding on which, would entitle the movant to the relief granted. Non-movant does not have to list these issues in the response, but may state other issues, such as affirmative defenses, etc. which would justify denial of the motion even assuming that movant's position on the issues raised by movant is correct.

6.     <u>Argument</u> (Required)

In the "Argument" section of the motion or response, set out the arguments, together with citations to controlling statutes and/or cases which explain why the court should resolve the crucial issue(s) in your client's favor. Citations to controlling U. S. Supreme Court, Federal Circuit, and 5th Circuit cases (Texas Supreme Court when state law controls) are most persuasive. Including a cite to the specific page on which the pronouncement you are relying upon is very helpful. The court is not likely to read long cases (or numbers of cases in a string citation) searching for the holding which supports your argument.

If there is a key statute, or a case directly on point, consider binding it into the back of the Court's copy (**not** in the original you electronically file with the clerk) with a tab labeled "Authorities." This is especially helpful if you are relying upon administrative regulations or out of state statutes . Don't include more than three cases, and don't copy long multi-page statutes or regulations when only a portion is applicable to the case. Highlight the key portions of the case, regulation, or statute so the court can quickly focus on your argument. (While the "Authorities" section should not be attached to the original electronically filed with the clerk, a copy must be served on opposing counsel.)

3

App. B, Patent Cases - Contested Motion Practice

# Proposed Deadlines

Parties are directed to discuss the proposed deadlines in conjunction with the E.D. Tex. Patent Rules.

| | |
|---|---|
| **5 weeks after Mgmt Conf.** | Join Additional Parties |
| **To be discussed at Mgmt Conft.** | Mediation to be completed<br>If the parties agree that mediation is an option, the Court will appoint a mediator or the parties will mutually agree upon a mediator. If the parties choose the mediator, they are to inform the Court by letter the name and address of the mediator. |
| **7 weeks after Mgmt Conf.** | Privilege Logs to be exchanged by parties<br>(or a letter to the Court stating that there are no disputes as to claims of privileged documents). |
| **7 weeks after Mgmt Conf.** | To extent not already required to be disclosed, exchange Mandatory Disclosures. |
| _____ | P.R. 3-3 Preliminary Invalidity Contentions (and P.R. 3-4 document production) to be served |
| _____ | Parties to exchange proposed terms and claim elements for construction (P.R. 4-1). |
| _____ | Parties to exchange preliminary proposed claim construction and extrinsic evidence supporting same (P.R. 4-2). |
| **13 weeks after Mgmt Conf.** | Plaintiff's Final Amended Pleadings<br>**(It is not necessary to file a Motion for Leave to Amend before the deadline to amend pleadings except to the extent the amendment seeks to add a new patent in suit).** |
| _____ | Joint Claim Construction and Prehearing Statement to be filed (P.R. 4-3). Provide an estimate of how many pages are needed to brief the disputed claims. |
| **16 weeks after Mgmt Conf.** | Respond to Amended Pleadings |
| _____ | Completion date for discovery on claim construction (P.R. 4-4). |

Appendix C - Proposed Deadlines

| | |
|---|---|
| _____ | Opening claim construction brief (P.R. 4-5(a)). |
| _____ | Responsive claim construction brief (P.R. 4-5(b)). |
| _____ | Reply claim construction brief (P.R. 4-5(c)). |
| **2 weeks before claim construction hearing** | Parties to file joint claim construction and chart (P.R. 4-5(d)). Parties shall work together to agree on as many claim terms as possible. |
| **2 weeks before claim construction hearing** | Submit technology synopsis (both hard copy and disk). |
| **2 days before claim construction hearing** | Possible tutorial |
| **August 29, 2007 at 10:00 a.m.** | Claim construction hearing |
| **3 weeks after claim construction hearing** | Provide Initial Mandatory Disclosures of information directed solely to damages. Deadline for Initial Mandatory Disclosure of all persons, documents, data compilations and tangible things, which are relevant to a claim or defense of any party and which has not previously been disclosed. This deadline is not an extension of earlier deadlines set out in this court's order or the Patent Rules, nor an excuse to delay disclosure of information. It is a "catchall" deadline for provision of all remaining information which may be relevant to a claim or defense of any party at trial. |
| **8 weeks after claim construction hearing** | Plaintiff to Designate Expert Witnesses other than claims construction experts and provide their expert witness report, to include for ALL experts all information set out in Rule 26(2)(B). |
| _____ | Comply with P.R. 3-8. (Designation of Wilfulness Opinions). |

| | |
|---|---|
| **10 weeks after claim construction hearing** | Defendant to Designate Expert Witnesses other than claims construction experts and provide their expert witness reports, to include for ALL experts all information set out in Rule 26(2)(B). |
| **11 weeks after claim construction hearing** | Designate Rebuttal Expert Witnesses other than claims construction experts and provide rebuttal expert witness reports due, to include for ALL experts all information set out in Rule 26(2)(B). |
| **13 weeks after claim construction hearing** | File Dispositive Motions and any other motions that may require a hearing.   Regardless of how many dispositive motions a party files, each party is limited to a total of sixty pages for such motions. Each individual motion shall comply with Local Rule CV-7. **Responses to motions shall be due in accordance with Local Rule CV-7(e). Note:  Objections to any expert, including Daubert motions, shall be filed within 3 weeks after the expert's Report has been disclosed. Such objections and motions are limited to ten pages each.** |
| **13 weeks after claim construction hearing** | Discovery Deadline.  All discovery must be served in time to be completed by this date. |
| **5 weeks before docket call** | Notice of intent to offer certified records |
| **5 weeks before docket call** | Counsel and unrepresented parties are each responsible for contacting opposing counsel and  unrepresented parties to determine how they will prepare the Joint Final Pretrial Order (*See* Local Rule CV-16(b) and Proposed Jury Instructions and Verdict Form (or Proposed Findings of Fact and Conclusions of Law in nonjury cases). |
| **4 weeks before docket call** | Video Deposition Designation due. Each party who proposes to offer a deposition by video shall serve on all other parties a  disclosure identifying the line and page numbers to be offered.  All other parties will have seven calendar days to serve a response with any objections and requesting cross examination line and page numbers to be included.  Counsel must consult on any objections and only those which can not |

3

be resolved shall be presented to the court.  The party who filed the initial Video Deposition Designation is responsible for preparation of the final edited video in accordance with all parties designations and the court's rulings on objections

**3 weeks before docket call**

Motions in limine due
File Joint Final Pretrial Order.  See Local Rules Appendix D (Obtain form for Exhibit List from District Clerk's Office, or create an Exhibit List form that mirrors the District Clerk's form).  Exchange Exhibits and deliver copies to the court.  At this date, all that is required to be submitted to the court is a hyperlinked exhibit list on disk (2 copies) and no hard copies

**2 weeks before docket call**

Response to motions in limine due
File objections to witnesses,  deposition extracts, and exhibits, listed in pre-trial order.  (This does not extend the deadline to object to expert witnesses).  If numerous objections are filed the court may set a hearing prior to docket call.
File Proposed Jury Instructions/Form of Verdict (or Proposed Findings of Fact and Conclusions of Law).

**February 4, 2008**

Docket call and Final Pretrial at 9:00 a.m.
Date parties should be prepared to try case.  Provide court with two copies of most updated Exhibit list.   Absent agreement of the parties, this should not have exhibits which were not listed in the Final Pre- Order, but may have some deletions depending on rulings on objections.  At this date, the parties should be prepared to give the Deputy Clerk one hard copy of the exhibits.

**February 5, 2008**

9:00 a.m. Jury Selection and Trial

4

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | § § § | |
| Plaintiff, | § § | Civil Action No. 2:06-CV-239 |
| v. | § § | JUDGE RON CLARK |
| TIME WARNER CABLE, INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | § § § § § § § § § | |
| Defendants. | § | |

## ORDER ON DEFENDANTS' MOTION TO TRANSFER
## OR IN THE ALTERNATIVE MOTION TO STAY THE ACTION

Before the court is Defendants' Comcast Cable Communications, LLC, Comcast of

Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP (collectively "Comcast

Defendants") Motion to Transfer to the District of Delaware or, in the Alternative, to Stay the

Action [Doc. # 18]. Defendant Charter Communications, Inc. ("Charter") joined in this motion

[Doc. # 28]. Defendants ask the court to consider a discretionary transfer of venue for the

convenience of the parties and witnesses to the United States District Court for the District of

Delaware, pursuant to 28 U.S.C. § 1404(a). The court finds that a transfer is not warranted in

this case. The court also concludes that the circumstances of this case do not warrant a stay.

### I. Background

Plaintiff USA Video Technology ("USVO") filed suit against the Comcast Defendants,

Charter, Cox Communications, Inc., and Time Warner Cable, Inc. in the Eastern District of

1

Texas, Marshall Division on June 13, 2006.  USVO alleges that the Defendants infringe Claim 1

of U.S. Patent No. 5,130,792 (the ` 792 patent).  This patent involves systems that communicate

video programs to remote locations.  This "video-on-demand" process allows a customer to

obtain a video program whenever a customer requests it.  After suit was filed here, Time Warner

Cable, Inc., the Comcast Defendants, and Cox Communications, Inc. all filed declaratory

judgment actions in Delaware seeking declarations of non-infringement and invalidity of the

claims in the ` 792 patent.

Both sides note that in a case in Federal District Court in Delaware,  involving Plaintiff

and a different defendant, Movielink, the Honorable Kent Jordan, United States District Judge,

construed a term in Claim 1 of the` 792 patent and granted summary judgment for Movielink.

This opinion was recently affirmed by the Federal Circuit Court of Appeals.  Defendants contend

that a transfer to Delaware, or a stay of this case, is appropriate because: (1) Judge Jordan is

familiar with the ` 792 patent and the technology at issue; (2) the related declaratory judgment

actions were filed in Delaware before Judge Jordan; and (3) Delaware is a more convenient

forum than Texas.

## II. Motion to Transfer

The goal of § 1404(a) "is to prevent waste of time, energy, and money and to protect

litigants, witnesses, and the public against unnecessary inconvenience and expense."  *Van Dusen*

*v. Barrack*, 376 U.S. 612, 616, 84 S. Ct. 805, 809 (1964).  The first determination to be made

under Section 1404(a) is whether the claim could have been filed in the judicial district to which

transfer is sought.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004).  If so, the court then

examines the convenience of the parties and the witnesses.  *Id.*  This determination involves

examining several private and public interest factors, none of which are given dispositve weight individually. *Id.* The movant bears the burden of proof in demonstrating that a transfer is warranted. *See Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966).[1]

"The first issue that a district court must address in ruling on a motion to transfer under § 1404(a) is the question of whether the judicial district to which transfer is sought qualifies under the applicable venue statutes as a judicial district where the civil action 'might have been brought.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003). It not disputed that this case could have initially been brought in the District of Delaware. With this threshold issue resolved, the court's analysis turns to the ten factors governing this Circuit's § 1404(a) analysis.

In determining whether an action should be transferred under § 1404(a), the court must consider several private and public interest factors. *In re Volkswagen AG*, 371 F.3d at 203. The private interest factors include: (1) plaintiff's choice of forum; (2) the convenience of parties and witnesses; (3) the place of the alleged wrong; (4) the cost of obtaining the attendance of witnesses and availability of compulsory process; (5) the accessibility and location of sources of proof; and (6) the possibility of delay and prejudice if transfer is granted. *See Dominguez-Cota v. Cooper Tire & Rubber Co.*, 396 F.3d 650, 653 (5th Cir. 2005); 17 James Wm. Moore et al., Moore's Federal Practice § § 111.13, et seq. (3d ed. 1997). The public interest factors consist of (1) the administrative difficulties caused by court congestion; (2) the local interest in adjudicating local disputes; (3) the unfairness of burdening citizens in an unrelated forum with jury duty; and (4) the avoidance of unnecessary problems in conflict of laws. *See Dominguez-Cota*, 396 F.3d at

---

[1]The court notes that the Federal Circuit defers to regional circuit law on procedural issues, including transfer of venue under Section 1404(a). *See Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003).

3

653-54.

## A. Private Interest Factors

      1. Plaintiff's Choice of Forum

   As a general rule, the plaintiff's choice of forum is entitled to substantial deference. *Peteet v. Dow Chemical Co.*, 868 F.2d 1428, 1436 (5th Cir. 1989). However, the significant weight given to a plaintiff's choice of forum is diminished when the plaintiff does not reside in his chosen forum and no operative facts occurred within the forum. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981). Plaintiff's choice of forum alone is neither conclusive nor determinative. *In re Horseshoe Entm't*, 337 F.3d at 434.

   Although its decisions are not binding on the issue of venue transfer, the Federal Circuit has stated that in patent cases courts normally give great weight to the plaintiff's choice of forum. *See Hollyanne Corp. v. TFT, Inc.*, 199 F.3d 1304, 1307 n. 2 (Fed. Cir. 1999). Moreover, patent litigation is quite different from other cases, a fact recognized by the venue statutes which allow for venue either where the defendant resides or where the defendant has committed acts of infringement and has a regular and established place of business. *See* 28 U.S.C. § 1400(b).

   The Comcast Defendants assert that Plaintiff does not maintain a principal place of business or headquarters in Texas, and that Texas lacks any legally relevant factual nexus with the claims in this case. While it is true the parties are headquartered outside of Texas, the complaint states that the Comcast Defendants conduct business in Texas, and that this business involves selling the accused products and services. Defendants bear the burden to rebut these allegations and show that transfer is warranted. *See Time, Inc.,* 366 F.2d at 698. The Comcast Defendants, however, did not present any argument or evidence showing that the accused

4

products and services are not sold in Texas.[2]

Defendants also suggest Plaintiff's choice of forum should be disturbed because Judge Jordan has already construed a term in Claim 1 of the `792 patent, and the three declaratory judgment actions filed by Defendants in Delaware involving the `792 patent are before him. It is undisputed that this action was filed prior to the declaratory judgment actions in Delaware. Under the first-to-file rule, as applied in the Federal Circuit, the forum of the first filed case should be favored absent special circumstances, like considerations of judicial economy and effective disposition of disputes. *See Kahn v. General Motors Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989).

Defendants' arguments for ignoring this rule and for discounting Plaintiff's choice of forum, focus on Judge Jordan's familiarity with the `792 patent and the technology involved in a previous case. The force of Defendants' argument, however, is undercut by the acknowledgment that it is very unlikely Judge Jordan will actually hear this case because he has been nominated to the U.S. Court of Appeals for the Third Circuit. Moreover, only one claim term was actually interpreted by Judge Jordan, and Plaintiff agrees that it is bound by Judge Jordan's interpretation of this term, eliminating the need for construction of it.

Plaintiff also submits that the technology in this case is different than in the case against Movielink. Plaintiff alleges that the accused device here involves transmissions over a digital cable network, which utilizes different equipment than the internet services at issue in the

---

[2]The court notes that it could almost take notice of the accused products and services being marketed and sold in Texas based on the sheer amount of advertising done in Texas by at least some of the Defendants. What is surprising is that nowhere in its motion does Plaintiff mention or provide evidence of this fact.

Movielink case.  Additionally, contrary to Defendants' assertions, the mere fact that Plaintiff

filed a suit in Delaware involving the ` 792 patent does not somehow preclude it from filing later

suits against different defendants in other forums.  Under these circumstances, the court cannot

conclude that the Plaintiff's choice of forum, which is also the forum of the first filed case, is

outweighed by concerns of judicial economy and effective resolution of disputes.  This factor

does not weigh in favor of transfer.

     2. The Convenience of the Parties and Material Witnesses

The convenience of the witnesses is an important factor in deciding whether a case should

be transferred pursuant to § 1404(a).  The moving party bears the burden to specifically identify

key witnesses and outline the substance of their testimony.  *Dupre v. Spanier Marine Corp.*, 810

F.Supp. 823, 825 (S.D.Tex. 1993). Defendants make no reference to key party or non-party

witnesses. Defendants only make the general statement that Delaware is a more convenient

forum for the parties.  The Comcast Defendants are incorporated in Delaware and have their

principal places of business in either Philadelphia or Delaware.  The costs of travel to Texas from

Delaware and Philadelphia are relatively low, and this court regularly allows counsel to

participate telephonically in hearings, other than trials.  Given that Defendants have made no

specific showing of inconvenience for parties or witnesses, the court finds that Defendants have

failed to show that this factor weighs in favor of transfer.

     3. Place of the Alleged Wrong

Plaintiff contends that the infringement is ongoing where the accused devices and

services are sold, which include Texas.  Defendants have produced no evidence to rebut this

statement.  Because the alleged wrongs continue to occur in Texas, this factor does not weigh in

favor of transfer of venue.

      4. The Cost of Obtaining the Attendance of Witnesses and Availability of Compulsory

      Process

      Defendants did not address this factor.  With modern video deposition technology, the

need for many witnesses to travel at all is reduced or eliminated.  This is especially true for

witnesses whose credibility cannot seriously be challenged, even if there is a dispute over the

effect of some technical data they produce, or a witness with background information needed to

establish a basis for more crucial testimony by an expert.  Moreover, there has been no showing

that the availability of compulsory process is an issue.  This factor does not weigh in favor of

transfer.

      5. The Accessibility and Location of Sources of Proof

      Defendants also did not address this factor. Documentary evidence is routinely

transmitted electronically.  There is no suggestion that the documents needed for a hearing or

trial are so voluminous in this case that they cannot be easily transferred, or that they would not

be capable of being stored electronically and transferred in that manner.  This factor does not

weigh in favor of transfer.

      6. The Possibility of Delay and Prejudice if Transfer is Granted

      Defendants filed this motion at the outset of litigation and assert that there would be very

little delay or prejudice if the transfer is granted.  Defendants point to the fact that there are three

suits already pending between the parties in Delaware and that this case would most likely be

consolidated with them, resulting in little to no delay in the proceedings.  Plaintiff states that the

overall time from filing to trial is slightly faster in the Eastern District of Texas than in the

District of Delaware, and so some delay in the resolution of the case may result if this case was transferred. Weighing this delay against the fact this case would most likely be consolidated with other cases in Delaware, the court finds that this factor is neutral.

**B. Public Interest Factors**

  1. Administrative Difficulties Caused by Court Congestion

Defendants failed to produce any evidence showing that the hearing of this case would cause administrative difficulties. It is unlikely there will be any delay or administrative difficulties in this court. The court concludes that this factor does not weigh in favor of transfer.

  2. Local Interest in Adjudicating Local Disputes

Given that some of the alleged actions of infringement occurred in this State, there exists some local interest in adjudicating this dispute. This factor weighs slightly in favor of not transferring the case.

  3. The Unfairness of Burdening Citizens in an Unrelated Forum with Jury Duty

Because the court finds that the citizens of Texas have an interest in adjudicating this suit, it follows that the jury pool in this District will not be unduly burdened in deciding this matter. Consequently, this factor does not weigh in favor of transfer.

  4. The Avoidance of Unnecessary Problems in Conflict of Laws

This factor is not a concern in a patent case where there are no pendent state law claims. This factor does not weigh either for or against transfer.

On balance, neither the "convenience factors" nor the "public interest" factors weigh in favor of transfer. Plaintiff's choice of forum, therefore, will not be disturbed.

8

### III. Motion to Stay

Defendants also move the court to stay this case pending a resolution of the declaratory judgment actions filed in Delaware.  Defendants argue that a stay would avoid parallel litigation, would be in the interest of judicial economy because Judge Jordan is already familiar with the `792 patent, and would avoid the risk of inconsistent rulings related to the `792 patent. The court has the inherent power to control its own docket, including the power to stay proceedings. *Landis v. N. Am. Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 166 (1936).  How to best manage the court's docket "calls for the exercise of judgement, which must weigh competing interests and maintain an even balance."  *Id*. at 254-55, 57 S.Ct. at 166.  "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both."  *Id.* at 255, 57 S.Ct. at 166.

Here, the court must consider that Texas is Plaintiff's choice of forum and that this case was filed in this forum prior to the filings in Delaware.  Defendants are not normally allowed to complicate and multiply proceedings by filing numerous suits in other courts rather than answer in the court in which they are sued.  While Judge Jordan's familiarity with the `792 patent may be a reason to stay this case, Judge Jordan is unlikely to hear the cases involving the `792 patent. Under these circumstances, the court finds that a stay is not appropriate at this time.

### IV. Conclusion

The Comcast Defendants have failed to show that transfer under Section 1404(a) is warranted.  Under the circumstances, the court also will not stay these proceedings.  Defendant Charter did not assert any additional reasons to transfer or stay this case, and so its motion is denied for the reasons stated.

IT IS THEREFORE ORDERED that Defendants' Comcast Cable Communications, LLC,

Comcast of Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP Motion to

Transfer to the District of Delaware or, in the Alternative, to Stay the Action [**Doc. # 18**] is

**DENIED**.

IT IS FURTHER ORDERED that Defendant Charter Communications, Inc.'s Joinder in

the Motion to Transfer [**Doc. # 28**] is **DENIED**.

So **ORDERED** and **SIGNED** this **31** day of **August, 2006.**

_____
Ron Clark, United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

USA VIDEO TECHNOLOGY            )
CORPORATION,                    )
                                )
            Plaintiff(s),        )
                                )
v.                              )
                                )
TIME WARNER INC., COX           )
COMMUNICATIONS, INC., CHARTER   )        Case No. 2-06CV-239-(RC)
COMMUNICATIONS, INC., COMCAST   )
CABLE COMMUNICATIONS, LLC,      )
COMCAST OF RICHARDSON, LP;      )
COMCAST OF PLANO, LP; COMCAST OF )
DALLAS, LP,                     )
                                )
            Defendant(s)         )


**UNOPPOSED MOTION FOR**
**EXTENSION OF TIME TO FILE REPLY**

Defendant Cox Communications, Inc., ("Cox") through counsel, moves the Court for an

extension of time, through and including September 6, 2006, within which to file a reply in

support of it Motion to Dismiss for Lack of Personal Jurisdiction, or in the Alternative, to

Transfer Venue to the District of Delaware.

In support of this request, the undersigned represents the following:

1.      The deadline for filing Defendant's Reply, September 5, 2006, has not yet

expired.

2.      On August 29, 2006, Plaintiff moved for leave to file a Second Amended

Complaint.

3.      In the interest of efficiency, Cox proposes to consolidate its Reply and its

Opposition to Plaintiff's Motion to Amend.

1

4.      Counsel for Cox has conferred with counsel for Plaintiff USA Video Technology Corporation concerning this request, and counsel for Plaintiff has consented and agreed that it will not object to an extension of one day, through and including September 6, 2006.

5.      A proposed Order granting the requested extension of time is filed contemporaneously herewith.

Respectfully submitted this 1st day of September, 2006.

<div style="margin-left: 50%;">

__/s/ Candice C. Decaire__

Candice C. Decaire
Georgia Bar No. 209815
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia  30309
Tel:  404-815-6500
Fax:  404-815-6555

**Attorneys for Defendant Cox Communications, Inc.**

</div>

2

# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | ) ) ) | |
| Plaintiff(s), | ) ) | |
| v. | ) ) | |
| TIME WARNER INC., COX COMMUNICATIONS, INC., CHARTER COMMUNICATIONS, INC., COMCAST CABLE COMMUNICATIONS, LLC, COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | ) ) ) ) ) ) ) ) | Case No. 2-06CV-239-(RC) |
| Defendant(s) | ) | |

## CERTIFICATE OF CONFERENCE

This is to certify that Mitchell G. Stockwell, counsel for Defendant Cox Communications, Inc., has conferred with Edward Goldstein, counsel for Plaintiff, regarding the matters included in this Unopposed Motion for Extension of Time To File Reply  and this motion is UNOPPOSED.

<div align="right">

__/s/Mitchell G. Stockwell_____<br>
Mitchell G. Stockwell

</div>

US2000 9478155.1

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | ) ) ) | |
| Plaintiff(s), | ) ) | |
| v. | ) ) | |
| TIME WARNER INC., COX COMMUNICATIONS, INC., CHARTER COMMUNICATIONS, INC., COMCAST CABLE COMMUNICATIONS, LLC, COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | ) ) ) ) ) ) ) ) ) | Case No. 2-06CV-239-(RC) |
| Defendant(s) | ) | |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a correct copy of the foregoing was served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3) on September 1, 2006. Any other counsel of record will be served by first class U.S. Mail.

  /s/ Candice C. Decaire                    
  Candice C. Decaire

4

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | ) ) ) | |
| Plaintiff(s), | ) ) | |
| v. | ) ) | |
| TIME WARNER INC., COX COMMUNICATIONS, INC., CHARTER COMMUNICATIONS, INC., COMCAST CABLE COMMUNICATIONS, LLC, COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | ) ) ) ) ) ) ) ) | Case No. 2-06CV-239-(RC) |
| Defendant(s) | ) ) | |

## ORDER GRANTING EXTENSION OF TIME

On this day came to be heard Cox Communications, Inc.'s Unopposed Motion for Extension of Time to File Reply in Support of its Motion to Dismiss for Lack of Personal Jurisdiction Or, in the Alternative, To Transfer Venue to the District of Delaware.

The Court hereby GRANTS the motion for a one day extension of time, up to and including September 6, 2006.

_____
U.S. District Court for the Eastern District of Texas

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | § § § | |
| Plaintiff | § § | |
| v | § § | CASE NO. 2:06CV239(DF) |
| TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | § § § § § § § § § | JURY TRIAL DEMANDED |
| Defendants | § | |

**DEFENDANTS' COMCAST CABLE COMMUNICATIONS,
LLC, COMCAST OF RICHARDSON, LP, COMCAST OF PLANO, LP,
COMCAST OF DALLAS LP AND CHARTER COMMUNICATIONS, INC.'S
UNOPPOSED MOTION TO ENLARGE TIME TO ANSWER OR OTHERWISE
RESPOND TO USA VIDEO TECHNOLOGY
CORPORATION'S AMENDED COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

1. Defendants' Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, Comcast of Dallas, LP and Charter Communications, Inc. hereby move the Court to enlarge the time within which Defendants Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, Comcast of Dallas, LP and Charter Communications, Inc. are required to move, answer, or otherwise respond to Plaintiff USA Video Technology Corporation's Amended  Complaint up to

and including October 25, 2006 or thirty (30) days after the Court's ruling on the Motion for Leave regarding the Second Amended Complaint, whichever is earlier.

2.  Good cause exists for the granting of this motion and the motion is made for the reason and on the grounds that the additional time is necessary in order to allow counsel to adequately confer with their clients and respond appropriately to USA Video Technology Corporation's Amended Complaint.

WHEREFORE, Defendants' Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, Comcast of Dallas, LP and Charter Communications, Inc. hereby move the Court to enlarge the time within which Defendants Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, Comcast of Dallas, LP and Charter Communications, Inc. pray respectfully that the time to answer or otherwise move or respond to USA Video Technology Corporation's Original Complaint be enlarged up to and including October 25, 2006 or thirty (30) days after the Court's ruling on the Motion for Leave regarding the Second Amended Complaint, whichever is earlier.

Respectfully submitted,

GILLAM & SMITH, L.L.P.

_____/s/_____
Harry L. "Gil" Gillam, Jr.
Texas State Bar No. 07921800
Melissa R. Smith
Texas State Bar No.  24001351
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, Texas  75670
Telephone:  (903) 934-8450
Facsimile:   (903) 934-9257

**Lead Attorney for Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, Comcast of Dallas, LP and Charter Communications, Inc.**

CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, Comcast of Dallas, LP and Charter Communications, Inc. and counsel for USA Video Technology Corporation conferred and USA Video Technology Corporation does not oppose this motion.

_____/s/_____
Harry L. "Gil" Gillam, Jr.

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 5th day of September, 2006.

\_\_/s/_____
Harry L. "Gil" Gillam, Jr.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | § | |
| | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v | § | CASE NO. 2:06CV239(DF) |
| | § | |
| TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | § | |
| | § | |
| | § | JURY TRIAL DEMANDED |
| | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| Defendants | § | |

**ORDER GRANTING DEFENDANTS' COMCAST CABLE
COMMUNICATIONS, LLC, COMCAST OF RICHARDSON, LP, COMCAST OF
PLANO, LP, COMCAST OF DALLAS LP AND CHARTER
COMMUNICATIONS, INC.'S UNOPPOSED MOTION TO ENLARGE TIME TO
ANSWER OR OTHERWISE RESPOND TO USA VIDEO TECHNOLOGY
CORPORATION'S AMENDED  COMPLAINT**

On this date came on for consideration, Defendants', Comcast Cable

Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, Comcast of

Dallas, LP and Charter Communications, Inc.'s Unopposed Motion to Enlarge Time to

Answer or Otherwise Respond to USA Video Technology Corporations Amended

Complaint, and the Court being of the opinion that same should be GRANTED, it is

therefore,

ORDERED that Defendants', Comcast Cable Communications, LLC, Comcast of

Richardson, LP, Comcast of Plano, LP, Comcast of Dallas, LP and Charter

Communications, Inc. be and hereby are, granted an extension of time within which to

respond to USA Video Technology Corporations Amended Complaint up to and including October 25, 2006 or thirty (30) days after the Court's ruling on the Motion for Leave regarding the Second Amended Complaint, whichever is earlier.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

USA VIDEO TECHNOLOGY §
CORPORATION, §
§
          *Plaintiff*,          §          Civil Action No. 2:6-CV-239
§
v.          §
          §          JUDGE RON CLARK
TIME WARNER, INC.; COX §
COMMUNICATIONS, INC.; CHARTER §
COMMUNICATIONS, INC.; COMCAST §
CABLE COMMUNICATIONS, LLC; §
COMCAST OF RICHARDSON, LP; §
COMCAST OF PLANO, LP; COMCAST OF §
DALLAS, LP, §
          *Defendants*.          §

**ORDER GRANTING EXTENSION OF TIME**

Before the court is Defendant Cox Communications, Inc.'s Unopposed Motion for

Extension of Time to File a Reply [Doc. # 46]. Defendant requests that it be granted an

extension to file a reply to Plaintiff's response to Defendant's Motion to Dismiss for Lack of

Personal Jurisdiction, or in the Alternative, to Transfer Venue to the District of Delaware until

September 6, 2006. Under Local Rule CV-7(f), Defendant's motion is ripe for decision. If a

reply is filed before the court reaches a decision, it will be considered. Defendant may file a

reply on or before September 6, 2006. This extension of time shall not serve as a basis for an

extension for any other deadline.

IT IS THEREFORE ORDERED that Defendant Cox Communications, Inc.'s Unopposed

Motion for Extension of Time to File a Reply [**Doc. # 46**] is **GRANTED IN PART**.

So **ORDERED** and **SIGNED** this **6** day of **September, 2006.**

_Ron Clark_

_____

Ron Clark, United States District Judge

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY<br>CORPORATION,<br><br>            Plaintiff,<br><br>    v.<br><br>TIME WARNER INC.; COX<br>COMMUNICATIONS, INC.; CHARTER<br>COMMUNICATIONS, INC.; COMCAST<br>CABLE COMMUNICATIONS, LLC;<br>COMCAST OF RICHARDSON, LP;<br>COMCAST OF PLANO, LP; COMCAST<br>OF DALLAS, LP,<br><br>            Defendant(s). | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 2:06-CV-239-(RC) |

## COX COMMUNICATIONS, INC.'S CONSOLIDATED
## (1) REPLY IN SUPPORT OF ITS MOTION TO DISMISS
## AND (2) OPPOSITION TO PLAINTIFF'S MOTION TO AMEND

Mitchell G. Stockwell
Leroy M. Toliver
Candice C. Decaire
KILPATRICK STOCKTON LLP
1100 Peachtree Street, N.E.
Suite 2800
Atlanta, Georgia  30309
(404) 815-6500
(404) 815-6555 (Facsimile)

Michael E. Jones
Allen F. Gardner
POTTER MINTON
A Professional Corporation
110 N. College, Suite 500 (75702)
P.O. Box 359
Tyler, Texas  75710
(903) 597-8311
(903) 593-0846 (Facsimile)

## I.   Introduction

Plaintiff ("U.S. Video") mischaracterizes the arguments advanced in Cox Communications, Inc.'s ("Cox") motion to dismiss for lack of personal jurisdiction.  In addition, Plaintiff improperly seeks to file an untimely, and ultimately futile, amended complaint adding Coxcom, Inc. ("Coxcom") as a party.  Cox should be dismissed from this action and Plaintiff's motion to amend should be denied because neither Cox nor Coxcom are properly subject to this Court's jurisdiction.

First, U.S. Video endeavors to conflate Cox and its affiliates, and never adequately responds to Cox's showing of an absence of minimum contacts.  U.S. Video does not even address the controlling case law Cox cited that holds that contacts of Cox's affiliates may not be used to show personal jurisdiction over Cox absent evidence sufficient to pierce the corporate veil.  Despite this failure, U.S. Video proceeds to cite registrations with the Texas secretary of state of Cox affiliates or "doing business as" registrations by entities that are not even related to Cox.  Such evidence has no bearing on Cox's contacts with Texas and cannot suffice to demonstrate jurisdiction.

Second, U.S. Video's belated effort to replead its allegations and add Coxcom should be rejected as futile and untimely.  U.S. Video's effort to amend has no bearing on whether this Court has jurisdiction over Coxcom's parent, Cox.  In addition, U.S. Video's motion to amend to add Coxcom as a party should be rejected because Coxcom itself does not have sufficient minimum contacts with Texas to confer personal jurisdiction.  Coxcom has never offered video-on-demand services in Texas.  Coxcom sold and transferred its Texas assets to another entity, Cox Southwest Holdings, L.P., which itself has since sold those assets.  Thus, not only are there

1

no Coxcom connections or assets in Texas that suffice for general personal jurisdiction, there also are presently no Cox affiliates with material assets in Texas.

Cox's motion to dismiss or transfer should be granted and Plaintiff's untimely motion to amend to add Coxcom should be denied so that the issue of whether Coxcom's video-on-demand services infringe Plaintiff's '792 patent can be decided in the Delaware suit. [1] Only in Delaware are jurisdiction and venue proper and the Delaware action, filed two months before U.S. Video's untimely attempt to amend, is the vehicle by which the substance of U.S. Video's complaint should be addressed.

II. **Argument**

    A. **U.S. Video Has Neither Demonstrated that Cox Has "Minimum Contacts" With Texas Sufficient to Show General Jurisdiction Nor Otherwise Justified Pursuing its Claims Against Cox in Texas.**

        1. U.S. Video has not pointed to any legally relevant contacts to sustain personal jurisdiction.

Cox's opening motion explained why Cox is not subject to specific personal jurisdiction. U.S. Video's response does not challenge that point, but rather argues that there are sufficient contacts between Cox and Texas to establish the minimum contacts required for general jurisdiction. U.S. Video's response, however, entirely ignores the controlling law Cox cited concerning the nature of the contacts required to sustain general jurisdiction. The Supreme Court has emphasized that the question is not whether "any" contacts exist, but whether the contacts are of a kind necessary to sustain general jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1983) (the inquiry is whether the contacts "constitute the **kind** of **continuous and systematic general business contacts** the Court found to exist in" an earlier case) (emphasis added; citation omitted).

---

[1] *Coxcom, Inc. v. USA Video Technology Corp.*, C.A. No. 1:06-cv-00394 –KAJ (D. Del).

2

Contrary to U.S. Video's claims, exhibits A through C of its Response neither satisfy the governing standard for minimum contacts nor "detail . . . Cox's business dealings with Texas."

First, U.S. Video asserts that because Cox still owns a franchise in Henderson, Texas, it has sufficient contacts for personal jurisdiction. Aside from the fact that property ownership alone does not justify exercising personal jurisdiction (*Shaffer v. Heitner*, 433 U.S. 186, 213-14 (1977)), Cox is the entity U.S. Video sued in this case and Cox does not and has not owned the Henderson franchise. *See* Ex. D, Supplemental Declaration of John Spalding ("Spalding Supp. Dec."), at ¶¶4-5. As Mr. Spalding explains, the Henderson, Texas cable franchise is operated by a third party under a Management Agreement, but is held in the name of Cox Southwest Holdings, L.P., solely because Henderson city would not consent to an outright transfer. *Id*. Such a fact is not the kind of contact to justify haling Cox into a Texas court. *Compare Helicoperos*, 466 U.S. at 417 (holding that the "unilateral activity of another party or third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction").

Second, U.S. Video attempts to make much of the fact that the Henderson franchise operates under a "Cox Communications" name and cites to its exhibit A, a March 10, 2005 press release concerning SORPESA! television programming soon to be available in many states, including Texas, that mentions "Cox Communications." All of these are simply examples of Cox's affiliates using a "Cox Communications" "doing business as" name. Ex. D, ¶7. As explained in Cox's opening brief, courts have uniformly held that an affiliate's use of a parent's name does not subject that parent entity to personal jurisdiction. U.S. Video has not challenged that caselaw because it has no basis for so doing.

3

Likewise, U.S. Video's Response Exhibit B -- concerning various "Texas Fictitious Business Names" records – has nothing whatsoever to do with Cox or Coxcom. The printouts relating to Cablevision of Pflugerville, Cablevision of Leander, Cebridge Telecom TX, and Cable Midland, Inc. clearly show, under "Other Name Information," that "Cox Communications" (or, in the case of Cable Midland, Inc., "Cox Communications West Texas") was an assumed name of these other entities and do not demonstrate any legally relevant connection to Cox or Coxcom. *See* pages 2-12 of Response Exhibit B. The printout at pages 12-13 of Response Exhibit B concerns "Carol Cox Communications," owned by Carol Cox of Houston, Texas, and is not even remotely probative of Texas jurisdictional contacts by Cox or Coxcom. Pages 13 – 15 of Response Exhibit B list various "fictitious" or "doing business as" "Cox Communications" assumed business names, but add nothing to the jurisdictional inquiry (nor does the Nevada UCC record included on page 15). The property record printouts at pages 16-20 of U.S. Video's Response Exhibit B are similarly irrelevant, because they do not show ownership of Texas property by Cox or Coxcom, but rather show that various property owners purported to be divisions of some entity doing business as "Cox Communications."

Mr. Spalding has reviewed the above information and confirms that the listings submitted by U.S. Video are simply "doing business as" entries. Ex. D, ¶¶2-3, 7. As he confirms, Cox has not done business in Texas in the last ten years and the assets that were used in Texas by its affiliates were sold off. *Id.*, ¶5. Cox has no property and no business in Texas.

Finally, the record printouts attached as U.S. Video's Response Exhibit C do not help U.S. Video's cause; to the contrary, they demonstrate that Coxcom does **not** have a Texas presence. Each of the printouts in Exhibit C clearly show under "Other Name Information" that to the extent "Coxcom, Inc." was an "Other Name," it became **<u>inactive</u>** on December 31, 2003,

4

long before this action was filed. The printout at pages 14-15 of Exhibit C, showing data from the Arkansas Secretary of State, is totally irrelevant to the question of Texas jurisdiction.

Even if the actions of Cox's affiliates were relevant to jurisdiction over Cox (they are not, *see infra*), the **only** Cox affiliate that has operated or owned any property in Texas in recent years is Cox Southwest Holdings, L.P. – and Cox Southwest Holdings, L.P. sold its Texas assets pursuant to an Asset Transfer Agreement dated October 31, 2005. Ex. D, ¶5.

> 2.  Cox's status as a defendant in other lawsuits is irrelevant, but in any event U.S. Video fails to present the full picture of those cases.

U.S. Video makes a strange assertion that "Cox has not argued jurisdiction in other Texas lawsuits." Nowhere does U.S. Video explain why this point is relevant to assessing jurisdiction over Cox, despite the controlling law Cox cited that requires courts to assess the alleged contacts to determine whether they are of the type necessary to sustain general jurisdiction. Legally, U.S. Video's argument is wholly irrelevant because each of the lawsuits U.S. Video cites involve situations where Cox was a defendant – in other words, every suit involved "unilateral activity of another party" – the plaintiff -- rather than a choice by Cox to avail itself of this State's laws and protections. *Helicoperos*, 466 U.S. at 417. Such choices by other parties cannot sustain jurisdiction over Cox.

Even setting aside that issue, U.S. Video's further attempts to fog the relevant issues by citing to other lawsuits filed in Texas against Cox or its affiliate Coxcom fail to present the whole story. Plaintiff in the *Rembrandt Technologies* matter has agreed voluntarily to dismiss Cox -- because it recognizes that Cox is not a proper defendant -- and Coxcom has not yet been required to answer or respond to that complaint. *See* Ex. E. Similarly, Plaintiffs in the *Forgent Networks* matters voluntarily dismissed Cox, because Cox has no Texas presence. *See* Ex. F (attaching Notices of Voluntary Dismissal). As to the presence of Coxcom in the *Forgent*

5

*Networks* suit, that matter is being defended by Coxcom's suppliers (Motorola and Scientific Atlanta), who are defending and indemnifying Coxcom. They control the defense of the suit and chose to litigate the *Forgent Networks* matter in Texas because that is where their other customers were sued. Ex. G, at 2-4. Under the circumstances, these other lawsuits do not show that Cox or Coxcom have sought to avail themselves of Texas's laws and courts and thus do not help U.S. Video meet its burden of showing jurisdiction over either Cox or Coxcom.

      3.     Overall, U.S. Video has not shown the assertion of jurisdiction over Cox, as opposed to dismissal or transfer to Delaware, would comport with "fair play" or achieve "substantial justice."

Cox does not believe that U.S. Video has come close to showing the type and amount of minimum contacts sufficient to justify exercising jurisdiction over Cox. Even more, U.S. Video has not justified that litigation in this forum against Cox would "comport with 'fair play and substantial justice.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) (even where "it has been established that a defendant purposefully established minimum contacts within the forum State," the court must consider the contacts "in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'"). Other factors to consider in evaluating whether "fair play and substantial justice" are served by exercising jurisdiction include "the burden on the defendant"; "the forum State's interest in adjudicating the dispute"; "the plaintiff's interest in obtaining convenient and effective relief"; and "the interstate judicial system's interest in obtaining the most efficient resolution of controversies." *Id.* at 477 (citations omitted).

Because any contacts between Cox and Texas shade toward the "none" side of a "slim to none" equation, *Burger King's* emphasis on examining "fair play and substantial justice"

strongly favors dismissal of this case or, at minimum, transfer to Delaware. Moreover, the relevant "other factors" also favor dismissal or at least transfer.

Transfer may be appropriate because venue in Texas cannot be sustained where Cox has insufficient contacts with Texas. *See* 28 U.S.C. §§ 1391, 1400 (venue is proper where defendant is subject to personal jurisdiction, or where defendant has infringed and has a regular, established place of business). The burden to Cox of litigating a case where it has no contacts or ties is self-evident. Likewise, it is evident that Texas has no stake in the outcome of this dispute. Of more import, however, is the fact that Delaware is a jurisdiction that can efficiently resolve U.S. Video's claims with minimal burden to both parties. As noted in Cox's draft scheduling report for the Delaware court (attached as exhibit H, at ¶19), Cox believes an early summary judgment motion premised on Judge Jordan's claim construction is appropriate. U.S. Video's speculation that Judge Jordan may not preside over all proceedings in the District of Delaware because he may be appointed to the Third Circuit Court of Appeals does not obviate the fact that his expertise in dealing with the patent in suit may be sought early in the case so as to avoid burdening the parties with a potentially unnecessary and unwarranted lawsuit. Further, note that Cox proposes trial in the Delaware case for March, 2008, close to the February, 2008 trial date set by this Court's initial schedule. Ex. H, at ¶18. Thus, U.S. Video will achieve the same efficient and timely resolution of its claims in Delaware as before this Court.

Finally, given that U.S. Video has identified only tenuous and legally irrelevant contacts, this Court should simply transfer the matter to Delaware for consolidation with the action filed there by Coxcom, rather than granting U.S. Video's unsupported and unjustified request for

7

jurisdictional discovery.[2]  As explained below, the Delaware action remains the appropriate

vehicle for resolving the parties' disputes – including U.S. Video's core averment that Cox too

should be liable for allegedly trespassing on U.S. Video's patent rights.

**B.      U.S. Video's Effort to Amend the Complaint to Include Coxcom should be
          Rejected as Untimely and Futile.**

U.S. Video attempts to prop up its opposition by mischaracterizing Cox's motion to

dismiss – stating that Cox argues that its affiliate Coxcom provides the allegedly infringing

video-on-demand services and is the proper party to be sued.  That incorrect assertion is the

genesis of U.S. Video's motion to amend.

Cox has previously noted that any motion to amend should not relate back and thus

cannot be used to favor this venue over Coxcom's appropriate and earlier declaratory judgment

action. Cox's Brief, at 10-11.  In addition, however, U.S. Video's motion to amend should be

denied as futile because this Court lacks jurisdiction over Coxcom. *See, e.g., Foman v. Davis*,

371 U.S. 178, 182 (1962); *Overseas Inns S.A.P.A. v. United States*, 911 F.2d 1146, 1150-51 (5th

Cir. 1990).  In the context of a motion for leave to amend, the Fifth Circuit has defined "futility"

to mean that an amended complaint would fail to state a claim for which relief may be granted.

*See Stripling v. Jordan Production Company, LLC*, 234 F.3d 863, 873 (5th Cir. 2000).  Absent

personal jurisdiction over Coxcom, this Court cannot grant relief.

As confirmed in Mr. Spalding's supplemental declaration, Coxcom has insufficient

contacts with Texas to support either general or specific jurisdiction over Coxcom.[3]  As

---

[2] To the extent relevant to U.S Video's action against Cox, contentions concerning the timing of
Coxcom's filing of a declaratory judgment action in Delaware further support transfer.  Coxcom
filed its Declaratory Judgment in Delaware, where jurisdiction and venue are proper as to all
parties, on June 19, 2006.  U.S. Video didn't move to add Coxcom to this action until August 29,
2006.  Coxcom's action is thus the "first filed" action and the appropriate forum in which to
evaluate whether Coxcom's video-on-demand services infringe the '792 patent.

8

explained further below, Coxcom provides neither cable television nor video-on-demand services in Texas (ex. D, ¶3), and the operating company that previously owned Texas cable assets was a different entity that sold those assets in 2005. *Id.*, ¶5. Because U.S. Video cannot show that the Court has personal jurisdiction over Coxcom, it would be futile to allow U.S. Video to amend its complaint.

    1.      U.S. Video has effectively conceded that there is no basis to exercise specific personal jurisdiction over Coxcom.

Despite Cox's opening brief explaining that no Cox entity has ever offered video-on-demand services in Texas, U.S. Video has submitted nothing to rebut that point.[4] Thus, for the reasons explained in Cox's opening brief at 8-9, there is no basis for finding contacts sufficient to establish specific personal jurisdiction over Coxcom.

    2.      U.S. Video has not shown facts sufficient to establish general personal jurisdiction over Coxcom.

As explained in Cox's opening brief at 6-8, finding general jurisdiction requires proof of a heightened level and different type of forum contacts than those needed for specific jurisdiction. U.S. Video's presentation of "facts" sufficient to show jurisdiction over Coxcom is woefully flawed and insufficient to establish jurisdiction. *See* Section A, *supra.* For the reasons noted above, U.S. Video cannot rely on those "facts" to assert a sufficient basis for general jurisdiction over Coxcom.

---

[3] Independently, as explained in Cox's Brief, U.S. Video cannot justify Long Arm service of process on Coxcom. That issue is not entirely ripe since no service has been made, but the same analysis applies and would suggest futility of any amendment.

[4] Contrary to U.S. Video's assertion as to what Cox argued, Cox's opening brief noted only that Coxcom was the entity that operated video-on-demand services – although it does so in other regions of the country. Cox explicitly stated that **neither Cox nor its affiliates provide, nor have provided, video-on-demand services in Texas.** Cox also explained that it had no Texas presence and, even if affiliate contacts were relevant, Cox's affiliates sold their Texas assets. *See* Docket Entry No. 30 ("Cox's opening Brief"), at 2-3, 8; *see also* Spalding Declaration, submitted therewith).

Independently, Coxcom shows through Mr. Spalding's supplemental declaration that it has insufficient contacts with Texas to support general jurisdiction. First, Cox Southwest Holdings, L.P. is the only Cox affiliate that has owned any property in Texas since January 1, 2004. Second, Cox Southwest Holdings, L.P. sold that property pursuant to the October, 2005 agreement. Ex. D. There are thus insufficient substantial and continuous jurisdictional contacts to confer general jurisdiction over Coxcom.

3. U.S. Video's generalized averments about actions of Cox affiliates and other lawsuits do not suffice to show jurisdiction as a matter of law.

As explained in Cox's opening brief, even if the actions of Cox's affiliates were relevant, they would not confer personal jurisdiction over Cox for purposes of this suit. U.S. Video never challenged or addressed caselaw Cox cited showing **its affiliates' actions do not suffice to establish jurisdiction over Cox**. And, none of those actions related to the infringement alleged by U.S. Video because neither Cox nor its affiliates, including Coxcom, have provided video-on-demand services in Texas. Thus, overall, U.S. Video cannot meet its burden of showing facts sufficient for jurisdiction.

## III. Conclusion

Cox's motion to dismiss for lack of personal jurisdiction should be granted. Plaintiff's belated and futile effort to add Coxcom should be denied. In the alternative, Plaintiff's claim against Cox should be severed for transfer to the District of Delaware for consolidation with Coxcom's pending action there.

Respectfully submitted, this 6th day of September 2006.

<u>          /s/ Mitchell G. Stockwell          </u>
Mitchell G. Stockwell

10

US2000 9482841.1

Georgia Bar No. 682912
KILPATRICK STOCKTON LLP
1100 Peachtree St NE
Suite 2800
Atlanta GA  30309-4530
Telephone:  404-815-6214
Facsimile:   404-815-6555

Michael Edwin Jones
POTTER MINTON PC
110 N. College, Suite 500
P.O. Box 359
Tyler, TX  75710-0359
Telephone:  903-597-8311
Facsimile:  903-593-0846

**Attorneys for Cox Communications, Inc.**

11

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | ) ) ) |
| Plaintiff(s), | ) ) |
| v. | ) ) ) |
| TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | ) ) ) ) ) ) ) ) |
| Defendant(s). | ) ) ) |

Case No. 2:06-CV-239-(RC)

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a correct copy of the foregoing was served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3) on September 6, 2006.  Any other counsel of record will be served by first class U.S. Mail.

/s/ Mitchell G. Stockwell

# Exhibit D

UNITED STATES DISTRICT COURT
FOR THE FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

USA VIDEO TECHNOLOGY                )
CORPORATION,                        )
                                    )
            Plaintiff(s),           )
                                    )
      v.                            )
                                    )
TIME WARNER INC.; COX               )
COMMUNICATIONS, INC.; CHARTER       )   Case No.: 2-06CV-239 (RC)
COMMUNICATIONS, INC.; COMCAST       )
CABLE COMMUNICATIONS, LLC;          )
COMCAST OF RICHARDSON, LP;          )
COMCAST OF PLANO, LP; COMCAST OF    )
DALLAS, LP,                         )
                                    )
            Defendant(s).           )
                                    )
                                    )
                                    )
_____   )

## SUPPLEMENTAL DECLARATION OF JOHN SPALDING

1.      I, John Spalding, am employed by Cox Communications, Inc., as Vice President,

Government Affairs. My responsibilities include oversight of mergers and acquisitions and

corporate records with respect to Cox Communications, Inc. and its affiliates / subsidiaries.

2.      Cox Communications, Inc. was incorporated in Delaware, has its principal place of

business in Atlanta, Georgia, and does not do business in Texas. Indeed, for at least the past ten

years, Cox Communications, Inc. has not done business in Texas. Cox Communications, Inc.

has no assets in Texas. Cox Communications, Inc. does not provide, and for at least the past ten

years has not provided, cable television services or "video-on-demand" services in Texas.

3.    Cox Communications, Inc.'s affiliate / subsidiary CoxCom, Inc. does not do business in Texas and has no assets in Texas. CoxCom, Inc. does not provide cable television services or "video-on-demand" services in Texas.

4.    As of December 31, 2003 / January 1, 2004, Cox Southwest Holdings, L.P. assumed ownership of all of the assets of any of Cox Communications, Inc.'s affiliates / subsidiaries that then owned assets in Texas.

5.    Cox Southwest Holdings, L.P. sold all of its Texas assets under an Asset Transfer Agreement dated October 31, 2005. The sale closed on May 5, 2006. The sole exception to the sale was the Henderson, Texas cable television franchise, which is under third party management pursuant to a Management Agreement dated May 5, 2006. Cox Southwest Holdings, L.P. was not able to transfer the Henderson franchise, which expires in 2007, solely because the Henderson city government withheld its consent to the transfer.

6.    None of the affiliates / subsidiaries of Cox Communications, Inc. have ever provided "video-on-demand" services in Texas.

7.    I have reviewed the records attached to Plaintiff's Response to Cox Communications, Inc.'s Motion to Dismiss. Those records do not relate to Cox Communications, Inc., but rather to various entities "doing business as" "Cox Communications" and, in at least one case, to an entity that is completely unrelated to Cox Communications, Inc. or any of its affiliates / subsidiaries. I note also that Plaintiff attached at least one record pertaining to Arkansas, rather than Texas.

2

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on September 6, 2006.


_____
John Spalding

# Exhibit E

# Reed, Jan

| | |
|---|---|
| **From:** | Reed, Jan |
| **Sent:** | Thursday, August 31, 2006 2:41 PM |
| **To:** | 'jcarter@McKoolSmith.com' |
| **Subject:** | RE: Notice of Voluntary Dismissal.DOC |

Thanks Jeff!

> **From:** jcarter@McKoolSmith.com [mailto:jcarter@McKoolSmith.com]
> **Sent:** Thursday, August 31, 2006 11:33 AM
> **To:** Reed, Jan
> **Cc:** Stockwell, Mitch; Decaire, Candice; Toliver, Buddy
> **Subject:** RE: Notice of Voluntary Dismissal.DOC
>
> Jan,
>
> The motion to dismiss is fine.   Although not necessarily required by Rule 41(a)(1), In the past, the court has requested a proposed order.  I have enclosed such an order for your consideration.  Thank you for your help.
>
> Jeff
>
>
>
> -----Original Message-----
> **From:** Reed, Jan [mailto:JReed@kilpatrickstockton.com]
> **Sent:** Wednesday, August 30, 2006 10:57 AM
> **To:** Jeff Carter
> **Cc:** Stockwell, Mitch; Decaire, Candice; Toliver, Buddy
> **Subject:** Notice of Voluntary Dismissal.DOC
>
>> Mr. Carter,
>>
>> Mitch Stockwell asked me to forward the attached Notice of Voluntary Dismissal to you.
>>
>> Thanks,
>>
>> Jan Reed



KILPATRICK
STOCKTON LLP
Attorneys at Law

Jan E. Reed, Paralegal
Kilpatrick Stockton LLP

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES, LP | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 2-06CV-223 LED** |
| | ) | |
| CHARTER COMMUNICATIONS, INC., | ) | |
| CHARTER COMMUNICATIONS | ) | |
| OPERATING, LLC, COX | ) | |
| COMMUNICATIONS, INC., COXCOM, | ) | |
| INC., COX ENTERPRISES, INC., CSC | ) | |
| HOLDINGS, INC., and CABLEVISION | ) | |
| SYSTEMS CORPORATION | ) | |
| | ) | |

## NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE, PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 41(a)(1)

Pursuant to Federal Rule of Civil Procedure 41(a)(1), Plaintiff voluntarily dismisses without prejudice its allegations against Defendants Cox Enterprises, Inc. and Cox Communications, Inc.

Respectfully submitted, this 29th day of August, 2006.

| | |
|---|---|
| Jeffrey A. Carter | Mitchell G. Stockwell |
| McKool Smith-Dallas | Lead Attorney |
| 300 Crescent Court | Georgia Bar No. 682912 |
| Suite 1500 | Candice C. Decaire |
| Dallas TX 75201 214/978-4006 | Georgia Bar No. 209815 |
| Fax: 214-978-4044 | KILPATRICK STOCKTON LLP |
| | 1100 Peachtree St NE |
| **Attorneys for Plaintiff** | Suite 2800 |
| **Rembrandt Technologies, LP** | Atlanta GA 30309-4530 |
| | Telephone: 404-815-6214 |
| | Facsimile: 404-815-6555 |

US2000 9471344.1

Robert M. Parker
State Bar #15498000
Robert C. Bunt
State Bar #00787165
PARKER & BUNT P.C.
100 E. Ferguson, Suite 1114
Tyler, Texas 75702
Tel: 903-533-9288
Fax: 903-533-9687
**Attorneys for Plaintiff**
**Rembrandt Technologies, LP**

Michael Edwin Jones
POTTER MINTON PC
110 N. College, Suite 500
P.O. Box 359
Tyler, TX 75710-0359
Telephone: 903-597-8311
Facsimile: 903-593-0846
**Attorneys for Cox Communications, Inc.,**
**Coxcom, Inc., and Cox Enterprises, Inc.**

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| REMBRANDT TECHNOLOGIES,, LP | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2-06CV-223 LED |
| | ) | |
| v. | ) | |
| | ) | |
| CHARTER COMMUNICATIONS, INC., | ) | |
| CHARTER COMMUNICATIONS | ) | |
| OPERATING, LLC, COX | ) | |
| COMMUNICATIONS, INC., COXCOM, | ) | |
| INC., COX ENTERPRISES, INC., CSC | ) | |
| HOLDINGS, INC., and CABLEVISION | ) | |
| SYSTEMS CORPORATION | ) | |

## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of this **NOTICE OF VOLUNTARY DISMISSAL**

**WITHOUT PREJUDICE, PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE**

**41(A)(1)** was filed electronically in compliance with Local Rule CV-5(a) and

contemporaneously served upon all counsel who have consented to electronic service.  Other

counsel shall be served by first class mail.

---

Candice Decaire

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **REMBRANDT TECHNOLOGIES, LP,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| vs. | § | **Case No. 2:06-CV-223 LED** |
| | § | |
| **CHARTER COMMUNICATIONS, INC.;** | § | |
| **CHARTER COMMUNICATIONS OPERATING,** | § | |
| **LLC; COX COMMUNICATIONS, INC.;** | § | **JURY TRIAL REQUESTED** |
| **COX ENTERPRISES, INC.; COXCOM, INC.;** | § | |
| **CSC HOLDINGS, INC. and CABLEVISION** | § | |
| **SYSTEMS CORPORATION,** | § | |
| | § | |
| **Defendants.** | § | |

**ORDER**
**DISMISSING WITHOUT PREJUDICE DEFENDANTS**
**COX ENTERPRISES INC. AND COX COMMUNICATIONS, INC.**

Plaintiff Rembrandt Technologies, LP ("Rembrandt") filed a "Notice of Voluntary Dismissal Without Prejudice, Pursuant to Federal Rule of Civil Procedure 41(a)(1)" to dismiss Defendants Cox Enterprises, Inc. and Cox Communications, Inc. from this action. After considering the Notice and finding that neither Cox Enterprises, Inc. nor Cox Communications, Inc., has filed an answer or a motion for summary judgment in this action, the Court hereby dismisses, without prejudice, the allegations against Cox Enterprises, Inc. and Cox Communications, Inc.

# Exhibit F

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **FORGENT NETWORKS, INC.** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **ECHOSTAR COMMUNICATIONS** | § | |
| **CORPORATION, ECHOSTAR DBS** | § | |
| **CORPORATION, ECHOSTAR** | § | |
| **TECHNOLOGIES CORPORATION,** | § | **C.A. NO.: 2-05CV-318 (LED)** |
| **ECHOSPHERE LIMITED LIABILITY** | § | |
| **COMPANY, DIRECTV GROUP, INC.,** | § | |
| **DIRECTV, INC., DIRECTV** | § | |
| **ENTERPRISES, LLC, DIRECTV** | § | **JURY TRIAL DEMANDED** |
| **OPERATIONS, LLC, CHARTER** | § | |
| **COMMUNICATIONS, INC., COX** | § | |
| **COMMUNICATIONS, INC. COXCOM,** | § | |
| **INC., COMCAST CORPORATION,** | § | |
| **COMCAST STB SOFTWARE DVR, LLC,** | § | |
| **TIME WARNER CABLE, INC., and** | § | |
| **CABLE ONE, INC.** | § | |
| **Defendants.** | § | |

## NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE
## OF DEFENDANT COX COMMUNICATIONS, INC

Based on the representation presented by John P. Spalding (see attached Exhibit

A), Plaintiff Forgent Networks, Inc. hereby voluntarily dismisses without prejudice Defendant

Cox Communications, Inc. from this lawsuit pursuant to Rule 41(a)(1) of the Federal Rules of

Civil Procedure.  Because Cox Communications, Inc. has not yet filed an answer or motion for

summary judgment in this action, Rule 41(a)(1) allows this voluntary dismissal without further

action of the Court.

HOPRIMARY 190623v1

Date: _____ 9/1/05

Respectfully submitted,

Gregory M. Luck
Michael T. McLemore
Thomas W. Sankey
GODWIN GRUBER LLP
5 Houston Center
1401 McKinney Street, Suite 2700
Houston, TX 77010
(713) 425-7400 - Telephone
(713) 425-7700 - Facsimile

Carl R. Roth
The Roth Law Firm, P.C.
115 North Wellington, Suite 200
P. O. Box 876
Marshall, Texas 75671
Telephone: (903) 935-1664
Facsimile: (903) 935-1797

COUNSEL FOR PLAINTIFF
FORGENT NETWORKS, INC.

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **FORGENT NETWORKS, INC.** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **ECHOSTAR COMMUNICATIONS** | § | |
| **CORPORATION, ECHOSTAR DBS** | § | |
| **CORPORATION, ECHOSTAR** | § | |
| **TECHNOLOGIES CORPORATION,** | § | **C.A. NO.: 2-05CV-318 (LED)** |
| **ECHOSPHERE LIMITED LIABILITY** | § | |
| **COMPANY, DIRECTV GROUP, INC.,** | § | |
| **DIRECTV, INC., DIRECTV** | § | |
| **ENTERPRISES, LLC, DIRECTV** | § | **JURY TRIAL DEMANDED** |
| **OPERATIONS, LLC, CHARTER** | § | |
| **COMMUNICATIONS, INC., COX** | § | |
| **COMMUNICATIONS, INC. COXCOM,** | § | |
| **INC., COMCAST CORPORATION,** | § | |
| **COMCAST STB SOFTWARE DVR, LLC,** | § | |
| **TIME WARNER CABLE, INC., and** | § | |
| **CABLE ONE, INC.** | § | |
| **Defendants.** | § | |

**NOTICE OF VOLUNTARY DISMISSAL WITHOUT PREJUDICE**
**OF DEFENDANT COX COMMUNICATIONS, INC**

Based on the representation presented by John P. Spalding (see attached Exhibit

A), Plaintiff Forgent Networks, Inc. hereby voluntarily dismisses without prejudice Defendant

Cox Communications, Inc. from this lawsuit pursuant to Rule 41(a)(1) of the Federal Rules of

Civil Procedure. Because Cox Communications, Inc. has not yet filed an answer or motion for

summary judgment in this action, Rule 41(a)(1) allows this voluntary dismissal without further

action of the Court.

HOPRIMARY 190623v1

Date: _____ 9/1/05

Respectfully submitted,

Gregory M. Luck
Michael T. McLemore
Thomas W. Sankey
GODWIN GRUBER LLP
5 Houston Center
1401 McKinney Street, Suite 2700
Houston, TX 77010
(713) 425-7400 - Telephone
(713) 425-7700 - Facsimile

Carl R. Roth
The Roth Law Firm, P.C.
115 North Wellington, Suite 200
P. O. Box 876
Marshall, Texas 75671
Telephone: (903) 935-1664
Facsimile: (903) 935-1797

COUNSEL FOR PLAINTIFF
FORGENT NETWORKS, INC.

2

# Exhibit G

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

FORGENT NETWORKS, INC.

    Plaintiff,

    v.

ECHOSTAR COMMUNICATIONS
CORP., et al.

    Defendants.

No. 2:05-cv-00318 LED

**MOTION TO COORDINATE PRETRIAL PROCEEDINGS WITH**
***SCIENTIFIC-ATLANTA, INC. ET AL. v. FORGENT NETWORKS, INC.,***
**No. 6:05-cv-00343**
**BY DEFENDANTS COXCOM, INC.; COMCAST CORPORATION;**
**COMCAST STB SOFTWARE DVR, LLC; TIME WARNER CABLE INC.;**
**AND CABLE ONE, INC. AND MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................ 1

STATEMENT OF FACTS ........................................................................... 2

ARGUMENT ............................................................................................... 4

    I.    THE DECLARATORY JUDGMENT ACTION AND THE PRESENT
    ACTION SHOULD BE COORDINATED AS TO PRETRIAL
    PROCEEDINGS. .................................................................................4

    II.   THE CUSTOMER-SUIT DOCTRINE CALLS FOR FOCUSING
    DISCOVERY AGAINST THE REAL PARTIES IN INTEREST......................5

    III.  TO THE EXTENT POSSIBLE, THE DECLARATORY JUDGMENT
    ACTION SHOULD BE TRIED FIRST. ..................................................7

CONCLUSION............................................................................................. 8

## INTRODUCTION

Defendants CoxCom, Inc.; Comcast Corporation; Comcast STB Software DVR, LLC; Time Warner Cable Inc.; and Cable One, Inc., (collectively, the "Moving Defendants") are accused in this case of infringing a patent alleged to cover digital video recording devices used by subscribers of cable systems.  The Moving Defendants here are covered by indemnity and defense obligations owed by Scientific-Atlanta, Inc. ("S-A") and Motorola, Inc. ("Motorola"), manufacturers of the digital video recording devices.  S-A and Motorola filed last week an action in this District (Tyler Division) seeking a declaratory judgment that the patent in this suit is invalid, not infringed, and not enforceable against S-A, Motorola, or its customers (the "Declaratory Judgment Action").  *Scientific-Atlanta, et al. v. Forgent Networks, Inc.,* 6:05-cv-00343 (E.D. Tex.) (a copy of that complaint is attached hereto as Exhibit A).

Because the Declaratory Judgment Action involves the same accused technology and the same patent present in this case, the Moving Defendants believe it is appropriate for all pretrial proceedings (including discovery, claim construction, and summary judgment, and other pretrial motion proceedings) to be coordinated to eliminate unnecessary duplication of effort by the Court or the parties.  In addition, because S-A and Motorola (collectively, the "Declaratory Judgment Plaintiffs") are providing a defense and indemnity to the Moving Defendants in this case, the Moving Defendants further request that the discovery by Plaintiff Forgent in this case be directed to the Declaratory Judgment Action Plaintiffs in the first instance.  As explained in more detail below, the customer-suit doctrine and the complex indemnity arrangements in the case make such a discovery approach essential to avoid waste and delay.  Finally, to the extent the Declaratory Judgment Action is able to proceed to trial sooner than this case, the

Moving Defendants request that the trial in this case be scheduled after the conclusion of the Declaratory Judgment Action trial.

For these reasons and those set forth in greater detail below, the Moving Defendants hereby respectfully request that the Court enter an order:

(1)    Setting a joint scheduling conference in this matter and the Declaratory Judgment Action;

(2)    Directing that pretrial proceedings, including discovery, claim construction, and summary judgment motions, in this matter and the Declaratory Judgment Action be coordinated and conducted concurrently;

(3)    Directing that Plaintiff Forgent seek discovery from the Declaratory Judgment Action Plaintiffs prior to seeking discovery from the Moving Defendants; and

(4)    Setting this matter for trial, if necessary, after the conclusion of any trial in the Declaratory Judgment Action.

## STATEMENT OF FACTS

On July 14, 2005, Plaintiff Forgent sued satellite broadcasters Echostar and DirecTV (naming various Echostar and DirecTV entities) along with cable system operators Charter Communications, Inc.; Cox Communications, Inc.; CoxCom, Inc.; Comcast Corporation; Comcast STB Software DVR, LLC; Time Warner Cable Inc.; and Cable One, Inc. here in the Marshall Division of Eastern District of Texas.  Forgent claims that the satellite broadcasters and the cable companies infringe U.S. Patent No. 6,285,746 B1, entitled "Computer Controlled Video System Allowing Playback During Recording," (the "'746 Patent").  The Complaint alleges that cable and satellite receiver digital video recording devices sold or leased by the Defendants infringe the '746 Patent.

ATL01/12041062v5

Upon receipt of the Complaint, all of the Moving Defendants sought and received indemnity for the infringement claim from S-A and Motorola, who manufacture digital video recording devices for the Moving Defendants. On September 19, 2005, in response to the litigation initiated against their customers, the Moving Defendants, S-A and Motorola filed the Declaratory Judgment Action against Forgent in the United States District Court for the Eastern District of Texas, Tyler Division. In the Declaratory Judgment Action, S-A and Motorola seek a declaratory judgment that the '746 Patent is invalid, unenforceable, and not infringed by S-A's and Motorola's digital video recording devices, and that Forgent be enjoined from suing S-A, Motorola, and their customers.

S-A and Motorola are manufacturers and suppliers of electronic products, which include digital video recording devices used in the cable industry (Exh. A ¶¶ 2, 3). The Moving Defendants supply audio, video, and data over cable networks. S-A and Motorola supply the Moving Defendants with digital receiving devices, which the Moving Defendants provide in turn to their end user-subscribers (*id.* ¶¶ 13, 14). The digital receivers at issue in this case contain a hard disk that can record and play back audio and video signals received from the cable head end, and it is that feature which is accused of infringement by Forgent.

None of the Moving Defendants manufacture the digital video recording devices. Under the contracts by which the Declaratory Judgment Action Plaintiffs supply the Moving Defendants with the accused products, S-A and Motorola must provide a defense and indemnity to the Moving Defendants with respect to the accused equipment and have the right to control that defense. All but one of the Moving Defendants are supplied by

- 3 -

and indemnified by both Motorola and S-A.[1]  Thus, the Cox, Comcast, and Time Warner Cable Defendants are being supplied with two separate defenses (with two different sets of local counsel and two different sets of lead counsel) by S-A and Motorola.  In addition, the Moving Defendants have retained counsel at their own expense.  Thus, the unusual indemnity situation requires as many as five law firms for a single Moving Defendant.

All Defendants in this case answered Forgent's Complaint on September 19, 2005, the same day that S-A and Motorola filed the Declaratory Judgment Action.  S-A and Motorola did so in order to protect their customers and confront Forgent directly as the real party in interest with respect to this equipment.  The co-pendency of the Declaratory Judgment Action with this proceeding calls for coordination of all pretrial proceedings, as explained below.  In addition, both the procedural posture of this case and the applicable law call for Forgent to direct its discovery demands (with respect to the Moving Defendants) in the first instance to S-A and Motorola.  Similar considerations call for the Court to place the Declaratory Judgment Action ahead of this proceeding for purposes of trial.

## ARGUMENT

I.     **THE DECLARATORY JUDGMENT ACTION AND THE PRESENT ACTION SHOULD BE COORDINATED AS TO PRETRIAL PROCEEDINGS.**

This Court has broad discretion to control pretrial proceedings to make them more efficient and to conserve resources.  *See Union City Barge Line, Inc. v. Union Carbide Corp.*, 823 F.2d 129, 135 (5th Cir. 1987) (district court has broad discretion to control its own docket).  Coordination between this case and the Declaratory Judgment Action is the process that makes the most sense.  Both suits involve the same questions with respect to

---

[1]     Cable One, Inc. is supplied and indemnified solely by Motorola.

ATL01/12041062v5

the Moving Defendants: whether the accused S-A and Motorola devices infringe the '746

Patent, whether the asserted claims are valid, and whether the patent can be enforced by

Forgent.  Without coordination, the parties and the Court would be faced with duplicate

discovery, claim construction, and summary judgment motions on issues common

between the two cases.

In addition, given that both cases are at their early stages, coordination of pretrial

proceedings is particularly appropriate.  The Court can hold a single conference pursuant

to Rule 16(f) of the Federal Rules of Civil Procedure in both cases and set a scheduling

order that provides the same dates for disclosures, discovery cut-off, and the like, for both

proceedings.[2]  To avoid any delay, the Declaratory Judgment Action can accelerate as

necessary to join the schedule for this case (even if that requires holding an earlier

scheduling conference in that case than it might otherwise receive).

## II.      THE CUSTOMER-SUIT DOCTRINE CALLS FOR FOCUSING DISCOVERY AGAINST THE REAL PARTIES IN INTEREST.

When a patent owner elects to sue customers, rather than the manufacturers, of an

accused product, the patent owner often loses the right to proceed with that suit where the

manufacturers file a declaratory judgment action.  "The customer-suit exception allows a

court to stay a first-filed suit against customers when the manufacturer brings a later-filed

declaratory judgment action."  *Ciena Corp. v. Nortel Networks, Inc.*, No. 2:05-CV-14,

2005 WL 1189881, at *9 (E.D. Tex. May 19, 2005) (citing *Katz v. Lear Siegler, Inc.*, 909

F.2d 1459, 1464 (Fed. Cir. 1990) and *Codex Corp. v. Milgo Elec. Corp.*, 553 F.2d 735,

737-38 (1st Cir. 1997)) (a copy of the *Ciena Corp.* case is attached hereto as Exhibit B).

---

[2]      Moving Defendants understand that Judge Davis, the presiding judge in this case, has also been assigned to the Declaratory Judgment Action.  This assignment further facilitates the coordination of pretrial proceedings between the two cases.

"Underlying the customer-suit doctrine is the preference that infringement determinations should be made in suits involving the true defendants in the plaintiff's suit, *i.e.*, the party that controls the product's design, rather than in suits involving secondary parties, *i.e.*, customers." *Ciena Corp.*, 2005 WL 1189881, at *9. Priority is given to the manufacturers' action because of the recognition that the manufacturer, not the customer, is the true party in interest. *Id.* "[I]t is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling . . . ." *Katz*, 909 F.2d at 1464.

The customer suit-doctrine would even justify a complete stay of the case against the Moving Defendants in favor of the Declaratory Judgment Action. S-A and Motorola clearly are the true parties in interest in this litigation because they control the design of the digital video recorders they manufacture and are in the best position to challenge the assertion of the patent against their products.

Even though the relevant authority plainly justifies it, the Moving Defendants do not seek a complete stay of this proceeding. The Moving Defendants recognize the presence of other Defendants who are not provided indemnity or defense by non-parties. The Moving Defendants do believe, however, that neither the Court nor the parties should be put to any unnecessary burdens with respect to discovery in this case. Accordingly, the Moving Defendants ask that Plaintiff Forgent conduct its discovery against S-A and Motorola in the first instance, and seek discovery from the Moving Defendants only when the information cannot reasonably be obtained from S-A or Motorola.

Rule 26 of the Federal Rules of Civil Procedure calls for the Court to limit "the frequency or extent of use of the discovery methods otherwise permitted by these rules"

- 6 -

if the Court "determines that (i) the discovery sought is . . . obtainable from some other source that is more convenient, less burdensome, or less expensive . . . ." Fed. R. Civ. Proc. 26(b)(2). This is just such a case. Most of the witnesses and documents relevant to the issues of validity and infringement are primarily located at the principal places of businesses of the manufacturers. Compared to the Moving Defendants, S-A and Motorola are in a far superior position to address the technical issues raised by this patent. Indeed, S-A and Motorola have deliberately sued Forgent in this District precisely to make sure that their customers are not unduly burdened by unnecessary discovery.

There are obvious instances in which discovery against the Moving Defendants that could be obtained from the Declaratory Judgment Action Plaintiffs would be quite wasteful. For example, if Forgent sought a 30(b)(6) deposition of each of the Moving Defendants on the technology in the digital video recording devices, at least four separate depositions involving six separate law firms would be required.[3] Simply scheduling the depositions would be problematic. Forgent could accomplish essentially the same thing with two depositions, one each of S-A and Motorola. Discovery will be faster, less expensive, and more efficient if Forgent directs its discovery to S-A and Motorola in the first instance.

### III.     TO THE EXTENT POSSIBLE, THE DECLARATORY JUDGMENT ACTION SHOULD BE TRIED FIRST.

S-A and Motorola have no interest in delaying a resolution of this dispute. Indeed, they filed the Declaratory Judgment Action in the division of this Court (Tyler)

---

[3]     The Cox, Comcast, Time Warner Cable, and Cable One companies would each require their own separately hired counsel (four different law firms) plus the counsel supplied each by Motorola and S-A (two law firms).

ATL01/12041062v5

which has more capacity to try cases than the division in Marshall due to the facilities available. Permitting the Declaratory Judgment Action to be set for trial ahead of this proceeding can allow the infringement, validity, and enforceability issues to be addressed sooner than they would otherwise be if the case proceeded in Marshall. The Declaratory Judgment Action is also simpler, having only three parties and focused on the devices manufactured for cable subscribers.[4] At the same time, because the Declaratory Judgment Action raises inequitable conduct issues not pled by either Forgent or the satellite broadcast defendants, the Declaratory Judgment Action is the more comprehensive of the two. Accordingly, the Moving Parties submit that a trial in the Declaratory Judgment Action should proceed ahead of this case.

## CONCLUSION

For the reasons set forth herein, Defendants CoxCom, Inc.; Comcast Corporation; Comcast STB Software DVR, LLC; Time Warner Cable Inc.; and Cable One, Inc., hereby respectfully request that the Court enter an order:

(1) Setting a joint scheduling conference in this matter and the Declaratory Judgment Action;

(2) Directing that pretrial proceedings in this matter and the Declaratory Judgment Action be coordinated and held concurrently, with discovery sought in and applicable equally to both actions;

---

[4]    The cable operators, for example, utilize an entirely different set of suppliers and technology than the Echostar and DirecTV Defendants (collectively, the "Satellite Defendants"), who broadcast their signals via satellite. Accordingly, the requested relief also allows the Moving Defendants an opportunity to have their issues tried in the Declaratory Judgment Action without the involvement of the satellite digital recording devices and the concomitant potential jury confusion.

- 8 -

(3) Directing that Plaintiff Forgent seek discovery from the Declaratory Judgment Action Plaintiffs prior to seeking discovery from the Moving Defendants; and

(4) Setting this matter for trial, if necessary, after the conclusion of any trial in the Declaratory Judgment Action.

Position of the Non-Moving Defendants.  Counsel for the Moving Defendants has conferred with counsel for Defendant Charter and counsel for the Satellite Defendants regarding the relief requested herein. Defendant Charter does not have any objections to the requested relief.  The Satellite Defendants do not object to the proposed coordination of pretrial proceedings and initial focus of discovery as set forth in enumerated items 1-3 above.  With respect to item 4 (the Moving Defendants' request that the Declaratory Judgment Action be tried first), the Satellite Defendants do not support this request and believe it is premature at this time to make a determination regarding the order of trial.

ATL01/12041062v5

Respectfully submitted, this 30th day of September, 2005.

/s/ _____

Deron R. Dacus
State Bar No. 00790553
Ramey & Flock LLP
100 East Ferguson
Suite 500
Tyler, Texas 75702
Phone: 903-597-3301
Fax: 903-597-2413
derond@rameyflock.com

Michael E. Jones
State Bar No. 10929400
POTTER MINTON
A Professional Corporation
110 N. College, Suite 500
Tyler, Texas 75702
Phone: 903.597.8311
Fax: 903.593.0846

ATTORNEYS FOR DEFENDANT
COXCOM, INC.; TIME WARNER CABLE INC.;
COMCAST CORPORATION; AND COMCAST
STB SOFTWARE DVR, LLC.

### IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| FORGENT NETWORKS, INC.<br><br>     Plaintiff,<br><br>       v.<br><br>ECHOSTAR COMMUNICATIONS CORP., et al.<br><br>     Defendants. | No. 2:05-cv-00318 LED |

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed.R.Civ.P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy via email transmission, facsimile and/or U.S. Mail this 30th day of September, 2005.

/s/_____
Deron R. Dacus

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

FORGENT NETWORKS, INC.

     Plaintiff,

       v.

ECHOSTAR COMMUNICATIONS
CORP., et al.

     Defendants.

No. 2:05-cv-00318 LED

## <u>CERTIFICATE OF CONFERENCE</u>

The following certificate is submitted pursuant to Local Rule 7(h).  Counsel for

the Moving Defendants has conferred with Plaintiff's counsel in a good faith attempt to

resolve the matter without court intervention.  Plaintiff's counsel, however, did not agree

to the coordination requested in this motion.  Therefore, this motion is opposed by

Plaintiff's counsel.

/s/ _____
Deron R. Dacus

- 12 -

# Exhibit H

## Stockwell, Mitch

| | |
|---|---|
| **From:** | Stockwell, Mitch |
| **Sent:** | Friday, September 01, 2006 12:35 PM |
| **To:** | Edward W. Goldstein (egoldstein@gfpiplaw.com) |
| **Cc:** | Decaire, Candice |
| **Subject:** | Cox v. USVO |
| **Attachments:** | 9475390_1.pdf |

Ed: I've attached a proposed scheduling order for the Delaware action for your consideration.

On a related note, I would like to file a reply in support of Cox's motion to dismiss and consolidate the reply with our opposition to your motion to amend to add Coxcom. Our reply is presently due next Tuesday. I wonder if you could give us a one day extension to file the consolidated reply/opposition? I'd like to file both of those together since they are obviously linked to the ultimate outcome.



KILPATRICK
STOCKTON LLP

Attorneys at Law

Mitchell G. Stockwell
Kilpatrick Stockton LLP
Suite 2800
1100 Peachtree Street
Atlanta, GA 30309-4530
t 404 815 6214
f 404 541 3403

Confidentiality Notice:
This communication constitutes an electronic communication within the meaning of the Electronic Communications Privacy Act, 18 U.S.C. Section 2510, and its disclosure is strictly limited to the recipient intended by the sender of this message. This transmission, and any attachments, may contain confidential attorney-client privileged information and attorney work product. If you are not the intended recipient, any disclosure, copying, distribution or use of any of the information contained in or attached to this transmission is STRICTLY PROHIBITED. Please contact us immediately by return e-mail or at 404 815 6500, and destroy the original transmission and its attachments without reading or saving in any manner.

WORKING DRAFT DATED 08/31/06

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **COXCOM, INC.** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | C.A. No. 1:06cv00394-KAJ |
| | ) | |
| **USA VIDEO TECHNOLOGY, CORP.** | ) | |
| **Defendant.** | ) | |
| | ) | |
| _____ | ) | |

### [proposed] SCHEDULING ORDER

This ____ day of _____, 2006, the Court having conducted an initial Rule 16 scheduling and planning conference pursuant to Local Rule 16.2(a) on September 14, 2006, and the parties having determined after discussion that the matter cannot be resolved at this juncture by settlement, voluntary mediation, or binding arbitration;

IT IS ORDERED that:

1.      Rule 26(a)(1) Initial Disclosures.  Unless otherwise agreed to by the parties, the parties shall make their initial disclosures pursuant to Federal Rule of Civil Procedure 26(a)(1) within five days of the date of this Order.  If they have not already done so, the parties are to review the Court's Default Standard of Electronic Documents, which is posted at http://www.ded.uscourts.gov (see Orders, etc., Policies & Procedures, Ad Hoc Committee for Electronic Discovery), and is incorporated herein by reference.

2.      Joinder of Other Parties and Amendment of Pleadings.  All motions to join other parties, and to amend or supplement the pleadings shall be filed on or before February 16, 2007.

**DRAFT**

3.    Discovery.

      a.    <u>Limitation on Hours for Deposition Discovery</u>.  Each side is limited to a total of 70 hours of taking fact testimony by deposition upon oral examination.

      b.    <u>Location of Depositions</u>.  Any party or representative (officer, director, or managing agent) of a party filing a civil action in this district court must ordinarily be required, upon request, to submit to a deposition at a place designated within this district.  Exceptions to this general rule may be made by order of the Court.  A defendant who becomes a counterclaimant, cross-claimant, or third-party plaintiff shall be considered as having filed an action in this Court for the purpose of this provision.

      c.    <u>Discovery Cut Off</u>.  All discovery in this case shall be initiated so that it will be completed on or before August 10, 2007.  The Court encourages the parties to serve and respond to contention interrogatories early in the case.  Unless otherwise ordered by the Court, the limitations on discovery set forth in Local Rule 26.1 shall be strictly observed.

      d.    <u>Disclosure of Expert Testimony</u>.   Unless otherwise agreed to by the parties, they shall file their initial Federal Rule of Civil Procedure 26(a)(2) disclosures of expert testimony on issues on which they bear the burden of proof on or before ninety days before the date of the completion of discovery, and file a supplemental disclosure to contradict or rebut evidence on the same subject matter identified by another party sixty days before the date for the completion of discovery.   To the extent any objection to expert testimony is made pursuant to the principles announced in <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993), it shall be made by motion no later than the deadline for dispositive motions set forth herein, unless

**DRAFT**

otherwise ordered by the Court.

   e. <u>Discovery Disputes</u>. Should counsel find they are unable to resolve a discovery dispute, the party seeking the relief shall contact chambers at (302) 573-6001 to schedule a telephone conference.  Not less than forty-eight hours prior to the conference, the party seeking relief shall file with the Court a letter, not to exceed three pages, outlining the issues in dispute and its position on those issues.  (The Court does not seek extensive argument or authorities at this point; it seeks simply a statement of the issue to be addressed and a summary of the basis for the party's position on the issue.)  Not less than twenty-four hours prior to the conference, any party opposing the application for relief may file a letter, not to exceed three pages, outlining that party's reasons for its opposition.  Should the Court find further briefing necessary upon conclusion of the telephone conference, the Court will order it.  Disputes over protective orders are to be addressed in the first instance in accordance with this paragraph.

   4. <u>Application to Court for Protective Order</u>.  Should counsel find it will be necessary to apply to the Court for a protective order specifying terms and conditions for the disclosure of confidential information, counsel should confer and attempt to reach an agreement on a proposed form of order and submit it to the Court within ten days from the date of this Order.  Should counsel be unable to reach an agreement on a proposed form of order, the counsel must first follow the provisions of Paragraph 3(e) above.

   Any proposed order should include the following paragraph:

> <u>Other Proceedings</u>.  By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case.  Any person or party subject to this order who becomes subject to a motion to

**DRAFT**

disclose another party's information designated "confidential" [the parties should list any other level of designation, such as "highly confidential," which may be provided for in the protective order] pursuant to this order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

5.   <u>Papers Filed Under Seal</u>.  When filing papers under seal, counsel should deliver to the Clerk an original and one copy of the papers.

6.   <u>Settlement Conference</u>.  Pursuant to 28 U.S.C. § 636, this matter is referred to the United States Magistrate for the purpose of exploring the possibility of a settlement.

7.   <u>Interim Status Report</u>.  On March 14, 2007, counsel shall submit a letter to the Court with an interim report on the nature of the matters in issue and the progress of discovery to date.

8.   <u>Status Conference</u>.  On March 21, 2007, the Court will hold a Rule 16(a), (b) and (c) conference by telephone with counsel beginning at 4:30 p.m.  Plaintiff's counsel shall initiate the telephone call.

If all parties agree that there is nothing to report, nor anything to add to the interim status report or to this order, they may so notify the Court in writing before the conference is scheduled to occur, and the conference will be taken off the Court's calendar.

9.   <u>Tutorial Describing the Technology and Matters in Issue</u>.  The parties shall provide the Court by August 24, 2007, a tutorial on the technology at issue.  In that regard, each party may submit a videotape of not more than 30 minutes.  The parties may choose to present the tutorial in person.  In either event, the tutorial should focus on the technology in issue and should not be used to argue the parties' claims construction contentions.  If the parties choose to file

- 4 -

**DRAFT**

videotapes, they should be filed under seal as part of the Court's file, subject to any protective order in effect.  Each party may comment, in writing (in no more than 5 pages) on the opposing party's videotape tutorial.  Any such comment shall be filed within ten (10) days of submission of the videotapes.

10.    <u>Case Dispositive Motions</u>.  All case dispositive motions, an opening brief, and affidavits, if any, in support of the motion shall be served and filed on or before September 7, 2007.  Briefing will be presented pursuant to the Court's Local Rules.

11.    <u>Claim Construction Issue Identification</u>.  If the Court does not find that a limited earlier claim construction would be helpful in resolving the case, on April 30, 2007, the parties shall exchange a list of those claim term(s)/phrase(s) that they believe need construction and their proposed claim construction of those term(s)/phrase(s).  This document will not be filed with the Court.  Subsequent to exchanging that list, the parties will meet and confer to prepare a Joint Claim Construction Chart to be submitted pursuant to paragraph 12 below.  The parties Joint Claim Construction Chart should identify for the Court the term(s)/phrase(s) of the claim(s) in issue, and should include each party's proposed construction of the disputed claim language with citation(s) only to the intrinsic evidence in support of their respective proposed constructions.  A copy of the patent(s) in issue as well as those portions of the intrinsic record relied upon are to be submitted with this Joint Claim Construction Chart.  In this joint submission, the parties shall not provide argument.

12.    <u>Claim Construction</u>.  Issues of claim construction shall be submitted to the Court no later than July 31, 2007 to be considered by the Court in conjunction with the parties'

- 5 -

**DRAFT**

summary judgment motions.

      13.    <u>Hearing on Claim Construction</u>.  Beginning at 2:00 p.m. on October 18, 2007, the Court will hear evidence and argument on claim construction and summary judgment.

      14.    <u>Applications by Motion</u>.  Except as otherwise specified herein, any application to the Court shall be by written motion filed with the Clerk.  Unless otherwise requested by the Court, counsel shall not deliver copies of papers or correspondence to Chambers.  Any non-dispositive motion should contain the statement required by Local Rule 7.1.1.

      15.    <u>Pretrial Conference</u>.  On January 28, 2008, the Court will hold a Final Pretrial Conference in Chambers with counsel beginning at 10:00 a.m.  Unless otherwise ordered by the Court, the parties should assume that filing the pretrial order satisfies the pretrial disclosure requirement of Federal Rule of Civil Procedure 26(a)(3).  The parties shall file with the Court the joint proposed final pretrial order with the information required by the form of Final Pretrial Order which accompanies this Scheduling Order on or before January 25, 2008.

      16.    <u>Motions *in Limine*</u>.  Motion *in limine* shall not be separately filed.  All *in limine* requests and responses shall be set forth in the proposed pretrial order.  Each party shall be limited to five *in limine* requests, unless otherwise permitted by the Court.  The motion and response thereto shall contain the authorities relied upon, and no single *in limine* request shall have more than five pages of argument associated with it.  No separate briefing shall be submitted on *in limine* requests, unless otherwise permitted by the Court.

      17.    <u>Jury Instructions, Voir Dire, and Special Verdict Forms</u>.  Where a case is to be tried to a jury, pursuant to Local Rules 47 and 51 the parties should file proposed voir dire,

- 6 -

**DRAFT**

instructions to the jury, and special verdicts and interrogatories three full business days before the final pretrial conference.   That submission shall be accompanied by a computer diskette (in WordPerfect format) which contains a copy of these instructions and proposed voir dire and special verdicts and interrogatories.

18.   <u>Trial</u>.  This matter is scheduled for a seven-day jury trial beginning at 9:30 a.m. on March 5, 2008.  For the purpose of completing pretrial preparations, counsel should plan on each side being allocated a total of 20 hours to present their case.

19.   <u>Other issues</u>.  This Court has already construed the term "initiates" in Claim 1 of U.S. Patent No. 5,130,792 in the litigation captioned *USA Video Tech. Corp. v. Movielink LLC*, 354 F. Supp. 2d 507 (D. Del. 2005), *aff'd* 2006 U.S. App. LEXIS 14699 (Fed. Cir. June 7, 2006).   In light of the court's construction of that term, Plaintiff believes that the accused products do not infringe the patent-in-suit as a matter of law.   Plaintiff thus intends to file papers seeking summary judgment of noninfringement early in this case.


_____
UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION | § § § | |
| v. | § § | C.A. NO. 2:06-CV-239 |
| TIME WARNER CABLE INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP | § § § § § § § § | JUDGE RON CLARK |

**DEFENDANT TIME WARNER CABLE INC.'S
UNOPPOSED MOTION TO ENLARGE TIME TO ANSWER OR
OTHERWISE RESPOND TO USA VIDEO TECHNOLOGY
CORPORATION'S COMPLAINT**

1.     By way of Plaintiff USA Video Technology Corporation's First Amended

Complaint filed August 18, 2006 (D.I. 34), Defendant Time Warner Cable Inc. was named as a

defendant for the first time.  Before Defendant Time Warner Cable Inc.'s response to the First

Amended Complaint was due, USVO sought leave to file a Second Amended Complaint.  (D.I.

42).  This request is still pending.  Defendant Time Warner Cable Inc.'s response to the First

Amended Complaint is presently due on September 11, 2006, and it is presently unclear which

complaint will be the operative complaint on that date.

2.     Defendant Time Warner Cable, Inc. hereby moves the Court to enlarge the time

within which Defendant Time Warner Cable, Inc. is required to move, answer, or otherwise

respond to Plaintiff USA Video Technology Corporation's Complaint up to and including

October 25, 2006 or thirty (30) days after the Court's ruling on the Motion for Leave regarding

the Second Amended Complaint, whichever is earlier.  Defendant Time Warner Cable Inc. will

respond to whichever Complaint is appropriate in light of the Court's ruling on the Motion for

Leave regarding the Second Amended Complaint.

      3.      Good cause exists for the granting of this motion and the motion is made for the

reason and on the grounds that a response to the First Amended Complaint may not be required

and additional time is necessary in order to allow counsel to adequately confer with their client

and respond appropriately to USA Video Technology Corporation's allegations of infringement.

      WHEREFORE, Defendant Time Warner Cable Inc. hereby moves the Court to enlarge

the time within which Defendant Time Warner Cable Inc. is required to move, answer, or

otherwise respond to USA Video Technology Corporation's operative complaint up to and

including October 25, 2006, or thirty (30) days after the Court's ruling on the Motion for Leave

regarding the Second Amended Complaint, whichever is earlier.  Defendant Time Warner Cable

Inc. will respond to whichever Complaint is appropriate in light of the Court's ruling on the

Motion for Leave regarding the Second Amended Complaint.

Dated:  September 7, 2006           Respectfully submitted,

           By:   /s/ J. Thad Heartfield
               J. Thad Heartfield
               Texas Bar No. 09346800
               E-mail: thad@jth-law.com
           Law Offices of J. Thad Heartfield
           2195 Dowlen Road
           Beaumont, Texas 77706
           Telephone:  (409) 866-3318
           Fax:  (409) 866-5789

           Jeffrey M. Olson (*pro hac vice app pending*)
           Sidley Austin LLP
           555 West 5th Street
           Los Angeles, California 90013
           Telephone: (213) 896-6000
           Fax: (213) 896-6600
           ATTORNEYS FOR DEFENDANT
           TIME WARNER CABLE INC.

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that counsel for Time Warner Cable Inc. and counsel for USA Video Technology Corporation conferred, and USA Video Technology Corporation does not oppose this motion.

_/s/ J. Thad Heartfield_____

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 7th day of September, 2006. Any other counsel of record will be served by first class mail.

_/s/ J. Thad Heartfield_____
J. Thad Heartfield

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY | § | |
| CORPORATION | § | |
| | § | |
| v. | § | C.A. NO. 2:06-CV-239 |
| | § | |
| TIME WARNER CABLE INC.; COX | § | JUDGE RON CLARK |
| COMMUNICATIONS, INC.; CHARTER | § | |
| COMMUNICATIONS, INC.; COMCAST | § | |
| CABLE COMMUNICATIONS, LLC; | § | |
| COMCAST OF RICHARDSON, LP; | § | |
| COMCAST OF PLANO, LP; COMCAST | § | |
| OF DALLAS, LP | § | |

**ORDER GRANTING DEFENDANT TIME WARNER CABLE, INC.'S
UNOPPOSED MOTION TO ENLARGE TIME TO ANSWER OR
OTHERWISE RESPOND TO USA VIDEO TECHNOLOGY
CORPORATION'S COMPLAINT**

On this date came on for consideration Defendant Time Warner Cable Inc.'s Unopposed

Motion to Enlarge Time to Answer or Otherwise Respond to USA Video Technology

Corporation's Complaint, and the Court being of the opinion that same should be GRANTED, it

is therefore,

ORDERED that Defendant Time Warner Cable Inc. be and hereby is granted an

extension of time within which to respond to USA Video Technology Corporation's Complaint

up to and including October 25, 2006 or thirty (30) days after the Court's ruling on the Motion

for Leave regarding the Second Amended Complaint, whichever is earlier.  Defendant Time

Warner Cable Inc. shall respond to whichever Complaint is appropriate in light of the Court's

ruling on Plaintiff USA Video Technology Corporation's motion for leave to file its Second

Amended Complaint.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | § § § | |
| *Plaintiff*, | § § | Civil Action No. 2:06-CV-239 |
| v. | § § | JUDGE RON CLARK |
| TIME WARNER, INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | § § § § § § § § | |
| *Defendants*. | § | |

### ORDER ON DEFENDANT'S MOTION FOR EXTENSION OF TIME

Before the court is Defendant Time Warner Cable, Inc.'s Unopposed Motion to Enlarge Time To Answer Or Otherwise Respond [Doc. # 50]. Time Warner requests an extension to file a responsive pleading until October 25, 2006 or until thirty days after this court rules on Plaintiff's Motion for Leave to Amend the Complaint [Doc. # 42], which is opposed.[1]

Under Fed. R. Civ. P. 1, the rules of procedure must be construed and administered to secure the just, speedy, and inexpensive determination of every action. The first Amended Complaint, which was filed to correct the location of Time Warner Cable, Inc.'s registered agent listed in the original Complaint, was filed on August 18, 2006. Time Warner Cable, Inc.'s current deadline to answer is September 11, 2006. The Case Management Conference is set for October 31, 2006. This court regularly allows amended pleadings after exchange of extensive initial disclosures. In order to secure a just and inexpensive determination of this action, the

---

[1]This would be Plaintiff's second Amended Complaint. No Scheduling Order has been entered and so leave of court is required. *See* Fed. R. Civ. P. 15.

court will deny Defendant's request.

      IT IS THEREFORE ORDERED that Defendant Time Warner Cable, Inc.'s Unopposed Motion to Enlarge Time To Answer Or Otherwise Respond [**Doc. # 50**] is **DENIED**.  Under the circumstances, the court will allow this Defendant until **September 13, 2006** to file a responsive pleading.

So **ORDERED** and **SIGNED** this **8**  day of **September, 2006.**

 

 

                          _____
                          Ron Clark, United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | § § § | |
| *Plaintiff*, | § § | Civil Action No. 2:06-CV-239 |
| v. | § § | JUDGE RON CLARK |
| TIME WARNER, INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | § § § § § § § § | |
| *Defendants*. | § | |

**ORDER ON DEFENDANTS' MOTION FOR EXTENSION OF TIME**

Before the court is Defendants' Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, Comcast of Dallas, LP (collectively "Comcast Defendants"), and Charter Communications, Inc.'s Unopposed Motion to Enlarge Time to Answer or Otherwise Respond [Doc. # 47]. The parties request an extension to file a responsive pleading until October 25, 2006 or until thirty days after this court rules on Plaintiff's Motion for Leave to Amend the Complaint [Doc. # 42], which is opposed.[1]

Under Fed. R. Civ. P. 1, the rules of procedure must be construed and administered to secure the just, speedy, and inexpensive determination of every action. This case was filed on June 13, 2006. The Case Management Conference is set for October 31, 2006. The court gave these Defendants two previous extensions of time to file a responsive pleading. These Defendants now request an additional six weeks to file a response stating that additional time is needed to adequately confer with their clients. While Plaintiff filed a first Amended Complaint

---

[1]This would be Plaintiff's second Amended Complaint. No Scheduling Order has been entered and so leave of court is required. *See* Fed. R. Civ. P. 15.

on August 18, 2006, this complaint did not change any claims against these parties. In order to secure a just and inexpensive determination of this action, the court will deny Defendants' request.

IT IS THEREFORE ORDERED that Defendants' Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, Comcast of Dallas, LP, and Charter Communications, Inc.'s Unopposed Motion to Enlarge Time to Answer or Otherwise Respond [**Doc. # 47**] is **DENIED**. Under the circumstances, the court will allow these Defendants until **September 13, 2006** to file a responsive pleading.

So **ORDERED** and **SIGNED** this **8** day of **September, 2006.**

_____
Ron Clark, United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | § § § | |
| *Plaintiff*, | § § | Civil Action No. 2:06-CV-239 |
| v. | § § | JUDGE RON CLARK |
| TIME WARNER CABLE, INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | § § § § § § § § | |
| *Defendants*. | § | |

**ORDER ON DEFENDANTS' MOTION TO DISMISS FOR LACK
OF PERSONAL JURISDICTION OR IN THE ALTERNATIVE
MOTION TO TRANSFER**

Before the court is Defendant Cox Communications, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Venue to the District of Delaware [Doc. # 32]. Cox Communications, Inc. ("Cox") states that it does not conduct business in Texas and that it has no contacts with Texas such that this court can exercise jurisdiction over it. Cox claims that Plaintiff sued the wrong Cox entity. Plaintiff responds by stating that from public records it appears Cox and its affiliates conduct business in Texas and it requests limited discovery on this issue to determine if this court has personal jurisdiction over Cox. Under the circumstances, the court will allow limited discovery on this issue. The court, therefore, does not reach the issue of transfer at this time.

1

## I. Background

Plaintiff USA Video Technology ("USVO") filed suit against Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP (collectively "Comcast Defendants"), Charter Communications, Inc., Cox Communications, Inc., and Time Warner Cable, Inc. in the Eastern District of Texas, Marshall Division on June 13, 2006. USVO alleges that the Defendants infringe Claim 1 of U.S. Patent No. 5,130,792 (the ` 792 patent). This patent involves systems that communicate video programs to remote locations. This "video-on-demand" process allows a customer to obtain a video program whenever a customer requests it.

Cox states that Plaintiff has sued the wrong company because Cox does not provide "video-on-demand" services and Cox does not own or operate a cable system in Texas. Cox also states that CoxCom, Inc., an affiliate, offers cable communications services. After suit was filed here, CoxCom, Inc. filed a declaratory judgment action in Delaware. Cox itself has not joined in the action in Delaware. Plaintiff filed a separate motion to join CoxCom, Inc. as a Defendant in this suit.

## II. Law and Analysis

### A. Standard of Review for Personal Jurisdiction

Because this a patent case, this court applies the law of the Federal Circuit, rather than that of regional circuits, to determine whether personal jurisdiction exists. *Electronics For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003). There are two types of personal jurisdiction – specific and general. *Id.* at 1349. Under general jurisdiction, the exercise of jurisdiction is proper where the defendant has continuous and systematic contacts with the forum

2

state, even if those contacts are not related to the cause of action. *Id.* at 1349.

Determining whether specific personal jurisdiction over a nonresident defendant is proper entails two inquiries: (1) whether the long-arm statute of the forum state confers personal jurisdiction over the defendant; and (2) whether the exercise of such jurisdiction by the forum state is consistent with due process. *Id* at 1349.[1] Texas' long arm statute has been interpreted to extend to the limits of due process. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). Therefore, the question is whether Defendant's contacts with the State are sufficient to satisfy due process. *Electronics For Imaging, Inc.*, 340 F.3d at 1350.

Whether due process is satisfied requires the court to consider whether Defendant has certain "minimum contacts" with the forum state, and whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *Electronics For Imaging, Inc.*, 340 F.3d at 1350. In making this determination, the Federal Circuit has stated that three factors must be considered: (1) whether the defendant purposefully directed its activities at the residents of the forum state, (2) whether the claim arises out of or relates to those activities, and (3) whether assertion of personal jurisdiction is reasonable and fair. *Id.* The first two factors correspond with the "minium contacts" analysis and the third factor corresponds with the traditional notions of fair play and substantial justice. *Id.* Plaintiff bears the initial burden to prove a prima facie case that Defendant has minimum contacts with the forum state. *Id.* Defendant bears the burden to show that the exercise of jurisdiction would violate the traditional notations of fair play and

---

[1]The Federal Circuit has stated "the question of which Due Process Clause controls the personal jurisdiction inquiry becomes purely academic because this court, though professing reliance on the Fifth Amendment, applies the Fourteenth Amendment state-contacts test of *International Shoe*." *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 n.*. (Fed. Cir. 1998).

substantial justice.  *Id.*

**B. Request for Discovery**

Plaintiff submitted several documents which show that at one point Cox marketed products and services in Texas, that Cox owns mineral rights in Texas, and that Cox has several affiliates which conducted business in Texas and which still own a cable television franchise in Henderson, Texas.  Defendant Cox states that it does not offer any services in Texas, that Cox's affiliates are all separate entities, and that the affiliates were all party to an asset transfer agreement by which all assets in Texas, except the Henderson franchise, were sold as of May 5, 2006.  Plaintiff asserts that discovery is needed to determine the extent and nature of Cox's contacts with Texas.

At this stage, the court must resolve any factual conflicts in favor of Plaintiff and view the evidence in the light most favorable to Plaintiff.  *See Electronics for Imaging, Inc.*, 340 F.3d at 1349.  Discovery is appropriate where the existing record is inadequate to support personal jurisdiction and a party demonstrates that it can supplement its jurisdictional allegations through discovery.  *Trintec Industries, Inc. v. Pedre Promotional Products, Inc.*, 395 F.3d 1275, 1283 (Fed. Cir. 2005).

The record before the court suggests that at one point Cox marketed products and services in Texas and that Cox's affiliates conducted business in Texas.   The record, however, does not show the nature and extent of Cox's contacts with Texas.  Plaintiff has not presented evidence which shows that Cox has continuous and systematic contacts with Texas (for general jurisdiction), or that Cox marketed or sold any of the accused services or products in Texas (for specific jurisdiction).  Moreover, the record does not reveal the relationship between Cox's

4

affiliates and Cox.[2]

 While Plaintiff's evidence alone is inadequate to support a finding of personal

jurisdiction, Plaintiff did present some evidence that Cox and it affiliates conduct business in

Texas.[3]  Under these circumstances, the court will allow Plaintiff to depose the Rule 30(b)(6)

corporate representative(s) with knowledge of any business activities conducted by Cox and/or

its affiliates in Texas, and the relationship between Cox and its affiliates.  Defendant Cox shall

make the Rule 30(b)(6) representative(s) available for deposition(s) by October 6, 2006.  Plaintiff

shall have until October 20, 2006 to supplement its response, or Defendant Cox will be

dismissed from this case for lack of personal jurisdiction.

IT IS THEREFORE ORDERED that Plaintiff is allowed limited discovery on the issue of

whether this court has personal jurisdiction over Defendant Cox Communications, Inc.  Plaintiff

is allowed to depose the Fed. R. Civ. P. 30(b)(6) corporate representative(s) with knowledge of

any business activities conducted by Cox Communications, Inc. and/or its affiliates in Texas, and

the relationship between Cox Communications, Inc. and its affiliates.  The deposition(s) should

be conducted pursuant to the Federal Rules of Civil Procedure.  If more than one deposition is

---

[2]In some circumstances the contacts of an affiliate may be attributed to the parent
company for the purposes of establishing minimum contacts with the forum.  *See Dainippon
Screen Mfg. Co., Ltd. v. CFMT, Inc.*, 142 F.3d 1266, 1272 (Fed. Cir. 1998).  In analyzing
whether the contacts of an affiliate are imputed to another entity, the Federal Circuit follows the
law of other courts of appeals.  *Insituform Techs., Inc. v. CAT Contracting, Inc.*, 285 F.3d 1360,
1380 (Fed. Cir. 2004).  The Fifth Circuit has stated that under Federal and Texas law, a parent
company which totally dominates and controls its subsidiary, operating the subsidiary as its
business conduit or agent, is liable for the conduct of the subsidiary.  *U.S. v. Jon-T Chemicals,
Inc.*, 768 F.2d 686, 691 (5th Cir. 1985).

[3]Plaintiff seems to make a separate argument regarding whether this court has personal
jurisdiction over CoxCom, Inc.  This argument will be relevant to determining whether this court
allows Plaintiff to join CoxCom, Inc. as an additional defendant.

conducted, the total time for these depositions will be limited to ten (10) hours.

IT IS FURTHER ORDERED that Defendant Cox Communications, Inc. shall make the Rule 30(b)(6) representative(s) available for deposition by October 6, 2006.  Plaintiff shall have until October 20, 2006 to supplement its response or Defendant Cox Communications, Inc. will be dismissed from this case for lack of personal jurisdiction.

So **ORDERED** and **SIGNED** this **8**   day of **September, 2006.**

_____

Ron Clark, United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION | § § § | |
| v. | § § | C.A. NO. 2:06-CV-239 |
| TIME WARNER CABLE INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP | § § § § § § § § | JUDGE RON CLARK<br><br>JURY TRIAL DEMANDED |

## DEFENDANT TIME WARNER CABLE INC.'S ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

Defendant Time Warner Cable Inc. ("TWC") hereby responds to the First Amended Complaint (DOC. 34) filed by Plaintiff, USA Video Technology Corporation ("USVO"), with the following Answer and Affirmative Defenses.

TWC responds to the allegations in the numbered paragraphs of the First Amended Complaint as follows:

### ANSWER

1.      Answering paragraph 1 of the First Amended Complaint, TWC is without information sufficient to admit or deny the allegations of this paragraph, and on this basis, denies them.

2.      Answering paragraph 2 of the First Amended Complaint, TWC denies that its name is "Time Warner Cable, Inc."  Its correct corporate name is "Time Warner Cable Inc."  TWC otherwise admits the allegations of this paragraph.

3.     Answering paragraph 3 of the First Amended Complaint, TWC is without information sufficient to admit or deny the allegations of this paragraph, and on this basis, denies them.

4.     Answering paragraph 4 of the First Amended Complaint, TWC is without information sufficient to admit or deny the allegations of this paragraph, and on this basis, denies them.

5.     Answering paragraph 5 of the First Amended Complaint, TWC is without information sufficient to admit or deny the allegations of this paragraph, and on this basis, denies them.

6.     Answering paragraph 6 of the First Amended Complaint, TWC is without information sufficient to admit or deny the allegations of this paragraph, and on this basis, denies them.

7.     Answering paragraph 7 of the First Amended Complaint, TWC is without information sufficient to admit or deny the allegations of this paragraph, and on this basis, denies them.

8.     Answering paragraph 8 of the First Amended Complaint, TWC is without information sufficient to admit or deny the allegations of this paragraph, and on this basis, denies them.

9.     Answering paragraph 9 of the First Amended Complaint, TWC admits that USVO purports that this is an action for infringement of a United States patent and that there is subject matter jurisdiction over this action pursuant to 35 U.S.C. § 271 and 28 U.S.C. § 1338(a), but otherwise denies the allegations therein.

10.     Answering paragraph 10 of the First Amended Complaint, TWC denies the allegations therein.

11.     Answering paragraph 11 of the First Amended Complaint, TWC admits that a patent bearing the number 5,130,792, a copy of which is attached as Exhibit A to the First Amended Complaint, was issued by the United States Patent Office on July 14, 1992, and denies the remaining allegations therein.

12.     Answering paragraph 12 of the First Amended Complaint, paragraph 12 of the First Amended Complaint sets forth legal conclusions for which no response is required.  To the extent paragraph 12 contains factual allegations to which a response is required, those allegations are denied.

13.     Answering paragraph 13 of the First Amended Complaint, TWC is without information sufficient to admit or deny the allegations of this paragraph, and on this basis, denies them.

14.     Answering paragraph 14 of the First Amended Complaint, TWC admits that it operates cable systems in various locations throughout the United States and that it offers content on demand to its cable subscribers.  TWC denies the remaining allegations of this paragraph.

15.     Answering paragraph 15 of the First Amended Complaint, TWC is without information sufficient to admit or deny the allegations of this paragraph, and on this basis, denies them.

16.     Answering paragraph 16 of the First Amended Complaint, TWC is without information sufficient to admit or deny the allegations of this paragraph, and on this basis, denies them.

17.     Answering paragraph 17 of the First Amended Complaint, TWC is without information sufficient to admit or deny the allegations of this paragraph, and on this basis, denies them.

18.     Answering paragraph 18 of the First Amended Complaint, TWC is without information sufficient to admit or deny the allegations of this paragraph, and on this basis, denies them.

19.     Answering paragraph 19 of the First Amended Complaint, TWC is without information sufficient to admit or deny the allegations of this paragraph, and on this basis, denies them.

20.     Answering paragraph 20 of the First Amended Complaint, TWC is without information sufficient to admit or deny the allegations of this paragraph, and on this basis, denies them.

21.     Answering paragraph 21 of the First Amended Complaint, TWC denies the allegations therein.


## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE (Non-Infringement)

22.     On information and belief, TWC has not directly infringed, contributed to the infringement, and/or actively induced the infringement of any claim of United States Patent 5,130,792 ("the '792 Patent"), nor has it otherwise committed any acts of infringement on any rights of USVO.

## SECOND AFFIRMATIVE DEFENSE (Invalidity)

23.     On information and belief, the '792 Patent is invalid by reason of having been issued in violation of the U.S. patent laws, Title 35 United States Code, including violation of Sections 102, 103, 112, 115, and 116 thereof, and the Rules and Regulations of the Patent & Trademark Office relating thereto.

## THIRD AFFIRMATIVE DEFENSE  (Inequitable Conduct Before The USPTO)

24.     On information and belief, the '792 Patent is unenforceable by reason of inequitable conduct by the patentee and/or its representatives, successors, or assignees before the U.S. Patent and Trademark Office ("USPTO").

## FOURTH AFFIRMATIVE DEFENSE (Waiver, Laches, Acquiescence And Estoppel)

25.     On information and belief, the relief sought by USVO is barred by waiver, laches, acquiescence and/or estoppel.

## FIFTH AFFIRMATIVE DEFENSE (Improper Venue)

26.     Venue does not properly reside with this Court, but rather properly resides in the United States District Court for the District of Delaware.  This case should be dismissed in favor of the first-filed action in that district, captioned <u>Time Warner Cable Inc. v. USA Video Technology Corp.</u>, Case No. 06-387-KAJ and/or transferred to that district.

## PRAYER FOR RELIEF

**WHEREFORE,** TWC prays for the following:

1.      A judgment that TWC has not infringed and does not infringe in any manner any claim of the '792 patent, directly, contributorily or by inducement, and has not otherwise infringed or violated any rights of USVO.

2.      A judgment that each claim contained in the '792 patent is invalid and unenforceable and therefore without any force or effect.

3.      An injunction against USVO and its affiliates, subsidiaries, assigns, employees, agents or anyone acting in privity or concert with USVO from charging infringement or instituting any legal action for infringement of the '792 patent against TWC or anyone acting in privity with TWC, including the divisions, successors, assigns, agents, suppliers, manufacturers, contractors and customers of TWC.

4.      A judgment that this is an exceptional case within the meaning of 35 U.S.C. § 285, entitling TWC to an award of its reasonable attorneys' fees, expenses and costs in this action.

5.      A judgment for such other and further relief in law or in equity as this Court deems just or proper.

## JURY DEMAND

TWC hereby respectfully demands trial by jury of all issues so triable.

Dated:  September 13, 2006          Respectfully submitted,

By:   /s/ J. Thad Heartfield_____
     J. Thad Heartfield
     Texas Bar No. 09346800
     E-mail: thad@jth-law.com
Law Offices of J. Thad Heartfield
2195 Dowlen Road
Beaumont, Texas 77706
Telephone:  (409) 866-3318
Fax:  (409) 866-5789

Jeffrey M. Olson (*pro hac vice app pending*)
Sidley Austin LLP
555 West 5th Street
Los Angeles, California 90013
Telephone: (213) 896-6000
Fax: (213) 896-6600

ATTORNEYS FOR DEFENDANT
TIME WARNER CABLE INC.

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 13th day of September, 2006. Any other counsel of record will be served by first class mail.


    /s/ J. Thad Heartfield           
J. Thad Heartfield

**UNITED STATES DISTRICT COURT**
**FOR THE FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No.: 2-06CV-239-RHC |
| TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | ) ) ) ) ) ) ) ) | JURY TRIAL |
| Defendants. | ) ) ) ) | |

**THE COMCAST DEFENDANTS' ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM TO PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants Comcast Cable Communications, LLC; Comcast of Richardson, LP; Comcast of Plano, LP; and Comcast of Dallas, LP (collectively, the "Comcast Defendants"), by their undersigned attorney, hereby respond to the First Amended Complaint dated August 18, 2006, filed by USA Video Technology Corp. ("USVO" or "Plaintiff"), with the following answer, affirmative defenses and counterclaim.

As an initial matter, since the filing of this action, it appears that as a result of a transaction involving Adelphia Communications Corporation and pursuant to public records, Comcast of Dallas, LP is now listed as "TimeWarner Cable of Dallas, LP," while Comcast of Richardson, LP and Comcast of Plano, LP are listed as inactive. We are in the process of confirming the status of these entities, and have informed counsel for USVO. In the interim, the following answer, affirmative defenses and counterclaim are being asserted by each of the named Comcast Defendants.

1

# ANSWER

1-4.    The allegations in paragraphs 1 through 4 are not directed to the Comcast Defendants and therefore no answer is required.

5-8.    Admitted, except denied to the extent the allegations state or are intended to imply that Comcast of Richardson, LP, Comcast of Plano, LP and Comcast of Dallas, LP are currently active entities.

9-10.    Admitted that USVO purports to assert a claim for patent infringement arising under the laws of the United States of America, 35 U.S.C. § 1 et seq., that this Court has subject matter jurisdiction over this action pursuant to 35 U.S.C. § 271 and 28 U.S.C. § 1338(a), and that venue is proper in this Court.  To the extent, however, that any of these allegations are intended as a basis for liability as to the Comcast Defendants, they are denied.

11-13.    The allegations in paragraphs 11 through 13 contain legal conclusions and therefore no answer is required.  The allegations in these paragraphs also purport to describe United States Patent No. 5,130,792 (the '792 Patent) and accordingly, the Comcast Defendants refer to the document for its content.  To the extent the allegations contained in these paragraphs contain factual allegations to which a response is required, those allegations are denied.

14-16.    The allegations in paragraphs 14 through 16 are not directed to the Comcast Defendants and therefore no answer is required.

17-20.    Denied.

21.    Denied as to the Comcast Defendants, and to the extent such allegations are not directed at the Comcast Defendants, no answer is required.

22.    The allegations in paragraph 22 are not directed to the Comcast Plaintiffs and therefore no answer is required, except admit that USVO purports to demand a jury trial.

## GENERAL DENIAL

The Comcast Defendants deny each and every allegation of Plaintiff's First Amended Complaint, including USVO's Prayer for Relief, that herein has been neither admitted or controverted.

## AFFIRMATIVE DEFENSES

The Comcast Defendants assert the following defenses to the First Amended Complaint:

### First Affirmative Defense

On information and belief, the First Amended Complaint fails to assert a claim for which relief may be granted.

### Second Affirmative Defense

On information and belief, the Comcast Defendants have not directly infringed, contributed to the infringement, and/or actively induced the infringement of any claim of the '792 Patent.

### Third Affirmative Defense

On information and belief, the '792 Patent is invalid and/or unenforceable by reason of having been issued in violation of the United States patent laws, Title 35 United States Code, including violation of Sections 102, 103, 112, 115 and/or 116 thereof, and the Rules and Regulations of the Patent & Trademark Office relating thereto.

### Fourth Affirmative Defense

On information and belief, the relief sought by USVO is barred by waiver, laches, acquiescence and/or estoppel.

### Fifth Affirmative Defense

On information and belief, the '792 Patent has been misused by Plaintiff by the commencement and maintenance of this action, in bad faith, without probable cause and knowing, or when it should have known, that Plaintiff had no valid claim of patent infringement,

either direct infringement, contributory infringement or inducing infringement, against the Comcast Defendants, with respect to the '792 Patent. As a consequence of Plaintiff's actions, the '792 Patent is unenforceable.

<div align="center">Sixth Affirmative Defense</div>

Plaintiff comes to this Court with unclean hands, and is precluded at law and in equity from asserting any of the claims purported to be set forth in the Complaint. The Comcast Defendants are accordingly entitled to their attorneys' fees and costs.

<div align="center">Seventh Affirmative Defense</div>

Plaintiff is barred from any recovery in this action in that it has engaged in patent misuse by attempting to impermissibly broaden the scope of the '792 Patent, resulting in an anticompetitive effect.

<div align="center">Eighth Affirmative Defense</div>

By reason of the proceedings in the United States Patent and Trademark Office during the prosecution of the application for the '792 Patent, specifically the admissions, representations, and amendments made on behalf of the applicants for such patent, Plaintiff is estopped from asserting any construction and/or scope of the claims of the '792 Patent to cover or include any video-on-demand technology offered for sale, sold, offered for lease, or leased by the Comcast Defendants.

<div align="center">**COUNTERCLAIM**</div>

For its counterclaim against USVO, and subject to the statement above that certain entities may no longer exist and/or are inactive, the Comcast Defendants, hereby allege as follows:

1. Counterclaim Plaintiff Comcast Cable Communications, LLC is a corporation organized under the laws of the State of Delaware, with its principal place of business at 1500 Market Street, Suite 1000, Philadelphia, PA 19102-2148.

2.      Counterclaim Plaintiff Comcast of Richardson, LP is or was a corporation organized under the laws of the State of Delaware, with its principal place of business at 1201 N. Market Street, Suite 1000, Wilmington, DE 19801.

3.      Counterclaim Plaintiff Comcast of Plano, LP is or was a corporation organized under the laws of the State of Delaware, with its principal place of business at 1201 N. Market Street, Suite 1000, Wilmington, DE 19801.

4.      Counterclaim Plaintiff Comcast of Dallas, LP is or was a corporation organized under the laws of the State of Delaware, with its principal place of business at 1201 N. Market Street, Suite 1000, Wilmington, DE 19801.

5.      On information and belief, counterclaim defendant USA Video Technology Corporation is a corporation organized under the laws of the State of Connecticut, with its principal place of business at 83 Halls Road, P.O. Box 245, Old Lyme, Connecticut 06371.

## JURISDICTION AND VENUE

6.      The Comcast Defendants/Counterclaim Plaintiffs' counterclaim arises under the patent laws of the United States, Title 35 of the United States Code, and the Declaratory Judgment provisions of §§ 2201 and 2202 of Title 28 of the United States Code.  This Court's jurisdiction over the subject matter of Comcast Cable's counterclaim is based on 28 U.S.C. § 1338 and the Declaratory Judgment Act.

7.      Venue is potentially proper in this district under 28 U.S.C. § 1391(b) because USVO's assertion of its patent infringement claim against the Comcast Defendants in this district gave rise to the Comcast Defendants' declaratory judgment counterclaim, but only if venue is proper in this district for the claim asserted by USVO in this litigation.

## COUNT I – DECLARATORY JUDGMENT OF INVALIDITY
### AND/OR NON-INFRINGEMENT
### OF U.S. PATENT NO. 5,130,792 (the '792 Patent)

8.     The Comcast Defendants/Counterclaim Plaintiffs restate and reallege the allegations set forth in paragraphs 1-7 above and incorporate them by reference.

9.     On information and belief, the '792 Patent is invalid by reason of having been issued in violation of the U.S. patent laws, Title 35 United States Code, including violation of Sections 102, 103, 112, 115 and/or 116 thereof, and the Rules and Regulations of the Patent & Trademark Office relating thereto.

10.     The Comcast Defendants/Counterclaim-Plaintiffs have not directly infringed, contributed to the infringement, or actively induced the infringement of any claim of the '792 Patent, nor have they otherwise committed any acts of infringement of any rights of USVO.

### PRAYER FOR RELIEF

WHEREFORE, the Comcast Defendants/Counterclaim-Plaintiffs pray for judgment as follows:

1.     That Plaintiff's First Amended Complaint be dismissed with prejudice against the Comcast Defendants in its entirety;

2.     That judgment be entered for the Comcast Defendants and that Plaintiff take nothing;

3.     For entry of judgment that United States Patent No. 5,130,792 is invalid, unenforceable, and/or not infringed by the Comcast Defendants, and that USVO and its affiliates, subsidiaries, assigns, employees, agents or anyone acting in privity or concert with USVO from charging infringement or instituting any legal action for infringement of the '792 Patent against the Comcast Defendants or anyone acting in privity with the Comcast Defendants, including the divisions, successors, assigns, agents, suppliers, manufacturers, contractors and customers of the Comcast Defendants.

4.     That Plaintiff be ordered to pay the Comcast Defendants' costs of suit in this action;

5.     That Plaintiff be ordered to pay the Comcast Defendants' attorneys' fees in this action pursuant to 35 U.S.C. § 285; and

6.     That the Comcast Defendants be awarded such other relief as this Court deems just and proper.

If this matter proceeds to trial, the Comcast Defendants demand a trial by jury.

Dated: September 13, 2006

OF COUNSEL:
Matthew B. Lehr
Suong T. Nguyen
Duane Nash
Yiping Liao
DAVIS POLK & WARDWELL
1600 El Camino Real
Menlo Park, CA  94025
Telephone:    (650) 752-2000
Facsimile:     (650) 752-2111

Respectfully submitted,

GILLAM & SMITH, LLP

_____/s/_____
Harry L. Gillam, Jr.
LEAD ATTORNEY
Texas State Bar No. 07921800
303 S. Washington Avenue
Marshall, TX 75670
Telephone: 903-934-8450
Facsimile:  903-934-9257

ATTORNEYS FOR DEFENDANTS AND
COUNTERCLAIM PLAINTIFFS COMCAST
CABLE COMMUNICATIONS, LLC;
COMCAST OF RICHARDSON, LP;
COMCAST OF PLANO, LP; AND
COMCAST OF DALLAS, LP

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who have consented to electronic service.  Local Rule CV-5(a)(3)(A).  Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 13th day of September 2006.



/s/
Harry L. Gillam, Jr.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA Video Technology Corporation, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 2-06CV-239 |
| | § | |
| TIME WARNER INC.; COX | § | |
| COMMUNICATIONS, INC.; CHARTER | § | |
| COMMUNICATIONS, INC.; | § | |
| COMCAST CABLE | § | |
| COMMUNICATIONS, LLC; COMCAST | § | |
| OF RICHARDSON, LP; COMCAST OF | § | |
| PLANO, LP; and COMCAST OF DALLAS, | § | |
| LP, | § | |
| | § | |
| Defendants. | § | |

<u>ANSWER AND COUNTERCLAIMS OF CHARTER COMMUNICATIONS, INC.</u>

Defendant Charter Communications, Inc. ("Charter"), by and through its counsel,

answers the First Amended Complaint of USA Video Technology Corporation as follows:

1.     Charter is without knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 1 of the First Amended Complaint and on that basis

denies each and every such allegation.

2.     Charter is without knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 2 of the First Amended Complaint and on that basis

denies each and every such allegation.

3.     Charter is without knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 3 of the First Amended Complaint and on that basis

denies each and every such allegation.

4.     Charter admits that it is incorporated in Delaware, that it has a principal place

of business at 12405 Powerscourt Drive, St. Louis, MO  63131 and that it was served with

process.  Charter denies the remaining allegations of paragraph 4 of the First Amended Complaint.

5.      Charter is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 5 of the First Amended Complaint and on that basis denies each and every such allegation.

6.      Charter is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 6 of the First Amended Complaint and on that basis denies each and every such allegation.

7.      Charter is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 7 of the First Amended Complaint and on that basis denies each and every such allegation.

8.      Charter is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8 of the First Amended Complaint and on that basis denies each and every such allegation.

<u>JURISDICTION & VENUE</u>

9.      Charter admits that this action purports to assert a claim of patent infringement under the patent laws of the United States.  Charter does not contest subject matter jurisdiction.  Charter denies that it has committed any acts of infringement within the jurisdiction of this court.

10.     Charter denies that venue is appropriate under either Title 28 United States Code §1391(b) or §1400(b).

<u>PATENT INFRINGEMENT COUNT</u>

11.     Charter admits that U.S. Patent No. 5,130,792 (the "'792 Patent") is entitled "STORE AND FORWARD VIDEO SYSTEM" and that it lists as inventors Elbert G. Tindell and Kyle Crawford.  Charter further admits that a copy of the '792 Patent is attached as Exhibit

3384445                                        - 2 -

A to the First Amended Complaint.  Charter denies the remaining allegations of paragraph 11 of the First Amended Complaint.

12.     Charter admits that 35 U.S.C. §282 states that "A patent shall be presumed valid."  Charter denies the remaining allegations of paragraph 12 of the First Amended Complaint.

13.     Charter is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 13 of the First Amended Complaint and on that basis denies each and every such allegation.

14.     Charter is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14 of the First Amended Complaint and on that basis denies each and every such allegation.

15.     Charter is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15 of the First Amended Complaint and on that basis denies each and every such allegation.

16.     Charter denies the allegations of paragraph 16 of the First Amended Complaint.

17.     Charter is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 17 of the First Amended Complaint and on that basis denies each and every such allegation.

18.     Charter is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 18 of the First Amended Complaint and on that basis denies each and every such allegation.

19.     Charter is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 19 of the First Amended Complaint and on that basis denies each and every such allegation.

20. Charter is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 20 of the First Amended Complaint and on that basis denies each and every such allegation.

21. Charter denies the allegations of paragraph 21 of the First Amended Complaint.

## DEMAND FOR JURY TRIAL

22. Charter admits that plaintiff, USA Video Technology Corporation has demanded a jury trial on all claims and issues triable of right to a jury.

## FIRST AFFIRMATIVE DEFENSE

23. Charter has not directly or indirectly infringed, contributed to, or induced the infringement of any valid claim of the '792 Patent.

## SECOND AFFIRMATIVE DEFENSE

24. The claims of the patent in suit are invalid and/or unenforceable for failure to meet the requirements of one or more sections of Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, and/or 112.

## THIRD AFFIRMATIVE DEFENSE

25. To the extent that plaintiff attempts to construe the scope of protection of one or more of the claims of the patents in suit to cover any product or process made, used, sold or offered for sale by Charter, then such claims and the purported inventions defined thereby are invalid and unenforceable as failing to meet the requirements of Title 35 of the United States Code.

## FOURTH AFFIRMATIVE DEFENSE

26. By reason of its acts, representations and omissions during prosecution before the United States Patent and Trademark Office of the applications which resulted in the patent at issue, plaintiff is estopped to assert that any claim of the patent in suit is of such scope as to cover any product or process made, used, sold or offered for sale by Charter.

## FIFTH AFFIRMATIVE DEFENSE

27.     Plaintiff is guilty of laches in that it has unreasonably and inexcusably delayed filing the present suit until after the date on which it knew or should have known of Charter's allegedly infringing activities, all to the material prejudice of Charter.

## SIXTH AFFIRMATIVE DEFENSE

28.     Plaintiff comes to this Court with unclean hands, and is precluded at law and in equity from asserting any of the claims purported to be set forth in the First Amended Complaint.

## SEVENTH AFFIRMATIVE DEFENSE

29.     Plaintiff is barred from any recovery in this action in that it has engaged in patent misuse by attempting to impermissibly broaden the scope of the '792 Patent to cover video-on-demand ("VOD") technology, resulting in an anticompetitive effect.

## EIGHTH AFFIRMATIVE DEFENSE

30.     By reason of the proceedings in the United States Patent and Trademark Office during the prosecution of the application for the '792 Patent, specifically the admissions, representations and amendments made on behalf of the applicants for such patent, Plaintiff is estopped from asserting any construction and/or scope of the claims of the '792 Patent to cover or include any video-on-demand technology allegedly offered for sale, sold, offered for lease, or leased by Charter.

## NINTH AFFIRMATIVE DEFENSE

31.     On information and belief, plaintiff's claims for relief and prayer for damages are limited by Plaintiff's failure to comply with the requirements of 35 U.S.C. §287.

## TENTH AFFIRMATIVE DEFENSE

32.     Plaintiff lacks standing in that plaintiff may not be prosecuting this action in the name of the real party in interest.  Pursuant to Federal Rule of Civil Procedure 17, defendant Charter objects on that basis.

## COUNTERCLAIMS

33.     Defendant/Counterclaimant Charter incorporates by reference its answers and affirmative defenses as set forth above in paragraphs 1 through 33 as if fully set forth herein and asserts the following counterclaims against Plaintiff/Counterclaim Defendant USA Video Technology Corporation.

### Parties

34.     Charter Communications, Inc. is a corporation organized under the laws of the State of Delaware and has its principal place of business at 12405 Powerscourt Drive, St. Louis, Missouri  63131.

35.     Plaintiff alleges in its First Amended Complaint that USA Video Technology Corporation ("USA Video") is a corporation organized under the laws of the State of Connecticut with its principal place of business at 83 Halls Road, P.O. Box 245, Old Lyme, Connecticut, 06371.

### Jurisdiction and Venue

36.     These counterclaims include claims for declaratory judgment of patent non-infringement and invalidity and thus jurisdiction is proper under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Patent Laws of the United States, 35 U.S.C. §100, et seq., concerning actions related to patents and 28 U.S.C. §1338.

37.     Plaintiff alleges that the '792 Patent, entitled "STORE AND FORWARD VIDEO SYSTEM," was issued by the United States Patent and Trademark Office on July 14, 1992.

38. Plaintiff, through this lawsuit, has asserted and continues to assert that Charter is infringing the '792 Patent. Plaintiff, through this lawsuit, has placed Charter under a reasonable apprehension that it is accused of infringing the '792 Patent.

39. Charter is not infringing and is not threatening to infringe the '792 Patent, directly or indirectly.

40. The '792 Patent is invalid, unenforceable and/or void.

<div align="center">Count One – Declaratory Relief Regarding Non-Infringement</div>

41. Based on USA Video's filing of its suit and Charter's Affirmative Defenses, an actual controversy has arisen and now exists between the parties as to whether or not Charter, has infringed the '792 Patent, either directly, contributorily or by inducement.

42. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, et. seq., Charter requests a declaration from the Court that Charter does not infringe any claim of the '792 Patent either directly, contributorily, or by inducement.

<div align="center">Count Two – Declaratory Relief Regarding Invalidity</div>

43. Based on USA Video's filing of its suit and Charter's Defenses, an actual controversy has arisen and now exists between the parties as to the validity of the claims of the '792 Patent.

44. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, et. seq., Charter requests a declaration from the Court that each of the claims of the '792 Patent is invalid because it fails to comply with the provisions of the patent laws, 35 U.S.C. § 100, et seq., including but not limited to one or more of 35 U.S.C. §§ 101, 102, 103, and/or 112.

45. This case is an exceptional case under 35 U.S.C. §285 such that Charter is entitled to recover its attorneys fees.

## PRAYER FOR RELIEF

WHEREFORE, Charter Communications, Inc. prays that this Court enter judgment in its favor and grant the following relief:

A.      A declaration that Charter Communications, Inc. has not directly or indirectly infringed any claim of the '792 Patent;

B.      A declaration that the '792 Patent is invalid;

C.      A declaration that the '792 Patent is unenforceable;

D.      A judgment that all claims against Charter Communications, Inc. be dismissed with prejudice;

E.      A judgment that USA Video Technology Corporation take nothing by way of its First Amended Complaint;

F.      An award to Charter Communications, Inc. of its costs and disbursements in this action, including reasonable attorneys' fees pursuant to 35 U.S.C. §§ 284 and 285 and other applicable law; and

G.      An award to Charter Communications, Inc. of such further relief as the Court may deem appropriate.

## JURY TRIAL DEMAND

Charter Communications, Inc. demands a trial by jury on all issues triable of right by jury.

Respectfully submitted,

THOMPSON COBURN LLP

/s/ Nicholas B. Clifford Jr.
Dean L. Franklin – Attorney-in-Charge
Nicholas B. Clifford Jr.
Matt A. Rosenberg
One US Bank Plaza
St. Louis, Missouri  63101
Telephone: (314) 552-6000
Facsimile: (314) 552-7000


Harry L. "Gil" Gillam, Jr.
Texas State Bar No. 07921800
Melissa Richards Smith
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

**Attorneys for Charter Communications, Inc.**


## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by first class mail on this the 13th day of September 2006.

_____/s/_____
Nicholas B. Clifford, Jr.

# UNITED STATES DISTRICT COURT
## Eastern District of Texas
### Marshall Division

**FILED**

3:00 p.m. September 20 2006
DAVID J. MALAND, CLERK
U.S. DISTRICT COURT
By _Beverly Aulbaugh_
DEPUTY

USA VIDEO TECHNOLOGY CORP.

V.

**NOTICE IN A CIVIL CASE**

TIME WARNER, INC., ET AL

Case Number: 2:06cv239

☒ TAKE NOTICE that a ***CASE MANAGEMENT CONFERENCE*** in this case has been set for the place, date and time set forth below:

| Place: UNITED STATES DISTRICT COURT<br>Jack Brooks Federal Building<br>300 Willow<br>Beaumont, TX 77704 | Room:<br>**U.S. District Courtroom #2**<br>**(SECOND FLOOR)**<br>***In Beaumont** |
|---|---|
| Before: **The Honorable Judge Ron Clark** | Date and Time: |

☒ TAKE NOTICE that the proceeding in this case has been continued/rescheduled as indicated below:

| Place:<br>See Above | Date and Time Previously Scheduled | Continued/Rescheduled, Date and Time |
|---|---|---|
| Before:<br>See Above | **October 31, 2006 at 2:00 pm** | **November 1, 2006 at 1:30 pm** |

**DAVID J. MALAND**
**U.S. Clerk of Court**

_Beverly Aulbaugh_

September 20, 2006
DATE

Beverly Aulbaugh
Courtroom Clerk

To:    Judge Ron Clark          Dean Franklin          Yiping Liao
       Edward Goldstein         Harry Gillam, Jr.
       Thomas Ward, Jr.         Matthew Rosenberg
       Thad Heartfield          Melissa Smith
       Candice Decaire          Nicholas Clifford, Jr.
       Leroy Toliver            Duane Nash
       Michael Jones            Matthew Lehr
       Mitchell Stockwell       Suong Nguyen

**Appendix K**

Revised: 12/3/03

FILED-CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**
**APPLICATION TO APPEAR PRO HAC VICE**

06 SEP 11  AM 10: 43

TX EASTERN-MARSHALL

1. This application is being made for the following: Case #____**06-cv-239-RHC**____
Style:__**USA Video Technology Corporation v. Time Warner Cable, Inc. et al.**__ BY____

2. Applicant is representing the following party/ies:
_____**Time Warner Cable Inc.**_____

3. Applicant was admitted to practice in __**CA**__ (state) on __**September 27, 1982**__ (date).

4. Applicant is in good standing and is otherwise eligible to practice law before this court.

5. Applicant is not currently suspended or disbarred in any other court.

6. Applicant has/has not had an application for admission to practice before another court denied (please circle appropriate language). If so, give complete information on a separate page.

7. Applicant has/has not ever had the privilege to practice before another court suspended (please circle). If so, give complete information on a separate page.

8. Applicant has/has not been disciplined by a court or Bar Association or committee thereof that would reflect unfavorably upon applicant's conduct, competency or fitness as a member of the Bar (please circle). If so, give complete information on a separate page.

9. Describe in detail on a separate page any charges, arrests or convictions for criminal offense(s) filed against you. Omit minor traffic offenses.

10. There are no pending grievances or criminal matters pending against the applicant.

11. Applicant has been admitted to practice in the following courts:
**USDC – C.D. Ca. (11/24/82); US Court of Appeals – Fed. Circuit (12/31/84); Supreme Court (07/15/94)**

12. Applicant has read and will comply with the Local Rules of the Eastern District of Texas, including Rule AT-3, the "Standards of Practice to be Observed by Attorneys."

13. Applicant has included the requisite $25 fee (see Local Rule AT-1(d)).

14. Applicant understands that he/she is being admitted for the limited purpose of appearing in the case specified above only.

**Application Oath:**
I, _____**JEFFREY M. OLSON**_____ do solemnly swear (or affirm) that the above information is true; that I will discharge the duties of attorney and counselor of this court faithfully; that I will demean myself uprightly under the law and the highest ethics of our profession; and that I will support and defend the Constitution of the United States.

Date __9/6/06__   Signature _____

Name (please print) ___Jeffrey M. Olson_____

State Bar Number ____104074_____

Firm Name: _____SIDLEY AUSTIN LLP_____

Address/P.O. Box: ___555 W. Fifth Street, Suite 4000_____

City/State/Zip: _____Los Angeles, California  90013_____

Telephone #: _____(213) 896-6000_____

Fax #: _____(213) 896-6600_____

E-mail Address: _____jolson@sidley.com_____

Secondary E-Mail Address: ___ngregg@sidley.com_____

Applicant is authorized to enter an appearance as counsel for the party/parties listed above. This application has been approved for the court this 11 day of ____Sept_____, 2006.

David J. Maland, Clerk

U.S. District Court, Eastern District of Texas

By _____

Deputy Clerk

2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA Video Technology Corporation, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Case No.2:06-cv-239 RHC |
| | § | |
| TIME WARNER CABLE, INC.; COX | § | |
| COMMUNICATIONS, INC.; CHARTER | § | |
| COMMUNICATIONS, INC.; | § | **JURY TRIAL DEMANDED** |
| COMCAST CABLE | § | |
| COMMUNICATIONS, LLC; | § | |
| COMCAST OF RICHARDSON, LP; | § | |
| COMCAST OF PLANO, LP; COMCAST | | |
| OF DALLAS, LP | | |
| | | |
| Defendants | | |

## USA VIDEO TECHNOLOGY CORP.'S REPLY TO COMCAST DEFENDANTS' ANSWER AND COUNTERCLAIMS

Plaintiff USA Video Technology Corporation ("USVO") responds to the numbered paragraphs of Comcast Defendants' Answer and Counterclaims ("Comcast Defendants") as follows:

1.      USVO is without knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 1 of Comcast Defendants' Counterclaims.

2.      USVO is without knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 2 of Comcast Defendants' Counterclaims.

3.      USVO is without knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 3 of Comcast Defendants' Counterclaims.

4.      USVO is without knowledge or information sufficient to form a belief as to the truth of the allegation of paragraph 4 of Comcast Defendants' Counterclaims.

5.      USVO admits the allegations in paragraph 5 of Comcast Defendants' Counterclaims.

6.      USVO admits the allegations in paragraph 6 of Comcast Defendants' Counterclaims.

7.      USVO admits the allegations in paragraph 7 of Comcast Defendants' Counterclaims.

8.      USVO admits Comcast Defendants/Counterclaim Plaintiffs restate and reallege the allegations set forth in paragraphs 1-7 but denies facts therein.

9.      USVO denies each and every allegation of paragraph 9 of Comcast Defendants' Counterclaims.

10.     USVO denies each and every allegation of paragraph 10 of Comcast Defendants' Counterclaims.

11.     USVO denies that Comcast Defendants are entitled to any of the relief listed in Comcast Defendants' prayer for relief.

Respectfully submitted,

Date:  September 27, 2006

/s/ Edward W. Goldstein
Edward W. Goldstein
Texas Bar. No. 08099500
GOLDSTEIN, FAUCETT & PREBEG, LLP
1177 West Loop South, Suite 400
Houston, TX  77027
Tel:  713/877-1515
Fax:  713/877-1737
E-mail:  egoldstein@gfiplaw.com

<div align="right">

T. John Ward, Jr.
State Bar No. 00794818
Law Office of T. John Ward, Jr., P.C.
P.O. Box 1231
Longview, Texas 75606-1231
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)
E-mail: jw@jwfirm.com

ATTORNEYS FOR PLAINTIFF

</div>

Of Counsel:

GOLDSTEIN, FAUCETT & PREBEG, L.L.P
Corby R. Vowell
Texas Bar No. 24031621
1177 West Loop South, Suite 400
Houston, Texas 77027
(713) 877-1515 – Telephone
(713) 877-1737 – Facsimile


### <u>CERTIFICATE OF SERVICE</u>

     The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on September 27, 2006. Any other counsel of record will be served by first class U.S. mail.


<div align="right">

/s/ Edward W. Goldstein_____
Edward W. Goldstein

</div>

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA Video Technology Corporation, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Case No.2:06-cv-239 RHC |
| | § | |
| TIME WARNER CABLE, INC.; COX | § | |
| COMMUNICATIONS, INC.; CHARTER | § | |
| COMMUNICATIONS, INC.; | § | **JURY TRIAL DEMANDED** |
| COMCAST CABLE | § | |
| COMMUNICATIONS, LLC; | § | |
| COMCAST OF RICHARDSON, LP; | § | |
| COMCAST OF PLANO, LP; COMCAST | | |
| OF DALLAS, LP | | |
| | | |
| Defendants | | |

**USA VIDEO TECHNOLOGY CORP.'S REPLY TO DEFENDANT CHARTER
COMMUNICATIONS, INC.'S ANSWER AND COUNTERCLAIMS**

Plaintiff USA Video Technology Corporation ("USVO") responds to the numbered

paragraphs of Defendant Charter Communications, Inc.'s ("Charter") counterclaims as follows:

33.    USVO admits that in paragraph 33 of its Counterclaims, Charter purports to

incorporate by reference the allegations contained in the preceding paragraphs.  USVO denies

any remaining allegations in paragraph 33 of Charter's Counterclaims.

34.    USVO is without knowledge or information sufficient to form a belief as to the

truth of the allegation of paragraph 34 of Charter's Counterclaims.

35.    USVO admits the allegations in paragraph 35 of Charter's Counterclaims.

36.    USVO admits the allegations in paragraph 36 of Charter's Counterclaims.

37.    USVO admits the allegations in paragraph 37 of Charter's Counterclaims.

38.    USVO admits the allegations in paragraph 38 of Charter's Counterclaims.

39.     USVO denies each and every allegation of paragraph 39 of Charter's Counterclaims.

40.     USVO denies each and every allegation of paragraph 40 of Charter's Counterclaims.

41.     USVO admits the allegations in paragraph 41 of Charter's Counterclaims.

42.     Regarding paragraph 42 of Charter's Counterclaims, USVO admits Charter requests a declaration from the Court but denies each and every other allegation contained therein.

43.     Regarding paragraph 43 of Charter's Counterclaims, USVO admits an actual controversy has arisen but denies each and every other allegation contained therein.

44.     Regarding paragraph 44 of Charter's Counterclaims, USVO admits Charter requests a declaration from the Court but denies each and every other allegation contained therein.

45.     USVO admits the allegations in paragraph 45 of Charter's Counterclaims.

46.     USVO denies that Charter is entitled to any of the relief listed in Charter's prayer for relief.

                                        Respectfully submitted,

Date:  September 27, 2006               /s/ Edward W. Goldstein
                                        Edward W. Goldstein
                                        Texas Bar. No. 08099500
                                        GOLDSTEIN, FAUCETT & PREBEG, LLP
                                        1177 West Loop South, Suite 400
                                        Houston, TX  77027
                                        Tel:  713/877-1515
                                        Fax:  713/877-1737
                                        E-mail:  egoldstein@gfiplaw.com

T. John Ward, Jr.
State Bar No. 00794818
Law Office of T. John Ward, Jr., P.C.
P.O. Box 1231
Longview, Texas 75606-1231
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)
E-mail: jw@jwfirm.com

ATTORNEYS FOR PLAINTIFF

Of Counsel:

GOLDSTEIN, FAUCETT & PREBEG, L.L.P
Corby R. Vowell
Texas Bar No. 24031621
1177 West Loop South, Suite 400
Houston, Texas 77027
(713) 877-1515 – Telephone
(713) 877-1737 – Facsimile

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on September 27, 2006. Any other counsel of record will be served by first class U.S. mail.

/s/ Edward W. Goldstein_____
Edward W. Goldstein

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| USA Video Technology Corporation | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Case No. 2:06-cv-00239-RHC |
| | § | |
| Time Warner Inc., Cox Communications, | § | Judge: Ron Clark |
| Inc.; Charter Communications, Inc.; Comcast | § | |
| Cable Communications, LLC; Comcast of | § | **JURY TRIAL DEMANDED** |
| Richardson, LP; Comcast of Plano, LP and | § | |
| Comcast of Dallas, LP, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## NOTICE OF APPEARANCE OF MICHAEL J. TRUNCALE

COMES NOW Defendants/Counter Claimants Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP, and hereby notifies the Court and all parties of record that, in addition to the attorneys already representing them, Michael J. Truncale, State Bar Number 20258125, of the Law Office of Orgain, Bell & Tucker, LLP, P.O. Box 1751, Beaumont, Texas 77704-1751, (409) 838-6412, will be appearing as an attorney of record on their behalf in the above-styled and numbered cause.

Respectfully submitted,

**ORGAIN, BELL & TUCKER, L.L.P.**

By: _____

Michael J. Truncale
State Bar No. 20258125
P. O. Box 1751
Beaumont, Texas 77704-1751
(409) 838-6412 Telephone
(409) 951-7318 Facsimile
E-mail: mjt@obt.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the above and foregoing document was furnished to all counsel, on this the 2nd day of October 2006, by e-mail via the Eastern District of Texas ECF System.

Michael J. Truncale

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | § § § § | |
| Plaintiff | § | |
| v. | § § | Case No. 2:06-cv-00239-RHC |
| TIME WARNER CABLE, INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP | § § § § § § § § § | Honorable Ron Clark  JURY TRIAL DEMANDED |
| Defendants | § § | |

## JOINT RULE 26(F) CONFERENCE REPORT

Pursuant to the Court's Order to Conduct Rule 26(f) Conference and Federal Rules of Civil Procedure 16 and 26, Plaintiff USA Video Technology and Defendants Time Warner Cable, Inc.; Cox Communications, Inc.; Charter Communications, Inc; Comcast Cable Communications, LLC; Comcast of Richardson, LP; Comcast of Plano, LP; and Comcast of Dallas, LP[1] (collectively "Defendants") respectfully submit this Rule 26(f) conference report:

---

[1] As stated in The Comcast Defendants' Answer, Affirmative Defenses And Counterclaim to Plaintiff's First Amended Complaint, filed on September 13, 2006 as docket entry 55, Comcast of Dallas, LP is now listed as "TimeWarner Cable of Dallas, LP," and Comcast of Richardson, LP and Comcast of Plano, LP are listed as inactive. We are in the process of confirming the status of these entities, and have informed counsel for Plaintiff USA Video.

1.   **Suggested modifications of the proposed deadlines:**

<u>**Proposed Deadlines**</u>

Parties have discussed and agreed to the following deadlines in conjunction with the

E.D. Tex. Patent Rules.

| | |
|---|---|
| **November 13, 2006** | P.R. 3-1 Disclosure of Asserted Claims and Preliminary Infringement Contentions Due |
| **December 6, 2006** | Join Additional Parties |
| **December 15, 2006** | The parties will propose a mediator if the parties believe mediation is appropriate by this date. If the parties choose the mediator, they are to inform the Court by letter the name and address of the mediator. |
| **December 20, 2006** | Privilege Logs to be exchanged by parties for discovery provided as of that date (or a letter to the Court stating that there are no disputes as to claims of privileged documents). |
| **December 20, 2006** | To the extent not already required to be disclosed, exchange Mandatory Disclosures, including Rule 26(a)(1) disclosures. |
| **December 28, 2006** | P.R. 3-3 Preliminary Invalidity Contentions (and P.R. 3-4 document production) to be served |
| **January 8, 2007** | Parties to exchange proposed terms and claim elements for construction (P.R. 4-1). |
| **January 29, 2007** | Parties to exchange preliminary proposed claim construction and extrinsic evidence supporting same (P.R. 4-2). |
| **January 31, 2007** | Plaintiffs Final Amended Pleadings **(It is not necessary to file a Motion for** |

|                                      | **Leave to Amend before the deadline to amend pleadings except to the extent the amendment seeks to add a new patent in suit).** |
|--------------------------------------|---|
| **February 27, 2007**                | Joint Claim Construction and Prehearing Statement to be filed (P.R. 4-3). Provide an estimate of how many pages are needed to brief the disputed claims. |
| **February 21, 2007**                | Respond to Amended Pleadings |
| **March 26, 2007**                   | Completion date for discovery on claim construction (P.R. 4-4). |
| **April 13, 2007**                   | Opening claim construction brief (P.R. 4-5(a)). |
| **April 27, 2007**                   | Responsive claim construction brief (P.R. 4-5(b)). |
| **May 4, 2007**                      | Reply claim construction brief (P.R. 4-5(c)). |
| **August 15, 2007**                  | Parties to file joint claim construction and chart (P.R. 4-5(d)). Parties shall work together to agree on as many claim terms as possible |
| **August 15, 2007**                  | Submit technology synopsis (both hard copy and disk). |
| **August 27, 2007**                  | Possible tutorial |
| **August 29, 2007 at 10:00 a.m.**    | Claim construction hearing |
| **September 19, 2007**               | Provide Initial Mandatory Disclosures of information directed solely to damages. Deadline for Initial Mandatory Disclosure of all persons, documents, data compilations and tangible things, which are relevant to a claim or defense of any party and which has not |

|  | previously been disclosed. This deadline is not an extension of earlier deadlines set out in this court's order or the Patent Rules, nor an excuse to delay disclosure of information. It is a "catchall" deadline for provision of all remaining information which may be relevant to a claim or defense of any party at trial. |
|---|---|
| **3 weeks after claim construction ruling, or October 24, 2007, whichever is earlier** | Party with the burden of proof to Designate Expert Witnesses other than claims construction experts and provide their expert witness report, to include for ALL experts all information set out in Rule 26(2)(B) |
| **November 14, 2007** | Comply with P.R. 3-8. (Designation of Willfulness Opinions). |
| **3 weeks after Initial Expert Reports are due, or November 14, 2007, whichever is earlier** | Designate Rebuttal Expert Witnesses other than claims construction experts and provide rebuttal expert witness reports due, to include for ALL experts all information set out in Rule 26(2)(B). |
| **November 28, 2007** | File Dispositive Motions and any other motions that may require a hearing, Regardless of how many dispositive motions a party files, each party is limited to a total of sixty pages for such motions. Each individual motion shall comply with Local Rule CV-7_ **Responses to motions shall be due in accordance with Local Rule CV-7(e).** |
| **December 12, 2007** | **Deadline for objections to any expert, including Daubert motions,. Such objections and motions are limited to ten pages each.** |
| **November 28, 2007** | Discovery Deadline. All discovery must be served in time to be completed by this date. |
| **December 31, 2007** | Notice of intent to offer certified records |
| **December 31, 2007** | Counsel and unrepresented parties are each responsible for contacting opposing counsel and unrepresented parties to determine how they will prepare the Joint Final Pretrial Order |

*(See* Local Rule CV-I6(b) and Proposed Jury Instructions and Verdict Form (or Proposed Findings of Fact and  Conclusions of Law in non-jury cases).

**4 weeks before docket call**      Video Deposition Designation due. Each party who proposes to offer a deposition by video shall serve on all other parties a disclosure identifying the line and page numbers to be offered. All other parties will have seven calendar days to serve a response with any objections and requesting cross examination line and page numbers to be included. Counsel must consult on any objections and only those which can not be resolved shall be presented to the court. The party who filed the initial Video Deposition Designation is responsible for preparation of the final edited video in accordance with all parties designations and the court's rulings on objections

**January 7, 2008**      Motions in limine due
File Joint Final Pretrial Order. See Local Rules Appendix D (Obtain form for Exhibit List from District Clerk's Office, or create an Exhibit List form that mirrors the District Clerk's form). Exchange Exhibits and deliver copies to the court. At this date, all that is required to be submitted to the court is a hyperlinked exhibit list on disk (2 copies) and no hard copies

**January 21, 2008**      Response to motions in limine due
File objections to witnesses, deposition extracts, and exhibits, listed in pre-trial order. (This does not *extend* the deadline to object to expert witnesses). If numerous objections are filed the court may set a hearing prior to docket call. File Proposed Jury Instructions/Form of Verdict (or Proposed Findings of Fact and Conclusions of Law).

**February 4, 2008**                    Docket call and Final Pretrial at 9:00 a.m.
                                        Date parties should be prepared to try case.
                                        Provide court with two copies of most
                                        updated Exhibit list. Absent agreement of
                                        the parties, this should not have exhibits
                                        which were not listed in the Final Pre-
                                        Order, but may have some deletions
                                        depending on rulings on objections. At this
                                        date, the parties should be prepared to give
                                        the Deputy Clerk one hard copy of the
                                        exhibits.

**February 5, 2008**                    9:00 a.m. Jury Selection and Trial

**In accordance with the Court's Order Governing Procedures the parties will now address:**

  a. **The need for any specific limits on discovery relating to claim construction, including depositions of witnesses, including expert witnesses**:

    The parties agree that the limitations in the Court's Order Governing Proceedings dated August 30, 2006 be modified to permit up to 70 hours of deposition per side, and that the depositions of experts shall not be counted against this hour limit. The parties agree that up to 12 hours shall be permitted for the deposition of Elbert Tindell (one of the named inventors of the '792 patent).

  b. The parties agree that a **Claim Construction Pre-hearing Conference** should be held on Friday, July 27, 2007.

2.  The parties have addressed **mediation** in the schedule above. They expect to

6

be able to more fully address the topic by December 15, 2006.

3.    **What changes, if any, should be made to the limitations on discovery imposed by the rules, including the number of depositions and interrogatories.**

The parties agree that the limitations in the Court's Order Governing Proceedings dated August 30, 2006 be modified to permit up to 70 hours of deposition per side, and that the depositions of experts shall not be counted against this hour limit. The parties agree that up to 12 hours shall be permitted for the deposition of Elbert Tindell (one of the named inventors of the '792 patent).

4.    **The identities of persons expected to be deposed.**

a.    Plaintiff intends to take a 30(b)(6) deposition of each Defendant. Plaintiff may seek to depose other fact or expert witnesses based on the information obtained in discovery.

b.    Defendants intend to take a 30(b)(6) deposition of Plaintiff and the following fact witnesses based on information currently available to them: Elbert Tindell, Kenneth Hill, Edwin Molina, Anton Drescher, Gordon Lee, Andrew Huffman, Frank Bowden, Mary Elizabeth Costner, Nancy Hanson. Defendants may seek to depose other fact or expert witnesses based on the information obtained in discovery.

5.    **Any issues related to disclosure or discovery of electronically stored information, including the form or forms in which it should be produced.**

The parties currently do not have any such issues.

6. **Any issues related to preserving discoverable information, including whether a Preservation Order is needed to protect any documents and/or electronically stored information.**

The parties do not believe that a Preservation Order is necessary in this case.

7. **Whether any orders should be entered by the Court pursuant to Fed. R. Civ. P. 26(c), Fed. R. Civ. P. 16(B) or Fed. R. Civ. P. 16(c).**

The parties' agreed proposed protective order regarding confidential materials is attached to this report as Appendix A.

8. **Estimated trial time.**

    a.   Plaintiff estimates that 10 days of trial time is sufficient.

    b.  Defendants estimate that up to 20 days of trial time may be necessary. Because there are at least four different defendant groups with different products and services that are alleged to have infringed the patent in suit, Defendants respectfully submit that the trial will require more time to provide each defendant group to fully present the defense specific to each. Trial may also have to be bifurcated as to each defendant group.

9. **The names of the attorneys who will appear on behalf of the parties at the management conference (the appearing attorney must be an attorney of record and have the full authority to bind the client).**

    a.   Plaintiff:    Ed Goldstein
                             Corby Vowell
                             Alisa Lipski
                             Goldstein, Faucett & Prebeg

T. John Ward, Jr.
Law Office of T. John Ward, Jr., P.C.

b. Defendants

| | | |
|---|---|---|
| Charter Communications, Inc. – | | Dean L. Franklin<br>Thompson Coburn LLP |
| Time Warner Cable, Inc. | - | Jeffrey M. Olson<br>Sidley Austin, LLP |
| | | Thad Heartfield<br>Law Offices of J. Thad Heartfield |
| Comcast Cable<br>Communications, LLC | | Matthew B. Lehr<br>Davis Polk & Wardwell |
| | | Michael J. Truncale<br>Orgain, Bell & Tucker, LLP |
| Cox Communications, Inc. | - | Mitch Stockwell<br>Kilpatrick Stockton LLP |

**10.    Any other matters counsel deem appropriate for inclusion in the joint conference report.**

1) Rule 26(f) Conference

The Rule 26(f) conference was held on September 15, 2006 and was attended by the following parties:

**Counsel for Plaintiff:**    Ed Goldstein
Corby Vowell
Alisa Lipski
Goldstein, Faucett & Prebeg

T. John Ward, Jr.
Law Office of T. John Ward, Jr., P.C.

**Counsel for Defendants:**

| | |
|---|---|
| Charter Communications, Inc. – | Dean L. Franklin<br>Nicholas B. Clifford<br>Matt Rosenberg<br>Thompson Coburn LLP |
| Time Warner Cable, Inc.        - | Thad Heartfield<br>Law Offices of J. Thad Heartfield |
| | Samuel N. Tiu<br>Sidley Austin, LLP |
| Comcast Cable<br>Communications, LLC | Suong T. Nguyen<br>Duane D. Nash<br>Yiping Liao<br>Davis Polk & Wardwell |
| | Michael J. Truncale<br>Orgain, Bell & Tucker, LLP |

2) Related Cases

Plaintiff submits that the following cases are related cases; Defendants disagree that these are "related cases" because they are venued in a different district:

*Coxcom, Inc. v. USA Video Technology Corp.*
C. A. No. 1:06-cv-00394-KAJ

*Time Warner Cable, Inc. v. USA Video Technology Corp.*
C. A. No. 1:06-cv-00387-KHJ

*Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP v. USA Video Technology Corp.*
Case No. 1:06-cv-00407-UNA

**3)  Consent to Trial before a Magistrate Judge**

The parties do not consent to having the proceedings referred to a magistrate judge.

**4)  Jury Demand**

A proper jury demand has been made.

**5)  Conference pursuant to Fed. R. Civ. Proc. 16(b)**

The parties believe that a conference with the Court prior to the entry of the Scheduling Order would be appropriate.

Date: September 29, 2006          Respectfully submitted,

*Counsel for Plaintiff*          *Counsel for Defendant*
*USA Video Technology Corporation*    *Time Warner, Inc.*

GOLDSTEIN FAUCETT & PREBEG    SIDLEY AUSTIN, LLP


*Ed Goldstein, by permission MJT*    *Jeffrey Olson, by permission MJT*
Edward W. Goldstein          Jeffrey M. Olson
1177 West Loop South, Suite 400    555 West 5th Street
Houston, Texas 77027        Los Angeles, CA 90013
(713) 877-1515 Telephone      (213) 896-6000
(713)877-1145 Facsimile       (213) 896-6600

OFFICE OF T. JOHN WARD, JR. PC    OFFICE OF THAD HEARTFIELD


*T. John Ward, Jr. by permission MJT*  *Thad Heartfield by permission MJT*
Thomas John Ward, Jr.        Thad Heartfield
P.O. Box 1231            2195 Dowlen Road
Longview, TX 75606         Beaumont, TX 77706
(903) 757-6400 Telephone      (409) 866-3318 Telephone
(903) 757-2323 Facsimile       (409) 866-5789 Facsimile

*Counsel for Defendant*          *Counsel for Defendant*
*Cox Communications, Inc.*       *Charter Communications, Inc.*


KILPATRICK STOCKTON, LLP    THOMPSON COBURN


*Buddy Toliver, by permission MJT*  *Nick Clifford, by permission MJT*
Candice C. Decaire         Dean L. Franklin – Attorney-in-Charge
Leroy M. Toliver          Nicholas B. Clifford, Jr.
Mitchell G. Stockwell       Matthew A. Rosenberg
1100 Peachtree St., Suite 2800    One US Bank Plaza
Atlanta, GA 30309         St. Louis, MO 63101
(404) 815-6033 Telephone      (314) 552-6136 Telephone
(404) 541-3218          (314) 552-7136 Facsimile

POTTER MINTON, PC

GILLAM & SMITH, LLP

*Mike Jones, by permission MJ*

Michael Edwin Jones
110 N. College, Suite 500
P.O. Box 359
Tyler, Texas 75710
(903) 597-8311 Telephone
(903) 593-0846

*Gil Gillam, by permission MJ*

Harry L. "Gil" Gillam, Jr.
Melissa Richards Smith
303 South Washington Avenue
Marshall, TX 75670
(903) 934-8450 Telephone
(903) 934-9257 Facsimile

*Counsel for Defendant*
*Comcast Cable Communications, LLC*
*Comcast of Richardson, LP*
*Comcast of Plano, LP*
*Comcast of Dallas, LP*

GILLAM & SMITH, LLP

OF COUNSEL:
DAVIS POLK & WARDWELL

*Gil Gillam, by permission MJ*

Harry L. Gillam, Jr. – Lead Attorney
303 South Washington Avenue
Marshall, TX 75670
(903) 934-8450 Telephone
(903) 934-9257 Facsimile

*Suong T. Nguygen, by permission MJ*

Matthew B. Lehr
Suong T. Nguyen
Duane D. Nash
Yiping R. Liao
1600 El Camino Real
Menlo Park, CA 94025
(650) 752-2000 Telephone
(650) 752-2111 Facsimile

ORGAIN, BELL & TUCKER, L.L.P.

*Michael J. Truncale*

Michael J. Truncale
P.O. Box 1751
Beaumont, Texas 77704
(409) 838-6412 Telephone
(409) 951-7318

# ATTACHMENT "A"

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

---

USA Video Technology Corporation

        Plaintiff,

vs.

Time Warner Cable, Inc., Cox Communications, Inc.; Charter Communications, Inc.; Comcast Cable Communications, LLC; Comcast of Richardson, LP; Comcast of Plano, LP and Comcast of Dallas, LP,

        Defendants.

Case No. 2:06-cv-00239-RHC

Judge: Ron Clark

**JURY TRIAL DEMANDED**

## PROTECTIVE ORDER

Upon motion for Protective Order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure with respect to information provided in discovery,

It is hereby ORDERED that the following Protective Order be entered:

1.    This Protective Order shall govern the handling of any information produced or disclosed by any party or non-party (the "Producing Party") in this action to any other party (the "Receiving Party") in this action, including, without limitation, any document (whether in hard copy or computer readable form), thing, deposition testimony, deposition exhibit, interrogatory responses, responses to request for admission, or other information provided in discovery in this action (all such information shall hereinafter be referred to as "Discovery Material").

2.    All Discovery Material designated in the course of this litigation as "Confidential" or "Confidential – Attorney's Eyes Only," as these terms are defined in Paragraph 3, shall be used only for the purpose of preparation and trial of this litigation, and any appeal

there from, and shall not be used, directly or indirectly, for any other purpose whatsoever, and shall not be disclosed to any person, corporation, partnership, joint venture, association, joint-stock company, limited liability company, trust, unincorporated organization, governmental body or other entity (collectively "person") except in accordance with the terms hereof.

## DEFINITIONS

3.      "Confidential" shall refer to Discovery Material that contains trade secrets or other confidential or proprietary research, development, technical, financial, commercial or business information.  "Confidential – Attorney's Eyes Only" shall refer to Discovery Material that contain or are of a highly proprietary or competitively sensitive business or technical nature. Such information shall only be disclosed to Qualified Persons designated according to Paragraph 4 below.  "Confidential" or "Confidential – Attorney's Eyes Only" shall not include any Discovery Material that the Receiving Party demonstrates:

a.      is in the public domain at the time of disclosure, including materials that on their face show that they have been submitted to any government entity without a request for confidential treatment;

b.      becomes part of the public domain through no fault of the Receiving Party, as evidenced by a written document; or

c.      was in the Receiving Party's possession at the time of disclosure from the Disclosing party, as evidenced by a written document; or

d.      the Receiving Party lawfully receives at a later date from a third party without restriction as to disclosure, provided such third party has the right to make the disclosure to the Receiving Party.

4.    With respect to Discovery Material designated as "Confidential," "Qualified Persons" means:

a.    Members and employees of the firm or firms of outside counsel who have entered an appearance, and, where appropriate, have been admitted *pro hac vice* in this action ("counsel of record");

b.    Court personnel, including stenographic, video reporters and/or translators engaged in such proceedings as are necessarily incident to the preparation or trial of this action, as well as personnel of any other court where disclosure is necessary in connection with a motion or other matter relating to this case;

c.    Current officers and employees of the parties;

d.    Two in-house attorneys designated by each party prior to such disclosure provided that each such attorney designee shall be provided information solely as reasonably required to consult with outside counsel regarding the oversight of the litigation and the resolution thereof;

e.    Any independent expert or consultant that are neither employed by or consulting for either party and are engaged by any attorney described in Paragraph 4(a) solely to assist in this litigation, including their administrative and clerical personnel, provided that disclosure to each such person shall be made only on the following conditions:

1)    each consultant/expert signs a statement in the form attached hereto as Exhibit A;

2)    each consultant/expert provides to outside counsel of the Producing Party such consultant/expert's (i) name, (ii) address, (iii) resume or curriculum vitae, and (iv) information on prior and current employment, affiliations, and consultancies (including

any cases in which he or she has testified at trial or by deposition within the preceding four years);

        3)     there is no objection by a Producing Party in writing served on all parties by facsimile, overnight mail or in person within ten (10) business days of the foregoing disclosures, which writing shall specify the reasons for the objection.  In the case of an objection the parties must confer as soon as reasonably possible to resolve the objection.  If the parties are unable to resolve the objection, the Receiving Party may seek relief from the Court with reasonable notice to the Producing Party.  No such outside expert or consultant as to whom timely objection is made shall receive designated confidential information unless and until all such objections are resolved.

        f.     Any person who authored and/or was an identified original recipient of the particular material sought to be disclosed to that person;

        g.     Service contractors, including but not limited to document copy services and graphics consultants, who have signed a statement in the form attached as Exhibit A hereto; and

        h.     Any other person agreed to by the parties in writing who has signed a statement in the form attached as Exhibit A hereto.

With respect to Discovery Materials designated "Confidential – Attorney's Eyes Only," "Qualified Persons" shall mean those persons under Paragraph 4(a), (b), (d), (e), (f), (g) and (h). The parties have agreed that the following in-house counsel designated by the parties have been approved and cleared under this Protective Order in accordance with the requirements of Paragraph 4(d):

       1.        Andrew Huffman, Esq. designated by Plaintiff,

2.        Andrew T. Block, Esq. and Jeffrey Zimmerman, Esq.. designated by Time Warner Cable, Inc.

3.        Mark L. Brown, Esq. and Larry Christopher, Esq. designated by Charter Communications, Inc.

4.        Lee Zieroth, Esq. and Michael Aronoff, Esq. designated by Comcast Cable Communications, LLC.

5.        Marcus Delgado, Esq. And Kristen Weathersby, Esq. designated by Cox Communications, Inc.

## DESIGNATION AS "CONFIDENTIAL" OR "CONFIDENTIAL – ATTORNEY'S EYES ONLY"

5.        The designation as "Confidential" or "Confidential – Attorney's Eyes Only" for purposes of this Protective Order shall be made in the following manner by the Producing Party:

a.        In the case of Discovery Material, by affixing, legibly, the legend "Confidential" or "Confidential – Attorney's Eyes Only" to each page containing confidential information.

b.        In the case of depositions or other pretrial or trial testimony ("Transcripts"), (i) by indicating on the record at the deposition or hearing that the testimony is "Confidential" or "Confidential – Attorney's Eyes Only" and is subject to the provision of this Order; or (ii) by notifying all parties in writing within thirty (30) days of receipt of the Transcript, of the specific pages and lines of the Transcript that should be treated as "Confidential" or "Confidential – Attorney's Eyes Only" thereafter.  Each party shall thereafter place a notice on the face of the Transcript, and each copy thereof in its possession, custody or control, identifying portions of the Transcript as "Confidential" or "Confidential – Attorney's

Eyes Only" as the case may be. All Transcripts shall be treated as "Confidential – Attorney's Eyes only" for a period of thirty (30) days after the receipt of the Transcript.

      c.     Materials designated as "Confidential" or "Confidential – Attorney's Eyes Only" as hereinafter be referred to a Confidential Material.

     6.     Each Receiving Party's counsel of record shall maintain a log of all copies of "Confidential" or "Confidential – Attorney's Eyes Only" documents that are delivered to any one or more Qualified Persons identified in Paragraph 4(c) through (h) above.

     7.     To the extent that Confidential Material or information obtained there from is used in the taking of depositions or used as exhibits at trial, such documents or information shall remain subject to the provisions of this Order, along with the Transcript pages dealing with the Confidential Material.

     8.     The recipient of any Confidential Material that is provided under this Order shall maintain such materials in a secure and safe area to which access is limited, or otherwise use available methods to restrict access, to Qualified Persons only, and shall exercise the same standard of due and proper care with respect to the storage, custody, use and/or dissemination of such information as is exercised by the recipient with respect to its own proprietary information. Confidential Material shall not be copied, reproduced, summarized or abstracted, except to the extent that such copying, reproduction, summarization or abstraction is reasonably necessary for the conduct of this litigation. All such copies, reproductions, summaries and abstractions shall be subject to the terms of the Order, and labeled in the same manner as the designated material on which they are based.

## CHALLENGES TO DESIGNATIONS

9. At any time after the receipt of any Discovery Materials or Transcripts designated "Confidential" or "Confidential – Attorney's Eyes Only," counsel for a Receiving Party may challenge the designation by providing written notice of such challenge to counsel for the Producing Party. Said notice shall clearly identify the Discovery Material, Transcript, or portions thereof, that the challenging party claims should not be afforded confidential treatment, or afforded a lesser degree of confidential designation, and the reasons supporting the challenging party's claim. After such notice is made, the parties shall confer and in good faith attempt to resolve their differences. If the parties are unable to agree as to whether the confidential designation is appropriate, counsel for the Receiving Party must move the Court for appropriate relief with reasonable notice to opposing counsel. The party seeking a designation as "Confidential" or "Confidential – Attorney's Eyes Only" shall have the burden of establishing that any Discovery Material or Transcript in dispute is entitled to protection from unrestricted disclosure and to such designation. The party asserting that the information is not confidential because of the reasons listed in Paragraph 3 shall have the burden of making a prima facie showing in support of its position. All Discovery Materials and Transcripts that a party designates as "Confidential" or "Confidential – Attorney's Eyes Only" shall be accorded such status pursuant to the terms of this Protective Order until and unless the parties formally agree in writing to the contrary or a determination is made by the Court as to the confidential status.

## **FILING UNDER SEAL**

10. All documents of any nature, including briefs, containing information that is Confidential Material, which are filed with the Court, may be filed under seal using the Court's CM/ECF system. Documents filed under seal must comply with the requirements of Eastern District Local Rules CV-5(a), CV-7, and CV-5(a)(9). The parties are not required to file

additional Motions to Seal Documents, and sealed e-filings of Confidential Material in this case are hereby authorized without necessity of further motion or leave of Court. There shall be, attached to the Confidential Material filed under seal, a cover sheet including the caption of the case, the signature of counsel of record for the party filing the document, and the following titles:

## CONFIDENTIAL INFORMATION ENCLOSED – FILED UNDER SEAL

11.     Any documents filed under seal as provided in this paragraph shall be disclosed by the clerk only to counsel of record without further order of the Court. This does not limit other access to such documents as otherwise provided in the applicable Protective Order.

## INADVERTENT PRODUCTION AND DISCLOSURE

12.     A Producing Party that inadvertently produces Discovery Material without designation as "Confidential" or "Confidential – Attorney's Eyes Only" may retroactively designate the Discovery Material and "Confidential" or Confidential – Attorney's Eyes Only" by notifying the Receiving Party. Notification shall be in writing to the Receiving Party, identifying the Discovery Material by Bates-number(s) and date of production and by sending replacement documents with the appropriate designation to a Receiving Party. Notification shall be provided reasonably promptly after the Producing Party first realizes that the Discovery Material was produced without or with incorrect designation. The Discovery Material designated through the notification procedure set forth immediately above shall be deemed "Confidential: or "Confidential – Attorney's Eyes Only" retroactively to the date of production. If, in the interim between production and notification, the subject materials have been provided to persons other than Qualified Persons, the Receiving Party shall reasonably promptly notify the Producing Party as to which materials have been disclosed, and comply with the provisions for inadvertent disclosure as set forth in Paragraph 13, below.

13.     A party's inadvertent production of Discovery Material in this action for another party's inspection or copying shall not in itself be deemed to waive any claim of attorney-client communication privilege or attorney work-product protection that might exist with respect to such Discovery Material or other documents or communications, written or oral, including, without limitation, other communications referred to in the Discovery Materials produced. Furthermore, a party's production shall not be deemed a waiver of any party's right to object for any reason to the admission of any document or thing into evidence, nor shall the production be deemed an admission of its admissibility.  Nothing in this paragraph shall prejudice the right of any party to seek discovery of communications, documents and things as to which a claim of attorney-client communication privilege or attorney work-product has been made.

14.     In the event of inadvertent disclosure of Confidential Materials to a person that is not a Qualified Person, the party that inadvertently discloses such information or that is in a position to prevent, address or otherwise remedy the inadvertent disclosure, shall promptly take all practical steps to retrieve the Confidential Material and prevent its further disclosure.  The party that inadvertently disclosed such information shall also promptly notify the party designated the Confidential Materials of the inadvertent disclosure and the steps being taken to rectify the disclosure.

## RETURN OF CONFIDENTIAL MATERIAL AFTER TERMINATION

15.     After termination of this litigation, including any appeals, the provisions of this Order shall continue to be  binding, except with respect to those documents and information that become a matter of public record.  This Court retains and shall have jurisdiction over the Parties and recipients of the Confidential Material for enforcement of the provisions of this Order following termination of this litigation.

16.     Within ninety (90) days after the later of (i) entry of final judgment in or settlement of this proceeding and (ii) the time for any and all appeals has expired, the Plaintiff and its counsel shall return to Defendant or its counsel all Confidential Material provided by Defendant and all copies thereof, and the Defendant and its counsel shall return to Plaintiff or its counsel all Confidential Material provided by Plaintiff and all copies thereof.  Alternatively, the parties and their respective counsel may agree in writing on appropriate alternative methods for the destruction of such documents.  Counsel for each party may retain one archival copy of all discovery response; deposition exhibits; exhibits used in proceedings before the Court; documents included in submissions to the Court; and Confidential Material to the extent it is included in such papers or reflected in that counsel of record's work product.

## OTHER PROCEEDINGS

17.     By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case.  Any person or party subject to this order who becomes subject to a motion to disclose another party's information designated "Confidential" or "Confidential – Attorney's Eyes Only" pursuant to this order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

## GENERAL ADVICE AND DISCLOSURE BY COUNSEL

18.     This Protective Order shall not bar any attorney for the parties from rendering advice to his or her client with respect to this action.

## DUTY TO COMPLY WITH PROTECTIVE ORDER

19.     Any party designating any person as a Qualified Person shall have the duty to reasonably ensure that such person observes the terms of this Protective Order and shall be responsible upon breach of such duty for the failure of any such person to observe the terms of this Protective Order.

20.     Unless otherwise agreed to in writing by the parties or ordered by the Court, all proceedings involving or relating to documents or any other information shall be subject to the provisions of this Order.

21.     The parties may, by stipulation, provide for exceptions to this Order and any party may seek an order of this Court modifying this Protective Order.


Dated this ____ day of October 2006      _____

                                            **Honorable Ron Clark**
                                            United States District Court


AGREED TO AS TO FORM AND CONTENT:

*Counsel for Plaintiff*                    *Counsel for Defendant*
*USA Video Technology Corporation*         *Time Warner, Inc.*

GOLDSTEIN FAUCETT & PREBEG        SIDLEY AUSTIN, LLP


_____        _____
Edward W. Goldstein                      Jeffrey M. Olson
1177 West Loop South, Suite 400          555 West 5th Street
Houston, Texas 77027                     Los Angeles, CA 90013
(713) 877-1515 Telephone                 (213) 896-6000
(713)877-1145 Facsimile                  (213) 896-6600


OFFICE OF T. JOHN WARD, JR. PC        OFFICE OF THAD HEARTFIELD

Thomas John Ward, Jr.
P.O. Box 1231
Longview, TX 75606
(903) 757-6400 Telephone
(903) 757-2323 Facsimile

*Counsel for Defendant*
*Cox Communications, Inc.*

KILPATRICK STOCKTON, LLP

Candice C. Decaire
Leroy M. Toliver
Mitchell G. Stockwell
1100 Peachtree St., Suite 2800
Atlanta, GA 30309
(404) 815-6033 Telephone
(404) 541-3218

POTTER MINTON, PC
Michael Edwin Jones
110 N. College, Suite 500
P.O. Box 359
Tyler, Texas 75710
(903) 597-8311 Telephone
(903) 593-0846

Thad Heartfield
2195 Dowlen Road
Beaumont, TX 77706
(409) 866-3318 Telephone
(409) 866-5789 Facsimile

*Counsel for Defendant*
*Charter Communications, Inc.*

THOMPSON COBURN

Dean L. Franklin – Attorney-in-Charge
Nicholas B. Clifford, Jr.
Matthew A. Rosenberg
One US Bank Plaza
St. Louis, MO 63101
(314) 552-6136 Telephone
(314) 552-7136 Facsimile

GILLAM & SMITH, LLP
Harry L. "Gil" Gillam, Jr.
Melissa Richards Smith
303 South Washington Avenue
Marshall, TX 75670
(903) 934-8450 Telephone
(903) 934-9257 Facsimile

*Counsel for Defendant*
*Comcast Cable Communications, LLC*
*Comcast of Richardson, LP*
*Comcast of Plano, LP*
*Comcast of Dallas, LP*

GILLAM & SMITH, LLP

OF COUNSEL:
DAVIS POLK & WARDWELL

_____

Harry L. Gillam, Jr. – Lead Attorney
303 South Washington Avenue
Marshall, TX 75670
(903) 934-8450 Telephone
(903) 934-9257 Facsimile

ORGAIN, BELL & TUCKER, L.L.P.

_____

Matthew B. Lehr
Suong T. Nguyen
Duane D. Nash
Yiping R. Liao
1600 El Camino Real
Menlo Park, CA 94025
(650) 752-2000 Telephone
(650) 752-2111 Facsimile

_____

Michael J. Truncale
P.O. Box 1751
Beaumont, Texas 77704
(409) 838-6412 Telephone
(409) 951-7318 Facsimile

## EXHIBIT A

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

_____

| | |
|---|---|
| USA Video Technology Corporation | |
| Plaintiff, | Case No. 2:06-cv-00239-RHC |
| vs. | Judge: Ron Clark |
| Time Warner Inc., Cox Communications, Inc.; Charter Communications, Inc.; Comcast Cable Communications, LLC; Comcast of Richardson, LP; Comcast of Plano, LP and Comcast of Dallas, LP, | **JURY TRIAL DEMANDED** |
| Defendants. | |

I hereby certify that I have read the Protective Order entered in the United States District Court for the Eastern District of Texas on _____, 2006, in the above action. I understand the terms thereof and agree, under threat of penalty of contempt, to be bound by such terms, and consent to the jurisdiction of the United States District Court for the Eastern District of Texas for all purposes relating to the enforcement of the Order.

As soon as practical, but no later than sixty (60) days after final adjudication of this case, I shall return to counsel of record who provided me with such material, all materials designated as "Confidential" or "Confidential – Attorney's Eyes Only" under this Order, including, but not limited to, my notes, summaries, or other written materials which I may have prepared based on the Confidential Material that was provided me.

Dated: _____

_____
Signature

_____
Type or Print Name of Individual

_____
Residence Address

_____
Business Address

_____
Employer

_____
Title/Job Description

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | § § § | |
| **Plaintiff** | § | |
| v. | § § | **Case No. 2:06-cv-00239-RHC** |
| TIME WARNER CABLE, INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP | § § § § § § § § § | **Honorable Ron Clark** **JURY TRIAL DEMANDED** |
| **Defendants** | § | |

## JOINT RULE 26(F) CONFERENCE REPORT

Pursuant to the Court's Order to Conduct Rule 26(f) Conference and Federal Rules of Civil Procedure 16 and 26, Plaintiff USA Video Technology and Defendants Time Warner Cable, Inc.; Cox Communications, Inc.; Charter Communications, Inc; Comcast Cable Communications, LLC; Comcast of Richardson, LP; Comcast of Plano, LP; and Comcast of Dallas, LP[1] (collectively "Defendants") respectfully submit this Rule 26(f) conference report:

---

[1] As stated in The Comcast Defendants' Answer, Affirmative Defenses And Counterclaim to Plaintiff's First Amended Complaint, filed on September 13, 2006 as docket entry 55, Comcast of Dallas, LP is now listed as "TimeWarner Cable of Dallas, LP," and Comcast of Richardson, LP and Comcast of Plano, LP are listed as inactive. We are in the process of confirming the status of these entities, and have informed counsel for Plaintiff USA Video.

1. **Suggested modifications of the proposed deadlines:**

## Proposed Deadlines

Parties have discussed and agreed to the following deadlines in conjunction with the

E.D. Tex. Patent Rules.

| | |
|---|---|
| **November 13, 2006** | P.R. 3-1 Disclosure of Asserted Claims and Preliminary Infringement Contentions Due |
| **December 6, 2006** | Join Additional Parties |
| **December 15, 2006** | The parties will propose a mediator if the parties believe mediation is appropriate by this date. If the parties choose the mediator, they are to inform the Court by letter the name and address of the mediator. |
| **December 20, 2006** | Privilege Logs to be exchanged by parties for discovery provided as of that date (or a letter to the Court stating that there are no disputes as to claims of privileged documents). |
| **December 20, 2006** | To the extent not already required to be disclosed, exchange Mandatory Disclosures, including Rule 26(a)(1) disclosures. |
| **December 28, 2006** | P.R. 3-3 Preliminary Invalidity Contentions (and P.R. 3-4 document production) to be served |
| **January 8, 2007** | Parties to exchange proposed terms and claim elements for construction (P.R. 4-1). |
| **January 29, 2007** | Parties to exchange preliminary proposed claim construction and extrinsic evidence supporting same (P.R. 4-2). |
| **January 31, 2007** | Plaintiffs Final Amended Pleadings **(It is not necessary to file a Motion for Leave to Amend before the deadline to amend pleadings except to the extent the amendment seeks to add a new patent in suit).** |

| | |
|---|---|
| **February 27, 2007** | Joint Claim Construction and Prehearing Statement to be filed (P.R. 4-3). Provide an estimate of how many pages are needed to brief the disputed claims. |
| **February 21, 2007** | Respond to Amended Pleadings |
| **March 26, 2007** | Completion date for discovery on claim construction (P.R. 4-4). |
| **April 13, 2007** | Opening claim construction brief (P.R. 4-5(a)). |
| **April 27, 2007** | Responsive claim construction brief (P.R. 4-5(b)). |
| **May 4, 2007** | Reply claim construction brief (P.R. 4-5(c)). |
| **August 15, 2007** | Parties to file joint claim construction and chart (P.R. 4-5(d)). Parties shall work together to agree on as many claim terms as possible |
| **August 15, 2007** | Submit technology synopsis (both hard copy and disk). |
| **August 27, 2007** | Possible tutorial |
| **August 29, 2007 at 10:00 a.m.** | Claim construction hearing |
| **September 19, 2007** | Provide Initial Mandatory Disclosures of information directed solely to damages.  Deadline for Initial Mandatory Disclosure of all persons, documents, data compilations and tangible things, which are relevant to a claim or defense of any party and which has not previously been disclosed. This deadline is not an extension of earlier deadlines set out in this court's order or the Patent Rules, nor an excuse to delay disclosure of information. It is a "catchall" deadline for provision of all remaining information which may be relevant to a claim or defense of any party at trial. |
| **3 weeks after claim construction ruling, or** | Party with the burden of proof to Designate Expert Witnesses other than claims construction experts and |

| | |
|---|---|
| **October 24, 2007, whichever is earlier** | provide their expert witness report, to include for ALL experts all information set out in Rule 26(2)(B) |
| **November 14, 2007** | Comply with P.R. 3-8. (Designation of Willfulness Opinions). |
| **3 weeks after Initial Expert Reports are due, or November 14, 2007, whichever is earlier** | Designate Rebuttal Expert Witnesses other than claims construction experts and provide rebuttal expert witness reports due, to include for ALL experts all information set out in Rule 26(2)(B). |
| **November 28, 2007** | File Dispositive Motions and any other motions that may require a hearing, Regardless of how many dispositive motions a party files, each party is limited to a total of sixty pages for such motions. Each individual motion shall comply with Local Rule CV-7_ **Responses to motions shall be due in accordance with Local Rule CV-7(e).** |
| **December 12, 2007** | **Deadline for objections to any expert, including Daubert motions,. Such objections and motions are limited to ten pages each.** |
| **November 28, 2007** | Discovery Deadline. All discovery must be served in time to be completed by this date. |
| **December 31, 2007** | Notice of intent to offer certified records |
| **December 31, 2007** | Counsel and unrepresented parties are each responsible for contacting opposing counsel and unrepresented parties to determine how they will prepare the Joint Final Pretrial Order *(See* Local Rule CV-I6(b) and Proposed Jury Instructions and Verdict Form (or Proposed Findings of Fact and  Conclusions of Law in non-jury cases). |
| **4 weeks before docket call** | Video Deposition Designation due. Each party who proposes to offer a deposition by video shall serve on all other parties a disclosure identifying the line and page numbers to be offered. All other parties will have seven calendar days to serve a response with any objections and requesting cross examination line and page numbers to be included. Counsel must consult on any objections and only those which can not be resolved shall be presented to the court. The party who filed the initial Video Deposition Designation is responsible for preparation of the final edited video in accordance with all |

|                        | parties designations and the court's rulings on objections |
|------------------------|-----------|
| **January 7, 2008**    | Motions in limine due<br>File Joint Final Pretrial Order. See Local Rules Appendix D (Obtain form for Exhibit List from District Clerk's Office, or create an Exhibit List form that mirrors the District Clerk's form). Exchange Exhibits and deliver copies to the court. At this date, all that is required to be submitted to the court is a hyperlinked exhibit list on disk (2 copies) and no hard copies |
| **January 21, 2008**   | Response to motions in limine due<br>File objections to witnesses, deposition extracts, and exhibits, listed in pre-trial order. (This does not *extend* the deadline to object to expert witnesses). If numerous objections are filed the court may set a hearing prior to docket call. File Proposed Jury Instructions/Form of Verdict (or Proposed Findings of Fact and Conclusions of Law). |
| **February 4, 2008**   | Docket call and Final Pretrial at 9:00 a.m.<br>Date parties should be prepared to try case. Provide court with two copies of most updated Exhibit list. Absent agreement of the parties, this should not have exhibits which were not listed in the Final Pre- Order, but may have some deletions depending on rulings on objections. At this date, the parties should be prepared to give the Deputy Clerk one hard copy of the exhibits. |
| **February 5, 2008**   | 9:00 a.m. Jury Selection and Trial |

**In accordance with the Court's Order Governing Procedures the parties will now address:**

a. **The need for any specific limits on discovery relating to claim construction, including depositions of witnesses, including expert witnesses**:

The parties agree that the limitations in the Court's Order

5

Governing Proceedings dated August 30, 2006 be modified to permit up to 70 hours of deposition per side, and that the depositions of experts shall not be counted against this hour limit. The parties agree that up to 12 hours shall be permitted for the deposition of Elbert Tindell (one of the named inventors of the '792 patent).

b.   The parties agree that a **Claim Construction Pre-hearing Conference** should be held on Friday, July 27, 2007.

2.   The parties have addressed **mediation** in the schedule above.  They expect to be able to more fully address the topic by December 15, 2006.

**3.   What changes, if any, should be made to the limitations on discovery imposed by the rules, including the number of depositions and interrogatories.**

The parties agree that the limitations in the Court's Order Governing Proceedings dated August 30, 2006 be modified to permit up to 70 hours of deposition per side, and that the depositions of experts shall not be counted against this hour limit. The parties agree that up to 12 hours shall be permitted for the deposition of Elbert Tindell (one of the named inventors of the '792 patent).

4.   **The identities of persons expected to be deposed**.

a.   Plaintiff intends to take a 30(b)(6) deposition of each Defendant. Plaintiff may seek to depose other fact or expert witnesses based on the

information obtained in discovery.

b.   Defendants intend to take a 30(b)(6) deposition of Plaintiff and the following fact witnesses based on information currently available to them: Elbert Tindell, Kenneth Hill, Edwin Molina, Anton Drescher, Gordon Lee, Andrew Huffman, Frank Bowden, Mary Elizabeth Costner, Nancy Hanson.   Defendants may seek to depose other fact or expert witnesses based on the information obtained in discovery.

**5.     Any issues related to disclosure or discovery of electronically stored information, including the form or forms in which it should be produced.**

The parties currently do not have any such issues.

**6.     Any issues related to preserving discoverable information, including whether a Preservation Order is needed to protect any documents and/or electronically stored information.**

The parties do not believe that a Preservation Order is necessary in this case.

**7.     Whether any orders should be entered by the Court pursuant to Fed. R. Civ. P. 26(c), Fed. R. Civ. P. 16(B) or Fed. R. Civ. P. 16(c).**

 The parties' agreed proposed protective order regarding confidential materials is attached to this report as Appendix A.

**8.     Estimated trial time.**

a.     Plaintiff estimates that 10 days of trial time is sufficient.

b.     Defendants estimate that up to 20 days of trial time may be necessary. Because there are at least four different defendant groups with different

products and services that are alleged to have infringed the patent in suit, Defendants respectfully submit that the trial will require more time to provide each defendant group to fully present the defense specific to each. Trial may also have to be bifurcated as to each defendant group.

9.     **The names of the attorneys who will appear on behalf of the parties at the management conference (the appearing attorney must be an attorney of record and have the full authority to bind the client).**

    a.   Plaintiff:      Ed Goldstein
                           Corby Vowell
                           Alisa Lipski
                           Goldstein, Faucett & Prebeg

                           T. John Ward, Jr.
                           Law Office of T. John Ward, Jr., P.C.

    b.   Defendants

| | |
|---|---|
| Charter Communications, Inc. – | Dean L. Franklin<br>Thompson Coburn LLP |
| Time Warner Cable, Inc.      - | Jeffrey M. Olson<br>Sidley Austin, LLP |
| | Thad Heartfield<br>Law Offices of J. Thad Heartfield |
| Comcast Cable<br>Communications, LLC | Matthew B. Lehr<br>Davis Polk & Wardwell |
| | Michael J. Truncale<br>Orgain, Bell & Tucker, LLP |
| Cox Communications, Inc.      - | Mitch Stockwell<br>Kilpatrick Stockton LLP |

10.     **Any other matters counsel deem appropriate for inclusion in the joint**

conference report.

1) Rule 26(f) Conference

The Rule 26(f) conference was held on September 15, 2006 and was attended by the following parties:

   **Counsel for Plaintiff:**  Ed Goldstein
              Corby Vowell
              Alisa Lipski
              Goldstein, Faucett & Prebeg

              T. John Ward, Jr.
              Law Office of T. John Ward, Jr., P.C.


   **Counsel for Defendants:**

   Charter Communications, Inc. –  Dean L. Franklin
                  Nicholas B. Clifford
                  Matt Rosenberg
                  Thompson Coburn LLP

   Time Warner Cable, Inc.  -  Thad Heartfield
                  Law Offices of J. Thad Heartfield

                  Samuel N. Tiu
                  Sidley Austin, LLP

   Comcast Cable       Suong T. Nguyen
   Communications, LLC    Duane D. Nash
                  Yiping Liao
                  Davis Polk & Wardwell

                  Michael J. Truncale
                  Orgain, Bell & Tucker, LLP

2) Related Cases

Plaintiff submits that the following cases are related cases; Defendants disagree that these are "related cases" because they are venued in a different district:

*Coxcom, Inc. v. USA Video Technology Corp*.
C. A. No. 1:06-cv-00394-KAJ

*Time Warner Cable, Inc. v. USA Video Technology Corp.*
C. A. No. 1:06-cv-00387-KHJ

*Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP v. USA Video Technology Corp.*
Case No. 1:06-cv-00407-UNA

3) **Consent to Trial before a Magistrate Judge**

The parties do not consent to having the proceedings referred to a magistrate judge.

4) **Jury Demand**

A proper jury demand has been made.

5) **Conference pursuant to Fed. R. Civ. Proc. 16(b)**

The parties believe that a conference with the Court prior to the entry of the Scheduling Order would be appropriate.

Date: September 29, 2006                Respectfully submitted,

*Counsel for Plaintiff*                 *Counsel for Defendant*
*USA Video Technology Corporation*      *Time Warner, Inc.*

GOLDSTEIN FAUCETT & PREBEG             SIDLEY AUSTIN, LLP

/s Edward W. Goldstein                  /s/ Jeffrey M. Olson
Edward W. Goldstein                     Jeffrey M. Olson
1177 West Loop South, Suite 400         555 West 5th Street
Houston, Texas 77027                    Los Angeles, CA 90013
(713) 877-1515 Telephone                (213) 896-6000
(713)877-1145 Facsimile                 (213) 896-6600

OFFICE OF T. JOHN WARD, JR. PC          OFFICE OF THAD HEARTFIELD
Thomas  John Ward, Jr.                  Thad Heartfield
P.O Box 1231                            2195 Dowlen Road
Longview, TX  75606-1231               Beaumont, TX 77706
(903) 757-6400 Telephone                (409) 866-3318 Telephone
(903) 757-2323 Facsimile                (409) 866-5789 Facsimile

*Counsel for Defendant*
*Cox Communications, Inc.*

KILPATRICK STOCKTON, LLP

/s/ Candice C. Decaire
Candice C. Decaire
Leroy M. Toliver
Mitchell G. Stockwell
1100 Peachtree St., Suite 2800
Atlanta, GA 30309
(404) 815-6033 Telephone
(404) 541-3218

POTTER MINTON, PC
Michael Edwin Jones
110 N. College, Suite 500
P.O. Box 359
Tyler, Texas 75710
(903) 597-8311 Telephone
(903) 593-0846

*Counsel for Defendant*
*Charter Communications, Inc.*

THOMPSON COBURN

/s/ Dean L. Franklin
Dean L. Franklin – Attorney-in-Charge
Nicholas B. Clifford, Jr.
Matthew A. Rosenberg
One US Bank Plaza
St. Louis, MO 63101
(314) 552-6136 Telephone
(314) 552-7136 Facsimile

GILLAM & SMITH, LLP
Harry L. "Gil" Gillam, Jr.
Melissa Richards Smith
303 South Washington Avenue
Marshall, TX 75670
(903) 934-8450 Telephone
(903) 934-9257 Facsimile

*Counsel for Defendant*
*Comcast Cable Communications, LLC*
*Comcast of Richardson, LP*
*Comcast of Plano, LP*
*Comcast of Dallas, LP*

GILLAM & SMITH, LLP

/s/ Harry L. Gillam, Jr.
Harry L. Gillam, Jr. – Lead Attorney
303 South Washington Avenue
Marshall, TX 75670
(903) 934-8450 Telephone
(903) 934-9257 Facsimile

OF COUNSEL:
DAVIS POLK & WARDWELL

/s/ Matthew B. Lehr
Matthew B. Lehr
Suong T. Nguyen
Duane D. Nash
Yiping R. Liao
1600 El Camino Real
Menlo Park, CA 94025
(650) 752-2000 Telephone
(650) 752-2111 Facsimile

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on October 2, 2006.  Any other counsel of record will be served by first class U.S. mail.

/s/ Edward W. Goldstein_____
Edward W. Goldstein

EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| USA Video Technology Corporation | |
| Plaintiff, | Case No. 2:06-cv-00239-RHC |
| vs. | Judge: Ron Clark |
| Time Warner Cable, Inc., Cox Communications, Inc.; Charter Communications, Inc.; Comcast Cable Communications, LLC; Comcast of Richardson, LP; Comcast of Plano, LP and Comcast of Dallas, LP, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## PROTECTIVE ORDER

Upon motion for Protective Order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure with respect to information provided in discovery,

It is hereby ORDERED that the following Protective Order be entered:

1.    This Protective Order shall govern the handling of any information produced or disclosed by any party or non-party (the "Producing Party") in this action to any other party (the "Receiving Party") in this action, including, without limitation, any document (whether in hard copy or computer readable form), thing, deposition testimony, deposition exhibit, interrogatory responses, responses to request for admission, or other information provided in discovery in this action (all such information shall hereinafter be referred to as "Discovery Material").

2.    All Discovery Material designated in the course of this litigation as "Confidential" or "Confidential – Attorney's Eyes Only," as these terms are defined in Paragraph 3, shall be used only for the purpose of preparation and trial of this litigation, and any appeal

there from, and shall not be used, directly or indirectly, for any other purpose whatsoever, and shall not be disclosed to any person, corporation, partnership, joint venture, association, joint-stock company, limited liability company, trust, unincorporated organization, governmental body or other entity (collectively "person") except in accordance with the terms hereof.

## DEFINITIONS

3.    "Confidential" shall refer to Discovery Material that contains trade secrets or other confidential or proprietary research, development, technical, financial, commercial or business information. "Confidential – Attorney's Eyes Only" shall refer to Discovery Material that contain or are of a highly proprietary or competitively sensitive business or technical nature. Such information shall only be disclosed to Qualified Persons designated according to Paragraph 4 below. "Confidential" or "Confidential – Attorney's Eyes Only" shall not include any Discovery Material that the Receiving Party demonstrates:

a.    is in the public domain at the time of disclosure, including materials that on their face show that they have been submitted to any government entity without a request for confidential treatment;

b.    becomes part of the public domain through no fault of the Receiving Party, as evidenced by a written document; or

c.    was in the Receiving Party's possession at the time of disclosure from the Disclosing party, as evidenced by a written document; or

d.    the Receiving Party lawfully receives at a later date from a third party without restriction as to disclosure, provided such third party has the right to make the disclosure to the Receiving Party.

4.    With respect to Discovery Material designated as "Confidential," "Qualified Persons" means:

a.    Members and employees of the firm or firms of outside counsel who have entered an appearance, and, where appropriate, have been admitted *pro hac vice* in this action ("counsel of record");

b.    Court personnel, including stenographic, video reporters and/or translators engaged in such proceedings as are necessarily incident to the preparation or trial of this action, as well as personnel of any other court where disclosure is necessary in connection with a motion or other matter relating to this case;

c.    Current officers and employees of the parties;

d.    Two in-house attorneys designated by each party prior to such disclosure provided that each such attorney designee shall be provided information solely as reasonably required to consult with outside counsel regarding the oversight of the litigation and the resolution thereof;

e.    Any independent expert or consultant that are neither employed by or consulting for either party and are engaged by any attorney described in Paragraph 4(a) solely to assist in this litigation, including their administrative and clerical personnel, provided that disclosure to each such person shall be made only on the following conditions:

1)    each consultant/expert signs a statement in the form attached hereto as Exhibit A;

2)    each consultant/expert provides to outside counsel of the Producing Party such consultant/expert's (i) name, (ii) address, (iii) resume or curriculum vitae, and (iv) information on prior and current employment, affiliations, and consultancies (including

any cases in which he or she has testified at trial or by deposition within the preceding four years);

3)    there is no objection by a Producing Party in writing served on all parties by facsimile, overnight mail or in person within ten (10) business days of the foregoing disclosures, which writing shall specify the reasons for the objection.  In the case of an objection the parties must confer as soon as reasonably possible to resolve the objection.  If the parties are unable to resolve the objection, the Receiving Party may seek relief from the Court with reasonable notice to the Producing Party.  No such outside expert or consultant as to whom timely objection is made shall receive designated confidential information unless and until all such objections are resolved.

f.    Any person who authored and/or was an identified original recipient of the particular material sought to be disclosed to that person;

g.    Service contractors, including but not limited to document copy services and graphics consultants, who have signed a statement in the form attached as Exhibit A hereto; and

h.    Any other person agreed to by the parties in writing who has signed a statement in the form attached as Exhibit A hereto.

With respect to Discovery Materials designated "Confidential – Attorney's Eyes Only," "Qualified Persons" shall mean those persons under Paragraph 4(a), (b), (d), (e), (f), (g) and (h). The parties have agreed that the following in-house counsel designated by the parties have been approved and cleared under this Protective Order in accordance with the requirements of Paragraph 4(d):

1.    Andrew Huffman, Esq. designated by Plaintiff,

2.        Andrew T. Block, Esq. and Jeffrey Zimmerman, Esq.. designated by Time Warner Cable, Inc.

3.        Mark L. Brown, Esq. and Larry Christopher, Esq. designated by Charter Communications, Inc.

4.        Lee Zieroth, Esq. and Michael Aronoff, Esq. designated by Comcast Cable Communications, LLC.

5.        Marcus Delgado, Esq. And Kristen Weathersby, Esq. designated by Cox Communications, Inc.

## DESIGNATION AS "CONFIDENTIAL" OR "CONFIDENTIAL – ATTORNEY'S EYES ONLY"

5.        The designation as "Confidential" or "Confidential – Attorney's Eyes Only" for purposes of this Protective Order shall be made in the following manner by the Producing Party:

a.        In the case of Discovery Material, by affixing, legibly, the legend "Confidential" or "Confidential – Attorney's Eyes Only" to each page containing confidential information.

b.        In the case of depositions or other pretrial or trial testimony ("Transcripts"), (i) by indicating on the record at the deposition or hearing that the testimony is "Confidential" or "Confidential – Attorney's Eyes Only" and is subject to the provision of this Order; or (ii) by notifying all parties in writing within thirty (30) days of receipt of the Transcript, of the specific pages and lines of the Transcript that should be treated as "Confidential" or "Confidential – Attorney's Eyes Only" thereafter. Each party shall thereafter place a notice on the face of the Transcript, and each copy thereof in its possession, custody or control, identifying portions of the Transcript as "Confidential" or "Confidential – Attorney's

Eyes Only" as the case may be. All Transcripts shall be treated as "Confidential – Attorney's Eyes only" for a period of thirty (30) days after the receipt of the Transcript.

      c.     Materials designated as "Confidential" or "Confidential – Attorney's Eyes Only" as hereinafter be referred to a Confidential Material.

    6.     Each Receiving Party's counsel of record shall maintain a log of all copies of "Confidential" or "Confidential – Attorney's Eyes Only" documents that are delivered to any one or more Qualified Persons identified in Paragraph 4(c) through (h) above.

    7.     To the extent that Confidential Material or information obtained there from is used in the taking of depositions or used as exhibits at trial, such documents or information shall remain subject to the provisions of this Order, along with the Transcript pages dealing with the Confidential Material.

    8.     The recipient of any Confidential Material that is provided under this Order shall maintain such materials in a secure and safe area to which access is limited, or otherwise use available methods to restrict access, to Qualified Persons only, and shall exercise the same standard of due and proper care with respect to the storage, custody, use and/or dissemination of such information as is exercised by the recipient with respect to its own proprietary information. Confidential Material shall not be copied, reproduced, summarized or abstracted, except to the extent that such copying, reproduction, summarization or abstraction is reasonably necessary for the conduct of this litigation. All such copies, reproductions, summaries and abstractions shall be subject to the terms of the Order, and labeled in the same manner as the designated material on which they are based.

## CHALLENGES TO DESIGNATIONS

9.      At any time after the receipt of any Discovery Materials or Transcripts designated "Confidential" or "Confidential – Attorney's Eyes Only," counsel for a Receiving Party may challenge the designation by providing written notice of such challenge to counsel for the Producing Party.    Said notice shall clearly identify the Discovery Material, Transcript, or portions thereof, that the challenging party claims should not be afforded confidential treatment, or afforded a lesser degree of confidential designation, and the reasons supporting the challenging party's claim.    After such notice is made, the parties shall confer and in good faith attempt to resolve their differences.    If the parties are unable to agree as to whether the confidential designation is appropriate, counsel for the Receiving Party must move the Court for appropriate relief with reasonable notice to opposing counsel.    The party seeking a designation as "Confidential" or "Confidential – Attorney's Eyes Only" shall have the burden of establishing that any Discovery Material or Transcript in dispute is entitled to protection from unrestricted disclosure and to such designation.    The party asserting that the information is not confidential because of the reasons listed in Paragraph 3 shall have the burden of making a prima facie showing in support of its position.    All Discovery Materials and Transcripts that a party designates as "Confidential" or "Confidential – Attorney's Eyes Only" shall be accorded such status pursuant to the terms of this Protective Order until and unless the parties formally agree in writing to the contrary or a determination is made by the Court as to the confidential status.

## FILING UNDER SEAL

10.      All documents of any nature, including briefs, containing information that is Confidential Material, which are filed with the Court, may be filed under seal using the Court's CM/ECF system.    Documents filed under seal must comply with the requirements of Eastern

District Local Rules CV-5(a), CV-7, and CV-5(a)(9). The parties are not required to file additional Motions to Seal Documents, and sealed e-filings of Confidential Material in this case are hereby authorized without necessity of further motion or leave of Court. There shall be, attached to the Confidential Material filed under seal, a cover sheet including the caption of the case, the signature of counsel of record for the party filing the document, and the following titles:

## CONFIDENTIAL INFORMATION ENCLOSED – FILED UNDER SEAL

11.     Any documents filed under seal as provided in this paragraph shall be disclosed by the clerk only to counsel of record without further order of the Court. This does not limit other access to such documents as otherwise provided in the applicable Protective Order.

## INADVERTENT PRODUCTION AND DISCLOSURE

12.     A Producing Party that inadvertently produces Discovery Material without designation as "Confidential" or "Confidential – Attorney's Eyes Only" may retroactively designate the Discovery Material and "Confidential" or Confidential – Attorney's Eyes Only" by notifying the Receiving Party. Notification shall be in writing to the Receiving Party, identifying the Discovery Material by Bates-number(s) and date of production and by sending replacement documents with the appropriate designation to a Receiving Party. Notification shall be provided reasonably promptly after the Producing Party first realizes that the Discovery Material was produced without or with incorrect designation. The Discovery Material designated through the notification procedure set forth immediately above shall be deemed "Confidential: or "Confidential – Attorney's Eyes Only" retroactively to the date of production. If, in the interim between production and notification, the subject materials have been provided to persons other than Qualified Persons, the Receiving Party shall reasonably promptly notify the Producing Party

as to which materials have been disclosed, and comply with the provisions for inadvertent disclosure as set forth in Paragraph 13, below.

13.    A party's inadvertent production of Discovery Material in this action for another party's inspection or copying shall not in itself be deemed to waive any claim of attorney-client communication privilege or attorney work-product protection that might exist with respect to such Discovery Material or other documents or communications, written or oral, including, without limitation, other communications referred to in the Discovery Materials produced. Furthermore, a party's production shall not be deemed a waiver of any party's right to object for any reason to the admission of any document or thing into evidence, nor shall the production be deemed an admission of its admissibility.  Nothing in this paragraph shall prejudice the right of any party to seek discovery of communications, documents and things as to which a claim of attorney-client communication privilege or attorney work-product has been made.

14.    In the event of inadvertent disclosure of Confidential Materials to a person that is not a Qualified Person, the party that inadvertently discloses such information or that is in a position to prevent, address or otherwise remedy the inadvertent disclosure, shall promptly take all practical steps to retrieve the Confidential Material and prevent its further disclosure.  The party that inadvertently disclosed such information shall also promptly notify the party designated the Confidential Materials of the inadvertent disclosure and the steps being taken to rectify the disclosure.

## RETURN OF CONFIDENTIAL MATERIAL AFTER TERMINATION

15.    After termination of this litigation, including any appeals, the provisions of this Order shall continue to be  binding, except with respect to those documents and information that become a matter of public record.  This Court retains and shall have jurisdiction over the Parties

and recipients of the Confidential Material for enforcement of the provisions of this Order following termination of this litigation.

16.    Within ninety (90) days after the later of (i) entry of final judgment in or settlement of this proceeding and (ii) the time for any and all appeals has expired, the Plaintiff and its counsel shall return to Defendant or its counsel all Confidential Material provided by Defendant and all copies thereof, and the Defendant and its counsel shall return to Plaintiff or its counsel all Confidential Material provided by Plaintiff and all copies thereof. Alternatively, the parties and their respective counsel may agree in writing on appropriate alternative methods for the destruction of such documents. Counsel for each party may retain one archival copy of all discovery response; deposition exhibits; exhibits used in proceedings before the Court; documents included in submissions to the Court; and Confidential Material to the extent it is included in such papers or reflected in that counsel of record's work product.

## OTHER PROCEEDINGS

17.    By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who becomes subject to a motion to disclose another party's information designated "Confidential" or "Confidential – Attorney's Eyes Only" pursuant to this order shall promptly notify that party of the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

## GENERAL ADVICE AND DISCLOSURE BY COUNSEL

18.    This Protective Order shall not bar any attorney for the parties from rendering advice to his or her client with respect to this action.

## DUTY TO COMPLY WITH PROTECTIVE ORDER

19.    Any party designating any person as a Qualified Person shall have the duty to reasonably ensure that such person observes the terms of this Protective Order and shall be responsible upon breach of such duty for the failure of any such person to observe the terms of this Protective Order.

20.    Unless otherwise agreed to in writing by the parties or ordered by the Court, all proceedings involving or relating to documents or any other information shall be subject to the provisions of this Order.

21.    The parties may, by stipulation, provide for exceptions to this Order and any party may seek an order of this Court modifying this Protective Order.

Dated this ____ day of October 2006        _____
                                            **Honorable Ron Clark**
                                            United States District Court


AGREED TO AS TO FORM AND CONTENT:

*Counsel for Plaintiff*                     *Counsel for Defendant*
*USA Video Technology Corporation*          *Time Warner, Inc.*

GOLDSTEIN FAUCETT & PREBEG                  SIDLEY AUSTIN, LLP

/s/ Edward W. Goldstein                     /s/ Jeffrey M. Olson
Edward W. Goldstein                         Jeffrey M. Olson
1177 West Loop South, Suite 400             555 West 5th Street
Houston, Texas 77027                        Los Angeles, CA 90013
(713) 877-1515 Telephone                    (213) 896-6000
(713)877-1145 Facsimile                     (213) 896-6600

OFFICE OF T. JOHN WARD, JR. PC              OFFICE OF THAD HEARTFIELD
Thomas John Ward, Jr.                       Thad Heartfield
P.O. Box 1231                               2195 Dowlen Road
Longview, TX 75606                          Beaumont, TX 77706
(903) 757-6400 Telephone                    (409) 866-3318 Telephone
(903) 757-2323 Facsimile                    (409) 866-5789 Facsimile

*Counsel for Defendant*
*Cox Communications, Inc.*

*Counsel for Defendant*
*Charter Communications, Inc.*

KILPATRICK STOCKTON, LLP

THOMPSON COBURN

/s/ Candice C. Decaire
Candice C. Decaire
Leroy M. Toliver
Mitchell G. Stockwell
1100 Peachtree St., Suite 2800
Atlanta, GA 30309
(404) 815-6033 Telephone
(404) 541-3218

/s/ Dean L. Franklin
Dean L. Franklin – Attorney-in-Charge
Nicholas B. Clifford, Jr.
Matthew A. Rosenberg
One US Bank Plaza
St. Louis, MO 63101
(314) 552-6136 Telephone
(314) 552-7136 Facsimile

POTTER MINTON, PC
Michael Edwin Jones
110 N. College, Suite 500
P.O. Box 359
Tyler, Texas 75710
(903) 597-8311 Telephone
(903) 593-0846

GILLAM & SMITH, LLP
Harry L. "Gil" Gillam, Jr.
Melissa Richards Smith
303 South Washington Avenue
Marshall, TX 75670
(903) 934-8450 Telephone
(903) 934-9257 Facsimile

*Counsel for Defendant*
*Comcast Cable Communications, LLC*
*Comcast of Richardson, LP*
*Comcast of Plano, LP*
*Comcast of Dallas, LP*

GILLAM & SMITH, LLP

OF COUNSEL:
DAVIS POLK & WARDWELL

/s/ Harry L. Gillam, Jr.
Harry L. Gillam, Jr. – Lead Attorney
303 South Washington Avenue
Marshall, TX 75670
(903) 934-8450 Telephone
(903) 934-9257 Facsimile

/s/ Matthew B. Lehr
Matthew B. Lehr
Suong T. Nguyen
Duane D. Nash
Yiping R. Liao
1600 El Camino Real
Menlo Park, CA 94025
(650) 752-2000 Telephone
(650) 752-2111 Facsimile

ORGAIN, BELL & TUCKER, L.L.P.
Michael J. Truncale
P.O. Box 1751
Beaumont, Texas 77704
(409) 838-6412 Telephone
(409) 951-7318 Facsimile

## EXHIBIT A

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| USA Video Technology Corporation | |
| Plaintiff, | Case No. 2:06-cv-00239-RHC |
| vs. | Judge: Ron Clark |
| Time Warner Inc., Cox Communications, Inc.; Charter Communications, Inc.; Comcast Cable Communications, LLC; Comcast of Richardson, LP; Comcast of Plano, LP and Comcast of Dallas, LP, | **JURY TRIAL DEMANDED** |
| Defendants. | |

     I hereby certify that I have read the Protective Order entered in the United States District Court for the Eastern District of Texas on _____, 2006, in the above action. I understand the terms thereof and agree, under threat of penalty of contempt, to be bound by such terms, and consent to the jurisdiction of the United States District Court for the Eastern District of Texas for all purposes relating to the enforcement of the Order.

     As soon as practical, but no later than sixty (60) days after final adjudication of this case, I shall return to counsel of record who provided me with such material, all materials designated as "Confidential" or "Confidential – Attorney's Eyes Only" under this Order, including, but not limited to, my notes, summaries, or other written materials which I may have prepared based on the Confidential Material that was provided me.

Dated: _____

_____
Signature

_____
Type or Print Name of Individual

_____
Residence Address

_____
Business Address

_____
Employer

_____
Title/Job Description

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **USA VIDEO TECHNOLOGY CORPORATION,** | § | |
| | § | |
| | § | |
| **Plaintiff** | § | |
| v. | § | **Case No. 2:06-cv-00239-RHC** |
| | § | |
| **TIME WARNER CABLE, INC.;** | § | **Honorable Ron Clark** |
| **COX COMMUNICATIONS, INC.;** | § | |
| **CHARTER COMMUNICATIONS,** | § | |
| **INC.; COMCAST CABLE** | § | **JURY TRIAL DEMANDED** |
| **COMMUNICATIONS, LLC;** | § | |
| **COMCAST OF RICHARDSON, LP;** | § | |
| **COMCAST OF PLANO, LP;** | § | |
| **COMCAST OF DALLAS, LP** | § | |
| | § | |
| **Defendants** | § | |

## AMENDED JOINT RULE 26(F) CONFERENCE REPORT

Pursuant to the Court's Order to Conduct Rule 26(f) Conference and Federal Rules of Civil Procedure 16 and 26, Plaintiff USA Video Technology and Defendants Time Warner Cable, Inc.; Cox Communications, Inc.; Charter Communications, Inc; Comcast Cable Communications, LLC; Comcast of Richardson, LP; Comcast of Plano, LP; and Comcast of Dallas, LP[1] (collectively "Defendants") respectfully submit this Rule 26(f) conference report:

---

[1] As stated in The Comcast Defendants' Answer, Affirmative Defenses And Counterclaim to Plaintiff's First Amended Complaint, filed on September 13, 2006 as docket entry 55, Comcast of Dallas, LP is now listed as "TimeWarner Cable of Dallas, LP," and Comcast of Richardson, LP and Comcast of Plano, LP are listed as inactive. We are in the process of confirming the status of these entities, and have informed counsel for Plaintiff USA Video.

1.    **Suggested modifications of the proposed deadlines:**

## Proposed Deadlines

Parties have discussed and agreed to the following deadlines in conjunction with the

E.D. Tex. Patent Rules.

| | |
|---|---|
| **November 13, 2006** | P.R. 3-1 Disclosure of Asserted Claims and Preliminary Infringement Contentions Due |
| **December 6, 2006** | Join Additional Parties |
| **December 15, 2006** | The parties will propose a mediator if the parties believe mediation is appropriate by this date. If the parties choose the mediator, they are to inform the Court by letter the name and address of the mediator. |
| **December 20, 2006** | Privilege Logs to be exchanged by parties for discovery provided as of that date (or a letter to the Court stating that there are no disputes as to claims of privileged documents). |
| **December 20, 2006** | To the extent not already required to be disclosed, exchange Mandatory Disclosures, including Rule 26(a)(1) disclosures. |
| **December 28, 2006** | P.R. 3-3 Preliminary Invalidity Contentions (and P.R. 3-4 document production) to be served |
| **January 8, 2007** | Parties to exchange proposed terms and claim elements for construction (P.R. 4-1). |
| **January 29, 2007** | Parties to exchange preliminary proposed claim construction and extrinsic evidence supporting same (P.R. 4-2). |
| **January 31, 2007** | Plaintiffs Final Amended Pleadings **(It is not necessary to file a Motion for Leave to Amend before the deadline to amend pleadings except to the extent the amendment seeks to add a new patent in suit).** |

2

| | |
|---|---|
| **February 27, 2007** | Joint Claim Construction and Prehearing Statement to be filed (P.R. 4-3). Provide an estimate of how many pages are needed to brief the disputed claims. |
| **February 21, 2007** | Respond to Amended Pleadings |
| **March 26, 2007** | Completion date for discovery on claim construction (P.R. 4-4). |
| **April 13, 2007** | Opening claim construction brief (P.R. 4-5(a)). |
| **April 27, 2007** | Responsive claim construction brief (P.R. 4-5(b)). |
| **May 4, 2007** | Reply claim construction brief (P.R. 4-5(c)). |
| **August 15, 2007** | Parties to file joint claim construction and chart (P.R. 4-5(d)). Parties shall work together to agree on as many claim terms as possible |
| **August 15, 2007** | Submit technology synopsis (both hard copy and disk). |
| **August 27, 2007** | Possible tutorial |
| **August 29, 2007 at 10:00 a.m.** | Claim construction hearing |
| **September 19, 2007** | Provide Initial Mandatory Disclosures of information directed solely to damages. Deadline for Initial Mandatory Disclosure of all persons, documents, data compilations and tangible things, which are relevant to a claim or defense of any party and which has not previously been disclosed. This deadline is not an extension of earlier deadlines set out in this court's order or the Patent Rules, nor an excuse to delay disclosure of information. It is a "catchall" deadline for provision of all remaining information which may be relevant to a claim or defense of any party at trial. |
| **3 weeks after claim construction ruling, or** | Party with the burden of proof to Designate Expert Witnesses other than claims |

| | |
|---|---|
| **October 24, 2007, whichever is earlier** | construction experts and provide their expert witness report, to include for ALL experts all information set out in Rule 26(2)(B) |
| **November 14, 2007** | Comply with P.R. 3-8. (Designation of Willfulness Opinions). |
| **3 weeks after Initial Expert Reports are due, or November 14, 2007, whichever is earlier** | Designate Rebuttal Expert Witnesses other than claims construction experts and provide rebuttal expert witness reports due, to include for ALL experts all information set out in Rule 26(2)(B). |
| **November 28, 2007** | File Dispositive Motions and any other motions that may require a hearing, Regardless of how many dispositive motions a party files, each party is limited to a total of sixty pages for such motions. Each individual motion shall comply with Local Rule CV-7_ **Responses to motions shall be due in accordance with Local Rule CV-7(e).** |
| **December 12, 2007** | **Deadline for objections to any expert, including Daubert motions,. Such objections and motions are limited to ten pages each.** |
| **November 28, 2007** | Discovery Deadline. All discovery must be served in time to be completed by this date. |
| **December 31, 2007** | Notice of intent to offer certified records |
| **December 31, 2007** | Counsel and unrepresented parties are each responsible for contacting opposing counsel and unrepresented parties to determine how they will prepare the Joint Final Pretrial Order *(See* Local Rule CV-I6(b) and Proposed Jury Instructions and Verdict Form (or Proposed Findings of Fact and Conclusions of Law in non-jury cases). |
| **4 weeks before docket call** | Video Deposition Designation due. Each party who proposes to offer a deposition by video shall serve on all other parties a disclosure identifying the line and page numbers to be offered. All other parties will |

have seven calendar days to serve a response with any objections and requesting cross examination line and page numbers to be included. Counsel must consult on any objections and only those which can not be resolved shall be presented to the court. The party who filed the initial Video Deposition Designation is responsible for preparation of the final edited video in accordance with all parties designations and the court's rulings on objections

**January 7, 2008**

Motions in limine due
File Joint Final Pretrial Order. See Local Rules Appendix D (Obtain form for Exhibit List from District Clerk's Office, or create an Exhibit List form that mirrors the District Clerk's form). Exchange Exhibits and deliver copies to the court. At this date, all that is required to be submitted to the court is a hyperlinked exhibit list on disk (2 copies) and no hard copies

**January 21, 2008**

Response to motions in limine due
File objections to witnesses, deposition extracts, and exhibits, listed in pre-trial order. (This does not *extend* the deadline to object to expert witnesses). If numerous objections are filed the court may set a hearing prior to docket call. File Proposed Jury Instructions/Form of Verdict (or Proposed Findings of Fact and Conclusions of Law).

**February 4, 2008**

Docket call and Final Pretrial at 9:00 a.m.
Date parties should be prepared to try case. Provide court with two copies of most updated Exhibit list. Absent agreement of the parties, this should not have exhibits which were not listed in the Final Pre-Order, but may have some deletions depending on rulings on objections. At this date, the parties should be prepared to give the Deputy Clerk one hard copy of the exhibits.

**February 5, 2008**               9:00 a.m. Jury Selection and Trial

**In accordance with the Court's Order Governing Procedures the parties will now address:**

    a.  **The need for any specific limits on discovery relating to claim construction, including depositions of witnesses, including expert witnesses**:

        The parties agree that the limitations in the Court's Order Governing Proceedings dated August 30, 2006 be modified to permit up to 70 hours of deposition per side, and that the depositions of experts shall not be counted against this hour limit. The parties agree that up to 12 hours shall be permitted for the deposition of Elbert Tindell (one of the named inventors of the '792 patent). Defendants anticipate that additional deposition hours may be necessary, but will only request additional time from the Court as needed.

    b.  The parties agree that a **Claim Construction Pre-hearing Conference** should be held on Friday, July 27, 2007.

2.    The parties have addressed **mediation** in the schedule above. They expect to be able to more fully address the topic by December 15, 2006.

3.    **What changes, if any, should be made to the limitations on discovery imposed by the rules, including the number of depositions and interrogatories.**

        The parties agree that the limitations in the Court's Order

Governing Proceedings dated August 30, 2006 be modified to permit up to 70 hours of deposition per side, and that the depositions of experts shall not be counted against this hour limit. The parties agree that up to 12 hours shall be permitted for the deposition of Elbert Tindell (one of the named inventors of the '792 patent). Defendants anticipate that additional deposition hours may be necessary, but will only request additional time from the Court as needed.

4.    **The identities of persons expected to be deposed.**

a.  Plaintiff intends to take a 30(b)(6) deposition of each Defendant. Plaintiff may seek to depose other fact or expert witnesses based on the information obtained in discovery.

b.  Defendants intend to take a 30(b)(6) deposition of Plaintiff and the following fact witnesses based on information currently available to them: Elbert Tindell, Kenneth Hill, Edwin Molina, Anton Drescher, Gordon Lee, Andrew Huffman, Frank Bowden, Mary Elizabeth Costner, Nancy Hanson.  Defendants may seek to depose other fact or expert witnesses based on the information obtained in discovery.

5.    **Any issues related to disclosure or discovery of electronically stored information, including the form or forms in which it should be produced.**

The parties currently do not have any such issues.

6.    **Any issues related to preserving discoverable information, including whether a Preservation Order is needed to protect any documents and/or**

7

**electronically stored information.**

The parties do not believe that a Preservation Order is necessary in this case.

7. **Whether any orders should be entered by the Court pursuant to Fed. R. Civ. P. 26(c), Fed. R. Civ. P. 16(B) or Fed. R. Civ. P. 16(c).**

The parties' agreed proposed protective order regarding confidential materials is attached to this report as Appendix A.

8. **Estimated trial time.**

    a.  Plaintiff estimates that 10 days of trial time is sufficient.

    b.  Defendants estimate that up to 20 days of trial time may be necessary. Because there are at least four different defendant groups with different products and services that are alleged to have infringed the patent in suit, Defendants respectfully submit that the trial will require more time to provide each defendant group to fully present the defense specific to each. Trial may also have to be bifurcated as to each defendant group.

9. **The names of the attorneys who will appear on behalf of the parties at the management conference (the appearing attorney must be an attorney of record and have the full authority to bind the client).**

    a.    Plaintiff:      Ed Goldstein
                                Corby Vowell
                                Alisa Lipski
                                Goldstein, Faucett & Prebeg

                                T. John Ward, Jr.
                                Law Office of T. John Ward, Jr., P.C.

    b.    Defendants

Charter Communications, Inc. –      Dean L. Franklin
                                              Thompson Coburn LLP

| Time Warner Cable, Inc. | - | Jeffrey M. Olson<br>Sidley Austin, LLP |
| | | Thad Heartfield<br>Law Offices of J. Thad Heartfield |
| Comcast Cable<br>Communications, LLC | | Matthew B. Lehr<br>Davis Polk & Wardwell |
| | | Michael J. Truncale<br>Orgain, Bell & Tucker, LLP |
| Cox Communications, Inc. | - | Mitch Stockwell<br>Kilpatrick Stockton LLP |

**10.    Any other matters counsel deem appropriate for inclusion in the joint conference report.**

1) Rule 26(f) Conference

The Rule 26(f) conference was held on September 15, 2006 and was attended by the following parties:

**Counsel for Plaintiff:**    Ed Goldstein
Corby Vowell
Alisa Lipski
Goldstein, Faucett & Prebeg

T. John Ward, Jr.
Law Office of T. John Ward, Jr., P.C.

**Counsel for Defendants:**

| Charter Communications, Inc. – | Dean L. Franklin<br>Nicholas B. Clifford<br>Matt Rosenberg<br>Thompson Coburn LLP |
| Time Warner Cable, Inc. | - | Thad Heartfield<br>Law Offices of J. Thad Heartfield |

|  | Samuel N. Tiu |
|  | Sidley Austin, LLP |
| Comcast Cable | Suong T. Nguyen |
| Communications, LLC | Duane D. Nash |
|  | Yiping Liao |
|  | Davis Polk & Wardwell |
|  | Michael J. Truncale |
|  | Orgain, Bell & Tucker, LLP |

2) Related Cases

Plaintiff submits that the following cases are related cases; Defendants disagree that these are "related cases" because they are venued in a different district:

*Coxcom, Inc. v. USA Video Technology Corp.*
C. A. No. 1:06-cv-00394-KAJ

*Time Warner Cable, Inc. v. USA Video Technology Corp.*
C. A. No. 1:06-cv-00387-KHJ

*Comcast Cable Communications, LLC, Comcast of Richardson, LP, Comcast of Plano, LP, and Comcast of Dallas, LP v. USA Video Technology Corp.*
Case No. 1:06-cv-00407-UNA

3) **Consent to Trial before a Magistrate Judge**

The parties do not consent to having the proceedings referred to a magistrate judge.

4) **Jury Demand**

A proper jury demand has been made.

5) **Conference pursuant to Fed. R. Civ. Proc. 16(b)**

The parties believe that a conference with the Court prior to the entry of the Scheduling Order would be appropriate.

Date:  September 29, 2006

Respectfully submitted,

*Counsel for Plaintiff*
*USA Video Technology Corporation*

*Counsel for Defendant*
*Time Warner, Inc.*

GOLDSTEIN FAUCETT & PREBEG

SIDLEY AUSTIN, LLP

/s Edward W. Goldstein
Edward W. Goldstein
1177 West Loop South, Suite 400
Houston, Texas 77027
(713) 877-1515 Telephone
(713)877-1145 Facsimile

/s Jeffrey M. Olson
Jeffrey M. Olson
555 West 5th Street
Los Angeles, CA 90013
(213) 896-6000 Telephone
(213) 896-6600 Facsimile

OFFICE OF T. JOHN WARD, JR. PC

OFFICE OF THAD HEARTFIELD

/s Thomas John Ward, Jr.
Thomas John Ward, Jr.
P.O. Box 1231
Longview, TX 75606
(903) 757-6400 Telephone
(903) 757-2323 Facsimile

/s Thad Heartfield
Thad Heartfield
2195 Dowlen Road
Beaumont, TX 77706
(409) 866-3318 Telephone
(409) 866-5789 Facsimile

*Counsel for Defendant*
*Cox Communications, Inc.*

*Counsel for Defendant*
*Charter Communications, Inc.*

KILPATRICK STOCKTON, LLP

THOMPSON COBURN

/s Leroy M. Toliver
Candice C. Decaire
Leroy M. Toliver
Mitchell G. Stockwell
1100 Peachtree St., Suite 2800
Atlanta, GA 30309
(404) 815-6033 Telephone
(404) 541-3218 Facsimile

/s Nicholas B. Clifford, Jr.
Dean L. Franklin – Attorney-in-Charge
Nicholas B. Clifford, Jr.
Matthew A. Rosenberg
One US Bank Plaza
St. Louis, MO 63101
(314) 552-6136 Telephone
(314) 552-7136 Facsimile

POTTER MINTON, PC

GILLAM & SMITH, LLP


/s Michael Edwin Jones

/s Harry L. "Gil" Gillam, Jr.

Michael Edwin Jones
110 N. College, Suite 500
P.O. Box 359
Tyler, Texas 75710
(903) 597-8311 Telephone
(903) 593-0846 Facsimile

Harry L. "Gil" Gillam, Jr.
Melissa Richards Smith
303 South Washington Avenue
Marshall, TX 75670
(903) 934-8450 Telephone
(903) 934-9257 Facsimile

*Counsel for Defendant*
*Comcast Cable Communications, LLC*
*Comcast of Richardson, LP*
*Comcast of Plano, LP*
*Comcast of Dallas, LP*


GILLAM & SMITH, LLP

OF COUNSEL:
DAVIS POLK & WARDWELL


/s Harry L. "Gil" Gillam, Jr.,

/s Suong T. Nguyen

Harry L. "Gil" Gillam, Jr. – Lead Attorney
303 South Washington Avenue
Marshall, TX 75670
(903) 934-8450 Telephone
(903) 934-9257 Facsimile

Matthew B. Lehr
Suong T. Nguyen
Duane D. Nash
Yiping R. Liao
1600 El Camino Real
Menlo Park, CA 94025
(650) 752-2000 Telephone
(650) 752-2111 Facsimile

ORGAIN, BELL & TUCKER, L.L.P.


/s Michael J. Truncale

Michael J. Truncale
P.O. Box 1751
Beaumont, Texas 77704
(409) 838-6412 Telephone
(409) 951-7318 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document was furnished to all known counsel, on this the 3rd day of October 2006, via e-mail through the Court's CM/ECF system per Local Rule CV-5(a)(3).

/s Michael J. Truncale
Michael J. Truncale

Appendix "A"

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| USA Video Technology Corporation | |
| Plaintiff, | Case No. 2:06-cv-00239-RHC |
| vs. | Judge: Ron Clark |
| Time Warner Cable, Inc., Cox Communications, Inc.; Charter Communications, Inc.; Comcast Cable Communications, LLC; Comcast of Richardson, LP; Comcast of Plano, LP and Comcast of Dallas, LP, | **JURY TRIAL DEMANDED** |
| Defendants. | |

## PROTECTIVE ORDER

Upon motion for Protective Order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure with respect to information provided in discovery,

It is hereby ORDERED that the following Protective Order be entered:

1.     This Protective Order shall govern the handling of any information produced or disclosed by any party or non-party (the "Producing Party") in this action to any other party (the "Receiving Party") in this action, including, without limitation, any document (whether in hard copy or computer readable form), thing, deposition testimony, deposition exhibit, interrogatory responses, responses to request for admission, or other information provided in discovery in this action (all such information shall hereinafter be referred to as "Discovery Material").

2.      All Discovery Material designated in the course of this litigation as "Confidential" or "Confidential – Attorney's Eyes Only," as these terms are defined in Paragraph 3, shall be used only for the purpose of preparation and trial of this litigation, and any appeal there from, and shall not be used, directly or indirectly, for any other purpose whatsoever, and shall not be disclosed to any person, corporation, partnership, joint venture, association, joint-stock company, limited liability company, trust, unincorporated organization, governmental body or other entity (collectively "person") except in accordance with the terms hereof.

## DEFINITIONS

3.      "Confidential" shall refer to Discovery Material that contains trade secrets or other confidential or proprietary research, development, technical, financial, commercial or business information.  "Confidential – Attorney's Eyes Only" shall refer to Discovery Material that contain or are of a highly proprietary or competitively sensitive business or technical nature. Such information shall only be disclosed to Qualified Persons designated according to Paragraph 4 below.  "Confidential" or "Confidential – Attorney's Eyes Only" shall not include any Discovery Material that the Receiving Party demonstrates:

a.      is in the public domain at the time of disclosure, including materials that on their face show that they have been submitted to any government entity without a request for confidential treatment;

b.      becomes part of the public domain through no fault of the Receiving Party, as evidenced by a written document; or

c.      was in the Receiving Party's possession at the time of disclosure from the Disclosing party, as evidenced by a written document; or

d.    the Receiving Party lawfully receives at a later date from a third party without restriction as to disclosure, provided such third party has the right to make the disclosure to the Receiving Party.

4.    With respect to Discovery Material designated as "Confidential," "Qualified Persons" means:

a.    Members and employees of the firm or firms of outside counsel who have entered an appearance, and, where appropriate, have been admitted *pro hac vice* in this action ("counsel of record");

b.    Court personnel, including stenographic, video reporters and/or translators engaged in such proceedings as are necessarily incident to the preparation or trial of this action, as well as personnel of any other court where disclosure is necessary in connection with a motion or other matter relating to this case;

c.    Current officers and employees of the parties;

d.    Two in-house attorneys designated by each party prior to such disclosure provided that each such attorney designee shall be provided information solely as reasonably required to consult with outside counsel regarding the oversight of the litigation and the resolution thereof;

e.    Any independent expert or consultant that are neither employed by or consulting for either party and are engaged by any attorney described in Paragraph 4(a) solely to assist in this litigation, including their administrative and clerical personnel, provided that disclosure to each such person shall be made only on the following conditions:

1)    each consultant/expert signs a statement in the form attached hereto as Exhibit A;

2)    each consultant/expert provides to outside counsel of the Producing Party such consultant/expert's (i) name, (ii) address, (iii) resume or curriculum vitae, and (iv) information on prior and current employment, affiliations, and consultancies (including any cases in which he or she has testified at trial or by deposition within the preceding four years);

3)    there is no objection by a Producing Party in writing served on all parties by facsimile, overnight mail or in person within ten (10) business days of the foregoing disclosures, which writing shall specify the reasons for the objection.  In the case of an objection the parties must confer as soon as reasonably possible to resolve the objection.  If the parties are unable to resolve the objection, the Receiving Party may seek relief from the Court with reasonable notice to the Producing Party.  No such outside expert or consultant as to whom timely objection is made shall receive designated confidential information unless and until all such objections are resolved.

f.    Any person who authored and/or was an identified original recipient of the particular material sought to be disclosed to that person;

g.    Service contractors, including but not limited to document copy services and graphics consultants, who have signed a statement in the form attached as Exhibit A hereto; and

h.    Any other person agreed to by the parties in writing who has signed a statement in the form attached as Exhibit A hereto.

With respect to Discovery Materials designated "Confidential – Attorney's Eyes Only," "Qualified Persons" shall mean those persons under Paragraph 4(a), (b), (d), (e), (f), (g) and (h). The parties have agreed that the following in-house counsel designated by the parties have been

approved and cleared under this Protective Order in accordance with the requirements of Paragraph 4(d):

1.          Andrew Huffman, Esq. designated by Plaintiff,

2.          Andrew T. Block, Esq. and Jeffrey Zimmerman, Esq.. designated by Time Warner Cable, Inc.

3.          Mark L. Brown, Esq. and Larry Christopher, Esq. designated by Charter Communications, Inc.

4.          Lee Zieroth, Esq. and Michael Aronoff, Esq. designated by Comcast Cable Communications, LLC.

5.          Marcus Delgado, Esq. And Kristen Weathersby, Esq. designated by Cox Communications, Inc.

## <u>DESIGNATION AS "CONFIDENTIAL" OR<br>"CONFIDENTIAL – ATTORNEY'S EYES ONLY"</u>

5.          The designation as "Confidential" or "Confidential – Attorney's Eyes Only" for purposes of this Protective Order shall be made in the following manner by the Producing Party:

a.          In the case of Discovery Material, by affixing, legibly, the legend "Confidential" or "Confidential – Attorney's Eyes Only" to each page containing confidential information.

b.          In the case of depositions ("Transcripts"), (i) by indicating on the record at the deposition that the testimony is "Confidential" or "Confidential – Attorney's Eyes Only" and is subject to the provision of this Order; or (ii) by notifying all parties in writing within thirty (30) days of receipt of the Transcript, of the specific pages and lines of the Transcript that should be treated as "Confidential" or "Confidential – Attorney's Eyes Only" thereafter.  Each party

shall thereafter place a notice on the face of the Transcript, and each copy thereof in its possession, custody or control, identifying portions of the Transcript as "Confidential" or "Confidential – Attorney's Eyes Only" as the case may be.  All Transcripts shall be treated as "Confidential – Attorney's Eyes only" for a period of thirty (30) days after the receipt of the Transcript.

        c.     Materials designated as "Confidential" or "Confidential – Attorney's Eyes Only" as hereinafter be referred to a Confidential Material.

      6.     Each Receiving Party's counsel of record shall maintain a log of all copies of "Confidential" or "Confidential – Attorney's Eyes Only" documents that are delivered to any one or more Qualified Persons identified in Paragraph 4(c) through (h) above.

      7.     To the extent that Confidential Material or information obtained there from is used in the taking of depositions or used as exhibits at trial, such documents or information shall remain subject to the provisions of this Order, along with the Transcript pages dealing with the Confidential Material.

      8.     Other than court personnel, the recipient of any Confidential Material that is provided under this Order shall maintain such materials in a secure and safe area to which access is limited, or otherwise use available methods to restrict access, to Qualified Persons only, and shall exercise the same standard of due and proper care with respect to the storage, custody, use and/or dissemination of such information as is exercised by the recipient with respect to its own proprietary information.  Confidential Material shall not be copied, reproduced, summarized or abstracted, except to the extent that such copying, reproduction, summarization or abstraction is reasonably necessary for the conduct of this litigation.   All such copies, reproductions, summaries and abstractions shall be subject to the terms of the Order, and labeled in the same

manner as the designated material on which they are based.  Court personnel shall maintain such materials under seal as provided in the local rules and procedures of the Eastern District of Texas.

## CHALLENGES TO DESIGNATIONS

9.     At any time after the receipt of any Discovery Materials or Transcripts designated "Confidential" or "Confidential – Attorney's Eyes Only," counsel for a Receiving Party may challenge the designation by providing written notice of such challenge to counsel for the Producing Party.  Said notice shall clearly identify the Discovery Material, Transcript, or portions thereof, that the challenging party claims should not be afforded confidential treatment, or afforded a lesser degree of confidential designation, and the reasons supporting the challenging party's claim.  After such notice is made, the parties shall confer and in good faith attempt to resolve their differences.  If the parties are unable to agree as to whether the confidential designation is appropriate, counsel for the Receiving Party must move the Court for appropriate relief with reasonable notice to opposing counsel.  The party seeking a designation as "Confidential" or "Confidential – Attorney's Eyes Only" shall have the burden of establishing that any Discovery Material or Transcript in dispute is entitled to protection from unrestricted disclosure and to such designation.  The party asserting that the information is not confidential because of the reasons listed in Paragraph 3 shall have the burden of making a prima facie showing in support of its position.  All Discovery Materials and Transcripts that a party designates as "Confidential" or "Confidential – Attorney's Eyes Only" shall be accorded such status pursuant to the terms of this Protective Order until and unless the parties formally agree in writing to the contrary or a determination is made by the Court as to the confidential status.

## FILING UNDER SEAL

10.     All documents of any nature, including briefs, containing information that is Confidential Material, which are filed with the Court, may be filed under seal using the Court's CM/ECF system.  Documents filed under seal must comply with the requirements of Eastern District Local Rules CV-5(a), CV-7, and CV-5(a)(9).  The parties are not required to file additional Motions to Seal Documents, and sealed e-filings of Confidential Material in this case are hereby authorized without necessity of further motion or leave of Court.  There shall be, attached to the Confidential Material filed under seal, a cover sheet including the caption of the case, the signature of counsel of record for the party filing the document, and the following titles:

## CONFIDENTIAL INFORMATION ENCLOSED – FILED UNDER SEAL

11.     Any documents filed under seal as provided in this paragraph shall be disclosed by the clerk only to counsel of record without further order of the Court.  This does not limit other access to such documents as otherwise provided in the applicable Protective Order.

## INADVERTENT PRODUCTION AND DISCLOSURE

12.     A Producing Party that inadvertently produces Discovery Material without designation as "Confidential" or "Confidential – Attorney's Eyes Only" may retroactively designate the Discovery Material and "Confidential" or Confidential – Attorney's Eyes Only" by notifying the Receiving Party.  Notification shall be in writing to the Receiving Party, identifying the Discovery Material by Bates-number(s) and date of production and by sending replacement documents with the appropriate designation to a Receiving Party.  Notification shall be provided reasonably promptly after the Producing Party first realizes that the Discovery Material was produced without or with incorrect designation.  The Discovery Material designated through the notification procedure set forth immediately above shall be deemed "Confidential: or

"Confidential – Attorney's Eyes Only" retroactively to the date of production. If, in the interim between production and notification, the subject materials have been provided to persons other than Qualified Persons, the Receiving Party shall reasonably promptly notify the Producing Party as to which materials have been disclosed, and comply with the provisions for inadvertent disclosure as set forth in Paragraph 13, below.

13.     A party's inadvertent production of Discovery Material in this action for another party's inspection or copying shall not in itself be deemed to waive any claim of attorney-client communication privilege or attorney work-product protection that might exist with respect to such Discovery Material or other documents or communications, written or oral, including, without limitation, other communications referred to in the Discovery Materials produced. Furthermore, a party's production shall not be deemed a waiver of any party's right to object for any reason to the admission of any document or thing into evidence, nor shall the production be deemed an admission of its admissibility. Nothing in this paragraph shall prejudice the right of any party to seek discovery of communications, documents and things as to which a claim of attorney-client communication privilege or attorney work-product has been made.

14.     In the event of inadvertent disclosure of Confidential Materials to a person that is not a Qualified Person, the party that inadvertently discloses such information or that is in a position to prevent, address or otherwise remedy the inadvertent disclosure, shall promptly take all practical steps to retrieve the Confidential Material and prevent its further disclosure. The party that inadvertently disclosed such information shall also promptly notify the party designated the Confidential Materials of the inadvertent disclosure and the steps being taken to rectify the disclosure.

## RETURN OF CONFIDENTIAL MATERIAL AFTER TERMINATION

15.     After termination of this litigation, including any appeals, the provisions of this Order shall continue to be  binding, except with respect to those documents and information that become a matter of public record.  This Court retains and shall have jurisdiction over the Parties and recipients of the Confidential Material for enforcement of the provisions of this Order following termination of this litigation.

16.     Within ninety (90) days after the later of (i) entry of final judgment in or settlement of this proceeding and (ii) the time for any and all appeals has expired, the Plaintiff and its counsel shall return to Defendant or its counsel all Confidential Material provided by Defendant and all copies thereof, and the Defendant and its counsel shall return to Plaintiff or its counsel all Confidential Material provided by Plaintiff and all copies thereof.  Alternatively, the parties and their respective counsel may agree in writing on appropriate alternative methods for the destruction of such documents.  Counsel for each party may retain one archival copy of all discovery response; deposition exhibits; exhibits used in proceedings before the Court; documents included in submissions to the Court; and Confidential Material to the extent it is included in such papers or reflected in that counsel of record's work product.

## OTHER PROCEEDINGS

17.     By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case.  Any person or party subject to this order who becomes subject to a motion to disclose another party's information designated "Confidential" or "Confidential – Attorney's Eyes Only" pursuant to this order shall promptly notify that party of

the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

## GENERAL ADVICE AND DISCLOSURE BY COUNSEL

18.     This Protective Order shall not bar any attorney for the parties from rendering advice to his or her client with respect to this action.

## DUTY TO COMPLY WITH PROTECTIVE ORDER

19.     Any party designating any person as a Qualified Person shall have the duty to reasonably ensure that such person observes the terms of this Protective Order and shall be responsible upon breach of such duty for the failure of any such person to observe the terms of this Protective Order.

20.     Unless otherwise agreed to in writing by the parties or ordered by the Court, all proceedings involving or relating to documents or any other information shall be subject to the provisions of this Order.

21.     The parties may, by stipulation, provide for exceptions to this Order and any party may seek an order of this Court modifying this Protective Order.


Dated this ____ day of October 2006        _____
                                            **Honorable Ron Clark**
                                            United States District Court

AGREED TO AS TO FORM AND CONTENT:

*Counsel for Plaintiff*
*USA Video Technology Corporation*

GOLDSTEIN FAUCETT & PREBEG


/s Edward W. Goldstein
Edward W. Goldstein
1177 West Loop South, Suite 400
Houston, Texas 77027
(713) 877-1515 Telephone
(713) 877-1145 Facsimile


OFFICE OF T. JOHN WARD, JR. PC


/s Thomas John Ward, Jr.
Thomas John Ward, Jr.
P.O. Box 1231
Longview, TX 75606
(903) 757-6400 Telephone
(903) 757-2323 Facsimile

*Counsel for Defendant*
*Cox Communications, Inc.*


KILPATRICK STOCKTON, LLP


/s Leroy M. Toliver
Candice C. Decaire
Leroy M. Toliver
Mitchell G. Stockwell
1100 Peachtree St., Suite 2800
Atlanta, GA 30309
(404) 815-6033 Telephone
(404) 541-3218 Facsimile

*Counsel for Defendant*
*Time Warner, Inc.*

SIDLEY AUSTIN, LLP


/s Jeffrey M. Olson
Jeffrey M. Olson
555 West 5th Street
Los Angeles, CA 90013
(213) 896-6000 Telephone
(213) 896-6600 Facsimile


OFFICE OF THAD HEARTFIELD


/s Thad Heartfield
Thad Heartfield
2195 Dowlen Road
Beaumont, TX 77706
(409) 866-3318 Telephone
(409) 866-5789 Facsimile

*Counsel for Defendant*
*Charter Communications, Inc.*


THOMPSON COBURN


/s Nicholas B. Clifford, Jr.
Dean L. Franklin – Attorney-in-Charge
Nicholas B. Clifford, Jr.
Matthew A. Rosenberg
One US Bank Plaza
St. Louis, MO 63101
(314) 552-6136 Telephone
(314) 552-7136 Facsimile

POTTER MINTON, PC

/s Michael Edwin Jones
Michael Edwin Jones
110 N. College, Suite 500
P.O. Box 359
Tyler, Texas 75710
(903) 597-8311 Telephone
(903) 593-0846 Facsimile

GILLAM & SMITH, LLP

/s Harry L. "Gil" Gillam, Jr.
Harry L. "Gil" Gillam, Jr.
Melissa Richards Smith
303 South Washington Avenue
Marshall, TX 75670
(903) 934-8450 Telephone
(903) 934-9257 Facsimile

*Counsel for Defendant*
*Comcast Cable Communications, LLC*
*Comcast of Richardson, LP*
*Comcast of Plano, LP*
*Comcast of Dallas, LP*

GILLAM & SMITH, LLP

OF COUNSEL:
DAVIS POLK & WARDWELL

/s Harry L. "Gil" Gillam, Jr.
Harry L. "Gil" Gillam, Jr. – Lead Attorney
303 South Washington Avenue
Marshall, TX 75670
(903) 934-8450 Telephone
(903) 934-9257 Facsimile

ORGAIN, BELL & TUCKER, L.L.P.

/s Michael J. Truncale
Michael J. Truncale
P.O. Box 1751
Beaumont, Texas 77704
(409) 838-6412 Telephone
(409) 951-7318 Facsimile

/s Suong T. Nguyen
Matthew B. Lehr
Suong T. Nguyen
Duane D. Nash
Yiping R. Liao
1600 El Camino Real
Menlo Park, CA 94025
(650) 752-2000 Telephone
(650) 752-2111 Facsimile

## EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

_____

USA Video Technology Corporation

                    Plaintiff,

vs.

Time Warner Inc., Cox Communications, Inc.;
Charter Communications, Inc.; Comcast Cable
Communications, LLC; Comcast of Richardson,
LP; Comcast of Plano, LP and Comcast of
Dallas, LP,

                    Defendants.

Case No. 2:06-cv-00239-RHC

Judge: Ron Clark

**JURY TRIAL DEMANDED**

I hereby certify that I have read the Protective Order entered in the United States District Court for the Eastern District of Texas on _____, 2006, in the above action. I understand the terms thereof and agree, under threat of penalty of contempt, to be bound by such terms, and consent to the jurisdiction of the United States District Court for the Eastern District of Texas for all purposes relating to the enforcement of the Order.

As soon as practical, but no later than sixty (60) days after final adjudication of this case, I shall return to counsel of record who provided me with such material, all materials designated as "Confidential" or "Confidential – Attorney's Eyes Only" under this Order, including, but not limited to, my notes, summaries, or other written materials which I may have prepared based on the Confidential Material that was provided me.

Dated: _____

_____
Signature

_____
Type or Print Name of Individual

_____
Residence Address

_____
Business Address

_____
Employer

_____
Title/Job Description

F I L E D
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

OCT - 5 2006

DAVID J. MALAND, CLERK

BY_____
DEPUTY

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| USA Video Technology Corporation | Case No. 2:06-cv-00239-RHC |
| Plaintiff, | Judge: Ron Clark |
| vs. | **JURY TRIAL DEMANDED** |
| Time Warner Cable, Inc., Cox Communications, Inc.; Charter Communications, Inc.; Comcast Cable Communications, LLC; Comcast of Richardson, LP; Comcast of Plano, LP and Comcast of Dallas, LP, | |
| Defendants. | |

### PROTECTIVE ORDER

Upon motion for Protective Order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure with respect to information provided in discovery,

It is hereby ORDERED that the following Protective Order be entered:

1.    This Protective Order shall govern the handling of any information produced or disclosed by any party or non-party (the "Producing Party") in this action to any other party (the "Receiving Party") in this action, including, without limitation, any document (whether in hard copy or computer readable form), thing, deposition testimony, deposition exhibit, interrogatory responses, responses to request for admission, or other information provided in discovery in this action (all such information shall hereinafter be referred to as "Discovery Material").

2.    All Discovery Material designated in the course of this litigation as "Confidential" or "Confidential – Attorney's Eyes Only," as these terms are defined in Paragraph 3, shall be used only for the purpose of preparation and trial of this litigation, and any appeal there from, and shall not be used, directly or indirectly, for any other purpose whatsoever, and shall not be disclosed to any person, corporation, partnership, joint venture, association, joint-stock company, limited liability company, trust, unincorporated organization, governmental body or other entity (collectively "person") except in accordance with the terms hereof.

## DEFINITIONS

3.    "Confidential" shall refer to Discovery Material that contains trade secrets or other confidential or proprietary research, development, technical, financial, commercial or business information. "Confidential – Attorney's Eyes Only" shall refer to Discovery Material that contain or are of a highly proprietary or competitively sensitive business or technical nature. Such information shall only be disclosed to Qualified Persons designated according to Paragraph 4 below. "Confidential" or "Confidential – Attorney's Eyes Only" shall not include any Discovery Material that the Receiving Party demonstrates:

a    is in the public domain at the time of disclosure, including materials that on their face show that they have been submitted to any government entity without a request for confidential treatment;

b.    becomes part of the public domain through no fault of the Receiving Party, as evidenced by a written document; or

c.    was in the Receiving Party's possession at the time of disclosure from the Disclosing party, as evidenced by a written document; or

d.     the Receiving Party lawfully receives at a later date from a third party without restriction as to disclosure, provided such third party has the right to make the disclosure to the Receiving Party.

4.     With respect to Discovery Material designated as "Confidential," "Qualified Persons" means:

a.     Members and employees of the firm or firms of outside counsel who have entered an appearance, and, where appropriate, have been admitted *pro hac vice* in this action ("counsel of record");

b.     Court personnel, including stenographic, video reporters and/or translators engaged in such proceedings as are necessarily incident to the preparation or trial of this action, as well as personnel of any other court where disclosure is necessary in connection with a motion or other matter relating to this case;

c.     Current officers and employees of the parties;

d.     Two in-house attorneys designated by each party prior to such disclosure provided that each such attorney designee shall be provided information solely as reasonably required to consult with outside counsel regarding the oversight of the litigation and the resolution thereof;

e.     Any independent expert or consultant that are neither employed by or consulting for either party and are engaged by any attorney described in Paragraph 4(a) solely to assist in this litigation, including their administrative and clerical personnel, provided that disclosure to each such person shall be made only on the following conditions:

1)     each consultant/expert signs a statement in the form attached hereto as Exhibit A;

2)      each consultant/expert provides to outside counsel of the Producing Party such consultant/expert's (i) name, (ii) address, (iii) resume or curriculum vitae, and (iv) information on prior and current employment, affiliations, and consultancies (including any cases in which he or she has testified at trial or by deposition within the preceding four years);

3)      there is no objection by a Producing Party in writing served on all parties by facsimile, overnight mail or in person within ten (10) business days of the foregoing disclosures, which writing shall specify the reasons for the objection. In the case of an objection the parties must confer as soon as reasonably possible to resolve the objection. If the parties are unable to resolve the objection, the Receiving Party may seek relief from the Court with reasonable notice to the Producing Party. No such outside expert or consultant as to whom timely objection is made shall receive designated confidential information unless and until all such objections are resolved.

f.      Any person who authored and/or was an identified original recipient of the particular material sought to be disclosed to that person;

g.      Service contractors, including but not limited to document copy services and graphics consultants, who have signed a statement in the form attached as Exhibit A hereto; and

h.      Any other person agreed to by the parties in writing who has signed a statement in the form attached as Exhibit A hereto.

With respect to Discovery Materials designated "Confidential – Attorney's Eyes Only," "Qualified Persons" shall mean those persons under Paragraph 4(a), (b), (d), (e), (f), (g) and (h). The parties have agreed that the following in-house counsel designated by the parties have been

approved and cleared under this Protective Order in accordance with the requirements of

Paragraph 4(d):

     1           Andrew Huffman, Esq. designated by Plaintiff,

     2           Andrew T. Block, Esq. and Jeffrey Zimmerman, Esq. designated by Time

Warner Cable, Inc.

     3.         Mark L. Brown, Esq. and Larry Christopher, Esq. designated by Charter

Communications, Inc.

     4.         Lee Zieroth, Esq. and Michael Aronoff, Esq. designated by Comcast Cable

Communications, LLC.

     5.         Marcus Delgado, Esq. And Kristen Weathersby, Esq. designated by Cox

Communications, Inc.

<div align="center">

**DESIGNATION AS "CONFIDENTIAL" OR
"CONFIDENTIAL – ATTORNEY'S EYES ONLY"**

</div>

     5.     The designation as "Confidential" or "Confidential – Attorney's Eyes Only" for

purposes of this Protective Order shall be made in the following manner by the Producing Party:

     a.      In the case of Discovery Material, by affixing, legibly, the legend

"Confidential" or "Confidential – Attorney's Eyes Only" to each page containing confidential

information.

     b      In the case of depositions ("Transcripts"), (i) by indicating on the record at

the deposition that the testimony is "Confidential" or "Confidential – Attorney's Eyes Only" and

is subject to the provision of this Order; or (ii) by notifying all parties in writing within thirty

(30) days of receipt of the Transcript, of the specific pages and lines of the Transcript that should

be treated as "Confidential" or "Confidential – Attorney's Eyes Only" thereafter. Each party

shall thereafter place a notice on the face of the Transcript, and each copy thereof in its possession, custody or control, identifying portions of the Transcript as "Confidential" or "Confidential – Attorney's Eyes Only" as the case may be. All Transcripts shall be treated as "Confidential – Attorney's Eyes only" for a period of thirty (30) days after the receipt of the Transcript.

      c.     Materials designated as "Confidential" or "Confidential – Attorney's Eyes Only" as hereinafter be referred to a Confidential Material.

      6.     Each Receiving Party's counsel of record shall maintain a log of all copies of "Confidential" or "Confidential – Attorney's Eyes Only" documents that are delivered to any one or more Qualified Persons identified in Paragraph 4(c) through (h) above.

      7.     To the extent that Confidential Material or information obtained there from is used in the taking of depositions or used as exhibits at trial, such documents or information shall remain subject to the provisions of this Order, along with the Transcript pages dealing with the Confidential Material.

      8.     Other than court personnel, the recipient of any Confidential Material that is provided under this Order shall maintain such materials in a secure and safe area to which access is limited, or otherwise use available methods to restrict access, to Qualified Persons only, and shall exercise the same standard of due and proper care with respect to the storage, custody, use and/or dissemination of such information as is exercised by the recipient with respect to its own proprietary information. Confidential Material shall not be copied, reproduced, summarized or abstracted, except to the extent that such copying, reproduction, summarization or abstraction is reasonably necessary for the conduct of this litigation. All such copies, reproductions, summaries and abstractions shall be subject to the terms of the Order, and labeled in the same

manner as the designated material on which they are based. Court personnel shall maintain such materials under seal as provided in the local rules and procedures of the Eastern District of Texas.

## CHALLENGES TO DESIGNATIONS

9       At any time after the receipt of any Discovery Materials or Transcripts designated "Confidential" or "Confidential – Attorney's Eyes Only," counsel for a Receiving Party may challenge the designation by providing written notice of such challenge to counsel for the Producing Party.   Said notice shall clearly identify the Discovery Material, Transcript, or portions thereof, that the challenging party claims should not be afforded confidential treatment, or afforded a lesser degree of confidential designation, and the reasons supporting the challenging party's claim.   After such notice is made, the parties shall confer and in good faith attempt to resolve their differences.   If the parties are unable to agree as to whether the confidential designation is appropriate, counsel for the Receiving Party must move the Court for appropriate relief with reasonable notice to opposing counsel.   The party seeking a designation as "Confidential" or "Confidential – Attorney's Eyes Only" shall have the burden of establishing that any Discovery Material or Transcript in dispute is entitled to protection from unrestricted disclosure and to such designation.   The party asserting that the information is not confidential because of the reasons listed in Paragraph 3 shall have the burden of making a prima facie showing in support of its position.   All Discovery Materials and Transcripts that a party designates as "Confidential" or "Confidential – Attorney's Eyes Only" shall be accorded such status pursuant to the terms of this Protective Order until and unless the parties formally agree in writing to the contrary or a determination is made by the Court as to the confidential status.

## FILING UNDER SEAL

10.    All documents of any nature, including briefs, containing information that is Confidential Material, which are filed with the Court, may be filed under seal using the Court's CM/ECF system   Documents filed under seal must comply with the requirements of Eastern District Local Rules CV-5(a), CV-7, and CV-5(a)(9)   The parties are not required to file additional Motions to Seal Documents, and sealed e-filings of Confidential Material in this case are hereby authorized without necessity of further motion or leave of Court.   There shall be, attached to the Confidential Material filed under seal, a cover sheet including the caption of the case, the signature of counsel of record for the party filing the document, and the following titles:

## CONFIDENTIAL INFORMATION ENCLOSED – FILED UNDER SEAL

11.    Any documents filed under seal as provided in this paragraph shall be disclosed by the clerk only to counsel of record without further order of the Court   This does not limit other access to such documents as otherwise provided in the applicable Protective Order.

## INADVERTENT PRODUCTION AND DISCLOSURE

12.    A Producing Party that inadvertently produces Discovery Material without designation as "Confidential" or "Confidential – Attorney's Eyes Only" may retroactively designate the Discovery Material and "Confidential" or Confidential – Attorney's Eyes Only" by notifying the Receiving Party.   Notification shall be in writing to the Receiving Party, identifying the Discovery Material by Bates-number(s) and date of production and by sending replacement documents with the appropriate designation to a Receiving Party.   Notification shall be provided reasonably promptly after the Producing Party first realizes that the Discovery Material was produced without or with incorrect designation.   The Discovery Material designated through the notification procedure set forth immediately above shall be deemed "Confidential: or

"Confidential – Attorney's Eyes Only" retroactively to the date of production. If, in the interim between production and notification, the subject materials have been provided to persons other than Qualified Persons, the Receiving Party shall reasonably promptly notify the Producing Party as to which materials have been disclosed, and comply with the provisions for inadvertent disclosure as set forth in Paragraph 13, below.

13.    A party's inadvertent production of Discovery Material in this action for another party's inspection or copying shall not in itself be deemed to waive any claim of attorney-client communication privilege or attorney work-product protection that might exist with respect to such Discovery Material or other documents or communications, written or oral, including, without limitation, other communications referred to in the Discovery Materials produced. Furthermore, a party's production shall not be deemed a waiver of any party's right to object for any reason to the admission of any document or thing into evidence, nor shall the production be deemed an admission of its admissibility. Nothing in this paragraph shall prejudice the right of any party to seek discovery of communications, documents and things as to which a claim of attorney-client communication privilege or attorney work-product has been made.

14.    In the event of inadvertent disclosure of Confidential Materials to a person that is not a Qualified Person, the party that inadvertently discloses such information or that is in a position to prevent, address or otherwise remedy the inadvertent disclosure, shall promptly take all practical steps to retrieve the Confidential Material and prevent its further disclosure. The party that inadvertently disclosed such information shall also promptly notify the party designated the Confidential Materials of the inadvertent disclosure and the steps being taken to rectify the disclosure.

## RETURN OF CONFIDENTIAL MATERIAL AFTER TERMINATION

15.     After termination of this litigation, including any appeals, the provisions of this Order shall continue to be binding, except with respect to those documents and information that become a matter of public record. This Court retains and shall have jurisdiction over the Parties and recipients of the Confidential Material for enforcement of the provisions of this Order following termination of this litigation.

16.     Within ninety (90) days after the later of (i) entry of final judgment in or settlement of this proceeding and (ii) the time for any and all appeals has expired, the Plaintiff and its counsel shall return to Defendant or its counsel all Confidential Material provided by Defendant and all copies thereof, and the Defendant and its counsel shall return to Plaintiff or its counsel all Confidential Material provided by Plaintiff and all copies thereof. Alternatively, the parties and their respective counsel may agree in writing on appropriate alternative methods for the destruction of such documents. Counsel for each party may retain one archival copy of all discovery response; deposition exhibits; exhibits used in proceedings before the Court; documents included in submissions to the Court; and Confidential Material to the extent it is included in such papers or reflected in that counsel of record's work product.

## OTHER PROCEEDINGS

17.     By entering this order and limiting the disclosure of information in this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who becomes subject to a motion to disclose another party's information designated "Confidential" or "Confidential — Attorney's Eyes Only" pursuant to this order shall promptly notify that party of

the motion so that the party may have an opportunity to appear and be heard on whether that information should be disclosed.

## GENERAL ADVICE AND DISCLOSURE BY COUNSEL

18. This Protective Order shall not bar any attorney for the parties from rendering advice to his or her client with respect to this action.

## DUTY TO COMPLY WITH PROTECTIVE ORDER

19. Any party designating any person as a Qualified Person shall have the duty to reasonably ensure that such person observes the terms of this Protective Order and shall be responsible upon breach of such duty for the failure of any such person to observe the terms of this Protective Order.

20. Unless otherwise agreed to in writing by the parties or ordered by the Court, all proceedings involving or relating to documents or any other information shall be subject to the provisions of this Order.

21. The parties may, by stipulation, provide for exceptions to this Order and any party may seek an order of this Court modifying this Protective Order.

Dated this ___ day of October 2006

_____
**Honorable Ron Clark**
United States District Court

AGREED TO AS TO FORM AND CONTENT:

*Counsel for Plaintiff*
*USA Video Technology Corporation*

GOLDSTEIN FAUCETT & PREBEG


/s Edward W. Goldstein
Edward W. Goldstein
1177 West Loop South, Suite 400
Houston, Texas 77027
(713) 877-1515 Telephone
(713) 877-1145 Facsimile


OFFICE OF T. JOHN WARD, JR. PC


/s Thomas John Ward, Jr.
Thomas John Ward, Jr.
P.O. Box 1231
Longview, TX 75606
(903) 757-6400 Telephone
(903) 757-2323 Facsimile

*Counsel for Defendant*
*Cox Communications, Inc.*


KILPATRICK STOCKTON, LLP


/s Leroy M. Toliver
Candice C. Decaire
Leroy M. Toliver
Mitchell G. Stockwell
1100 Peachtree St., Suite 2800
Atlanta, GA 30309
(404) 815-6033 Telephone
(404) 541-3218 Facsimile

*Counsel for Defendant*
*Time Warner, Inc*

SIDLEY AUSTIN, LLP


/s Jeffrey M. Olson
Jeffrey M. Olson
555 West 5th Street
Los Angeles, CA 90013
(213) 896-6000 Telephone
(213) 896-6600 Facsimile


OFFICE OF THAD HEARTFIELD


/s Thad Heartfield
Thad Heartfield
2195 Dowlen Road
Beaumont, TX 77706
(409) 866-3318 Telephone
(409) 866-5789 Facsimile

*Counsel for Defendant*
*Charter Communications, Inc.*


THOMPSON COBURN


/s Nicholas B. Clifford, Jr.
Dean L. Franklin – Attorney-in-Charge
Nicholas B. Clifford, Jr.
Matthew A. Rosenberg
One US Bank Plaza
St. Louis, MO 63101
(314) 552-6136 Telephone
(314) 552-7136 Facsimile

POTTER MINTON, PC

GILLAM & SMITH, LLP


/s Michael Edwin Jones
Michael Edwin Jones
110 N. College, Suite 500
P.O. Box 359
Tyler, Texas 75710
(903) 597-8311 Telephone
(903) 593-0846 Facsimile

/s Harry L. "Gil" Gillam, Jr.
Harry L. "Gil" Gillam, Jr.
Melissa Richards Smith
303 South Washington Avenue
Marshall, TX 75670
(903) 934-8450 Telephone
(903) 934-9257 Facsimile


*Counsel for Defendant*
*Comcast Cable Communications, LLC*
*Comcast of Richardson, LP*
*Comcast of Plano, LP*
*Comcast of Dallas, LP*


GILLAM & SMITH, LLP

OF COUNSEL:
DAVIS POLK & WARDWELL


/s Harry L. "Gil" Gillam, Jr.
Harry L. "Gil" Gillam, Jr. – Lead Attorney
303 South Washington Avenue
Marshall, TX 75670
(903) 934-8450 Telephone
(903) 934-9257 Facsimile


ORGAIN, BELL & TUCKER, L.L.P.

/s Suong T. Nguyen
Matthew B. Lehr
Suong T. Nguyen
Duane D. Nash
Yiping R. Liao
1600 El Camino Real
Menlo Park, CA 94025
(650) 752-2000 Telephone
(650) 752-2111 Facsimile


/s Michael J. Truncale
Michael J. Truncale
P.O. Box 1751
Beaumont, Texas 77704
(409) 838-6412 Telephone
(409) 951-7318 Facsimile

**EXHIBIT A**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

---

| | |
|---|---|
| USA Video Technology Corporation | |
| Plaintiff, | Case No  2:06-cv-00239-RHC |
| vs. | Judge: Ron Clark |
| Time Warner Inc., Cox Communications, Inc.; Charter Communications, Inc.; Comcast Cable Communications, LLC; Comcast of Richardson, LP; Comcast of Plano, LP and Comcast of Dallas, LP, | **JURY TRIAL DEMANDED** |
| Defendants. | |

I hereby certify that I have read the Protective Order entered in the United States District Court for the Eastern District of Texas on _____, 2006, in the above action. I understand the terms thereof and agree, under threat of penalty of contempt, to be bound by such terms, and consent to the jurisdiction of the United States District Court for the Eastern District of Texas for all purposes relating to the enforcement of the Order.

As soon as practical, but no later than sixty (60) days after final adjudication of this case, I shall return to counsel of record who provided me with such material, all materials designated as "Confidential" or "Confidential – Attorney's Eyes Only" under this Order, including, but not limited to, my notes, summaries, or other written materials which I may have prepared based on the Confidential Material that was provided me.

Dated: _____

_____
Signature

_____
Type or Print Name of Individual

_____
Residence Address

_____
Business Address

_____
Employer

_____
Title/Job Description

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA Video Technology Corporation, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Case No.2:06-cv-239 RHC |
| | § | |
| TIME WARNER CABLE, INC.; COX | § | |
| COMMUNICATIONS, INC.; | § | |
| CHARTER COMMUNICATIONS, | § | **JURY TRIAL DEMANDED** |
| INC.; COMCAST CABLE | § | |
| COMMUNICATIONS, LLC; | § | |
| COMCAST OF RICHARDSON, LP; | § | |
| COMCAST OF PLANO, LP; | § | |
| COMCAST OF DALLAS, LP | § | |
| | | |
| Defendants | | |

**USA VIDEO TECHNOLOGY CORPORATION'S (1) SUPPLEMENTAL
OPPOSITION TO COX COMMUNICATION, INC.'S MOTION TO DISMISS
AND (2) REPLY IN SUPPORT OF ITS MOTION TO AMEND**

Plaintiff USA Video Technology Corporation ("USVO") hereby files this

Consolidated Supplemental Opposition to Cox Communications, Inc.'s ("Cox") Motion

to Dismiss for Lack of Personal Jurisdiction, or, in the Alternative, to Transfer Venue to

the District of Delaware and Reply in Support of Its Motion to Amend.

I.      **SUMMARY OF THE CASE**

USVO filed the present lawsuit on June 13, 2006.  On August 29, 2006, USVO

filed a Motion for Leave to Amend its Complaint to include CoxCom, Inc.   On

September 8, 2006, this Court allowed Plaintiff limited discovery on the issue of whether

it has personal jurisdiction over Defendant Cox Communications, Inc.  On October 2,

2006, counsel for plaintiff received a letter from Cox's counsel regarding an error in the

declaration that was relied upon in Cox's Motion to Dismiss. Specifically, Cox admitted to having ties to Texas it earlier had argued didn't exist. A 30(b)(6) deposition took place on October 5, 2006, revealing information relevant to jurisdiction over both Cox and its affiliates. USVO hereby supplements its response and responds to Cox's Opposition to Its Motion to Dismiss.

## II.   SUPPLEMENTED RESPONSE TO LIST OF UNDISPUTED MATERIAL FACTS

1. Undisputed.

2. Undisputed.

3. Undisputed.

4. Disputed.  Cox's affiliate CoxCom, Inc. owns and operates a transport backbone node in Dallas, Texas, through which is routed some portion of CoxCom's national network traffic. Exhibit A, pg. 1, paragraph 2.

5. Undisputed.

6. Disputed.  USVO disputes Cox's characterization that USVO contends that video-on-demand services in general infringe claim 1 of the '792 patent.  In the 2003 suite in Delaware, cited in Paragraph 6, USVO alleged that the Movielink system specifically infringed claim 1 of the '792 patent.

7. Undisputed.

8. Disputed.  Again USVO dispute's Cox's characterization of the prior lawsuit.  In that suit, the Court construed only one word in

claim 1 of the '792 patent.  The parties disputed other claim terms, but the Court declined to rule on those constructions.

(Memorandum Opinion entered 1-31-05)

9.      Disputed.  While each Motion cited in Paragraph 9 was filed before the Court, it ruled only on one motion.

10.     Disputed.  USVO does not dispute that the Delaware Court held that "initiates" means "begins."  USVO disagrees with Cox's summary of the rest of the claim.  The Court declined to construe any additional terms in Claim 1.  The rest of the claim is therefore given its plain and ordinary meaning.  See claim 1 of the '792 patent.

11.     Disputed.  USVO disputes the assertion that "the Court substantially limited the scope of rights U.S. video was purporting to assert."  The Court's only determination was that Movielink's particular system didn't fall within the scope of claim 1 of the '792 patent.

III.    ARGUMENT

A.      **Cox Has Misrepresented Material Facts Regarding Its Contacts with Texas, as well as those of its Affiliates.**

The corporate structure of Cox Communications and its affiliates is complicated, and the use of only slightly different names only adds to the confusion.  For clarity, Cox Communications, Inc. ("Cox"), the current defendant, asserts that it is the parent of CoxCom Inc. ("CoxCom"), the party USVO has filed a Motion to add.  CoxCom is the

operational entity that Cox claims owns and operates the accused infringing cable systems. Cox asserts that the parent and its affiliates (including CoxCom) have insufficient contacts with Texas to support general jurisdiction, as "Cox Southwest Holding, L.P. is the only Cox affiliate is the only Cox affiliate that has owned any property in Texas since January 1, 2004" and that "Cox Southwest Holding, L.P. sold that property pursuant to the October, 2005 agreement." Cox's Reply Brief at 10. However, according to Cox Vice President of Government Affairs Mr. John Spalding, CoxCom does currently own a transport backbone node in Dallas, Texas, and has no plans to leave Texas. Through this Point of Presence ("POP") is routed some portion of CoxCom's national network traffic. See Cox's letter of October 2, attached hereto as Exhibit A. These are the kind of continuous and systematic general business contacts necessary to sustain personal jurisdiction. *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408 (U.S. 1984)

Further, this is in direct contradiction with Cox's statement that "there are presently no Cox affiliates with material assets in Texas." Reply Brief at 2. These are minimum contacts such that the maintenance of the suit against CoxCom does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). Further, maintaining a hub in Dallas is an act by which CoxCom purposefully avails itself of the privilege of conducting activities within Texas, thus invoking the benefits and privileges of its laws. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-476 (U.S. 1985).

**B. CoxCom Inc. Conducts Business in Texas and Purposely Avails Itself of the Benefits and Privilege of Texas laws.**

Mr. Spalding testified by declaration that "all material Texas assets of the affiliates of Cox Communications Inc. were transferred, with the exception of the Henderson, Texas cable television franchise." Spalding deposition, pages 14-16. At some point after the filing of this sworn declaration, Mr. Spalding realized his declaration was not entirely truthful.

As Mr. Spalding testified in his 30(b)(6) deposition, during preparation for the deposition and after preparation of the declaration, he suddenly remembered these ongoing corporate ties to Texas. This is information that likely would have been easily discovered with the proper preparation prior to signing and filing the declaration.

> Q:  What exactly triggered your recognition that there was an error – or your recognition that you should investigate further?
> A:   Just something jogged my memory.
> Q:   What further investigation came about because of this jog in your memory?
> A:  I had discussion with engineers within the company that I had not had prior to the declaration.
> Q:  And what did those engineers tell you?
> A:   They told me that, as part of the national IP backbone, that there was a node in Dallas – that there was a node as part – the backbone had a node in Dallas, Texas.
> Spalding deposition pg. 21, lines 12-25.  (See Exhibit A).

On October 2, 2006, three days prior to the scheduled deposition of Mr. Spaulding as Cox's 30(b)(6) deponent, Cox attorney Mitchell Stockwell sent a letter to USVO attorney Edward Goldstein to correct the record.  (Attached hereto as Exhibit B).

As Cox's letter explains:

> In the course of preparing for his deposition, we have discovered an error in Mr. Spalding's declaration.  The declaration states that 'CoxCom, Inc. does not do business or have assets in Texas.'  In fact, it appears that

CoxCom, Inc. owns a Point of Presence ("POP") or transport backbone node in Dallas, Texas, through which is routed some portion of CoxCom's national network traffic and as to which third parties provide services.

This is further detailed by Mr. Spaulding, Cox's 30(b)(6) witness:

Q:  What do you mean by node?
A:  A place where telecommunications – a place where our backbone interconnected with – really a junction within our – within our backbone.
Q:  And that begs the question:  What do you mean by backbone?
A:  A network of circuits and equipment to carry the Internet protocol traffic for Cox.   Deposition of John Spalding, Esq. pgs 21, line 12-pg. 22, line 8.

Q:  Why were these assets not sold when the other Texas assets were sold?
A:  Because this point of presence supported the national backbone, regardless of whether we had cable systems in Texas or not.
Deposition of John Spalding, pg. 23, lines 12-17.

In addition, Mr. Spalding admits that this "backbone" or "node" includes a physical location in Dallas with servers and routing equipment, which are housed in space leased by Cox.  (Depo pages 22-23).

These are the kinds of continuous contacts the Courts had in mind when they created the "purposeful availment" requirement for personal jurisdiction.   This "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, *Keeton v. Hustler Magazine, Inc*., 465 U.S.770, 774 (1984); or of the "unilateral activity of another party or a third person," *Helicopteros Nacionales* at 417. Jurisdiction is proper, however,  where the contacts proximately result from actions by the defendant himself that create a "substantial connection" with the forum State.  *McGee v. International Life Insurance Co*., 355 U.S, 320,  223 (1957); see also *Kulko v. California Superior Court* 436 U.S. 84, 94 (1978).   Thus where the defendant "deliberately" has  engaged in

significant activities within a State, or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well. *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 648 (1950).

### C.  USVO's Motion for Leave to Amend Its Complaint Should Be Granted.

Cox argues that even if USVO were allowed to add CoxCom as a Defendant in this suit, any claims against CoxCom should be dismissed, or transferred to Delaware under the first-to-file rule.   USVO believes in the premise of the first-to-file rule and has successfully made that assertion already in this case.   However, USVO does not agree with Cox's application of the Rule in this instance.   As this Court is already aware, several of the Defendants in this suit filed Declaratory Judgment actions against USVO in Delaware *after* the Complaint had been filed in Texas.   It was only *after* the Complaint was filed in the Eastern District of Texas that Cox affiliate CoxCom filed a declaratory judgment action against USVO in Delaware.   And it was only *after* the declaratory judgment action was filed that Cox made USVO aware that it is the affiliate CoxCom rather than the parent company Cox that is the proper Defendant in a patent infringement suit involving video-on-demand service.

The first-to-file rule was created to protect against the possibility of multiple rulings stemming from the same nucleus of fact.  It is designed to prevent situations exactly like the one that occurred here – where a Defendant or multiple Defendants race

to the courthouse of their choice to file a second lawsuit in hopes that the earlier-filed suit will get moved to a forum they prefer.   This Court already rejected such attempts by Comcast Cable Communications, LLC and its affiliates.   In the present situation, CoxCom is trying to take advantage of USVO's confusion about the corporate structure to create a loophole and claim the second-filed Delaware declaratory judgment action as the first filed action.

Even if this Court were to agree that the Delaware action was first filed, it should still reject CoxCom's attempts to dismiss or transfer.   In Texas, where "compelling circumstances" exist, the court of original jurisdiction may choose to dismiss the first-filed action and allow instead the second-filed action to proceed. *Chapa v. Mitchell*, 2005 U.S. Dist. LEXIS 42441, 4-5 (W.D. Tex. 2005).   See *also Mann Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971); Igloo *Prods. Corp. v. The Mounties, Inc.*, 735 F.Supp. 214, 217 (S.D. Tex. 1990); "Compelling circumstances" exist, inter alia, where a court determines that a party engaged in bad faith conduct, by inducing an opposing party to delay filing of a lawsuit, so that he could file a preemptive lawsuit, *Amerada Petroleum Corp. v. Marshall*, 381 F.2d 661, 663 (5th Cir. 1967), and/or where a court determines that necessary or desirable parties are absent from the first-filed lawsuit, but are present in the second-filed lawsuit. See *Genetech, Inc. v. Eli Lilli & Co.*, 998 F.2d 931, 938 (Fed. Cir. 1993).

Therefore, this Court should maintain jurisdiction over CoxCom.

IV.    CONCLUSION

While it appears as though Cox Communications may no longer have ties to Texas, it is equally clear that at least two of its affiliates – CoxCom and Cox Southwest

Holding L.P. still have significant and ongoing ties to Texas.  These ongoing ties easily fulfill the "minimum contacts" requirement so as not to offend fair play or justice to allow these companies to be sued in Texas.

Respectfully submitted,


Date: October 20, 2006

/s/ Edward W. Goldstein_____
Edward W. Goldstein
Texas Bar. No. 08099500
GOLDSTEIN, FAUCETT & PREBEG, LLP
1177 West Loop South, Suite 400
Houston, TX  77027
Telephon: 713/877-1515
Fax:  713/877-1737
E-mail:  egoldstein@gfpiplaw.com

T. John Ward, Jr.
State Bar No. 00794818
Law Office of T. John Ward, Jr., P.C.
P.O. Box 1231
Longview, Texas 75606-1231
(903) 757-6400 (telephone)
(903) 757-2323 (facsimile)
E-mail: jw@jwfirm.com
ATTORNEYS FOR PLAINTIFF


Of Counsel:

GOLDSTEIN, FAUCETT & PREBEG, L.L.P
Corby R. Vowell
Texas Bar No. 24031621
1177 West Loop South, Suite 400
Houston, Texas  77027
(713) 877-1515 – Telephone
(713) 877-1737-Facsimile
E-mail: cvowell@gfpiplaw.com

## CERTIFICATE OF SERVICE

     The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on October 20, 2006.  Any other counsel of record will be served by first class U.S. mail.

                           /s/ Edward W. Goldstein_____
                           Edward W. Goldstein

EXHIBIT A



**KILPATRICK**
**STOCKTON LLP**

Attorneys at Law

Suite 2800  1100 Peachtree St.
Atlanta GA 30309-4530
t 404 815 6500  f 404 815 6555
www.KilpatrickStockton.com

October 2, 2006

direct dial 404 815 6214
MStockwell@KilpatrickStockton.com

**Via Email**

Edward W. Goldstein
Goldstein, Faucett & Prebeg
1177 West Loop South
Suite 400
Houston, Texas 77027

Re:     *USA Video Technology Corporation v. Time Warner Cable, Inc.; Cox
         Communications, Inc., et al.*, U.S. District Court for the Eastern District
         of Texas; Marshall Division; Case No. 2:06-CV-239 RHC

Dear Ed:

        I write concerning the upcoming deposition of Mr. Spalding, Cox Communications,
Inc.'s designee for the deposition required under Judge Clark's Order.

        In the course of preparing for his deposition, we have discovered an error in Mr.
Spalding's declaration. The declaration states that "Coxcom, Inc. does not do business or
have assets in Texas" and that "[a]s of December 31, 2003 / January 1, 2004, Cox Southwest
Holdings, LP assumed ownership of all of the assets of any of Cox Communications, Inc.'s
affiliates / subsidiaries that then owned assets in Texas." In fact, it appears that CoxCom,
Inc. owns a Point of Presence ("POP") or transport backbone node in Dallas, Texas, through
which is routed some portion of CoxCom's national network traffic and as to which third
parties provide services.

        We bring this issue to your attention so you can address the substance of this
information at Mr. Spalding's deposition. We will also inform the Court of the necessary
correction, although we plan to do so by filing the appropriate portion of Mr. Spalding's
deposition. We do not believe that this information would alter Judge Clark's decision to
allow plaintiff a jurisdictional deposition, but, if you wish, we are happy to immediately
prepare and file a corrected declaration with the Court and defer Mr. Spalding's deposition
until the Court has had an opportunity to consider the corrected material. If you wish us to
so proceed, please advise.

US2000 9520191.1

ATLANTA  AUGUSTA  CHARLOTTE  LONDON  NEW YORK  RALEIGH  STOCKHOLM  WASHINGTON  WINSTON-SALEM

Edward W. Goldstein
October 2, 2006
Page 2

    Finally, when you have a chance, please let me know what time you all are arriving for the deposition in my offices.

        Sincerely,

        Mitchell G. Stockwell

MGS:kdh

Cc:    Candice Decaire
       Mike Jones

EXHIBIT B

Case 1:06-cv-00737-SLR    Document 76-96    Filed 12/05/2006    Page 2 of 7
Case 2:06-cv-00239-RHC    Document 66-3    Filed 10/20/2006    Page 2 of 7

Page 1

John Spalding                                          October 5, 2006

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION



USA VIDEO TECHNOLOGY          )

CORPORATION,                  )

                              )

    Plaintiff,             )

                              ) CASE

    vs.                    ) NO. 2:06-CV-00239-RHC

                              )

TIME WARNER, INC., COX        )

COMMUNICATIONS, INC.;         )

CHARTER COMMUNICATIONS,       )

INC.; COMCAST CABLE           )

COMMUNICATIONS, LLC;          )

COMCAST OF RICHARDSON,        )

LP; COMCAST OF PLANO, LP;     )

AND COMCAST OF DALLAS, LP,    )

                              )

    Defendants.            )

_____/


DEPOSITION OF

JOHN SPALDING, ESQ.


October 5, 2006

9:00 a.m.


Kilpatrick Stockton

1100 Peachtree Street

Suite 2800

Atlanta, Georgia


Reported By:

Mary K. Caldwell, CSR

Georgia #B-1325

Esquire Deposition Services

Atlanta Office Job #422391

Phone - 404.872.7890

John Spalding                                                          October 5, 2006

---

Page 18

1    How do you -- how do you justify those two
2    statements?
3    A    Cox Communications, Inc., did not own any
4    or operate any assets in Texas.  All the assets and
5    all the franchises were held, at the time of the
6    sale, by another entity.
7    Q    However, revenues from those franchises
8    did flow eventually to Cox Communications, Inc.?
9    A    Revenues from the customers went to Cox
10   Southwest Holdings, L.P.
11   Q    And did any revenue from that company go
12   to Cox Communications, Inc.?
13   A    As the parent of Cox Southwest Holdings --
14   I don't know.  I know that revenue went to
15   Cox Southwest Holdings.  Beyond that, I'm not sure
16   I'm able to answer your question.
17   Q    Who would know that information within Cox
18   Communications, Inc.?
19   A    Our vice-president of accounting.
20   Q    Did you have any discussions with him in
21   preparation for this deposition?
22   A    Yes.
23   Q    And what is his name?  And could you spell
24   it, too, just --
25   A    Bill Fitzsimmons, F-I-T-Z-S-I-M-M-O-N-S

---

Page 19

1    (spelling).
2    Q    Do you know if Cox maintains any control
3    over Cox Southwest Holdings?
4    A    Cox Southwest Holdings is owned by -- is
5    a -- is a subsidiary of Cox Communications, Inc.
6    Q    Does Cox Southwest Holdings still exist?
7    A    Yes.
8    Q    Was it sold?
9    A    No.
10   Q    But it's still owned by Cox
11   Communications, Inc.?
12   A    Yes.
13   Q    What is the role of Cox Southwest Holdings
14   within Cox Communications, Inc., now that the Texas
15   affiliates have sold their assets in Texas?
16   A    It holds, and will hold, the Henderson
17   franchise until the franchise expires.
18   Q    And do you know specifically when in 2007
19   it will expire?
20   A    March 2007.  I don't know the exact day
21   within March.
22   MS. LIPSKI:  Would you mark this as
23   Exhibit 2, please?
24   (Thereupon, marked for identification
25   purposes, Plaintiff's Exhibit No. 2.)

---

Page 20

1    BY MS. LIPSKI:
2    Q    Have you seen this document before?
3    A    (Witness reviews document).
4    I saw the final draft of this document,
5    but I actually have not seen the signed of it.
6    Q    Were you involved in drafting this
7    document?
8    A    Yes.
9    Q    Are you familiar with the contents of this
10   document?
11   A    Yes.
12   Q    This document states that there is an
13   error in your declaration.
14   How was this error discovered?
15   A    In preparing for this deposition, it was
16   discovered.
17   Q    And was it discovered by you?
18   A    It was.
19   Q    And was this discovery based on personal
20   knowledge or documents?
21   A    It was based on personal knowledge.
22   Q    Was it -- was it based on your personal
23   knowledge or was it based on discussions you had
24   with people within your company?
25   A    When I was preparing for the deposition, I

---

Page 21

1    reviewed the statement.  Something popped in my mind
2    that I thought I should look into, and I looked into
3    it.
4    Q    How did your preparation for the
5    deposition differ from your preparation for the
6    declaration, writing the information for the
7    declaration?
8    A    It really wasn't very different.  I used
9    my personal knowledge, I reviewed my personal
10   knowledge, and I consulted people in the company who
11   also had knowledge regarding the matter.
12   Q    What exactly triggered your recognition
13   that there was an error -- or your recognition that
14   you should investigate further?
15   A    Just something jogged my memory.
16   Q    What further investigation came about
17   because of this jog in your memory?
18   A    I had discussions with engineers within
19   the company that I had not had prior to the
20   declaration.
21   Q    And what did those engineers tell you?
22   A    They told me that, as part of the national
23   IP backbone, that there was a node in Dallas -- that
24   there was a node as part -- the backbone had a node
25   in Dallas, Texas.

---

Case 1:06-cv-00737-SLR   Document 76-96   Filed 12/05/2006   Page 4 of 7
Case 2:06-cv-00239-RHC   Document 66-3   Filed 10/20/2006   Page 4 of 7

John Spalding
October 5, 2006

Page 22

1    Q   What do you mean by node?
2    A   A place where telecommunications -- a
3    place where our backbone interconnected with --
4    really a junction within our -- within our backbone.
5    Q   And that begs the question: What do you
6    mean by backbone?
7    A   A network of circuits and equipment to
8    carry the Internet protocol traffic for Cox.
9    Q   What is Internet protocol traffic?
10   A   It's really digitized packets that are
11   transported and are interpreted through a -- an
12   Internet protocol, standard Internet protocol.
13   Q   Is this part of providing cable services?
14   A   No.
15   Q   What is a point of presence, as referenced
16   in this letter, Exhibit 2?
17   A   It's a location.
18   Q   A location of what?
19   A   It's a location where we have servers and
20   routing equipment.
21   Q   And are these servers and routing
22   equipment contained in a building? I would assume
23   so.
24   A   They are in a building.
25   Q   Is the building owned by Cox

Page 23

1    Communications, Inc.?
2    A   It is not.
3    Q   And this building is in Dallas, Texas?
4    A   Yes.
5    Q   Is this building rented?
6    A   No.
7    Q   Who owns the building?
8    A   I believe it's owned by a company named
9    Equinix.
10   Q   Why were these assets not sold when the
11   other Texas assets were sold?
12   A   Because this point of presence supported
13   the national backbone, regardless of whether we had
14   cable systems in Texas or not.
15   Q   What is the relationship between Cox
16   Communications, Inc., and Equinix, I believe, the
17   company that owns the building?
18   A   There is no relationship.
19   Q   But you're not renting the building from
20   Equinix to store your servers and other equipment
21   in?
22   A   Space is leased within the building. The
23   building itself is not rented.
24   Q   Okay. What portion of CoxCom's national
25   network traffic is routed through Dallas, Texas?

Page 24

1    A   I don't know.
2    Q   Do any employees of Cox work in the space
3    rented in Dallas, Texas, or is it simply for storing
4    equipment?
5    A   Prime -- it is -- it is for storing
6    equipment, and we have no employees residing in that
7    area.
8    Q   Do you have any employees residing in
9    Texas?
10   A   No.
11   Q   Do any employees service the equipment in
12   Dallas?
13   A   Occasionally, employees will service the
14   equipment.
15   Q   And where would those employees typically
16   live?
17   A   Atlanta.
18   Q   And what exactly --
19       What would be the job title of these
20   employees? What exactly would they do?
21   A   They would be engineers.
22   Q   You mentioned earlier that you didn't know
23   what portion of CoxCom's national network traffic
24   was routed through Dallas.
25       Who within Cox would know that informa-

Page 25

1    tion?
2        MR. STOCKWELL: Can you -- can you pause
3    for just a minute, please.
4        MS. LIPSKI: Sure.
5        (Whereupon, Mr. Stockwell views
6        court reporter's computer
7        screen.)
8        MS. LIPSKI: Could you read back the last
9    question?
10       (Thereupon, the designated
11       portion was read back by the
12       court reporter.)
13       MS. LIPSKI: Could you read back the two
14   prior questions?
15       (Thereupon, the designated
16       portion was read back by the
17       court reporter.)
18   BY MS. LIPSKI:
19   Q   You mentioned that you didn't know what
20   portion of CoxCom's national network traffic was
21   routed through Dallas.
22       Who within Cox would know that informa-
23   tion?
24   A   I think Larry Dexter, director of
25   transport.

John Spalding                                                    October 5, 2006

Page 50

1    further question by way of clarification. This
2    is Jody Goldstein.
3            RECROSS-EXAMINATION
4    BY MS. GOLDSTEIN:
5        Q   You said CoxCom, Inc., had filed tax
6    returns in Texas previously.
7            Had Cox Communications, Inc., ever filed
8    tax returns in Texas?
9        A   No.
10           MS. GOLDSTEIN:  Thanks.
11   (Deposition concluded at approximately 10:50 a.m.)
12                   - - -
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 52

1    Reason for change:_____
2    Page_____Line_____should read:_____
3    Reason for change:_____
4    Page_____Line_____should read:_____
5    Reason for change:_____
6    Page_____Line_____should read:_____
7    Reason for change:_____
8    Page_____Line_____should read:_____
9    Reason for change:_____
10   Page_____Line_____should read:_____
11   Reason for change:_____
12   Page_____Line_____should read:_____
13   Reason for change:_____
14   Page_____Line_____should read:_____
15   Reason for change:_____
16   Page_____Line_____should read:_____
17   Reason for change:_____
18
19
20          _____
                    Signature
21
22   _____, Notary Public.
23   This, the _____ day of _____, 200___.
24   My Commission Expires:_____
25   FILE NO.:422391           MKC

Page 51

1          E R R A T A   S H E E T
2          Pursuant to Rule 30(7)(e) of the Federal
3    Rules of Civil Procedure and/or Georgia Code
4    Annotated 81A-130(B)(6)(e), any changes in form or
5    substance which you desire to make to your
6    deposition testimony shall be entered upon the
7    deposition with a statement of the reasons given for
8    making them.
9          To assist you in making any such
10   corrections, please use the form below.  If
11   supplemental or additional pages are necessary,
12   please furnish same and attach them to this Errata
13   Sheet.
14          * * *
15          I, the undersigned, John Spalding, do
16   hereby certify that I have read the foregoing
17   deposition and that, to the best of my knowledge,
18   said deposition is true and accurate (with the
19   exception of the following corrections listed
20   below).
21   Page_____Line_____should read:_____
22   Reason for change:_____
23   Page_____Line_____should read:_____
24   Reason for change:_____
25   Page_____Line_____should read:_____

Page 53

1          C E R T I F I C A T E
2
3    STATE OF GEORGIA:
4    NEWTON COUNTY:
5
6          I, Mary K. Caldwell, a Certified Shorthand
7    Reporter in and for the State of Georgia, do hereby
     certify:
8          That prior to being examined, the witness
9    named in the foregoing deposition was by me duly
     sworn to testify to the truth, the whole truth, and
     nothing but the truth.
10
           That said deposition was taken before me
11   at the time and place set forth and was taken down
     by me in shorthand and thereafter reduced to
12   computerized transcription under my direction and
     supervision, and I hereby certify the foregoing
13   deposition is a full, true and correct transcript of
     my shorthand notes so taken.
14
           I further certify that I am not of kin or
15   counsel to the parties in the case, and I am not in
     the regular employ of counsel for any of the said
16   parties, nor am I in any way financially interested
     in the result of said case.
17
           IN WITNESS WHEREOF, I have hereunto
18   subscribed my name this 9th day of October, 2006.
19
20
21
22
23   _____
     MARY K. CALDWELL, CSR #B-1325
24
25

f4f82a79-580d-4359-bc0d-2fa7676711a8

John Spalding                                                    October 5, 2006

Page 54

```
 1              DISCLOSURE
 2   STATE OF GEORGIA    )   DEPOSITION OF:
 3   COUNTY OF NEWTON    )   JOHN SPALDING, ESQ.
 4       Pursuant to Article 8.B of the Rules and
     Regulations of the Board of Court Reporting of the
 5   Judicial Council of Georgia, I make the following
     disclosure:
 6
         I am a Georgia Certified Court Reporter.
 7   I am here as a representative of Esquire Deposition
     Services.
 8
         Esquire Deposition Services was contacted
 9   by the offices of Goldstein, Faucett & Prebeg to
     provide court-reporting services for this
10   deposition.  Esquire Deposition Services will not be
     taking this deposition under any contract that is
11   prohibited by O.C.G.A. 15-14-37 (a) and (b).
12       Esquire Deposition Services has no
     contract or agreement to provide court-reporting
13   services with any party to the case, any counsel in
     the case or any reporter or reporting agency from
14   whom a referral might have been made to cover this
     deposition.
15
         Esquire Deposition Services will charge
16   its usual and customary rates to all parties in the
     case, and a financial discount will not be given to
17   any party in this litigation.
18       This, the 9th day of October, 2006.
19
20
21
22
23   _____
     Mary K. Caldwell
24   Certified Shorthand Reporter, #B-1325
25
```

John Spalding

October 5, 2006



Page 54

```
 1              DISCLOSURE
 2   STATE OF GEORGIA   )    DEPOSITION OF:
 3   COUNTY OF NEWTON   )    JOHN SPALDING, ESQ.
 4        Pursuant to Article 8.B of the Rules and
     Regulations of the Board of Court Reporting of the
 5   Judicial Council of Georgia, I make the following
     disclosure:
 6
          I am a Georgia Certified Court Reporter.
 7   I am here as a representative of Esquire Deposition
     Services.
 8
          Esquire Deposition Services was contacted
 9   by the offices of Goldstein, Faucett & Prebeg to
     provide court-reporting services for this
10   deposition.  Esquire Deposition Services will not be
     taking this deposition under any contract that is
11   prohibited by O.C.G.A. 15-14-37 (a) and (b).
12        Esquire Deposition Services has no
     contract or agreement to provide court-reporting
13   services with any party to the case, any counsel in
     the case or any reporter or reporting agency from
14   whom a referral might have been made to cover this
     deposition.
15
          Esquire Deposition Services will charge
16   its usual and customary rates to all parties in the
     case, and a financial discount will not be given to
17   any party in this litigation.
18        This, the 9th day of October, 2006.
19
20
21
22
23   _____
     Mary K. Caldwell
24   Certified Shorthand Reporter, #B-1325
25
```

713.524.4600
3401 Louisiana Suite 300

Esquire Deposition Services
Houston T.X.  77002

713.524.4651
1.800.767.9532

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | ) ) ) ) ) ) ) ) | Case No. 2:06-CV-239-(RC) |
| Defendant(s). | ) ) | |

## COX COMMUNICATIONS, INC.'S RESPONSE TO PLAINTIFF'S SUPPLEMENTAL OPPOSITION AND SURREPLY IN SUPPORT OF ITS MOTION TO DISMISS

### INTRODUCTION

This Court allowed Plaintiff jurisdictional discovery over Cox Communications, Inc. ("Cox") and its affiliates ties to Texas and their relationship with one another. As a result of the discovery, Plaintiff has abandoned argument that this Court can and should exercise jurisdiction over Cox. As to Plaintiff's effort to amend to add CoxCom, Inc. ("CoxCom"), Plaintiff's sole assertion is that CoxCom's leasing a server in Texas to service its national internet traffic suffices for general jurisdiction. To the contrary, controlling case law demonstrate that such activity is insufficient to subject CoxCom to personal jurisdiction. Thus, Cox should be dismissed and Plaintiff's motion to add CoxCom denied.

# ARGUMENT

**I.     U.S. Video Has Completely and Correctly Abandoned Any Claim that this Court Can Exercise Jurisdiction Over Cox in Texas.**

Plaintiff has said nothing in its supplemental response that supports jurisdiction over Cox.

Plaintiff's only assertion is an argument that **<u>CoxCom</u>** owns a POP node in Dallas.  Cox,

however, does not own that node.  Ex. A, at 48:12-14 ("Q....  First, who owns and operates the

Internet backbone that you were talking about earlier today? A    CoxCom, Inc.").

Moreover, as Mr. Spalding confirmed in his deposition, Cox and CoxCom are totally

separate entities:

> Q    …  What sort of corporate formalities are maintained vis-a-vis CoxCom, Inc.,
> versus Cox Communications, Inc.?
> A    They each have their separate boards, separate officers, separate board
> meetings, separate resolutions.
> Q    What about the books and records of the two companies?  How are those
> kept?
> A    Separate corporate books and records.
> Q    Are there any common business departments  between CoxCom, Inc., and
> Cox Communications, Inc.?
> A    No.  CoxCom, Inc., is out in the field operating the businesses, and their
> business departments are out in the field.  And Cox Communications, Inc.'s,
> business departments are in  Atlanta.
> Q    What Texas tax returns have been filed by Cox Communications, Inc.?
> A    None.
> Q    Does CoxCom, Inc., file tax returns  separately from Cox Communications,
> Inc.?
> A     In many states, yes.
> Q    What about in Texas?
> A    When it was still operating in Texas, CoxCom, Inc., did file tax returns in
> Texas.
> Q    How would you characterize the level of  CoxCom, Inc.'s, capitalization?
> A    Very strong, has its own assets, its own  equipment, its own plant, everything
> it needs to operate the business.

Ex. 1 (excerpts from Spalding deposition, at 48-49).[1]  Plaintiff does not even argue otherwise

and certainly has made no showing that internet traffic running on CoxCom's national network

through a Dallas POP node authorizes jurisdiction over Cox.  As explained below, such a fact is

legally irrelevant to this Court's jurisdictional analysis even for CoxCom and is certainly not

relevant to exercising jurisdiction over Cox, which should be dismissed from this lawsuit.

## II.    U.S. Video's Assertion that Servers in Dallas Subject CoxCom to This Court's General Personal Jurisdiction Has Been Rejected by the Fifth Circuit, Whose Reasoning Squarely Applies to This Case.

The entire thrust of U.S. Video's jurisdictional claim centers on CoxCom's POP node.

That "node" is several servers that are placed in leased space within a building in Dallas.   Ex. B

to Plfs. Supp., at 22:21-23:23.[2]

U.S. Video overlooks the fact that the Fifth Circuit has held that interconnecting national

or international networks through assets in Texas does not support personal jurisdiction.  *See*

*Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 717-718 (5th Cir. 1999).  In

*Access Telecom*, Telmex interconnected its Mexican lines with American lines and even leased

lines from Texas to Arizona.  Holding that the line leasing was "for the purpose of connecting

two points in Mexico and [did] not constitute doing business in Texas," the *Access Telecom* court

reiterated that it was "bound by *Applewhite v. Metro Aviation, Inc.*, 875 F.2d 491 (5th Cir. 1989),

---

[1] These questions were drawn from the factors discussed in *United States v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 691-92 (5th Cir. 1985), cited in the Court's Order, at n. 2.  U.S. Video did not seek discovery on these factors and did not discuss the applicability of theories discussed in *Jon-T Chemicals* that would justify exercising jurisdiction over Cox based on its affiliates' conduct. It is thus undisputed that the evidence shows that the "general rule" of limited liability (*id.*) should continue to apply and Cox should be dismissed.

[2] U.S. Video insinuates that Mr. Spalding's initial failure to address the POP node in his declaration was intentional.  That is absolutely false.  Mr. Spalding knew that Cox had just divested all of its Texas assets.  Because the internet backbone is a national backbone, Mr. Spalding simply overlooked the potential that one node of the backbone might reside in Texas. As soon as he realized that, Cox brought the issue to Plaintiff's attention and even offered to immediately inform the Court and postpone the deposition.

US2000 9552509.1

in which such interconnections, even though crossing the border into a forum, were held insufficient to confer general jurisdiction under the Due Process Clause." 197 F. 3d at 717-18 (citation omitted). *Applewhite* held that a Mississippi court could not exercise general jurisdiction over Alabama Power despite extensive interconnection and interoperation arrangements it had with Mississippi Power.

Of course, this Court must follow the law of the Federal Circuit in assessing jurisdiction over this patent case. Dkt 53, at 2. As this Court's Order correctly noted, the applicable test is "whether the defendant purposefully directed its activities at residents of the forum state?" *Id.* at 3. Under this test, the reasoning in *Access Telecom* and *Applewhite* squarely applies. Cox operates a **national** internet backbone to carry traffic from and to its cable systems that are located in several (non-Texas) metro areas through the country. Citizens to which those activities are directed reside in the other states in which Cox offers high speed internet and cable services – services Cox does not offer in Texas. *Compare Trintec Indus., Inc. v. Pedre Promotional Prods., Inc.*, 395 F.3d 1275, 1281 (Fed. Cir. 2005) (criticizing plaintiff's reliance on website for jurisdiction because the "website is not directed at customers in the District of Columbia, but instead is available to all customers throughout the country"); *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1380 (Fed. Cir. 1998) (though defendant maintained a website viewable in California and forwarded e-mail responses to that site, court found "Aarotech directed no activity toward the residents of California").

Here, U.S. Video has done nothing to show that CoxCom's POP node is directed to any Texas resident. Moreover, as to owning the computer servers themselves or purchasing related services such as space for locating the servers, controlling Supreme Court authority has held that ownership of assets (even real property) is not enough to subject CoxCom to jurisdiction.

4

*Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 418 (1984) ("mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of … jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions"); *Shaffer v. Heitner*, 433 U.S. 186, 213 (1977) (ownership of property in forum state unrelated to claim did not support jurisdiction).

**CONCLUSION**

Cox's motion to dismiss for lack of personal jurisdiction should be granted. Plaintiff's belated and futile effort to add Coxcom should be denied.

Respectfully submitted, this 23rd day of October, 2006.

| | |
|---|---|
| Michael Edwin Jones<br>POTTER MINTON PC<br>110 N. College, Suite 500<br>P.O. Box 359<br>Tyler, TX 75710-0359<br>Telephone: 903-597-8311<br>Facsimile: 903-593-0846<br>mikejones@potterminton.com<br>allengardner@potterminton.com | */s/ Mitchell G. Stockwell, with permission by Michael E. Jones*<br>Mitchell G. Stockwell<br>Georgia Bar No. 682912<br>KILPATRICK STOCKTON LLP<br>1100 Peachtree St NE<br>Suite 2800<br>Atlanta GA 30309-4530<br>Telephone: 404-815-6214<br>Facsimile: 404-815-6555 |

**Attorneys for Cox Communications, Inc.**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a correct copy of the foregoing was served on all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3) on October 23, 2006. Any other counsel of record will be served by first class U.S. Mail.

*/s/ Mitchell G. Stockwell, with permission by Michael E. Jones*

US2000 9552509.1

# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | ) ) ) |
| Plaintiff, | ) ) CASE |
| vs. | ) NO. 2:06-CV-00239-RHC ) |
| TIME WARNER, INC., COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; AND COMCAST OF DALLAS, LP, | ) ) ) ) ) ) ) ) |
| Defendants. | ) )/ |

DEPOSITION OF
JOHN SPALDING, ESQ.

October 5, 2006
9:00 a.m.

Kilpatrick Stockton
1100 Peachtree Street
Suite 2800
Atlanta, Georgia

Reported By:
Mary K. Caldwell, CSR
Georgia #B-1325
Esquire Deposition Services
Atlanta Office Job #422391
Phone - 404.872.7890

John Spalding                                                    October 5, 2006

| Page 46 |
| --- |

1      (Thereupon, marked for identification
2  purposes, Plaintiff's Exhibit No. 13.)
3  BY MS. LIPSKI:
4      Q   Referring now to Exhibit 13, what
5  relationship, if any, would this company have with
6  any Cox company?
7      A   No relationship, because this entity does
8  not exist any longer.
9      (Thereupon, marked for identification
10 purposes, Plaintiff's Exhibit No. 14.)
11 BY MS. LIPSKI:
12     Q   Referring to Exhibit 14, what relation-
13 ship, if any, does exist or did exist with this
14 company between itself and Cox?
15     A   No relationship exists because this entity
16 no longer exists.
17     (Thereupon, marked for identification
18 purposes, Plaintiff's Exhibit No. 15.)
19 BY MS. LIPSKI:
20     Q   Referring to Exhibit 15, is there any
21 relationship between this entity and Cox?
22     A   No.  This entity no longer exists.
23     (Thereupon, marked for identification
24 purposes, Plaintiff's Exhibit No. 16.)
25 BY MS. LIPSKI:

| Page 47 |
| --- |

1      Q   Referring now to Exhibit 16, what, if any,
2  relationship exists between this company and Cox?
3      A   (Witness reviews document).
4      This entity was either sold in the May
5  transaction or the assets held by this entity were
6  sold in the May transaction.
7      Q   And what are you basing that on?
8      A   The fact that all Texas operating assets
9  were sold in the May transaction.
10     Q   With the exception of Henderson, the
11 Henderson franchise?
12     A   With the exception of Henderson.
13     Q   And when you refer to operating assets,
14 you're not referring to the Dallas hub?
15     A   I am not referring to the Dallas hub.
16     Q   How would you define operating assets?
17     A   Assets used to deliver services to our
18 customers in Texas.
19     MS. LIPSKI:  Okay.  I think we're going to
20 take a short break, but we should almost be
21 done.
22     THE WITNESS:  Okay.
23     MR. STOCKWELL:  Okay.
24     (Whereupon, there was a recess
25     in the deposition.)

| Page 48 |
| --- |

1      MS. LIPSKI:  I don't have any further
2  questions.
3      MS. GOLDSTEIN:  Thank you for your time.
4  We appreciate it.
5      MR. STOCKWELL:  I have a -- I have a few I
6  want to put on the record.
7      MS. GOLDSTEIN:  Okay.
8          DIRECT EXAMINATION
9  BY MR. STOCKWELL:
10     Q   Mr. Spalding, this is Mitch Stockwell.
11 Just a couple of points of clarification.
12     First, who owns and operates the Internet
13 backbone that you were talking about earlier today?
14     A   CoxCom, Inc.
15     Q   Next, I want to talk a little bit about
16 some of the details of corporate formalities.  Hang
17 on.  Let me get to my list of questions here.
18     What sort of corporate formalities are
19 maintained vis-a-vis CoxCom, Inc., versus Cox
20 Communications, Inc.?
21     A   They each have their separate boards,
22 separate officers, separate board meetings, separate
23 resolutions.
24     Q   What about the books and records of the
25 two companies?  How are those kept?

| Page 49 |
| --- |

1      A   Separate corporate books and records.
2      Q   Are there any common business departments
3  between CoxCom, Inc., and Cox Communications, Inc.?
4      A   No.  CoxCom, Inc., is out in the field
5  operating the businesses, and their business
6  departments are out in the field.  And Cox
7  Communications, Inc.'s, business departments are in
8  Atlanta.
9      Q   What Texas tax returns have been filed by
10 Cox Communications, Inc.?
11     A   None.
12     Q   Does CoxCom, Inc., file tax returns
13 separately from Cox Communications, Inc.?
14     A   In many states, yes.
15     Q   What about in Texas?
16     A   When it was still operating in Texas,
17 CoxCom, Inc., did file tax returns in Texas.
18     Q   How would you characterize the level of
19 CoxCom, Inc.'s, capitalization?
20     A   Very strong, has its own assets, its own
21 equipment, its own plant, everything it needs to
22 operate the business.
23     MR. STOCKWELL:  Thank you, no further
24 questions.
25     MS. GOLDSTEIN:  Let me just ask one

f4f82a79-580d-4359-bc0d-2fa7676711a8

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TIME WARNER INC., COX COMMUNICATIONS, INC., CHARTER COMMUNICATIONS, INC., COMCAST CABLE COMMUNICATIONS, LLC, COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | ) ) ) ) ) ) ) ) | Case No. 2-06CV-239-(RC) |
| | ) | |
| Defendant(s) | ) | |

## DEFENDANT COX COMMUNICATIONS, INC.'S CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedures, Defendant Cox Communications, Inc. provides the following Corporate Disclosure Statement.

1.    Cox Communications, Inc., is a private company with all of its stock held privately by Cox Enterprises, Inc.

2.    There is no publicly held corporation that holds 10% or more of Cox Communications, Inc.'s stock.

1

US2000 9549648.1

DATED this 24th day of October, 2006.

Leroy M. Toliver
Georgia Bar No. 714277
KILPATRICK STOCKTON LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309
Tel: 404-815-6500
Fax: 404-815-6555

Michael Edwin Jones
Potter Minton PC
110 N College
Suite 500
P.O. Box 359
Tyler, Texas 7510-0359
Tel: 903-597-8311
903-593-0846

**Attorneys for Defendant Cox
Communications, Inc.**

2

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | ) ) ) | |
| Plaintiff(s), | ) ) | |
| v. | ) ) | |
| TIME WARNER INC., COX COMMUNICATIONS, INC., CHARTER COMMUNICATIONS, INC., COMCAST CABLE COMMUNICATIONS, LLC, COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | ) ) ) ) ) ) ) ) | Case No. 2-06CV-239-(RC) |
| Defendant(s) | ) | |

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a) and contemporaneously served on all counsel who have consented to electron service, this 24th day of October, 2006.  All other counsel shall be served by first class mail.

＿＿_/s/ Leroy M. Toliver＿＿＿＿＿＿＿

3

US2000 9549648.1

# UNITED STATES DISTRICT COURT
## FOR THE FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| TIME WARNER INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | ) ) ) ) ) ) ) ) | Case No.: 2-06CV-239-RHC |
| Defendants. | ) ) ) ) | |

## THE COMCAST DEFENDANTS'
## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, Defendant Comcast Cable Communications, LLC ("Comcast")[1] respectfully submits this corporate disclosure statement.

1.       All parent corporations of Comcast:  Comcast Holdings Corporation, a Pennsylvania corporation, which is owned by Comcast Corporation, a Pennsylvania corporation, and Sural LLC, a Delaware holding company ; and

2.       Any publicly held corporation that owns 10% or more of Comcast's stock:  There is no publicly held corporation that directly holds 10% or more of Comcast's stock.

---

[1] Since the filing of this action, it appears that as a result of a transaction involving Adelphia Communications Corporation and pursuant to public records, Defendant Comcast of Dallas, LP is now listed as "TimeWarner Cable of Dallas, LP," while Defendant Comcast of Richardson, LP and Comcast of Plano, LP are listed as inactive.

Dated: October __, 2006

Respectfully submitted,

GILLAM & SMITH, LLP

*Gil Gillam, Jr. by permission*

Harry L. Gillam, Jr.
LEAD ATTORNEY
Texas State Bar No. 07921800
303 S. Washington Avenue
Marshall, TX 75670
Telephone: 903-934-8450
Facsimile: 903-934-9257

OF COUNSEL:
Matthew B. Lehr
Suong T. Nguyen
Duane Nash
Yiping Liao
DAVIS POLK & WARDWELL
1600 El Camino Real
Menlo Park, CA 94025
Telephone:    (650) 752-2000
Facsimile:    (650) 752-2111

ORGAIN, BELL, & TUCKER L.L.P.

Michael J. Truncale
P.O. Box 1751
Beaumont, Texas 77704
Telephone: 409-838-6412
Facsimile: 409-951-7318

ATTORNEYS FOR DEFENDANTS AND
COUNTERCLAIM PLAINTIFFS COMCAST
CABLE COMMUNICATIONS, LLC;
COMCAST OF RICHARDSON, LP;
COMCAST OF PLANO, LP; AND
COMCAST OF DALLAS, LP

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel who have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this **27** day of October 2006.

Michael J. Truncale

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | |
|---|---|
| USA VIDEO TECHNOLOGY CORP. | ) |
| | ) |
| Plaintiff, | ) |
| | ) C.A. No. 2:06-CV-239 |
| v. | ) |
| | ) JUDGE RON CLARK |
| TIME WARNER CABLE INC., et al. | ) |
| | ) |
| Defendants. | ) |

## TIME WARNER CABLE INC.'S CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Civil Procedure 7.1, Defendant, Time Warner Cable Inc., states that Time Warner Inc. and Adelphia Communications Corp. are its parent corporations (directly or indirectly) and that both companies are publicly traded corporations.

Dated: October 31, 2006                    Respectfully submitted,


By:    /s/ J. Thad Heartfield
     J. Thad Heartfield
     Texas Bar No. 09346800
     E-mail: thad@jth-law.com
  Law Offices of J. Thad Heartfield
  2195 Dowlen Road
  Beaumont, Texas 77706
  Telephone:  (409) 866-3318
  Fax:  (409) 866-5789

  Jeffrey M. Olson (*pro hac vice*)
  Sidley Austin LLP
  555 West 5th Street
  Los Angeles, California 90013
  Telephone: (213) 896-6000
  Fax: (213) 896-6600

  ATTORNEYS FOR DEFENDANT
  TIME WARNER CABLE INC.

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on this the 31st day of October, 2006.  Any other counsel of record will be served by first class mail.

    /s/ J. Thad Heartfield_____
    J. Thad Heartfield

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | § § § | |
| *Plaintiff*, | § § | Civil Action No. 2:06-CV-239 |
| v. | § § § | JUDGE RON CLARK |
| TIME WARNER CABLE, INC.; COX COMMUNICATIONS, INC.; CHARTER COMMUNICATIONS, INC.; COMCAST CABLE COMMUNICATIONS, LLC; COMCAST OF RICHARDSON, LP; COMCAST OF PLANO, LP; COMCAST OF DALLAS, LP, | § § § § § § § § § | |
| *Defendants*. | § | |

**ORDER ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL
JURISDICTION AND PLAINTIFF'S MOTION TO AMEND**

Defendant Cox Communications, Inc. ("Cox") filed a Motion to Dismiss for Lack of

Personal Jurisdiction or, in the Alternative, to Transfer Venue to the District of Delaware [Doc. #

32]. In response, Plaintiff argued that it needed limited discovery on the issue of personal

jurisdiction. Plaintiff also filed a Motion for Leave to Amend [Doc. # 42] to join a subsidiary of

Cox, CoxCom, Inc. ("CoxCom"), and asked for discovery on the relationship between Cox and

CoxCom.

This court allowed limited discovery on these issues. *See* Order on Defendant's Motion

to Dismiss for Lack of Personal Jurisdiction [Doc. # 53]. Both parties have submitted

supplemental briefing on these motions. Based on the evidence presented, Cox and CoxCom

lack sufficient contacts with Texas for this court to exercise jurisdiction over them. Normally,

1

when the court lacks personal jurisdiction over a party, the court can dismiss the party or transfer

to a court which has personal jurisdiction. Cox requests that this case be transferred to Delaware.

The court will sever Plaintiff's claims against Cox and grant Cox's request to transfer to

the District of Delaware. The court also finds that the joinder of CoxCom is not warranted.

## I. Background

Plaintiff USA Video Technology ("USVO") alleges that the Defendants infringe Claim 1

of U.S. Patent No. 5,130,792 (the ` 792 patent). The ` 792 patent teaches a method for

communicating video programs to remote locations over selected commercial telephone

networks. This "video-on-demand" process allows a customer to obtain a video program

whenever a customer requests it.

Cox maintains that Plaintiff has sued the wrong company because Cox does not provide

"video-on-demand" services and Cox does not own or operate a cable system in Texas. Cox also

states that its affiliate CoxCom does not sell or market any products in Texas. After suit was

filed here, CoxCom filed a declaratory judgment action in Delaware against USVO. Cox itself

has not joined in the action in Delaware.

## II. Law and Analysis

**A. Personal Jurisdiction over Cox**

1. Standard of Review for Personal Jurisdiction

Because this a patent case, this court applies the law of the Federal Circuit, rather than

that of regional circuits, to determine whether personal jurisdiction exists. *Electronics For

Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1348 (Fed. Cir. 2003). There are two types of personal

jurisdiction – specific and general. *Id.* at 1349. Under general jurisdiction, the exercise of

2

jurisdiction is proper where the defendant has continuous and systematic contacts with the forum

state, even if those contacts are not related to the cause of action.  *Id.* at 1349.  However, these

contacts must be "so substantial and of such a nature as to justify suit against [the defendant] on

causes of action arising from dealings entirely different from those activities."  *International*

*Shoe Co. v. Washington*, 326 U.S. 310, 318, 66 S.Ct. 154, 159 (1945).

      Determining whether specific personal jurisdiction over a nonresident defendant is proper

entails two inquiries: (1) whether the long-arm statute of the forum state confers personal

jurisdiction over the defendant; and (2) whether the exercise of such jurisdiction by the forum

state is consistent with due process.  *Id* at 1349.[1]  Texas' long arm statute has been interpreted to

extend to the limits of due process.  *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990).

Therefore, the question is whether Defendant's contacts with the State are sufficient to satisfy

due process. *Electronics For Imaging, Inc.*, 340 F.3d at 1350.

      Whether due process is satisfied requires the court to consider whether Defendant has

certain "minimum contacts" with the forum state, and whether the exercise of jurisdiction would

offend traditional notions of fair play and substantial justice.  *Electronics For Imaging, Inc.*, 340

F.3d at 1350.  In making this determination, the Federal Circuit has stated that three factors must

be considered: (1) whether the defendant purposefully directed its activities at the residents of the

forum state, (2) whether the claim arises out of or relates to those activities, and (3) whether

assertion of personal jurisdiction is reasonable and fair.  *Id.*  The first two factors correspond with

---

    [1]The Federal Circuit has stated "the question of which Due Process Clause controls the
personal jurisdiction inquiry becomes purely academic because this court, though professing
reliance on the Fifth Amendment, applies the Fourteenth Amendment state-contacts test of
*International Shoe.*"  *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355,
1358 n.*. (Fed. Cir. 1998).

the "minium contacts" analysis and the third factor corresponds with the traditional notions of

fair play and substantial justice. *Id.* Plaintiff bears the initial burden to prove a prima facie case

that Defendant has minimum contacts with the forum state. *Id.* Defendant bears the burden to

show that the exercise of jurisdiction would violate the traditional notations of fair play and

substantial justice. *Id.*

### 2. Cox's Contacts

In this court's prior order allowing Plaintiff discovery on the issue of personal

jurisdiction, the court pointed out that Plaintiff had failed to show the nature and extent of Cox's

contacts with Texas. After limited discovery, Plaintiff still has not presented any evidence which

suggests that Cox has continuous and systematic contacts with Texas (for general jurisdiction), or

that Cox marketed or sold any of the accused services or products in Texas (for specific

jurisdiction). In fact, Plaintiff admits that Cox appears to have no ties to Texas.

Plaintiff suggests that the contacts of Cox's affiliates may be attributed to Cox for the

purposes of establishing minimum contacts with Texas. Contacts may be attributed when a

parent company totally dominates and controls its subsidiary, operating the subsidiary as its

business conduit or agent. *See U.S. v. Jon-T Chemicals, Inc.*, 768 F.2d 686, 691 (5th Cir. 1985).[2]

Even assuming that one of Cox's affiliates has sufficient contacts with Texas to establish a basis

for jurisdiction, Plaintiff has not argued, or come forward with any evidence to show, that Cox

totally dominates and controls any of its subsidiaries or affiliates. Plaintiff has not suggested that

any additional discovery is needed. The court will grant Cox's request to transfer.

---

[2]In analyzing whether the contacts of an affiliate are imputed to another entity, the Federal
Circuit follows the law of other courts of appeals. *Insituform Techs., Inc. v. CAT Contracting,
Inc.*, 385 F.3d 1380, 1380 (Fed. Cir. 2004).

**C. Joinder of CoxCom**

1. Standard of Review for Joinder

Under Fed. R. Civ. P. 21, "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." In applying Rule 21, the court is governed by the liberal amendment standards of Rule 15(a). *See McLellan v. Miss. Power & Light*, 526 F.2d 870, 873 (5th Cir. 1976).[3] Under Rule 15(a), the court should grant leave "freely" and there is a strong bias in favor of granting leave to amend. *Lyn-Lea Travel Corp. v. American Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002). A district court may consider various factors in determining whether to allow leave to amend. *Little v. Liquid Air Corp.*, 952 F.2d 841, 846 (5th Cir. 1992). These factors include undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by an amendment previously allowed, undue prejudice to the other party, and futility of the amendment. *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998). Denial may be based upon futility alone. *Id.* at 320.

2. Futility of Joinder

Cox argues that joinder of CoxCom is futile because the evidence before the court shows that this court cannot exercise personal jurisdiction over CoxCom.

*a. General Jurisdiction*

Plaintiff states that CoxCom has continuous and systematic general business contacts

_____

_____

[3]The Federal Circuit has stated that a decision on whether to grant or deny a motion for leave to join a party is governed by the law of the regional circuit. *See Insituform Technologies, Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1372 (Fed. Cir. 2004).

with Texas because CoxCom owns and operates a Point of Presence ("POP") in Dallas, Texas. This POP is a transport backbone node for a national IP network and is located in leased office space in Dallas. The POP consists of a network of circuits and equipment for connecting internet protocol traffic traveling across the nation to and from CoxCom's systems located outside of Texas. It is undisputed that the node operates only to carry internet protocol traffic through Texas, not to any Texas residents. In fact, there is no evidence to suggest that CoxCom does any business in Texas at all.

While the Federal Circuit has not directly addressed this issue, the Fifth Circuit has stated that interconnections, even though crossing the border into a forum, are insufficient by themselves to confer general jurisdiction. *See Access Telecom, Inc. v. MCI Telecomms. Corp.*, 197 F.3d 694, 718 (5th Cir. 1999). The court finds this reasoning persuasive. The POP only operates to transfer digitized packets of information as part of a national network, and is not directly related to any business activity in Texas. This is not the type of activity which is so substantial and of such a nature to justify the exercise of general jurisdiction. S*ee International Shoe*, 326 U.S. at 318, 66 S.Ct. at 159.

Moreover, there are no permanent employees in Dallas, and CoxCom employees only occasionally service the equipment in Dallas. These occasional visits by employees are insufficient to establish a basis for general jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-18, 104 S.Ct. 1868, 1872-74 (1984). Additionally, the mere renting or ownership of property in a forum is not enough to confer jurisdiction when that property is not used to conduct business in the forum. *See Shaffer v. Heitner*, 433 U.S. 186, 212, 97 S.Ct. 2569, 2584 (1977). Plaintiff has not argued, and there is no evidence to suggest, that the

6

property in Dallas (i.e. servers and routers) was used to conduct business in Texas. On the record

before it, the court finds that the POP is insufficient to establish a basis for general jurisdiction.

### b. Specific Jurisdiction

To establish specific jurisdiction, there must be some evidence that the claims arise out of

or relate to the contacts with Texas. *Electronics For Imaging, Inc.*, 340 F.3d at 1350. Plaintiff

has accused Defendants' "video on demand" cable television services as infringing on the `792

patent. It is undisputed that CoxCom no longer offers "video on demand" services in Texas, and

that the POP is not part of CoxCom's cable television services. Therefore, the alleged contact

with Texas, internet traffic passing through a POP, cannot be related to Plaintiff's claims of

offering "video on demand" services to Texas residents. The court concludes that there is no

basis for specific jurisdiction over CoxCom.

Plaintiff has not asked for any additional discovery or suggested that any other contacts

with Texas exist. Because the evidence before the court shows that this court lacks personal

jurisdiction over CoxCom, the court concludes that joinder would be futile and is not warranted.

*See Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584, 119 S.Ct. 1563, 1570 (1999)(personal

jurisdiction is an essential element of the jurisdiction of a district court "without which the court

is powerless to proceed to an adjudication.").

### III. Conclusion

After discovery, Plaintiff failed to come forward with any evidence to show that this court

could exercise jurisdiction over Cox Communications, Inc. The evidence before the court also

shows that the joinder of CoxCom, Inc. would be futile because CoxCom, Inc. does not have

sufficient contacts with Texas such that this court can exercise jurisdiction over it.

IT IS THEREFORE ORDERED that Defendant Cox Communications, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction or, in the Alternative, to Transfer Venue to the District of Delaware [**Doc. # 32**] is **GRANTED IN PART**. USA Video Technology's claims against Cox Communications, Inc. are **SEVERED** and **TRANSFERRED** to the United States District Court for the District of Delaware. The Clerk shall send a copy of this Order to the Clerk of the United States District Court for the District of Delaware

IT IS FURTHER ORDERED that Plaintiff's Motion for Leave to Amend [**Doc. # 42**] is **DENIED**.

So **ORDERED** and **SIGNED** this **1** day of **November, 2006.**

_____

Ron Clark, United States District Judge



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:06-CV-239 |
| | § | |
| | § | JUDGE RON CLARK |
| TIME WARNER CABLE, INC., ET. AL., | § | |
| | § | |
| | § | |
| *Defendants.* | § | |

# <u>SCHEDULING ORDER</u>
### (Patent Case)

The Court, after considering the joint attorney conference report and after reviewing the case file, enters this case specific order which controls disposition of this action pending further order of the Court. The following actions shall be completed by the date indicated.[1]

### DEADLINES

November 13, 2006        P.R. 3-1 Disclosure of Asserted Claims and Preliminary Infringement Contentions.

December 6, 2006        Join Additional Parties

November 20, 2006        To extent not already required to be disclosed, exchange Mandatory Disclosures

---

[1] If a deadline falls on a Saturday, Sunday, or a legal holiday as defined in Fed. R. Civ. P. 6, the effective date is the first federal court business day following the deadline imposed. All deadlines shall be as of 4:00 p.m., on the day specified. If delivery of a document or other item is required, and counsel chooses to mail the same, it shall be deposited, properly addressed and postage pre-paid, in a mailbox or at a post office, at least three (3) days before the indicated deadline, on a day mail is scheduled to be picked up by the postal service at that location, and at a time before the last scheduled pickup.

Scheduling Order (Patent Cases) Rev. 11/17/05

| December 20, 2006 | Privilege Logs to be exchanged by parties (or a letter to the Court stating that there are no disputes as to claims of privileged documents). |
| December 28, 2007 | P.R. 3-3 Preliminary Invalidity Contentions (and P.R. 3-4 document production) to be served |
| January 8, 2007 | Parties to exchange proposed terms and claim elements for construction (P.R. 4-1). |
| January 29, 2007 | Parties to exchange preliminary proposed claim construction and extrinsic evidence supporting same (P.R. 4-2). |
| January 31, 2007 | Plaintiff's Final Amended Pleadings (It is not necessary to file a Motion for Leave to Amend before the deadline to amend pleadings except to the extent the amendment seeks to add a new patent in suit). |
| February 21, 2007 | Respond to Amended Pleadings |
| May 25, 2007 | Joint Claim Construction and Prehearing Statement to be filed (P.R. 4-3). Provide an estimate of how many pages are needed to brief the disputed claims. |
| June 25, 2007 | Completion date for discovery on claim construction (P.R. 4-4). |
| July 13, 2007 | Opening claim construction brief (P.R. 4-5(a)). |
| July 27, 2007 | Responsive claim construction brief (P.R. 4-5(b)). |
| August 3, 2007 | Reply claim construction brief (P.R. 4-5(c)). |
| August 15, 2007 | Parties to file joint claim construction and chart (P.R. 4-5(d)). Parties shall work together to agree on as many claim terms as possible. |
| August 15, 2007 | Submit technology synopsis. Possible claim construction pre-hearing conference. |

| | |
|---|---|
| August 27, 2007 | Possible tutorial at 10:00 a.m. |
| **August 29, 2007** | Claim construction hearing at 10:00 a.m. |
| September 19, 2007 | Provide Initial Mandatory Disclosures of information directed solely to damages. Deadline for Initial Mandatory Disclosure of all persons, documents, data compilations and tangible things, which are relevant to a claim or defense of any party and which has not previously been disclosed. This deadline is not an extension of earlier deadlines set out in this court's order or the Patent Rules, nor an excuse to delay disclosure of information. It is a "catchall" deadline for provision of all remaining information which may be relevant to a claim or defense of any party at trial. |
| October 24, 2007 | Parties to Designate Expert Witnesses on issues for which the parties bear the burden of proof, and provide their expert witness report, to include for ALL experts all information set out in Rule 26(2)(B). |
| November 14, 2007 | Comply with P.R. 3-8. (Designation of Wilfulness Opinions). |
| November 14, 2007 | Parties to Designate Expert Witnesses on issues for which the parties do not bear the burden of proof, and provide their expert witness report, to include for ALL experts all information set out in Rule 26(2)(B). |

Scheduling Order (Patent Cases) Rev. 11/17/05     3

| | |
|---|---|
| November 28, 2007 | File Dispositive Motions and any other motions that may require a hearing. Regardless of how many dispositive motions a party files, each side is limited to a total of sixty pages for such motions. Each individual motion shall comply with Local Rule CV-7.<br>**Responses to motions shall be due in accordance with Local Rule CV-7(e).**<br>**Note: Objections to any expert, including *Daubert* motions, shall be filed within 3 weeks after the expert's Report has been disclosed. Such objections and motions are limited to ten pages each.** |
| November 28, 2007 | Discovery Deadline. All discovery must be served in time to be completed by this date. |
| December 28, 2007 | Notice of intent to offer certified records |
| December 28, 2007 | Counsel and unrepresented parties are each responsible for contacting opposing counsel and unrepresented parties to determine how they will prepare the Joint Final Pretrial Order (*See* Local Rule CV-16(b) and Proposed Jury Instructions and Verdict Form (or Proposed Findings of Fact and Conclusions of Law in nonjury cases). |
| January 7, 2008 | Video Deposition Designation due. Each party who proposes to offer a deposition by video shall serve on all other parties a disclosure identifying the line and page numbers to be offered. All other parties will have seven calendar days to serve a response with any objections and requesting cross examination line and page numbers to be included. Counsel must consult on any objections and only those which can not be resolved shall be presented to the court. The party who filed the initial Video Deposition Designation is responsible for preparation of the final edited video in accordance with all parties designations and the court's rulings on objections |

| | |
|---|---|
| January 7, 2008 | Motions in limine due<br>File Joint Final Pretrial Order.  See Local Rules Appendix D (Obtain form for Exhibit List from District Clerk's Office, or create an Exhibit List form that mirrors the District Clerk's form).  Exchange Exhibits and deliver copies to the court.  At this date, all that is required to be submitted to the court is a hyperlinked exhibit list on disk (2 copies) and no hard copies |
| January 21, 2008 | Response to motions in limine due[2]<br>File objections to witnesses,  deposition extracts, and exhibits, listed in pre-trial order.[3]   (This does not extend the deadline to object to expert witnesses).   If numerous objections are filed the court may set a hearing prior to docket call.<br>File Proposed Jury Instructions/Form of Verdict (or Proposed Findings of Fact and Conclusions of Law). |
| To be set by Court | Hearing to consider all pending motions and objections. |
| February 4, 2008 | Docket call and Final Pretrial at 9:00 a.m.<br>Date parties should be prepared to try case.  Provide court with two copies of most updated Exhibit list.   Absent agreement of the parties, this should not have exhibits which were not listed in the Final Pretrial Order, but may have some deletions depending on rulings on objections.  At this date, the parties should be prepared to give the Deputy Clerk one hard copy of the exhibits. |
| February 5, 2008 | 9:00 a.m. Jury Selection.  Case will then be tried in order with other cases on the docket.  (Depending on disposition of other cases on court's docket, jury selection  may be the following week.  The court will notify counsel as soon as possible if this is required.) |

---

[2]This is not an invitation or requirement to file written responses.  Most motions in limine can be decided without a written response.  But, if there is particularly difficult or novel issue, the Court needs some time to review the matter.    To save time and space respond only to items objected to.  All others will be considered to be agreed.    Counsel must consult to resolve any objections before filing a response.

[3]Before filing objections counsel should confer with opposing counsel to determine whether they can be resolved without a court ruling.  The court needs a copy of the exhibit or the pertinent deposition pages to rule on the objection.

# SCOPE OF DISCOVERY

<u>Modification</u>.  Taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues, the Court modifies the parameters of discovery in the following respects.  *See* Fed. R. Civ. P. 26(b)(2)(iii).

<u>Case specific disclosure</u>.  The parties shall disclose the information required by the Order Governing Proceedings, the Patent Rules of this court, and this Scheduling Order.

A party that fails to timely disclose such information is not, unless such failure is harmless, permitted to use such evidence at trial,  hearing or in support of a motion.  In addition to or in lieu of such sanction, the Court may impose other appropriate sanctions, including the payment of reasonable expenses and attorney's fees.

<u>Depositions</u>.  Given the extensive disclosures required without a request from opposing party, absent further order of this court, discovery in this cause is limited to the disclosures required by this court's orders and the Patent Rules, together with 45 interrogatories, and 45 requests for admissions per side, and depositions on written questions of custodians of business records, for third parties.  "Side" means a party or a group of parties with a common interest.  The total time allotted for the depositions of fact witnesses is 70 hours per side, whether the time is used in direct examination or cross-examination.  Expert depositions shall be limited to 7 hours per side for damages experts, 7 hours per side for invalidity experts, and 12 hours per side for infringement experts, whether the time is used in direct or cross-examination.  The deposition of Elbert Tindell may last up to 12 hours if reasonably needed.  Except for the modifications noted in this order, all other depositions shall be taken in compliance with Fed. R. Civ. P. 30(d) and Local Rule CV-30. Reasonable breaks for lunch and otherwise will not count toward the time limitations.

In connection with all productions of foreign language documents, the producing party will produce any existing English language translation, whether or not created for the purpose of this case.

The parties are excused from the pretrial disclosure requirements set forth in Federal Rule of Civil Procedure 26(a)(3) as such disclosure is cumulative of this Court's pre-trial order procedures.

## COMPLIANCE

A party is not excused from the requirements of this scheduling order by virtue of the fact that dispositive motions are pending, the party has not completed its investigation, the party challenges the sufficiency of the opposing party's disclosure or because another party has failed to comply with this order or the rules.

## TRIAL

Jurors are performing a public service, which is usually inconvenient to them, and may be at great personal expense. Once the jury is seated, every effort will be made to present the case professionally, efficiently, and without interruption. The deadlines for pre-trial matters, such as exchanging exhibits, and objections, are intended to reduce the need for trial objections, side-bar conferences, and repetitive presentation of evidentiary predicates for clearly admissible evidence. Counsel should be familiar with the evidence display system available in the courtroom. Copies of exhibits which will be handed to witnesses should be placed in a three ring binder, with an additional copy for the court.

Counsel are responsible for informing their clients and witnesses about courtroom dress requirements and protocol, such as silencing pagers and phones, and not chewing gum, reading newspapers, or eating.

So **ORDERED** and **SIGNED** this **1** day of **November, 2006.**

_____
Ron Clark, United States District Judge

FILED
2:37 P.M. November 1, 2006
DAVID J. MALAND, CLERK
U.S. DISTRICT COURT
By _____
DEPUTY

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

DIVISION __Marshall_____    DATE __November 1, 2006____

DISTRICT JUDGE Ron Clark_____    TIME __1:30 pm - 2:37 pm____

USA VIDEO TECHNOLOGY CORP._____    REPORTER Chris Bickham_____

_____    §
                                     §
                        PLAINTIFF    §    CIVIL NO. __2:06cv239_____
                                     §
                                     §
TIME WARNER, ET AL_____    §
                                     §
                                     §
                        DEFENDANT    §

ATTORNEYS FOR PLAINTIFF   __Edward Goldstein, Tony Drescher, Johnny Ward &__

Corby Vowell_____

ATTORNEYS FOR DEFENDANT   __Thad Heartfield, Jeffrey Olson, Dean Franklin,__

Matthew Lehr & Michael Truncale (By telephone: Mark Brown, Lee Zieroth,___

Andrew Block & Michael Aronoff_____

THIS DAY CAME THE PARTIES BY THEIR ATTORNEYS AND THE FOLLOWING PROCEEDINGS

WERE HAD:   __1:30 pm Court began.  Case Management Conference held before__

Judge Clark **in Beaumont**.   The parties gave the status of their case to the

Court.  Jury selection & trial set for February, 2008.  The parties agreed to

try this case in Beaumont, TX._____

2:37 pm Adjourned._____

DAVID J. MALAND, CLERK

COURTROOM CLERK

Total Time: __1__ Hrs. __7__ Mins.



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| USA VIDEO TECHNOLOGY CORPORATION, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 2:06-CV-239 |
| | § | |
| | § | JUDGE RON CLARK |
| TIME WARNER CABLE, INC., ET. AL., | § | |
| | § | |
| | § | |
| *Defendants.* | § | |

## <u>AMENDED SCHEDULING ORDER</u>

(Patent Case)

### DEADLINES

December 20, 2006      To extent not already required to be disclosed, exchange
Mandatory Disclosures

December 28, 2006      P.R. 3-3  Invalidity Contentions (and P.R. 3-4
document production) to be served

    All other deadlines and requirements remain unchanged and are governed by the original

Scheduling Order [Doc. # 72].

    So **ORDERED** and **SIGNED** this **7**   day of **November, 2006.**

_____
Ron Clark, United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| USA Video Technology Corporation | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Case No. 2:06-cv-00239-RHC |
| | § | |
| Time Warner Inc., Cox Communications, | § | Judge: Ron Clark |
| Inc.; Charter Communications, Inc.; Comcast | § | |
| Cable Communications, LLC; Comcast of | § | **JURY TRIAL DEMANDED** |
| Richardson, LP; Comcast of Plano, LP and | § | |
| Comcast of Dallas, LP, | § | |
| | § | |
| Defendants. | § | |
| | § | |

### NOTICE OF APPEARANCE OF MICHAEL J. TRUNCALE

COMES NOW Defendant Charter Communications, Inc, and hereby notifies the Court and all parties of record that, in addition to the attorneys already representing them, Michael J. Truncale, State Bar Number 20258125, of the Law Office of Orgain, Bell & Tucker, LLP, P.O. Box 1751, Beaumont, Texas 77704-1751, (409) 838-6412, will be appearing as an attorney of record on their behalf in the above-styled and numbered cause.

Respectfully submitted,

**ORGAIN, BELL & TUCKER, L.L.P.**

By: ___/s/ Michael J. Truncale_____
      Michael J. Truncale
      State Bar No. 20258125
      P. O. Box 1751
      Beaumont, Texas 77704-1751
      (409) 838-6412 Telephone
      (409) 951-7318 Facsimile
      E-mail: mjt@obt.com

**ATTORNEYS FOR DEFENDANT**
**CHARTER COMMUNICATIONS, INC.**

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a true and correct copy of the above and foregoing document was furnished to all counsel, on this the 10th day of November 2006, by e-mail via the Eastern District of Texas ECF System.

/s/ *Michael J. Truncale* _____
Michael J. Truncale

FEE PAID
$25.00
10-30-06
Receipt #
1-1-3139

F I L E D
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

OCT 30 2006

DAVID J. MALAND, CLERK

DEPUTY

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**LUFKIN DIVISION**

**APPLICATION TO APPEAR PRO HAC VICE**

1  This application is being made for the following: Case # _____2:06-CV-00239-RHC_____

Style: ___USA VIDEO TECHNOLOGY CORPORATION V. TIME WARNER, INC., ET AL___

2  Applicant is representing the following party/ies: _____COX COMMUNICATIONS, INC._____

3  Applicant was admitted to practice in __North Carolina__ (state) on _____08/24/96_____ (date)

4  Applicant is in good standing and is otherwise eligible to practice law before this court.

5  Applicant is not currently suspended or disbarred in any other court

6  Applicant has/**has not** had an application for admission to practice before another court denied (please circle appropriate language)  If so, give complete information on a separate page

7  Applicant has/**has not** ever had the privilege to practice before another court suspended (please circle)  If so, give complete information on a separate page

8  Applicant has/**has not** been disciplined by a court or Bar Association or committee thereof that would reflect unfavorably upon applicant's conduct, competency or fitness as a member of the Bar (please circle)  If so, give complete information on a separate page

9  Describe in detail on a separate page any charges, arrests or convictions for criminal offense(s) filed against you. Omit minor traffic offenses.  **None.**

10  There are no pending grievances or criminal matters pending against the applicant

11  Applicant has been admitted to practice in the following courts:

_____Please see attached_____

12  Applicant has read and will comply with the Local Rules of the Eastern District of Texas, including Rule AT-3, the "Standards of Practice to be Observed by Attorneys "

13  Applicant has included the requisite $25 fee (see Local Rule AT-1(d))

14  Applicant understands that he is being admitted for the limited purpose of appearing in the case specified above only

**Application Oath:**

I, _____Tonya R. Deem___ do solemnly swear (or affirm) that the above information is true; that I will discharge the duties of attorney and counselor of this court faithfully; that I will demean myself uprightly under the law and the highest ethics of our profession; and that I will support and defend the Constitution of the United States.

Date __Oct. 20, 20X6__     Signature _____

Name (please print) ___Tonya R. Deem___

State Bar Number _____23075_____

Firm Name _____Kilpatrick Stockton LLP_____

Address/P.O. Box:___1001 W. Fourth Street___

US2000 9549658 1 56474-320080

City/State/Zip: _____ Winston-Salem, NC  27101-2400 _____

Telephone #: _____ (336) 607-7485 _____

Fax #: _____ (336) 734-2653 _____

E-mail Address: _ IDeem@kilpatrickstockton.com _____

Applicant is authorized to enter an appearance as counsel for the party/parties listed above.  This application has
been approved for the court this _____ 30 ____ day of _____ Oct _____, 2006

David J  Maland, Clerk

U S  District Court, Eastern District of Texas

By      _____

Deputy Clerk

Tonya R. Deem
<u>Courts Admitted to Practice</u>

United States District Court for the Middle District of North Carolina - 1996
United States District Court for the Eastern District of North Carolina - 1996
United States District Court for the Western District of North Carolina - 1996